EXHIBIT B

**CONFORMED COPY**

## GUARANTEE

   **GUARANTEE** dated as of December 6, 1999 (this *"Guarantee"*) made, jointly and severally, by each of **HOLDING COMPANY FOR FINANCIAL INVESTMENTS (LAKAH GROUP), S.A.E.,** a joint stock company incorporated under the laws of Egypt (the "Parent Guarantor" or a "Guarantor"), and three of its operating subsidiaries, **MEDEQUIP FOR TRADING AND CONTRACTING, S.A.E., TRADING MEDICAL SYSTEM EQUIPMENT, S.A.E.** and **ARAB STEEL FACTORY, S.A.E.,** each a joint stock company incorporated under the laws of Egypt (each, a *"Subsidiary Guarantor"* or a *"Guarantor"* and, collectively, the *"Subsidiary Guarantors;"* the Subsidiary Guarantors, together with the Parent Guarantor, collectively, the *"Guarantors"* and each, individually, a *"Guarantor"*), each having its registered office at 68, Merghany Street, Heliopolis, Cairo, Egypt, to and in favor of **THE BANK OF NEW YORK,** a bank organized under the laws of the State of New York, acting through its principal corporate trust office in New York City at 101 Barclay Street, Floor 21W, New York, New York 10286, in its capacity as trustee (in such capacity and any successor to it in such capacity, the *"Trustee"*) under the Indenture referred to below for itself and for the benefit of the Holders of the Bonds referred to below and the Agents. Capitalized terms used herein without otherwise being defined have the meanings assigned thereto in the Indenture.

   WHEREAS, pursuant to an Indenture dated as of December 8, 1999 (the *"Indenture"*) by and among Lakah Funding Limited, a company with limited liability organized under the International Business Companies Act (CAP 291) of the British Virgin Islands (the *"Issuer"*), the Guarantors and the Trustee, the Issuer has issued its U.S. $100,000,000 12 per cent. Bonds due 2004 (the *"Bonds"*);

   WHEREAS, each of the Guarantors will receive a direct benefit from the Issuer's issue, offer and sale of the Bonds;

   WHEREAS, pursuant to, and subject to the terms and conditions of, a Subscription Agreement dated as of the date hereof (the *"Subscription Agreement"*), UBS AG, acting through its division Warburg Dillon Read (*"Warburg Dillon Read"*), Barclays Bank PLC, Arab Banking Corporation (B.S.C.), The National Commercial Bank and Banque Libanaise Pour Le Commerce S.A.L. (collectively, the *"Managers"*) have agreed to purchase the Bonds; and

   WHEREAS, it is a condition precedent to the obligations of the Managers to purchase the Bonds as contemplated by the Subscription Agreement that the Guarantors execute and deliver this Guarantee to and in favor of the Trustee for the benefit of the Holders.

   NOW, THEREFORE, in order to induce the Managers to purchase the Bonds, and in consideration therefor, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Guarantors, jointly and severally, hereby covenants and agrees for the benefit of the Holders of the Bonds, the Trustee and the Agents, as follows:

   **Section 1.**  <u>Guarantee</u>. (a) Each of the Guarantors, as primary obligor and not merely as surety, HEREBY JOINTLY AND SEVERALLY, ABSOLUTELY, IRREVOCABLY AND UNCONDITIONALLY GUARANTEES to the Trustee, for the benefit of the Holders of the Bonds, the Trustee and the Agents, (i) the prompt payment of all amounts due in respect of the Bonds (whether principal, interest or any other amounts) or otherwise under the Indenture or the Paying Agency Agreement, which are not paid by the Issuer as and when due, in the manner, place and currency provided for in the Indenture and the Conditions, whether on the Maturity Date, on any date scheduled for the payment of interest, on any date fixed for the redemption of the Bonds, on acceleration or otherwise, strictly in accordance with the Conditions and the provisions of the Indenture, and (ii) the prompt and full performance of any and all other obligations of the Issuer in respect of the Bonds and otherwise under the Indenture and the Paying Agency Agreement on the terms specified therein. Each Guarantor further

guarantees the prompt payment, as and when due, of all amounts payable under the Indenture or the Paying Agency Agreement by the Issuer to the Trustee or any Agent.

(b)  As further evidence of this Guarantee, each Guarantor shall endorse its guarantee of payment and performance and *aval* on the Bonds, but no failure by the Trustee or any Holder to insist on any such endorsement shall affect the existence, validity or terms of this Guarantee, and the form of guarantee endorsed on the Bonds shall not be constructed as in diminution of or substitution for any of the obligations or agreements of any Guarantor in this Guarantee or otherwise under the Indenture.

Section 2.  **Guarantee Absolute and Unconditional, Etc.**  The foregoing guarantee is an absolute, unconditional, present and continuing guarantee of payment and performance and not collectibility and is in no way conditional or contingent upon (a) any attempt to, and the obligations of each Guarantor hereunder shall not be affected in any way by the absence of any action to, collect from or proceed against the Issuer, any other Guarantor, any other guarantor or surety or any other Person, or any collateral security, (b) the release of any other Guarantor from its obligations hereunder in whole or in part or (c) any other condition or contingency, which might otherwise constitute a defense available to, or a discharge of, the Issuer in respect of the Bonds or the Indenture or the Guarantors in respect of this Guarantee or the Indenture. If the Issuer shall for any reason whatsoever fail to pay in full when and as due any amount (whether in respect of principal, interest or otherwise) that may be owing by the Issuer in respect of the Bonds or otherwise under the Indenture, or the Issuer shall otherwise fail to perform any act, agreement or covenant required to be performed by it under the Conditions or the Indenture, the Guarantors shall, so often as any such failure occurs, immediately pay such sum or amount to the Trustee, for the benefit of the Holders, and/or perform such act, agreement or covenant, all without any demand, presentment, protest or notice of any kind whatsoever.

Section 3.  **Continuing Liability**.  The liabilities and other obligations of the Guarantors under this Guarantee shall remain in full force and effect regardless of the lapse of time, any act, omission or course of dealing whatsoever on the part of the Trustee, any Holder or any other Person or any other matter, event, circumstance or occurrence whatsoever, other than indefeasible prior payment, performance and satisfaction in full of all the obligations guaranteed hereby in accordance with the Conditions and the terms of the Indenture, whether or not such Guarantor shall have any knowledge or notice thereof. This Guarantee shall continue to be effective, or be revived and reinstated, as the case may be, if at any time any payment of all or part of any amount owing in respect of the Bonds or otherwise under the Indenture is rescinded, or must otherwise be returned by the Trustee or any Holder, upon the insolvency, bankruptcy, receivership or liquidation of the Issuer or any Guarantor or otherwise, all as though such payment had never been made. Without limiting the generality of the foregoing, the liability of each Guarantor hereunder shall not be diminished or impaired by:

(a)  the granting to the Issuer or any other Guarantor by the Trustee or any Holder of any credit the payment of which for any reason is not guaranteed by such Guarantor; or any failure or refusal of the Trustee or any Holder to grant any other credit to the Issuer;

(b)  the extension, renewal or refinancing of any amount payable in respect of the Bonds or otherwise under the Indenture, in whole or in part;

(c)  any amendment or other modification or restatement of any kind in, to or of the Indenture or the Bonds, or any variation, extension, waiver, compromise or release of any or all of the obligations of the Issuer or any other Guarantor under the Indenture or the Bonds, or any default thereof, in any case, which is approved by such Guarantor, if its approval is required by the terms of the Indenture or the Bonds, as the case may be, or which is not approved by such Guarantor, if its approval is not required by the terms of the Indenture or the Bonds;

(d) any illegality, invalidity or unenforceability of the Bonds or the Indenture against the Issuer or any other Person or of the obligations of any Guarantor under this Guarantee or the Indenture against such Guarantor or any other Person, including, but not limited to, as a result of any incorrectness, incompleteness or omission of any governmental authorization or approval or other action;

(e) the failure by the Issuer to use the net proceeds of sale of the Bonds as agreed in the Indenture and set forth in the recitals to this Guarantee;

(f) any declaration or imposition of any suspension, moratorium or rescheduling of payments to be made by, or otherwise affecting obligations of, the Issuer or any Guarantor, whether or not declared or imposed by any governmental authority and whether or not allegedly having the force of law; or

(g) the Issuer's or any other Guarantor's merger or consolidation with or into another entity or the loss of its separate legal identity or its ceasing to exist or any other incapacity of the Issuer or any other Guarantor to sue or to be sued.

Section 4. **Waiver, Etc.** Each of the Guarantors hereby unconditionally waives, to the fullest extent permitted by applicable law, (a) any and all notices which may be required by statute, rule or law or otherwise to preserve intact any rights of the Trustee against the Issuer or the Guarantors, including, without limitation, any demand, presentment, protest, notice of acceptance of this Guarantee, notice (including, without limitation, any such notice referred to in the Indenture) of any liability to which this Guarantee may apply, proof of notice of non-payment, notice of any failure on the part of the Issuer or any Guarantor to perform and comply with any covenant, agreement, term, condition or provision of the Bonds or the Indenture and any other notice to any other Person that may be liable in respect of the obligations guaranteed hereby (including the Issuer, any other Guarantor and any other guarantor thereof from time to time); (b) promptness, diligence and any right to the enforcement, assertion or exercise by the Trustee of any right, power, privilege or remedy conferred upon the Trustee in respect of the Bonds or under the Indenture or otherwise; and (c) any requirement that the Trustee exhaust any right, power, privilege or remedy, or mitigate any damages resulting from a default, in respect of the Bonds or otherwise under the Indenture, or proceed or take any action against the Issuer or any other Person under or in respect of the Bonds or the Indenture or otherwise, or protect, secure, perfect or ensure any lien or security interest on any property at any time constituting collateral security for any of the obligations guaranteed hereby. Without limiting the generality of the foregoing, each of the Guarantors hereby waives any right it might otherwise have under applicable Egyptian laws.

Section 5. **Recovery and Subrogation.** Upon payment in full by the Guarantors of all amounts payable by the Guarantors under this Guarantee, each of the Guarantors shall be immediately entitled to recover from the Issuer the amounts paid by that Guarantor hereunder, and for this purpose each of the Guarantors shall be immediately and automatically subrogated to the rights of the Holders, the Trustee or any Agent to which that Guarantor has made a payment hereunder in respect of the relevant amount so paid by it. Notwithstanding the foregoing, if any amount becomes payable by the Guarantors under this Guarantee to the Holders, the Trustee or any Agent, no Guarantor shall, so long as the amount remains unpaid, exercise any rights of subrogation or contribution or, without limitation, any other right or remedy, which may accrue to the relevant Guarantor in respect of or as a result of any such payment except to the extent that failure to exercise the right or remedy would violate applicable law or result in loss of the right or remedy. If a Guarantor receives any amount as a result of any action against the Issuer or any other Guarantor for or on account of any payment made by such Guarantor under this Guarantee and any amount payable by the Issuer or any other Guarantor under the Bonds or this Indenture is at the time due and unpaid, such Guarantor shall forthwith pay the amount received by it to the Principal Paying Agent for application to those unpaid obligations of the Issuer or such other Guarantor, and if any Guarantor files any claim to protect any such right, it hereby irrevocably agrees that the claim shall be

subordinate to the claims of the Holders with respect to the Issuer's obligations under the Bonds and the Indenture and the claims of the Trustee and the Agents with respect to amounts payable to them under or in connection with this Indenture or the Paying Agency Agreement.

Section 6.   **No Set-off, Etc.**   The obligations of each Guarantor under this Guarantee are not subject to any counterclaim, set-off, deferment, deduction or defense based upon any claim any Guarantor or the Issuer may have or assert.

Section 7.   **Payment of Additional Amounts.**

(a)   All payments required to be made by any Guarantor under this Guarantee shall be made free and clear of, and without withholding or deduction for or on account of any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within Egypt or any political subdivision or any authority thereof or therein having power to tax ("***Egyptian Taxes***"), unless such withholding or deduction is required by law. If any such deduction or withholding is so required, such Guarantor shall (i) deduct or withhold the full amount of Egyptian Taxes required to be paid and pay such amount to the relevant taxing authorities and (ii) upon the demand of the Person entitled to the payment in respect of which such Egyptian Taxes were imposed, pay to the account of such Person an amount sufficient to indemnify such Person fully against, and to reimburse such Person for, the amount deducted or withheld, except that such Guarantor shall not be required to indemnify any Person for Egyptian Taxes:

    (A)   to the extent that such Person is liable to pay Egyptian Taxes that were deducted or withheld by reason of such Person's having, or having had, some connection with Egypt, other than the mere holding of Bonds or this Guarantee or the enforcement thereof or, in the case of the Trustee or any Agent, the performance of its obligations relating to the Bonds; or

    (B)   in respect of any Bond, if such Bond is presented for payment more than 30 days after the Relevant Date, except to the extent that the Holder of such Bond would have been entitled to the indemnification provided for herein on presenting such Bond for payment on the last day of such period of 30 days.

(b)   All references in this Guarantee to any amount payable by a Guarantor in respect of the Bonds or otherwise hereunder shall be deemed to include a reference to any amounts sufficient to indemnify the Person entitled to the relevant amount as and to the extent contemplated by Section 7(a), and express mention of such indemnification in any provision shall not be construed as excluding payment of indemnity amounts where express mention is not made, if the indemnity amounts would otherwise be payable pursuant to Section 7(a).

Section 8.   **Representations and Warranties.**   Each Guarantor hereby represents and warrants, in the case of the Parent Guarantor, severally as to itself and jointly and severally as to each Subsidiary Guarantor and, in the case of each Subsidiary Guarantor, severally as to itself, as follows:

(a)   <u>Due Organization, Etc.</u>   Such Guarantor is a company, incorporated with limited liability and validly existing in good standing under the laws of Egypt, with full corporate power and authority to own, lease and operate its properties and conduct its businesses as described in the Offering Circular and to execute and perform its obligations under this Guarantee. No action has been taken or is contemplated to dissolve or end the business affairs of such Guarantor, no insolvency proceedings have been commenced or, to the best knowledge of such Guarantor (after due inquiry), are threatened against such Guarantor or any Subsidiary thereof, and no judgment has been made or is pending declaring such Guarantor or any Subsidiary thereof insolvent. Such Guarantor has, and each of its Subsidiaries has, paid all relevant organization fees and all taxes and fees

required to be paid by it to the relevant taxing or other governmental authorities, except where the failure to pay such taxes and fees would not result in a material liability or disability affecting such Guarantor or any of its Subsidiaries. Such Guarantor and each of its Subsidiaries are duly qualified to transact business in each jurisdiction in which it owns or leases property of a nature or transacts business of a type that would make such qualification necessary, except where the failure to be so qualified would not result in a material liability or disability affecting such Guarantor or any of its Subsidiaries.

(b) <u>Due Authorization, Etc.</u> The execution and delivery of this Guarantee by such Guarantor, the performance by such Guarantor of its respective obligations hereunder and consummation by such Guarantor of the transactions contemplated herein have been duly authorized by all necessary corporate or other action on the part of such Guarantor. This Guarantee has been duly executed and delivered by such Guarantor and constitutes the legal, valid and binding obligation of such Guarantor, enforceable against such Guarantor, in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other similar laws of general applicability relating to or affecting creditors' rights and to general principles of equity. In the event of a default by the Issuer in respect of its obligations to make payment in respect of the Bonds, no Person shall be under any obligation to exhaust its remedies against the Issuer or any other Person, nor to give or make any presentment, demand or protest, prior to enforcement against such Guarantor in Egypt of this Guarantee.

(c) <u>Status</u>. The obligations of such Guarantor under this Guarantee will constitute the direct, general, unconditional, unsubordinated and, subject to such Guarantor's negative pledge contained in the Conditions of the Bonds and this Guarantee, unsecured obligations of such Guarantor and will at all times rank at least *pari passu* in priority of payment with all other present and future unsecured and unsubordinated Indebtedness of such Guarantor, except for any obligations that may be preferred by provisions of law that are both mandatory and of general application.

(d) <u>No Conflicts</u>. The execution and delivery by such Guarantor of this Guarantee, the performance by such Guarantor of its respective obligations hereunder and the consummation of the transactions contemplated herein do not and will not, whether with or without the giving of notice or passage of time or both, (A) result in any violation of any governing document of such Guarantor or any of its Subsidiaries or conflict with or result in a breach of any of the terms or provisions of, or constitute a default or event of default (however described) under, or result in the creation or imposition of any lien, charge or encumbrance upon any property or assets of such Guarantor or any of its Subsidiaries under, any contract, indenture, mortgage, deed of trust, loan agreement, note, lease or other agreement or instrument to which such Guarantor or any of its Subsidiaries is a party or by which it may be bound or to which any of its properties may be subject or (B) result in any violation of any existing applicable law, rule, regulation, judgment, order or decree of any government, governmental instrumentality or court, domestic or foreign, having jurisdiction over such Guarantor or any of its Subsidiaries or any of their respective properties, except, in each case, such as would not reasonably be expected to result in a material liability or disability affecting such Guarantor or any of its Subsidiaries.

(e) <u>Approvals</u>. All filings, notices, approvals or other conditions and actions required by the laws of, or any regulatory authority in, Egypt to be made, given, obtained, satisfied and taken (including the obtaining of any necessary permit, license, authorization, approval or consent of, and the making of any necessary filing, recording or registration with, any governmental or regulatory authority or agency) for any of the following:

5

 (i) to enable such Guarantor to execute and deliver this Guarantee, and to endorse its *aval* upon the Bonds, and to perform its respective obligations hereunder and thereunder;

 (ii) to ensure that the obligations of such Guarantor under this Guarantee are valid, legal and binding and enforceable against such Guarantor;

 (iii) to enable such Guarantor to make payments under this Guarantee in respect of the Bonds or otherwise in accordance with the terms thereof and, to the extent required, to transfer out of Egypt all amounts in U.S. Dollars required to make payments in respect of the Bonds or otherwise under this Guarantee as and when they become due; and

 (iv) to make this Guarantee admissible in evidence in the courts of Egypt;

have been taken fulfilled and done in the manner and at the times required.

(f)  <u>No Litigation</u>. Except as disclosed in the Offering Circular, there is no action, suit, proceeding, inquiry or investigation pending, or to the knowledge of such Guarantor threatened, that might reasonably be expected to result in a material liability or disability affecting such Guarantor or any Subsidiary of such Guarantor, or which might reasonably be expected to materially and adversely affect the ability of such Guarantor to perform its respective obligations under this Guarantee or the consummation of the transactions contemplated herein, or which are otherwise material in the context of the making and delivery of this Guarantee.

(g)  <u>Proper Form</u>. This Guarantee is in proper legal form for enforcement against such Guarantor in Egypt and contains no provision which is contrary to law or public policy in Egypt.

(h)  <u>Withholding Tax; Indemnity.</u> Under current Egyptian law, payments by a Guarantor under this Guarantee of amounts constituting interest in respect of the Bonds will be subject to withholding for Egyptian Taxes at a rate of 32 per cent. Each Guarantor has all requisite power and authority (i) to deduct or withhold the full amount of Egyptian Taxes required to be paid and to pay such amount to the relevant taxing authorities and (ii) upon the demand of a Holder (or the Trustee on behalf of such Holder), to pay to the account of such Holder (or the account of the Trustee for the benefit of such Holder) an amount sufficient to indemnify such Holder fully against, and to reimburse such Holder for, the amount deducted or withheld; and the obligations of each Guarantor in this respect are valid and enforceable. The statements contained in the Offering Circular under the captions "*Taxation – Egyptian Taxation*" are true, accurate and complete in all respects.

(i)  <u>No Stamp Taxes, Etc</u>. The execution and delivery of this Guarantee are not subject to any tax, duty, fee or other charge, including, without limitation, any registration or transfer tax, stamp duty or similar levy, imposed by or within Egypt or any political subdivision or taxing authority thereof or therein other than a nominal tax of E£3, which is payable upon execution and delivery of this Guarantee.

(j)  <u>Accuracy of Recital</u>. Such Guarantor hereby represents for the benefit of the Holders that the recital of the Guarantors set out in the recitals to this Guarantee is true and correct as it applies to such Guarantor.

(k) <u>Submission to Jurisdiction</u>. Such Guarantor has the power to submit, and pursuant to this Guarantee has legally, validly, effectively and irrevocably submitted, to the jurisdiction of the courts of the State of New York in respect of any action or proceeding arising out of or relating to this Guarantee as contemplated by Sections 13 and 14.

Section 9.   <u>Covenants</u>.  So long as the Guarantee of each Guarantor herein continues in effect, such Guarantor agrees to observe, perform and comply with all covenants and agreements of such Guarantor set forth in the Conditions and the Indenture.

Section 10.   <u>Holders' Enforcement Rights.</u>   Notwithstanding anything herein to the contrary, each Holder shall have the right to enforce the obligations of each Guarantor under this Guarantee directly against such Guarantor in the manner and under the circumstances specified in the Indenture.

Section 11.   <u>Currency Indemnity</u>. Each reference in this Guarantee or the Bonds to a specified currency is of the essence.  All payments required to be made hereunder shall be made in U.S. Dollars. To the fullest extent permitted by applicable law, the obligations of each Guarantor in respect of any amount due under the Bonds, this Guarantee or the Indenture shall, notwithstanding any payment in any other currency (whether pursuant to a judgment or otherwise), be discharged only to the extent of the amount in U.S. Dollars that the Person entitled to receive that payment may, in accordance with normal banking procedures, purchase with the sum paid in such other currency (after any premium and costs of exchange) on the Business Day immediately following the date on which that Person receives that payment, and each Guarantor shall indemnify each such Person against any deficiency arising or resulting from any variation in rates of exchange between the date as of which the amount due in U.S. Dollars is notionally converted into such other currency for purposes of such judgement or otherwise and the date of actual payment in such other currency. If the amount in U.S. Dollars that may be so purchased for any reason falls short of the amount originally due, the Guarantors shall pay such additional amount, in U.S. Dollars, as may be necessary to compensate for the shortfall.  Any obligation of a Guarantor not discharged by payment in such other currency shall be due as a separate and independent obligation, which, to the extent permitted by applicable law, shall continue in full force and effect, until discharged as provided herein, notwithstanding any judgement or order for a liquidated sum or sums in respect of amounts due in respect of the Bonds or otherwise under this Guarantee or the Indenture under any such judgement or order or any indulgence granted from time to time, and shall give rise to a separate and independent cause of action. Any such shortfall will be deemed to constitute a loss suffered by the Person entitled to the relevant payment and no proof or evidence of any loss will be required.

Section 12.   <u>Notices.</u>  Except as otherwise expressly provided, all notices, requests, demands or other communications shall be given by tested telex or by notice in writing sent by registered mail or hand-delivered or by facsimile (confirmed by mail). All such notices are effective upon receipt at the addresses set out below:

if to any Guarantor, to:

>c/o Holding Company for Financial Investments
>    (Lakah Group), S.A.E.
>68, Merghany Street
>Helipolis, Cairo
>Egypt
>
>Attention: Mr Ramy Raymond Lakah
>
>Facsimile: (202) 418 9621

   if to the Trustee, to:

      The Bank of New York
      101 Barclay Street, Floor 21W
      New York, New York 10286

      Attention: Corporate Trust Administration

      Facsimile: 212-815-5915

   if to any Holder, as provided in the Conditions of the Bonds.

   **Section 13.** **Arbitration.** (a) Subject to Section 13(d) below, any dispute or difference whatsoever arising between any Guarantor and the Trustee (or a Holder) or any other Person entitled to payment hereunder arising out of or in connection with this Guarantee, the Bonds or the Indenture shall be finally settled by submission to arbitration by the American Arbitration Association under its Commercial Rules of Arbitration, as at the time in force, by a panel of three arbitrators appointed in accordance with such Rules.

   (b) The place of the arbitration shall be New York, New York or London, England; the language of the arbitration shall be English; and the appointing authority shall be the American Arbitration Association.

   (c) Without prejudice to the provisions of Section 14, judgement on the award rendered by the arbitrators may be entered in any court of competent jurisdiction.

   (d) Each Guarantor hereby irrevocably agrees that (i) before the Trustee (or a Holder) or any other Person entitled to payment hereunder gives notice of arbitration with respect to any particular dispute or difference or (ii) if the Trustee (or a Holder) or any such Person shall have received notice of arbitration from a Guarantor in respect of such a dispute or difference, the Trustee (or such Holder) or any such Person may elect, by written notice to the Guarantors, that such dispute or difference shall be resolved by litigation rather than arbitration.

   **Section 14.** **Governing Law; Submission to Jurisdiction.** (a) This Guarantee and each of the Bonds are governed by, and shall be construed in accordance with, the laws of the State of New York, without reference to its choice of law principles.

   (b) For the benefit of the Trustee and the Holders or any other Person entitled to payment hereunder that elects, in accordance with Section 13(d) above, to resolve a dispute or difference of the type referred to in Section 13(a) by litigation, and for the benefit of the Trustee and any Holder seeking to confirm an arbitral award with respect to such a dispute or difference, each Guarantor (i) irrevocably agrees that the courts of the State of New York and of the United States sitting in New York City, in the Borough of Manhattan, shall have non-exclusive jurisdiction for the purposes of any suit, action or proceeding to resolve any such dispute or difference or seeking to confirm such an arbitral award, as the case may be, and, accordingly, each Guarantor hereby submits to the non-exclusive jurisdiction of each such court in connection with any such suit, action or proceeding; (ii) irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of venue of any such suit, action or proceeding in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum; and (iii) irrevocably appoints Corporation Service Company with an office on the date hereof at 375 Hudson Street, New York, New York 10014, as its agent upon whom process may be served in any such suit, action or proceeding brought in any New York State or United States federal court sitting in New York City, in the Borough of Manhattan, and agrees that service of process in any such action or proceeding may be made upon it at the principal office in New York City of that agent or in any other manner permitted by applicable law.

Nothing contained herein shall limit or otherwise restrict the right of any Person that elects, in accordance with Section 13(d) above, to resolve a dispute or difference by litigation, to bring an action against any Guarantor in any other jurisdiction in which such Guarantor or any of its respective assets are located, whether initially or to enforce a judgement obtained in any such action or proceeding brought in any of the courts referred to above.

(c)    To the extent that any Guarantor may in any jurisdiction claim for itself or its assets immunity (to the extent that it may now or hereafter exist, whether on the grounds of sovereign immunity or otherwise) from suit, execution, attachment (whether in aid of execution, before judgement or otherwise) or other legal process (whether through service or notice or otherwise), and to the extent that in any such jurisdiction there may be attributed to any Guarantor or its assets any such immunity (whether or not claimed), each Guarantor irrevocably agrees for the benefit of the Trustee, the Holders and each other Person entitled to any payment hereunder not to claim, and irrevocably waives, all such immunity to the full extent permitted by the laws of that jurisdiction.

(d)    The choice of New York law as the governing law for this Guarantee and the Bonds and the choice of the jurisdiction of the New York State courts hereunder are made pursuant to New York General Obligations Law Sections 5-1401 and 5-1402. Each of the Guarantors agrees that this Guarantee is part of a transaction covering in the aggregate not less than U.S. $1,000,000.

**Section 15.    No Assignment; No Third Party Beneficiaries.** No Guarantor may transfer or assign any of its obligations under this Guarantee without the prior written consent of the Trustee, which consent may be given or withheld in the sole and absolute discretion of the Trustee.

**Section 16.    Waivers.** No failure or delay on the part of the Trustee or any Holder in exercising any right under this Guarantee, or in respect of the Bonds or otherwise under the Indenture, shall operate as a waiver of, or impair, any such right. No single or partial exercise of any such right shall preclude any other or further exercise thereof or the exercise of any other right. No waiver of any such right shall be effective unless given in writing. No waiver of any such right shall be deemed a waiver of any other right hereunder.

**Section 17.    Amendment.** This Guarantee may be amended only by an instrument in writing executed by the parties hereto.

**Section 18.    Survival.** The obligations of the Guarantors under Section 7 and Section 11 shall survive the payment of all amounts due in respect of the Bonds and otherwise under the Indenture and the Paying Agency Agreement, the cancellation of the Bonds and the termination of the other obligations of the Guarantors hereunder.

**Section 19.    Separability.** In case any provision in this Guarantee shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof or thereof shall not in any way be affected or impaired thereby.

**Section 20.    Headings.** The section headings herein are for convenience only and shall not affect the construction hereof.

**Section 21.    Controlling Language.** This Guarantee is executed in the English language only and any translation hereof into any other language shall be only for convenience and shall not affect the construction of the terms hereof.

**Section 22.    Binding Effect.** This Guarantee shall be binding upon and inure to the benefit of the Guarantors and the Trustee and the Holders and their respective successors and permitted assigns.

Section 23. **Integration of Terms.** This Guarantee contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all oral statements and prior writings with respect thereto.

Section 24. **Counterparts.** This Guarantee may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF, each of the Guarantors has caused this Guarantee to be duly executed as of the day and year first written above.

**HOLDING COMPANY FOR FINANCIAL INVESTMENTS (LAKAH GROUP), S.A.E.**

By RAMY RAYMOND LAKAH
   Name:   RAMY RAYMOND LAKAH
   Title:   CHAIRMAN

**MEDEQUIP FOR TRADING AND CONTRACTING, S.A.E.**

By RAMY RAYMOND LAKAH
   Name:   RAMY RAYMOND LAKAH
   Title:   CHAIRMAN

**TRADING MEDICAL SYSTEM EQUIPMENT, S.A.E.**

By RAMY RAYMOND LAKAH
   Name:   RAMY RAYMOND LAKAH
   Title:   ATTORNEY IN FACT

**ARAB STEEL FACTORY, S.A.E.**

By RAMY RAYMOND LAKAH
    Name:    RAMY RAYMOND LAKAH
    Title:    ATTORNEY IN FACT

ACKNOWLEDGED AND ACCEPTED
as of the date first written above, by

**THE BANK OF NEW YORK,**
    acting through its principal corporate
    trust office in New York City as Trustee

By TREVOR BLEWER
    Name:    TREVOR BLEWER
    Title:    ASSISTANT VICE PRESIDENT

NY—376524.4