to, and in accordance with, Rule 904 under Regulation S or (B) that the transfer or exchange has been made pursuant to, and in accordance with Rule 144 under the Securities Act.

(c)    Exchange of Interests in a Regulation S Global Bond for Interests in a Restricted Global Bond. If Bonds are issued in the form of a Regulation S Global Bond and a Restricted Global Bond, and if a holder of a beneficial interest in the Regulation S Global Bond deposited with DTC or a common depositary for Euroclear and Cedelbank and any other applicable Clearing Agent wishes at any time to exchange its interest in that Regulation S Global Bond for an interest in the Restricted Global Bond, or to transfer its interest in that Regulation S Global Bond to a Person who wishes to take delivery thereof in the form of an interest in such Restricted Global Bond, that holder may, subject to Applicable Procedures and to the requirements set forth in the following sentence, exchange or transfer or cause the exchange or transfer of such interest for an equivalent beneficial interest in that Restricted Global Bond. Upon receipt by the Registrar, as Transfer Agent of each of the items listed below, the Registrar, as Transfer Agent, shall instruct DTC, Euroclear or Cedelbank or any other applicable Clearing Agent, as the case may be, to reduce the principal amount of the Regulation S Global Bond by the aggregate principal amount of the beneficial interest in such Regulation S Global Bond to be exchanged or transferred, and the Registrar, as Transfer Agent, shall instruct DTC, concurrently with such reduction, to increase the principal amount of such Restricted Global Bond by the aggregate principal amount of the beneficial interest in such Regulation S Global Bond to be so exchanged or transferred, and to credit or cause to be credited to the account of the Person specified in such instructions a beneficial interest in the Restricted Global Bond equal to the reduction in the principal amount of such Regulation S Global Bond:

(i)    instructions from Euroclear or Cedelbank or any other applicable Clearing Agent, or an Agent Member of DTC, as the case may be, directing the Registrar, as Transfer Agent, to credit or cause to be credited a beneficial interest in the Restricted Global Bond equal to the beneficial interest in the Regulation S Global Bond in an amount equal to the beneficial interest in the Restricted Global Bond to be exchanged or transferred, such instructions to contain information regarding the Agent Member's account with DTC to be credited with the increase, and, if the Regulation S Global Bond is held directly through DTC, information regarding the Agent Member's account with DTC to be debited with an equal decrease; and

(ii)    with respect to an exchange or transfer of an interest in the Regulation S Global Bond during the Distribution Compliance Period for an interest in such Restricted Global Bond, a written certification substantially in the form set forth in Exhibit F given by the holder of such beneficial interest and stating that the Person transferring such interest in that Regulation S Global Bond reasonably believes that the Person acquiring such interest in such Restricted Global Bond is a Qualified Institutional Buyer and is obtaining such beneficial interest in a transaction meeting the requirements of Rule 144A and in accordance with any applicable securities laws of any state or other jurisdiction of the United States.

(d)    Recording of Transfers and Exchanges between Global Bonds.    Notwithstanding anything to the contrary, transfers and exchanges of interests in the Restricted Global Bond and the Regulation S Global Bond shall be recorded only in the book-entry system of the relevant Clearing Agent, and any increase or decrease of the principal amount of that Regulation S Global Bond or Restricted Global Bond, as the case may be, shall be recorded by an appropriate adjustment in the records of the Registrar and the relevant Clearing Agent in accordance with Applicable Procedures.

(e)    Exchanges or Transfers of Definitive Bonds.  The Registrar, as Transfer Agent, shall not register the transfer or exchange of any Definitive Bond that is a "restricted security" (as defined in Rule 144 under the Securities Act) unless that Bond is being transferred:

(i)    to the Issuer or a Guarantor; or

(ii)    to a Qualified Institutional Buyer in a transaction that meets the requirements of Rule 144A, a written certification substantially in the form set forth in Exhibit F is given by the Holder to the Registrar, and an appropriate notation is made on the transfer notice set forth on that Bond; or

(iii)    in an offshore transaction that meets the requirements of Rule 904 of Regulation S, a written certification substantially in the form set forth in Exhibit E is given by the Holder to the Registrar, and an appropriate notation is made on the transfer notice set forth on that Bond; or

(iv)    pursuant to an exemption from the registration requirements of the Securities Act provided by Rule 144 thereunder (if available) or as confirmed in an opinion of counsel satisfactory to the Issuer and delivered to the Registrar and the Issuer, an appropriate notation is made on the transfer notice set forth on that Bond and information necessary to determine whether the transfer of that Bond is permissible under the Securities Act is delivered to the Registrar.

Neither the Registrar nor any Transfer Agent shall register the transfer of or exchange a Definitive Bond for a period of 15 Relevant Banking Days preceding the due date for any payment on the Bond, or register the transfer of or exchange any Bonds previously called for redemption.

In exchange for any Definitive Bond properly presented for transfer, the Registrar shall promptly authenticate or cause to be authenticated and deliver or cause to be delivered at the office of the Registrar or its duly authorized agent or at the office of a Transfer Agent, as the case may be, to the transferee or send by mail, at the risk of the transferee, to such address as the transferee may request, a Definitive Bond or Definitive Bonds registered in the name of that transferee, for the same aggregate principal amount as was transferred. These new Bonds shall be so dated by the Registrar that neither gain nor loss in interest shall result from the transfer or exchange.

All Bonds issued upon any registration of transfer or exchange of Bonds shall be the valid obligations of the Issuer, evidencing the same debt, and subject to the other provisions of this Article Three, entitled to the same benefits under this Indenture, as the Bonds surrendered upon the registration of transfer or exchange.

A Person who acquires a Definitive Bond in a transaction exempt from registration under the Securities Act in reliance on Rule 144A, Regulation S or Rule 144 under the Securities Act, if available, may take delivery thereof in the form of an interest in a Restricted Global Bond or a Regulation S Global Bond. In exchange for any such Definitive Bond properly presented for transfer, the Registrar or its duly authorized agent or any other Transfer Agent will record the transfer on its records and instruct the relevant Clearing Agent or its nominee or custodian, concurrently with the transfer, to increase or reflect on its records an increase in the principal amount of the applicable Global Bond by the aggregate principal amount of the Definitive Bond to be so transferred, and to credit or cause to be credited to the account of the Person specified in the accompanying transfer instructions a beneficial interest in that Global Bond equal to the aggregate principal amount of the Definitive Bond so transferred. All such transfers will be subject to Applicable Procedures and certification requirements substantially consistent with the provisions of Section 305(d) and Section 305(e) to ensure that the transfer complies with Rule 144A, Rule 144 or Regulation S under the Securities Act, as the case may be. Except as specified in this paragraph, Definitive Bonds will not be exchangeable for interests in a Global Bond.

NY—363575.8

The Trustee and each Agent shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Bond (including any transfers between or among Agent Members or beneficial owners of interests in any Global Bond) other than to require delivery of such certificates and other documentation or evidence as are expressly required by, and to do so if and when expressly required by the terms of, this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof.

(f)  _Restrictive Legend_.  If Bonds are issued upon the transfer, exchange or replacement of other Bonds not bearing the applicable restrictive legends required by the respective applicable forms of Bond attached hereto (each, a **"Restrictive Legend"**), the Bonds so issued shall not bear that Restrictive Legend.  If Bonds are issued upon the transfer, exchange or replacement of other Bonds bearing the applicable Restrictive Legend, or if a request is made to remove a Restrictive Legend of a Bond, the Bonds so issued shall bear such Restrictive Legend as set forth on the applicable form of Bond attached hereto, or the Restrictive Legend shall not be removed, as the case may be, unless the Issuer and the Registrar receive such evidence satisfactory to the Issuer (which may include an opinion of counsel) as the Issuer may reasonably require that neither the Restrictive Legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of the Securities Act.  Delivery of any such evidence shall be made at the expense of the Holder seeking to have the Bonds issued without a Restrictive Legend or to have a Restrictive Legend removed, as the case may be.

Upon delivery of such satisfactory evidence, the Registrar, at the direction of the Issuer, shall authenticate or cause to be authenticated and deliver or cause to be delivered a Bond in appropriate form that does not bear the applicable Restrictive Legend.  If a Restricted Bonds Legend is removed from the face of a Bond and that Bond is transferred pursuant to and in reliance on Rule 144A, the Restricted Bonds Legend shall be reinstated, and the Issuer shall, upon obtaining actual knowledge that the Bond is held by such a Holder, notify the Registrar in writing.

(g)  _Availability of Bonds_.  The Issuer shall cause Global Bonds and a sufficient quantity of forms of Definitive Bonds to be made available from time to time to or to the order of the Principal Paying Agent, the Registrar and any other Transfer Agent in sufficient time for the purpose of any issue.

(h)  _Details of Bonds Delivered_.  As soon as practicable after delivering any Global Bond or Definitive Bond, the Principal Paying Agent or the Registrar, as the case may be, shall supply to the Trustee and Agents all relevant details of the Bonds delivered.

(i)  _Outstanding Amount Reports_.  The Principal Paying Agent and the Registrar shall, upon request by the Issuer or any Guarantor, inform the Issuer or that Guarantor by facsimile of the aggregate principal amount of Bonds Outstanding at the time of the request.  In addition, the Trustee shall, without need for request: (i) inform the Issuer by notice given by telecopier (followed promptly by delivery by hand or mail of hard copy of the notice) if any portion of the principal amount of the Bonds Outstanding is not paid when due on the Maturity Date or any redemption date, that notice to be given promptly after the close of the Fedwire on the Maturity Date or the relevant redemption date; (ii) concurrently provide the Guarantors, by telecopier, with a copy of the telecopied notice to the Issuer and give notice of the payment failure to the Holders of the Bonds; and (iii) inform the Guarantors by notice given by telecopier, at or promptly after 10:00 a.m., New York City time, on the Business Day after the Maturity Date or the relevant redemption date (followed promptly by delivery by hand or mail of hard copy of the notice) of the aggregate principal amount of Bonds Outstanding on the Maturity Date or the relevant redemption date which then remains unpaid by the Issuer (on the basis of the information provided to the Trustee hereunder by the Principal Paying Agent and the certifications made to the Trustee by the Issuer and the Guarantors pursuant to the final sentence of Section 305(j)) as well as the amount scheduled to be paid on

NY—363575.8

the relevant redemption date, in the case of any such notice given in connection with a payment failure on a redemption date. The notices referred to in clauses (ii) and (iii) to the Guarantors shall be in addition to the notices to be given to the Guarantors by the Principal Paying Agent in accordance with Section 309(a)(vii).

(j)     <u>Outstanding Amount Reports from the Issuer and the Guarantors</u>. On (i) the fifteenth Business Day before the Maturity Date, and (ii) on any date on which the Issuer is required under the Bonds to make any payment, if the Issuer fails to make that payment, in whole or in part, the Issuer shall give the Trustee and the Guarantors notice, and each of the Guarantors shall give the Trustee, the Issuer and the other Guarantors notice (by telecopier, followed promptly by delivery by hand or mail of hard copy of the notice) certifying the aggregate principal amount of the Bonds held by or for the account of the Issuer or that Guarantor, whether directly or as a beneficial ownership interest.

**SECTION 306.     Replacement Bonds.**

(a)     The Issuer shall cause a sufficient quantity of additional forms of Bonds to be available, upon request, to the Registrar or the applicable Paying Agent at its respective specified office for the purpose of issuing replacement Bonds as provided in this Section 306.

(b)     The Registrar or the applicable Paying Agent, as the case may be, will, subject to and in accordance with the Conditions and the following provisions of this Section 306, cause to be delivered any replacement Bonds which the Issuer may determine to issue in place of Bonds that have been lost, stolen, mutilated, defaced or destroyed.

(c)     The Registrar or the applicable Paying Agent, as the case may be, shall not issue any replacement Bond unless and until the claimant therefor shall have:

(i)     paid such costs and expenses as may be incurred in connection with the replacement;

(ii)     furnished it with such evidence and indemnity as the Issuer, the Guarantors, the Registrar, the Trustee or the applicable Paying Agent may reasonably require; and

(iii)     in the case of any mutilated or defaced Bond, surrendered it to the Registrar or the applicable Paying Agent, as the case may be.

(d)     The Registrar or the applicable Paying Agent, as the case may be, shall cancel any mutilated or defaced Bonds in respect of which replacement Bonds have been issued pursuant to this clause, and shall furnish the Issuer with a certificate stating the serial numbers of the Bonds so cancelled and, unless otherwise instructed by the Issuer in writing, shall dispose of all such cancelled Bonds in accordance with its customary procedures.

(e)     The Registrar or the applicable Paying Agent, as the case may be, shall keep a full and complete record of all replacement Bonds issued and shall make the record available at all reasonable times to the Issuer, the Guarantors, the other Agents and the Trustee and any Persons authorized by any of them for inspection and for the taking of copies of or extracts from the record.

**SECTION 307.     Status.**

The Bonds constitute direct, general, unconditional, unsubordinated, and subject to the provisions of the Issuer's negative pledge contained herein and in the Conditions, unsecured obligations of the Issuer

and will at all times rank at least *pari passu* in priority of payment, without any preference among themselves, with all other present and future unsecured and unsubordinated Indebtedness of the Issuer, except for any obligations that may be preferred by provisions of law that are both mandatory and of general application.

The obligations of each Guarantor under the Guarantee shall constitute direct, general, unconditional, unsubordinated, and subject to the provisions of such Guarantor's negative pledge contained herein and in the Conditions, unsecured obligations of such Guarantor and will at all times rank at least *pari passu* in priority of payment with all other present and future unsecured and unsubordinated Indebtedness of such Guarantor, except for any obligations that may be preferred by provisions of law that are both mandatory and of general application.

## SECTION 308.    Cancellation of Bonds.

(a)    All Bonds that are purchased by or on behalf of the Issuer or any Guarantor and are surrendered to the Registrar or a Paying Agent for cancellation shall be cancelled by the Registrar or Paying Agent, as the case may be, to which they are surrendered. Each of the other Paying Agents shall give to the Principal Paying Agent details of all payments made by it and each such Agent and the Registrar shall deliver all Bonds cancelled by it to the Principal Paying Agent. All Bonds that are redeemed shall be cancelled by the removal of the relevant Holder's name from the Register by the Registrar and the cancellation of any corresponding Definitive Bonds by the Transfer Agent to which they are surrendered or with which they are deposited. The relevant Transfer Agent shall cancel Definitive Bonds surrendered to it for cancellation and send those cancelled Bonds to or to the order of the Principal Paying Agent.

(b)    The Registrar shall, upon request of the Issuer, furnish the Issuer, the Guarantors, the Trustee and the Principal Paying Agent as soon as practicable and in any event within the four months after the date of any redemption or payment of any Bonds with a certificate stating (i) the aggregate principal amount of Bonds that have been redeemed and cancelled or, as the case may be, purchased and cancelled, and (ii) the serial numbers of those Bonds in numerical sequence.

(c)    The Principal Paying Agent shall dispose of all cancelled Bonds in accordance with its customary procedures.

(d)    Without prejudice to the obligations of the Principal Paying Agent pursuant to Section 308(a), the Principal Paying Agent shall keep a full and complete record of all Bonds and of their redemption, purchase by or on behalf of the Issuer or any Guarantor and cancellation, payment or exchange, as the case may be, and of all replacement Bonds issued in substitution for mutilated, defaced, destroyed, lost or stolen Bonds. The Principal Paying Agent shall at all reasonable times make that record available to the Issuer, the Guarantors, the other Agents and the Trustee and any Persons authorized by any of them for inspection and for the taking of copies of or extracts from the record.

## SECTION 309.    Payment to the Principal Paying Agent; Payments to Holders of Bonds; Repayment by the Principal Paying Agent.

(a)    <u>Payment to the Principal Paying Agent and Other Agents</u>.

(i)    In order to provide for the payment of the principal amount of, interest on, and any other amounts that may become due under, the Bonds as they become due and payable, the Issuer hereby agrees to pay or to cause to be paid to the Principal Paying Agent at or prior to the opening of business on the day that is two Business Days prior to the date for payment thereof an

NY—363575.8

amount that (together with any funds then held by the Principal Paying Agent and available for the purpose) is sufficient to pay the aggregate amount (whether principal, interest or any other amount) becoming due in respect of those Bonds on that payment date.

(ii)    The Issuer hereby agrees that each amount payable by the Issuer under Section 309(a)(i) shall be paid unconditionally by credit transfer and in immediately available freely transferable funds not later than the payment time on the relevant day to such account with such bank as the Principal Paying Agent has by notice to the Issuer specified for the purpose. The Issuer shall, before 10:00 a.m. (New York City time) on the third Business Day before the due date of each payment due from it under the Bonds, cause the bank effecting such payment on its behalf to notify the Principal Paying Agent in the form of a tested telex, facsimile or an authenticated Swift message of its irrevocable payment instructions.

(iii)    In order to provide for the payment of any amount that a Guarantor is required, by the terms of the Guarantee, to pay in respect of the Bonds Outstanding, as that amount becomes due and payable pursuant to the Guarantee, each Guarantor hereby agrees to pay that amount or to cause that amount to be paid to the Principal Paying Agent at or prior to the opening of business on the date for payment thereof as provided in the Guarantee. Any payment made by a Guarantor to the Principal Paying Agent pursuant to this Section 309 shall constitute a full, irrevocable and unconditional discharge of the Guarantors' obligations under the Guarantee *pro tanto*, subject to the terms and conditions thereof.

(iv)    Each of the Guarantors hereby agrees that each amount payable by it under Section 309(a)(iii) shall be paid unconditionally by credit transfer and in immediately available freely transferable funds not later than 10:00 a.m. (New York City time) on the relevant due date provided for in the Guarantee, to such account with such bank as the Principal Paying Agent has by notice to that Guarantor specified for the purpose. Each Guarantor shall cause the bank effecting any such payment on its behalf to notify the Principal Paying Agent in the form of a tested telex, facsimile or an authenticated Swift message of the irrevocable payment instructions given to the bank by that Guarantor to effect such a transfer, as soon as practicable after the Guarantor provides such instructions.

(v)    The Principal Paying Agent and each other Agent that receives an amount paid to it hereunder for payment to the Holders (directly or through another Agent) shall be entitled to deal with each amount paid to it hereunder in the same manner as other amounts paid to it by its banking customers, in its capacity as a banking institution; provided, however, that:

(A)    except as provided in Section 506, it shall not exercise against the Issuer or the Guarantors any lien, right of set-off or similar claim in respect thereof;

(B)    it shall not be liable to any Person for interest thereon;

(C)    it shall only apply all such amounts to make the payments under the Bonds or the Guarantee, or to another Agent for such payment, as applicable, in respect of which the payments were made to it, or as otherwise expressly provided for in Section 309(d); and

(D)    pending such application, it shall hold all such amounts in trust for the benefit of the Holders of the Bonds, but without need to segregate those amounts from other funds held by the Agent, except as required by law, that trust to terminate upon delivery of such amounts in accordance with Section 309(d).

NY—363575.8

(vi)    The Principal Paying Agent shall apply each amount paid to it hereunder in accordance with the provisions of Section 309(b) and shall be under no obligation to repay any such amount unless the claim for the relevant payment becomes void under Condition 22, in which event it shall refund the relevant payment to the Issuer in the manner specified in Section 309(d) or, if the amount was paid by a Guarantor, to that Guarantor, unless that Guarantor has certified to the Principal Paying Agent that an equal amount or a proportion thereof has been irrevocably paid to it by the Issuer or another Guarantor (as reimbursement or contribution for payment thereof by that Guarantor under the Guarantee).  At the request in writing of the Issuer to the Guarantors, each Guarantor shall certify to the Principal Paying Agent whether any amount paid by that Guarantor pursuant to the Guarantee and this Section 309 should, in the circumstances contemplated in the preceding sentence, be returned to that Guarantor or to the Issuer or another Guarantor.

(vii)    In the event the Principal Paying Agent has not, by 12:00 noon (New York City time) on the third Business Day before the due date of any payment to it under Section 309(a)(i), received notification of the applicable irrevocable payment instructions referred to in Section 309(a)(ii), it shall forthwith notify the Issuer, the Guarantors, the Trustee and the other Paying Agents, by telecopier, promptly followed by delivery by hand or mail of hard copy of the notice.  If the Principal Paying Agent subsequently receives notification of these payment instructions, it shall forthwith notify the Issuer, the Guarantors, the Trustee and the other Paying Agents.  In addition, in the event the Principal Paying Agent has not, by 12:00 noon (New York City time) on the due date of any payment required from the Issuer under the Bonds received such payment in full pursuant to Section 309(a)(i), it shall forthwith, and in the same manner, notify the Issuer, the Guarantors, the Trustee and the other Paying Agents.  In the event the Principal Paying Agent has not, by 10:00 a.m., New York City time, on the due date of any payment due to it from the Guarantors under the Guarantee received notification of the applicable irrevocable payment instructions referred to in Section 309(a)(iv), it shall forthwith notify the Guarantors, the Trustee and the other Paying Agents, by telecopier, promptly followed by delivery by hand or mail of hard copy of the notice.  If the Principal Paying Agent subsequently receives notification of the payment instructions, it shall forthwith notify the Guarantors, the Trustee and the other Paying Agents.

(b)    Payments to Holders of Bonds.  The following provisions shall apply to payments to Holders, and the Issuer shall cause the Agents (other than the Luxembourg Listing Agent) to agree to these provisions (by becoming parties to the Paying Agency Agreement or otherwise).

(i)    The Principal Paying Agent acting through its specified Office, and each other Paying Agent, if any, which is designated to receive the necessary funds from the Principal Paying Agent, in each case acting through the specified Office of that other Paying Agent, shall make payments of the principal amount of, interest on, and all other amounts, if any, payable under, the Bonds in accordance with the Conditions; provided that none of the Paying Agents shall be under any obligation (but each shall be entitled) to make such payments if: (a) it has been notified in accordance with Section 309(a)(vii) that the relevant irrevocable payment instructions have not been received, unless it is subsequently notified that these payment instructions have been received; or (b) it is not able to establish that the Principal Paying Agent has received (whether or not at the due time) the full amount of any payment due to it under Section 309(a)(i) or Section 309(a)(iii).

(ii)    None of the Paying Agents shall exercise any lien, right of set-off or similar claim against any Person to whom it makes any payment under Section 309(b)(i) in respect thereof, nor

NY—363575.8

shall any commission or expense be charged by any Paying Agent to any such Person in respect of any such payment.

    (iii)    With respect to any payment made in accordance with Section 309(b)(i):

    (A)    each other Paying Agent shall notify the Principal Paying Agent of the amount so paid by it and the serial number and principal amount of each Bond in relation to which payment of principal or interest or any other amount was made; and

    (B)    subject to and to the extent of compliance by the Issuer with the terms of Section 309(a)(i) or compliance by one or more of the Guarantors with the terms of Section 309(a)(iii), whether at the time due or otherwise, the Principal Paying Agent shall pay to each Paying Agent out of the funds received by the Principal Paying Agent under Section 309(a)(i) or Section 309(a)(iii), by credit transfer and in immediately available freely transferable funds to such account with such bank as that Paying Agent has by notice to the Principal Paying Agent specified for such purpose, an amount equal to the amount so paid by that Paying Agent;

    (C)    each Paying Agent shall make the payments to be made by it as provided in Section 309(b)(iii)(B) in respect of each Definitive Bond, subject to the Conditions: (i) in the case of principal, interest and other amounts, if any, payable at Maturity, by U.S. Dollar check drawn on, or, subject to the following paragraphs, by transfer to a U.S. Dollar account maintained by the Holder entitled thereto (or, in the case of joint Holders, the first account) with, a bank in New York City, against presentation and, in the case of final payment, surrender of that Bond at the specified office of any of the Paying Agents; and (ii) in the case of any other such amount payable, in the same manner but without need for any such presentation or surrender;

    (D)    any such payment by check shall be mailed by that Paying Agent to the relevant Holder's address appearing in the Register at the close of business on the record date for the payment (the *"Record Date"*), which will be the fifteenth calendar day before the due date for the payment; and

    (E)    any such payment by transfer to a Holder's account shall be made by that Paying Agent if, prior to the relevant Record Date established as provided in the preceding paragraph, a Holder of U.S. $1,000,000 or more in aggregate principal amount of Bonds entitled thereto has made written application for the transfer to a Paying Agent, and such Paying Agent, following its customary practices and procedures, has acknowledged the application (which such Paying Agent shall do within the customary period provided by its practices and procedures if the application meets all applicable requirements thereunder).

    (iv)    If a Paying Agent other than the Principal Paying Agent makes a payment in respect of any Bonds at any time during which the Principal Paying Agent has not received the full amount of the relevant payment due to the Principal Paying Agent under Section 309(a)(i) and the Principal Paying Agent is not able out of funds received by the Principal Paying Agent under Section 309(a)(i) or Section 309(a)(iii) to reimburse that other Paying Agent therefor, the Issuer shall from time to time on demand pay to the Principal Paying Agent for the account of that other Paying Agent:

NY—363575.8

(A)    the amount so paid by that other Paying Agent and not so reimbursed; and

(B)    interest on such unreimbursed amount from the date on which that other Paying Agent made such payment until the date of reimbursement of such amount,

provided, however, that any payment made under Section 309(b)(iv)(A) by the Issuer or a Guarantor shall satisfy *pro tanto* the Issuer's obligations under Section 309(a)(i) and the Guarantors' obligations under the Guarantee, subject to the terms and conditions thereof.

(v)    Interest shall accrue for the purposes of Section 309(b)(iv)(B) (both before and after judgment) on the basis of a year of 360 days and the actual number of days elapsed and at the rate per annum which is the sum of 1per cent. per annum and the rate per annum specified by the relevant Paying Agent as reflecting its cost of funds from time to time in relation to any applicable unpaid amount.

Notwithstanding the foregoing, no Paying Agent shall be obligated by any provision herein or otherwise to make any payments prior to such time as it shall have received from the Issuer, a Guarantor, the Principal Paying Agent or any other Paying Agent the funds necessary to make such payment.

(c)    Holder's Acknowledgment.  Each Holder, by its acceptance of its interest in the Bonds, agrees, for itself and all persons holding an interest in the Bonds through that Holder, that none of the Trustee or any Agent is or shall be personally liable to that Holder for any payment in respect of any Bonds.

(d)    Repayment by the Principal Paying Agent.  Upon the Issuer's discharge from its obligation to make payments in respect of any Bonds pursuant to the Conditions and upon the Guarantors' discharge from the obligation to make payments in respect of the Guarantee, and provided that there is no outstanding, *bona fide* and proper claim in respect of any such payments, the Principal Paying Agent shall, forthwith on demand, pay to the Issuer or the relevant Guarantor, as the case may be, an amount equal to any amounts paid to it by the Issuer or that Guarantor for the purposes of such payments, subject to Section 309(a)(vi).

**SECTION 310.    Withholding.**

(a)    All payments due to the Trustee or any Agent from the Issuer or any Guarantor under this Indenture or the Paying Agency Agreement shall be made without withholding or deduction for or on account of any BVI Taxes or Egyptian Taxes, unless such withholding or deduction is required by law.  If any such deduction or withholding is so required, the Issuer shall pay to the Trustee or that Agent, as the case may be, such additional amounts as will result in receipt by the Trustee or that Agent, as the case may be, of such amounts as would have been received by them hereunder or under the Paying Agency Agreement had no such deduction or withholding been required or, if such deduction or withholding is required to be made by a Guarantor, such Guarantor will upon the demand of the relevant Holder (or the Trustee on behalf of such Holder) pay to the account of such Holder (or the account of the Trustee for the benefit of such Holder) an amount sufficient to indemnify such Holder fully against, and to reimburse such Holder for, the amount deducted or withheld; provided, however, that no such additional amount shall be payable by the Issuer and no indemnity payment shall be owed by a Guarantor, in either case, to the Trustee or any Agent if the Trustee or such Agent, as the case may be, is liable to pay such BVI Taxes or Egyptian Taxes that were deducted or withheld by reason of its having, or having had, some

NY—363575.8

connection with the British Virgin Islands or Egypt, respectively, other than its acting as Trustee or Agent hereunder or under the Paying Agency Agreement.

(b)     If any such additional amount becomes payable by the Issuer, or any indemnification is required by a Guarantor, pursuant to Section 310(a) or pursuant to the Conditions, the Issuer or the relevant Guarantor, as the case may be, shall give notice to that effect to the Trustee, the Principal Paying Agent and, in the case of any indemnity payable by a Guarantor, to the other Guarantors, explaining the circumstances, and the Trustee shall give a copy of any such notice received by it to each of the Agents.

## SECTION 311.     Persons to be Treated as Holders.

Except as otherwise ordered by a court of competent jurisdiction or required by law, the Issuer, the Guarantors, the Trustee and the Agents may (a) for the purpose of making payment on any Bond or on account thereof deem and treat the Person in whose name a Bond is registered in the Register at the relevant time as the absolute owner thereof and of all rights thereunder free from all encumbrances, and shall not be required to obtain proof of such ownership or as to the identity of the Person in whose name a Bond is registered in the Register (notwithstanding any notice to the contrary and whether or not it is overdue and notwithstanding any notation of ownership or writing thereon or notice of any previous loss or theft thereof), and (b) for all other purposes deem and treat: (i) the registered holder of any Definitive Bond, and (ii) each Person for the time being shown in the records of Euroclear or Cedelbank or DTC or any other Clearing Agent or its nominee, as the case may be, as having a particular principal amount of any Bonds credited to his securities account (in which regard any certificate or other document issued by Euroclear, Cedelbank or DTC or that other Clearing Agent as to the principal amount of Bonds standing to the account of that Person shall be conclusive and binding for all purposes except in the case of manifest error known to the Issuer, the Guarantors, the Trustee and the Agents) as the absolute owner thereof free from all encumbrances and shall not be required to obtain proof of such ownership or as to the identity of the Person in whose name a Bond is registered in the Register.

## SECTION 312.     Receipt and Publication of Notices.

(a)     Upon the receipt by the Trustee of a demand or notice from any Holder in accordance with the Conditions, the Trustee shall forward a copy thereof to the Issuer and, if the notice relates to any amount payable under any of the Bonds and may give rise to any requirement of payment under the Guarantee or performance relating to the negative pledge of any Guarantor in the Bonds, to the Guarantors. The Trustee shall also forward to the Guarantors such notices as are expressly provided for in the Guarantee and shall forward to the Holders notices referred to the Guarantee that are addressed to the Holders and received by the Trustee from the Guarantors for distribution to the Holders.

(b)     On behalf of, and at the request and expense of, the Issuer, the Trustee shall cause to be published all notices required to be given by the Issuer to the Holders in accordance with the Conditions or this Indenture to the extent required in the Conditions or this Indenture.

## SECTION 313.     CUSIP Numbers.

The Issuer has agreed to obtain "CUSIP" numbers for the Bonds and the Trustee shall use such "CUSIP" numbers in notices of redemption as a convenience to Holders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Bonds or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Bonds, and any such redemption shall not be affected by any defect in or omission of such numbers. The Issuer will promptly notify the Trustee and each Agent of any change in the "CUSIP" numbers.

NY—363575.8

# ARTICLE FOUR

## REMEDIES

**SECTION 401.     Events of Default.**

"*Event of Default,*" wherever used herein, has the meaning given to the term in the Conditions.

**SECTION 402.     Acceleration of Maturity; Rescission and Annulment.**

(a)     If an Event of Default occurs and is continuing, the Bonds shall be accelerated as provided in the Conditions.

(b)     At any time after the Trustee accelerates the Maturity Date of the Bonds in accordance with Section 402(a) and the Conditions, and before the Trustee shall have taken any action in respect thereof in accordance with that Section, the Holders may, by an Act of Holders of a majority in principal amount of the Bonds Outstanding delivered to the Issuer and the Trustee, rescind and annul the acceleration and its consequences if all Events of Default in respect of which the declaration of acceleration has been made, other than the non-payment of all amounts due on the Bonds that have become due solely by reason of the declaration of acceleration, have been cured or waived by the Holders of Bonds as provided in this Indenture.

(c)     If the Trustee receives any notice referred to in Section 402(b), it shall give the Guarantors notice of the circumstances, but failure to do so or delay in so doing shall not in any way affect or be construed to affect the Guarantors' obligations under the Guarantee.

**SECTION 403.     Collection of Indebtedness and Suits for Enforcement.**

If any Event of Default occurs and is continuing in respect of the Bonds, the Trustee may in its absolute discretion, and subject to prior indemnification to its satisfaction, shall, if so requested by Holders representing at least ten per cent. (10 per cent.) of the principal amount of the Bonds Outstanding, proceed to protect and enforce the respective rights of the Holders of the Bonds by such appropriate judicial proceedings or such other procedures as the Trustee shall deem most effective to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or in the Guarantee or in aid of the exercise of any power granted herein or therein, or to enforce any other proper remedy, and, in the event the Trustee shall fail to do so, subject to the provisions of Section 407, each Holder may in its own name institute a judicial proceeding for the collection of the sums so due and unpaid, may prosecute such proceeding to judgment or final decree and may enforce any such judgment or decree against the Issuer or any or all of the Guarantors or any other obligor upon such Bonds or under the Guarantee and collect the property adjudged or decreed to be payable in the manner provided by law.

**SECTION 404.     Trustee May File Proofs of Claim.**

(a)     In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceeding relative to the Issuer, any Guarantor or the property of any of them, the Trustee shall be entitled and empowered, by intervention in the proceeding or otherwise, to take one or more of the following actions:

(i)     file and prove a claim for the whole amount of the balance of the principal amount of, accrued and unpaid interest on, and all other amounts, if any, owing in respect of, the Bonds

31

or the Guarantee and file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and the Holders allowed in such judicial proceeding;

    (ii)    collect and receive any moneys or other property payable or deliverable on any such claims and distribute the same; and

    (iii)    perform all the actions provided for under applicable laws;

and, by its acquisition of any of the Bonds, each Holder shall be deemed to authorize any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due to it for the compensation, expenses, disbursements and advances of the Trustee, its agents and counsel and any other amounts due the Trustee under Section 506.

    (b)    Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept, or adopt on behalf of any Holder, any plan of reorganization, arrangement, adjustment or composition affecting the Bonds or the rights of any Holder thereof or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding, if the relevant action involves any modification of this Indenture, the Bonds or the Conditions, except pursuant to the provisions of Article Eight.

**SECTION 405.**    **Trustee May Enforce Claims Without Possession of Bonds.**

    Subject to applicable law, all rights of action and claims under this Indenture, the Bonds or the Guarantee may be prosecuted and enforced by the Trustee without the possession of any of the Bonds or the production thereof in any proceeding relating thereto, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust or fiduciary account, and any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents, counsel and other professional advisors, be for the ratable benefit of the Holders in respect of which such judgment has been recovered in accordance with their respective rights as set forth herein and in the Conditions.

**SECTION 406.**    **Application of Cash or Other Property Collected.**

    Any amounts collected by the Trustee pursuant to this Article shall be applied in accordance with Section 309 and the Conditions in the manner herein and therein provided, at the date or dates fixed by the Trustee.

**SECTION 407.**    **Limitation on Suits.**

    (a)    No Holder shall have any right to institute any proceeding, judicial or otherwise, with respect to this Indenture, the Bonds or the Guarantee or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

    (i)    that Holder has previously given notice to the Trustee of a continuing Event of Default;

NY—363575.8

(ii)    the Holders of not less than ten per cent. (10 per cent.) in principal amount of the Bonds Outstanding shall have, by an Act of Holders, requested the Trustee in accordance with Section 104 to institute proceedings in respect of that Event of Default in its own name as Trustee hereunder;

(iii)    those Holders have made available to the Trustee indemnity reasonably acceptable to the Trustee against the costs, expenses and liabilities (including fees and expenses of counsel and other professional advisors) to be incurred in compliance with such request; and

(iv)    the Trustee for 30 days after its receipt of the notice, request and indemnity has failed to institute any such proceeding.

It is understood and intended that none of those Holders, individually or as a group, shall have any right in any manner whatever by virtue of, or by availing itself of, any provision of this Indenture, the Conditions or the Guarantee to affect, disturb or prejudice the rights of any other Holder, to obtain or seek to obtain priority or preference over any other Holder or to enforce any right under this Indenture, the Conditions or the Guarantee, except in the manner and subject to the terms and conditions herein provided.

(b)    So long as the Bonds are represented by one or more Global Bonds, and subject to the limitations described in Section 407(a) and applicable law, each Holder (as evidenced by the records of accounts of the applicable Clearing Agent) may, after notice to the registered owner of the relevant Global Bonds but without joining such registered owner, file any claim, take any action or institute proceedings to enforce its rights in respect of the Bonds or otherwise under the Guarantee, provided that the registered owner has not theretofore instituted proceedings to enforce such rights.

(c)    In any proceeding, judicial or otherwise, to protect or enforce any rights in respect of this Indenture or the Bonds, which may be brought in accordance with this Indenture by any Holder against the Issuer, there shall be no need to join a Guarantor as a party thereto unless resolution of the dispute involved requires a determination that has a bearing on the Guarantor's obligations under the Guarantee, which would have binding effect on the Guarantor, and the Guarantor has, within five Business Days after notice to it of the Holder's intention to bring such a proceeding, certified by notice to the relevant Holders that its counsel in the relevant jurisdiction has advised it that failure to join it in the proceeding would have such an effect. In any proceeding, judicial or otherwise, to protect or enforce the rights of any Holder under the Guarantee, there shall be no need to join the Issuer as a party thereto, unless resolution of the dispute involved requires a determination that has a bearing on the Issuer's obligations under the Bonds, which would have binding effect on the Issuer, and the Issuer has, within five Business Days after notice to it of the Holder's intention to bring such a proceeding, certified by notice to the relevant Holder that its counsel in the relevant jurisdiction has advised it that failure to join it in the proceeding would have such an effect. In any such proceeding, judicial or otherwise, against a Guarantor, there shall be no need to join the other Guarantors as a party thereto.

SECTION 408.    Unconditional Right of Holders to Receive All Payments Due on the Bonds.

Notwithstanding any other provision in this Indenture or the Conditions, the Holder of any Bond shall have the right, which is absolute and unconditional, to receive payment of all amounts due and payable on such Bond (whether pursuant thereto or under the Guarantee) at the times and places and in the amounts provided for in the Conditions, and that right shall not be impaired or affected without the consent of that Holder.

NY—363575.8

**SECTION 409.     Restoration of Rights and Remedies.**

If the Trustee or any Holder has instituted any proceeding to enforce any right or remedy under this Indenture and the proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to that Holder, then and in every such case, subject to any determination in the proceeding, the Issuer, the Guarantors, the Trustee and the Holders, as the case may be, shall be restored severally and respectively to their former positions hereunder, and thereafter all rights and remedies of the Trustee and the Holders shall continue as though no such proceeding had been instituted.

**SECTION 410.     Rights and Remedies Cumulative.**

Except as otherwise provided herein, no right or remedy herein conferred upon or reserved to the Trustee or any Agent or to the Holders is intended to be exclusive of any other right or remedy (except to the extent any such other right or remedy is expressly waived or provided herein not to be available), and (subject to that exception) every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

**SECTION 411.     Delay or Omission Not Waiver.**

No delay or omission of any Holder or any party to this Indenture or the Trustee or any Agent to exercise any right or remedy accruing upon any Event of Default or otherwise shall impair any such right or remedy or constitute a waiver of any such Event of Default or any other breach of obligations hereunder or under the Paying Agency Agreement or an acquiescence therein. Every right and remedy given by this Article or otherwise to the Holders or any party to this Indenture or the Trustee or any Agent may be exercised from time to time, and as often as may be deemed expedient, by the Holders or the parties to this Indenture or the Trustee or any Agent, as the case may be.

**SECTION 412.     Control by Holders of Bonds.**

The Holders of at least ten per cent. (10 per cent.) of the principal amount of the Bonds Outstanding with respect to which any proceeding is commenced pursuant to Section 403 shall have the right to direct the time, method, and place of conducting any such proceeding for any remedy available to the Trustee, and the Holders of at least the same percentage of the principal amount of Bonds Outstanding shall have the right to direct the exercise of any trust or power conferred on the Trustee by this Indenture, provided that the direction is in accordance with law and the provisions of this Indenture; provided, further, however, that (subject to the provisions of Section 501) the Trustee shall have the right to decline to follow any such direction if the Trustee determines that it has not received reasonable indemnification or if the Trustee determines that the action or proceeding so directed may not lawfully be taken or if the Trustee in good faith, determines that the action or proceeding so directed would involve the Trustee in personal liability, or if the Trustee in good faith so determines that the actions or forbearances specified in or pursuant to the direction will be unduly prejudicial to the interests of Holders not joining in the giving of the direction, it being understood that, subject to Section 501, the Trustee shall have no duty to ascertain whether or not any such actions are unduly prejudicial to any Holders.

**SECTION 413.     Waiver of Past Defaults.**

The Holders of Bonds entitled to declare a particular default hereunder or under the Bonds may waive such default hereunder or under the Bonds and its consequences, except a default in the payment of

NY—363575.8

any of the principal amount of, interest on, or any other amounts owing in respect of, any Bond (any such payment default being subject to waiver only as provided in Section 408). Upon any such waiver (subject to the approval of Holders specified in Section 408 or the Conditions and Article Nine, as applicable) the default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other default or impair any right relating thereto.

**SECTION 414.**     **Costs of Proceedings.**

All parties to this Indenture agree and acknowledge, and each Holder by its acceptance of any Bond shall be deemed to have agreed and acknowledged, that any court may require, in any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken, suffered or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may assess certain costs, including attorneys' fees, against any party litigant in such suit. This Section 414 shall not apply to a suit brought by the Trustee or a suit brought by a Holder pursuant to Section 407.

**SECTION 415.**     **Waiver of Stay or Extension Laws.**

(a)     Each of the Issuer and each Guarantor covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and each of the Issuer and each Guarantor (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee but will suffer and permit the execution of every such power as though no such law had been enacted.

(b)     Upon the occurrence of an Event of Default and the subsequent declaration by the Trustee that the principal amount of all the Bonds is due and payable immediately, the Trustee may by notice in writing to the Issuer, the Guarantors and any Paying Agent and, if requested to do so by an Act of the Holders, the Trustee will:  (i) require each Paying Agent to deliver all Bonds and all monies, documents and records held by them with respect to the Bonds to the Trustee or as the Trustee otherwise directs in the notice; and (ii) require any Paying Agent to act as agent of the Trustee under this Indenture and the Bonds, and thereafter to hold all Bonds and all monies, documents and records held by it in respect of Bonds to the order of the Trustee.

## ARTICLE FIVE

## THE TRUSTEE AND THE AGENTS

**SECTION 501.**     **Appointment; Certain Duties and Responsibilities.**

(a)     The Issuer:

(i)     acknowledges the appointment of The Bank of New York, acting through its corporate trust office in New York City, as the initial Trustee and as an Authentication Agent hereunder in respect of the Bonds; and

(ii)     shall provide in the Paying Agency Agreement for the confirmation of the appointment of the Persons identified in Section 101 as the initial Paying Agents, Registrar, Transfer Agents and Authentication Agents as such Agents in respect of the Bonds;

in each case to perform the duties set forth for the Trustee or the relevant Agent in this Indenture and in the Bonds and, in the case of those Agents, as agreed in the Paying Agency Agreement.

(b)     Each of the Trustee and each Agent undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and the Bonds as applicable to it as such, and no implied covenants or obligations shall be read into this Indenture or the Bonds against the Trustee or any of the Agents. Each of the Trustee and each Agent shall notify the Issuer, the Guarantors, the Trustee, in the case of any Agent, and the other Agents (or all Agents, in the case of the Trustee) in writing, 30 days prior thereto, of any change in its name or in the address of its Office for purposes hereof (which new office shall always be in the same city as its Office initially referred to herein), after which that Person's appointment with respect to the Bonds and this Indenture shall be continued under the new name or be located at the new address, as the case may be, on the terms and conditions of this Indenture and, in the case of an Agent, the Paying Agency Agreement.

(c)     In the absence of bad faith on its part, the Trustee and each Agent may conclusively rely, as to the truth of the statements, the accuracy and the correctness of the opinions expressed therein, upon certificates or opinions furnished to it and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions that by any provision hereof are specifically required to be furnished to any Agent or the Trustee, that Agent or the Trustee, as the case may be, shall be under a duty to examine the certificate to determine whether or not it conforms to the requirements of this Indenture (but need not confirm or investigate the accuracy of mathematical calculations or other facts stated therein).

(d)     No provision of this Indenture shall be construed to relieve the Trustee or any Agent from liability for its own gross negligence or its own willful misconduct, except that:

(i)     none of the Agents or the Trustee shall be liable with respect to any action taken or omitted to be taken by it in good faith, or in exercising any power conferred upon that Agent or the Trustee; and

(ii)     no provision of this Indenture shall require any Agent or the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of the funds or adequate indemnity against the risk or liability is not reasonably assured to it.

(e)     Notwithstanding anything contained herein or in the Bonds or the Guarantee to the contrary, none of the Agents or the Trustee shall be bound, obligated or required to take any action at the request or direction of any of the Holders of Bonds or exercise any discretion or otherwise take any action pursuant to this Indenture unless (i) such Holders shall have made available to the Agent or the Trustee, as the case may be, security or indemnity reasonably acceptable to the Agent or the Trustee against the costs, expenses and liabilities (including fees and expenses of its agents and counsel) which might be incurred by it in compliance with the request or direction and (ii) the Trustee shall have received direction or instruction from Holders of the requisite percentage of the principal amount of Bonds Outstanding relevant to such action or exercise of discretion and, in any event, such action or exercise of discretion shall not be contrary to applicable laws or regulations.  Neither the Trustee nor the Agents and none of their respective agents will be liable to the Holders of Bonds if prevented or delayed in performing any of

NY—363575.8

the obligations or discretionary functions under this Indenture of that Agent or the Trustee, as the case may be, by reason of any present or future law applicable to it, by any governmental or regulatory authority or by any circumstances beyond its control.

(f)       Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to any Agent or the Trustee shall be subject to the provisions of this Section. The permissive right of any Agent or the Trustee to take or refrain from taking any action enumerated in this Indenture shall not be construed as a duty.

(g)       Unless an Event of Default has occurred and is continuing, the Trustee agrees not to take any action or institute any proceeding against the Issuer or any Guarantor under any insolvency law or which would be likely to cause the Issuer or any Guarantor to be subject to, or to seek the protection of, any insolvency law applicable to the Issuer or any Guarantor, provided that the Trustee may take any action against the Issuer in respect of any breach of a covenant of the Issuer or any Guarantor provided in this Indenture or the Bonds or become a party to and participate in any proceeding or action under any insolvency law applicable to the Issuer or any Guarantor that is initiated by any other Person.

SECTION 502.     Certain Rights of the Trustee and Agents.

In acting under the Paying Agency Agreement as provided herein or therein and in connection with the Bonds, each of the Agents is acting solely as agent of the Issuer and, in the case of an action as provided in the Paying Agency Agreement, as agent of the Guarantors except as otherwise expressly provided in Section 415(b), and, except as expressly provided in Section 309(a)(v) or Section 415(b), does not assume any obligation toward or relationship of agency or trust for or with any of the Holders of the Bonds.

Subject to the provisions of Section 501:

(a)       each Agent and the Trustee may conclusively rely and shall be protected in acting or refraining from acting upon any resolution, Officer's Certificate or other certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, note, bond, debenture, other evidence of indebtedness or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b)       any request or direction of the Issuer or of a Guarantor mentioned herein shall be sufficiently evidenced by request or direction indicated in an Officer's Certificate;

(c)       whenever in the administration of this Indenture the Trustee or an Agent shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee or the Agent (unless other evidence be herein specifically prescribed) may, in the absence of bad faith on its part, conclusively rely upon an Officer's Certificate;

(d)       each Agent and the Trustee may consult with counsel of its selection and the advice of the counsel or any opinion of counsel or advice of its professional advisors shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon;

(e)       none of the Agents or the Trustee shall be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, debenture, note, bond or other evidence of indebtedness

NY—363575.8

or other paper or document, but each of the Trustee and each Agent, in its discretion, may, at the expense of the Issuer and the Guarantors, make such further inquiry or investigation into such facts or matters as it may see fit and, if an Agent or the Trustee shall determine to make such further inquiry or investigation, the Issuer and the Guarantors shall, at reasonable times, make available for inspection by the Agent or the Trustee, as the case may be, or its agents or attorneys, such books and records and other documents as the Agent or the Trustee, as the case may be, may by notice request relating specifically to the Bonds, the Guarantee, any Event of Default or performance by the Issuer or a Guarantor of its negative pledge covenant in Condition 8;

(f)    None of the Agents or the Trustee shall be under any obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any Holder, or any other Person, pursuant to the provisions of this Indenture, unless the Holder or other Person making the request or giving the order or direction shall have offered reasonable security or indemnity satisfactory to the Agent or the Trustee, as the case may be, against the costs, expenses and liabilities that might be incurred by it in compliance with the request or direction, and none of the Agents shall, in any event, be required to act as agent of any Holder except as expressly contemplated in Section 309(a)(v) or Section 415(b);

(g)    none of the Agents or the Trustee, as the case may be, shall be liable for any action taken by it in good faith and believed by it to be authorized or within the discretion, rights or powers conferred upon it by this Indenture;

(h)    each of the Trustee and each Agent may execute any of its powers hereunder or, in the case of an Agent, under the Paying Agency Agreement, or perform any of its duties hereunder or, in the case of an Agent, under the Paying Agency Agreement, either directly or by or through agents or attorneys and none of the Agents or the Trustee shall be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder or thereunder;

(i)    none of the Agents shall be liable for the actions or omissions of any other Agent, the Trustee or any other agent of the Issuer or of a Guarantor, and the Trustee shall not be liable for the actions or omissions of any of the Agents or any such other agent of the Issuer or of a Guarantor;

(j)    none of the Agents or the Trustee shall be liable for any error of judgement made in good faith by a Responsible Officer or officers or any willful misconduct or gross negligence by or on behalf of any other Agent or the Trustee, in the case of an Agent, or by or on behalf of any Agent, in the case of the Trustee; and

(k)    neither the Trustee nor any Agent shall be deemed to have notice of any Default or Event of Default unless a Responsible Officer of the Trustee or any officer of such Agent responsible for the administration of this Indenture has actual knowledge thereof or unless written notice thereof is received by the Trustee at its principal corporate trust office or by such Agent at its office specified for notices in this Indenture and such notice references the Bonds and this Indenture.

SECTION 503.    Not Responsible for Recitals or Issuance of Bonds.

The recitals contained herein and in the Bonds shall be taken as the statements of the Issuer, except that the second recital contained herein and the description in the Bonds of the Guarantee shall be taken as the statements of the Guarantors, and the Agents and the Trustee assume no responsibility for the

38

correctness of any such recital or description. The Agents and the Trustee make no representations as to the validity or sufficiency of this Indenture, of the Bonds or the Conditions or of the Paying Agency Agreement or for or in respect of the validity or sufficiency of any offering materials with respect thereto (except in the case of an Authenticating Agent, for the due execution of the certificates of authentication by that Authenticating Agent). The Trustee shall not be accountable for the use or application by the Issuer of the Bonds or the proceeds thereof. The Trustee represents that it is duly authorized to execute and deliver this Indenture and to perform its obligations hereunder. By its execution of the Paying Agency Agreement or an Accession Agreement, each Agent will be deemed to represent that it is duly authorized to execute that agreement and to perform its obligations thereunder, including the obligations stated in this Indenture to be subject to performance by that Agent.

SECTION 504.    *Trustee and Agents May Hold Bonds.*

The Trustee, the Agents and any other agent of the Issuer or any Guarantor, in its individual or any other capacity, may become the owner or pledgee of Bonds within the legal restrictions otherwise applicable, may vote those Bonds at any Meeting of Holders of Bonds at which it is entitled to vote and may otherwise deal with the Issuer and the Guarantors with the same rights it would have if it were not Trustee, an Agent or such other agent.

SECTION 505.    **Money Held in Fiduciary Capacity.**

Money held by the Trustee or any Agent in trust or another fiduciary capacity hereunder need not be segregated from other funds except to the extent provided herein or as required by law. None of the Agents or the Trustee shall be under any liability for interest on any money received by it hereunder except as otherwise agreed with the Issuer in writing.

SECTION 506.    **Compensation, Reimbursement and Indemnification.**

(a)    The Issuer and each Guarantor, jointly and severally, agrees:

(i)    to pay to each of the Agents and the Trustee from time to time reasonable compensation for all services rendered by it hereunder or, in the case of each Agent, under the Paying Agency Agreement (which compensation shall be as agreed between the Issuer and that Agent or the Trustee, as the case may be, from time to time in writing and shall not be limited by any provision of law in regard to the compensation of an agent or fiduciary);

(ii)    except as otherwise expressly provided herein, to reimburse each Agent and the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by that Agent or the Trustee, as the case may be, in accordance with any provision of this Indenture or the Paying Agency Agreement (including the reasonable compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its gross negligence or willful misconduct; and

(iii)    to indemnify each of the Agents and the Trustee and their respective directors, officers, employees and agents for, and to hold each of them harmless against, any loss, claim, liability or expense incurred without gross negligence or willful misconduct on the part of any of them arising out of or in connection with (A) this Indenture, (B) the Bonds, (C) the Paying Agency Agreement, (D) the acceptance by that Agent or the Trustee, as the case may be, of its appointment as Agent or Trustee hereunder or (E) the exercise or performance by that Agent or the Trustee, as the case may be, of its powers or duties (including, without limitation, its duties pursuant to Section 415(b)), including the reasonable costs and expenses of defending itself

NY—363575.8

against any claim or liability in connection with the exercise or performance by that Agent or the Trustee of its powers or duties hereunder.

(b)     As security for the performance of the obligations of the Issuer under this Section, the Trustee and each Agent shall have a lien prior to any claim for payment of the Bonds upon all cash or other property held or collected by the Trustee as such.

(c)     Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Issuer to the Trustee and the Agents under this Section 506 shall survive the termination of this Indenture or the resignation or removal of the Trustee or any Agent.

SECTION 507.     Trustee, Paying Agents, Transfer Agents and Registrar Required; Eligibility.

(a)     As more fully provided in the Conditions and in Section 1006, there shall at all times be a Trustee hereunder and in respect of the Bonds, which shall be a corporation organized and doing business under, or licensed to do business pursuant to, the laws of the United States of America (including any State thereof or the District of Columbia) or a jurisdiction in Western Europe or the Caribbean Islands and authorized under such laws to exercise corporate trust or fiduciary powers, having a combined capital and surplus of at least U.S. $25,000,000 (or the equivalent thereof in another currency as reasonably determined by the Issuer on or about the date of the appointment of any such Trustee), subject to supervision or examination by governmental authorities. If any such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of its supervising or examining authority, then for the purposes of this Section, the combined capital and surplus of that corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time any Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect hereinafter specified in this Article.

(b)     As more fully provided in the Conditions applicable to the Bonds and in Section 1006, there shall also at all times be a Paying Agent, a Registrar and a Transfer Agent in respect of the Bonds in such places as are specified in the Conditions and in Section 1006, and the entity at any time acting as Registrar shall also be a Paying Agent. The Persons from time to time acting as Paying Agent, Registrar or Transfer Agent shall meet the same requirements as are specified in Section 507(a) as applicable to the Trustee and, if any such Person shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect hereinafter specified in this Article. The Registrar shall maintain the records of the Bonds Outstanding from time to time, give and receive the notices and other communications contemplated herein and in the Conditions, and carry out all other acts as are specified herein or as it may deem necessary to give effect to this Indenture or the Conditions.

SECTION 508.     Resignation and Removal; Appointment of Successor.

(a)     No resignation or removal of an Agent or the Trustee required by this Article and no appointment of a successor Agent or Trustee pursuant to this Article, shall become effective until the acceptance of appointment by a successor to the same position as Agent or Trustee in accordance with the applicable requirements of Section 509.

(b)     Any of the Agents may resign at any time by giving written notice to such effect to the Issuer and the Guarantors, at least 30 days before the effective date of the resignation, and the Trustee may resign at any time by giving the same advance notice to each such Person and the Holders. If the instrument of acceptance by a successor Agent or Trustee required by Section 509 shall not have been delivered to the Agent or Trustee resigning within 30 days after the giving of such a notice of resignation, the resigning Agent or Trustee may petition any court of competent jurisdiction for the appointment of a

NY—363575.8

successor to the same position as Agent or Trustee but, in the case of the Agent, only if the Issuer is required by this Article or the Conditions to maintain such an Agent at the time.

    (c)    In case at any time any of the following shall occur:

    (i)    an Agent or Trustee shall cease to be eligible in accordance with the provisions of Section 507 and shall fail to resign after written request therefor by the Issuer or by any bona fide Holder of a Bond or Bonds who has been a bona fide Holder of a Bond or Bonds for at least six months; or

    (ii)    an Agent or Trustee shall become incapable of acting, or shall be adjudged a bankrupt or insolvent, or a receiver of the Agent or the Trustee, as the case may be, or of its property shall be appointed, or any public officer shall take charge or control of the Agent or Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation; or

    (iii)    an Agent or the Trustee shall breach, in any material respect, any covenant or obligation to be performed by it under the Conditions or this Indenture or, in the case of an Agent, the Paying Agency Agreement;

the Issuer may, in its sole discretion but subject to Section 508(a) above, remove that Agent or the Trustee and, after consultation with the Guarantors, appoint a successor thereto meeting the requirements of Section 507 by written instrument, in triplicate, executed upon Issuer Order, one copy of which shall be delivered to the Agent or the Trustee being replaced, one copy to the successor Agent or Trustee, and one copy to the Guarantors, and any Holder of a Bond or Bonds who has been a bona fide Holder for at least six months may, on behalf of itself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Agent or the Trustee and the appointment of a successor Trustee, and if the Issuer at the time is required to maintain such an Agent, the appointment of a successor Agent thereto. Such court may thereupon, after such notice, as it may deem proper, remove that Agent or Trustee and appoint a successor thereto.

    (d)    If an Agent or the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of any Agent which the Issuer is required by this Article or the Conditions to maintain, for any cause, the Issuer, by a Board Resolution, shall promptly, after consultation with the Guarantors, appoint a successor Agent or Trustee, as the case may be, and shall comply with the applicable requirements of Section 509. If, within 30 days after the resignation, removal or incapability or the occurrence of such a vacancy, the Issuer has not so acted, a successor Agent or Trustee, as the case may be, shall be appointed by an Act of Holders of a majority in principal amount of the Outstanding Bonds (or such lesser amount as shall have acted at a Meeting pursuant to the provisions of this Indenture) delivered to the Issuer and the retiring Agent or Trustee, as the case may be, with a copy to the Guarantors, and the successor Agent or Trustee, as the case may be, so appointed shall, forthwith upon its acceptance of the appointment in accordance with the applicable requirements of Section 509, become the successor Agent or Trustee, as the case may be. If no successor Agent or Trustee, as the case may be, shall have been so appointed by the Issuer or the Holders of Bonds as provided herein and accepted appointment in the manner required by Section 509 within 60 days after the resignation, removal or incapability or the occurrence of such a vacancy, the retiring or removed Agent or Trustee, as the case may be, or any Holder of a Bond may, on behalf of itself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor to the same position as Agent or Trustee, as the case may be.

NY—363575.8

(e)     The Issuer shall give notice of each resignation and each removal of the Trustee or any Agent and each appointment of a successor Trustee or Agent to the Guarantors and to the Holders of the Bonds in the manner provided in Section 105. Each notice shall include the name of the successor Trustee or Agent and the address of its Office.

(f)     All expenses incurred by an Agent or the Trustee in connection with its resignation and the appointment of a successor Agent or Trustee shall be deemed to be reimbursable pursuant to Section 506(a)(ii).

**SECTION 509.     Acceptance of Appointment by Successor.**

(a)     Every successor Agent and Trustee appointed hereunder shall execute, acknowledge and deliver to the Issuer, to the Guarantors and to the retiring Agent or Trustee, as the case may be, an instrument accepting its appointment upon terms no less favorable to the Issuer or the Guarantors than the terms upon which the retiring Agent or Trustee, as the case may be, was acting in that capacity and thereupon the resignation or removal of the retiring Agent or Trustee, as the case may be, shall become effective and the successor Agent or Trustee, as the case may be, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Agent or Trustee, as the case may be; but, on request of the Issuer, the Guarantors or the successor Agent or Trustee, as the case may be, such retiring Agent or Trustee, as the case may be, shall, upon payment of its charges, execute and deliver an instrument transferring to the successor Agent or Trustee, as the case may be, all the rights, powers and trusts of the retiring Agent or Trustee, as the case may be. Upon request of any such successor Agent or Trustee, as the case may be, each of the Issuer and the Guarantors shall execute any and all instruments as shall be reasonably requested for more fully and certainly vesting in and confirming to the successor Agent or Trustee, as the case may be, all such rights, powers and trusts.

(b)     No successor Agent or Trustee shall accept its appointment unless at the time of acceptance such successor Agent or Trustee shall be eligible under this Article.

**SECTION 510.     Merger, Conversion, Consolidation or Succession to Business.**

Any corporation into which an Agent or Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which an Agent or Trustee shall be a party, or any corporation succeeding to all or substantially all the corporate trust or fiduciary banking business of an Agent or Trustee, shall be the successor to that Agent or Trustee hereunder, provided that the successor or resulting corporation shall be otherwise eligible under this Article, without the execution or filing of any paper or any further act on the part of any of the parties hereto or any Agent or Trustee.

**SECTION 511.     Appointment of Co-Agents, Co-Trustee and Additional Agents.**

(a)     It is the intent of this Indenture that there shall be no violation of any law of any jurisdiction denying or restricting the right of banking corporations or associations to transact trust or fiduciary banking business in such jurisdiction. In the case of litigation under this Indenture and, in particular, in case of enforcement upon the occurrence of an Event of Default or in case an Agent or the Trustee deems that by reason of any present or future law of any jurisdiction, (i) that Agent or the Trustee, as the case may be, may not exercise any of the powers, rights or remedies herein granted to it as to any Bonds, (ii) that Agent or the Trustee may not take any other action which may be desirable or necessary in connection therewith or (iii) as a result of any activity by that Agent or the Trustee, as the case may be, the Issuer or the Guarantors may be subject to tax by reason of its being located in a particular

NY—363575.8

jurisdiction, that Agent or Trustee, as the case may be, may appoint an additional institution as a separate or additional co-agent or co-trustee, as the case may be.

(b)     In the event an Agent or the Trustee appoints an additional institution as a separate or additional co-agent or co-trustee pursuant to subsection (a) above, each and every remedy, power, right, claim, demand, cause of action, immunity, estate, title and interest expressed or intended by this Indenture to be exercised by or vested in or conveyed to the Agent or the Trustee with respect thereto shall be exercisable by and vest in the separate or additional co-agent or co-trustee, but only to the extent necessary to enable the separate or additional co-agent or co-trustee to exercise those powers, rights and remedies, and every covenant and obligation necessary to the exercise thereof by the separate or additional co-agent or co-trustee shall run to and be enforceable by either of them. Each Agent or Trustee that appoints such a separate or co-agent or co-trustee, the Issuer and the Guarantors shall have the right to terminate the appointment of any such separate or additional co-agent or co-trustee hereunder.

(c)     Should any instrument in writing from the Issuer or the Guarantors be required by a separate or additional co-agent or co-trustee so appointed by an Agent or Trustee for more fully and certainly vesting in and confirming to it such entities' properties, rights, powers, trusts, duties and obligations, any and all such instruments in writing shall, as reasonably requested, be executed, acknowledged and delivered by the Issuer and, if applicable, the Guarantors; provided that, if an Event of Default shall have occurred and be continuing and the Issuer or, if applicable, a Guarantor does not execute any such instrument within fifteen (15) days after request therefor, the Trustee shall be empowered as an attorney-in-fact for the Issuer or, if applicable, such Guarantor to execute any such instrument in the Issuer's or such Guarantor's name and stead. In case any separate or additional co-agent or co-trustee, or a successor to either, shall become incapable of acting, resign or be removed, all the estates, properties, rights, powers, trusts, duties and obligations of such separate or additional co-agent or co-trustee, so far as permitted by law, shall vest in and be exercised by the Agent or Trustee in respect of whose agency it is acting as co-agent until the appointment of a new Agent or Trustee in the same position or successor to such separate or additional co-agent or co-trustee.

(d)     Any reasonable fees and expenses of any co-agent or co-trustee appointed pursuant to the provisions of this Section shall be paid by the Issuer (without limitation of its obligations to any of the Agents or the Trustee under Section 506) and an Agent or Trustee in respect of whose functions (in whole or in part) a co-agent or co-trustee is appointed shall have no obligation in respect thereof.

(e)     Confirmation of the appointment of any successor or replacement Agent or additional Agent appointed to act as such in respect of the Bonds may be evidenced by a Letter of Appointment, and the agreement of the successor, replacement or additional Agent to act as such and to be bound by the terms of this Indenture and the Paying Agency Agreement may be evidenced by its Accession Agreement or that Letter of Appointment.

(f)     Every co-trustee and co-agent shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i)     all rights and powers, conferred or imposed upon the Trustee or any Agent shall be conferred or imposed upon and may be exercised or performed by such co-agent or co-trustee to the extent required for such co-agent or co-trustee to fulfil its function; and

(ii)     no trustee or agent hereunder shall be personally liable by reason of any action or omission of any other trustee or agent hereunder.

43

**SECTION 512.     Authenticating Agents.**

The Principal Paying Agent, the Registrar and Banque Internationale à Luxembourg S.A. may authenticate Bonds, in each case as the Issuer's Authenticating Agent. The Principal Paying Agent may, with the consent of the Issuer, appoint an additional Authenticating Agent or Agents acceptable to the Issuer with respect to the Bonds, and each such additional Authenticating Agent shall be authorized to act on behalf of the Issuer to authenticate Bonds issued upon exchange or substitution pursuant to this Indenture.

Bonds authenticated by an Authenticating Agent shall be entitled to the benefits of this Indenture and shall be valid and obligatory for all purposes as if authenticated hereunder by the Principal Paying Agent hereunder, and every reference in this Indenture to the authentication and delivery of Bonds by the Principal Paying Agent or the Principal Paying Agent's certificate of authentication shall be deemed to include authentication and delivery on behalf of the Principal Paying Agent by an Authenticating Agent. Each Authenticating Agent shall be subject to acceptance by the Issuer and shall at all times be a corporation organized and doing business under, or licensed to do business pursuant to, the laws of the United States of America (including any State thereof or the District of Columbia) or a jurisdiction in Western Europe or the Caribbean Islands and authorized under such laws to act as Authenticating Agent, subject to supervision or examination by governmental authorities. If at any time an Authenticating Agent shall cease to be eligible in accordance with the provisions of this Section 512, such Authenticating Agent shall resign immediately in the manner and with the effect specified in this Section 512.

Any corporation into which an Authenticating Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which such Authenticating Agent shall be a party, or any corporation succeeding to all or substantially all the corporate agency or corporate trust business of an Authenticating Agent, shall continue to be an Authenticating Agent, provided such corporation shall be otherwise eligible under this Section 512, without the execution or filing of any paper or any further act on the part of the Principal Paying Agent or the Authenticating Agent.

An Authenticating Agent may resign at any time by giving written notice of resignation to the Trustee, the Principal Paying Agent and the Issuer. Each of the Principal Paying Agent and the Issuer may at any time terminate the agency of an Authenticating Agent by giving written notice of termination to that Authenticating Agent, the Trustee and either the Issuer or the Principal Paying Agent, as the case may be. Upon receiving such a notice of resignation or upon such a termination, or in case at any time any Authenticating Agent ceases to be eligible in accordance with the provisions of this Section 512, the Principal Paying Agent may appoint a successor Authenticating Agent, which shall be subject to acceptance by the Issuer. Any successor Authenticating Agent, upon acceptance of its appointment hereunder, shall become vested with all the rights, powers and duties of its predecessor hereunder, with like effect as if originally named as an Authenticating Agent. No successor Authenticating Agent shall be appointed unless eligible under the provisions of this Section 512.

The Issuer agrees to pay to each Authenticating Agent from time to time reasonable compensation for its services under this Section 512.

If an Authenticating Agent is appointed with respect to the Bonds pursuant to this Section 512, the Bonds may have endorsed thereon, in addition to or in lieu of the Principal Paying Agent's certification of authentication, an alternative certificate of authentication in the following form:

This is one of the Bonds referred to in the within-mentioned Indenture.

NY—363575.8

Dated:

**[NAME OF AUTHENTICATING AGENT]**,
as Authenticating Agent

By_____
Authorized Signatory

## ARTICLE SIX

### THE REGISTRAR AND THE TRANSFER AGENT

**SECTION 601.    Duties of the Transfer Agent.**

If and to the extent specified by the Conditions and in accordance therewith and the terms of this Indenture or if otherwise requested by the Issuer, the Transfer Agents shall:

(a)    receive requests for the transfer of Bonds, notify the Registrar thereof, forward the deposited Bond to or to the order of the Registrar and assist in the issue of a new Bond in accordance with the Conditions and any regulations promulgated by the Issuer from time to time with the approval of the Trustee, the Transfer Agents and the Registrar concerning the carrying out of exchanges and transfers and the forms and evidence to be provided, and in particular forthwith notify the Registrar of: the name and address of the Holder of the Bond, the certificate number and principal amount of the Bond, in the case of a transfer of only part of the amount of the Bond to be transferred, and the name and address of the transferee to be entered on the Register;

(b)    accept surrenders of Bonds as a condition precedent to final repayment;

(c)    keep the Registrar informed of all transfers; and

(d)    carry out such other acts as may be necessary to give effect to the Conditions.

**SECTION 602.    Duties of the Registrar.**

(a)    The Registrar shall maintain a register of the Bonds and their Holders (the *"Register")* in New York City in accordance with this Indenture and the Conditions.  The Register shall set forth the amount and certificate numbers of Bonds and the date of issue and all subsequent transfers and changes of ownership in respect thereof and the names and addresses of the Holders of the Bonds.  The Registrar shall at all reasonable times during office hours make the Register available to the Issuer, the Guarantors, the Trustee and the Transfer Agents or any Person authorized by any of them for inspection and for the taking of copies thereof or extracts therefrom and the Registrar shall deliver to such Persons all such lists of Holders of Bonds, their addresses and holdings as they may request.

(b)    The Registrar shall receive requests for the transfer of Bonds and shall also receive Bonds deposited with the Transfer Agent, effect the necessary entries, authenticate or cause to be authenticated and issue or cause to be issued new Bonds in accordance with this Indenture and the Conditions and deliver or cause to be delivered new Bonds to the relevant Holder or Holders.

(c)    The Registrar shall accept surrender of Bonds and assist in effecting final repayment of the Bonds on their due date for payment.

NY—363575.8