Dräger Medizintechnik

# Dräger

2650V/fr
MVII

**Appendix A2**
to Distributor Agreement

between

Dräger Medizintechnik GmbH
23542 Lübeck, Germany

- hereinafter called "Dräger MT" -

and

Life Care Technology S.A.E.
Cairo, Egypt

- hereinafter called "Distributor" -

**Non-Exclusive Products**
(Issue: 27 October 1999)

| NO. | PRODUCT GROUP NAME |
|---|---|
| **7** | **Medical Technology** |
| **73** | **Emergency Care**<br>(non-exclusive distribution rights for business transactions with other customers than those defined under Prod. No. 73 in Appendix A1) |
| 730 | Other Accessories MT-N |
| 731 | $O_2$-Cylinders / Emergency Care Products |
| 732 | Time-Cycled Short-Term Ventilators |
| 733 | Transport Monitoring |
| 734 | Home Ventilation |
| 735 | Defibrillator |
| 736 | Oxylog 2000 |
| 737 | Resuscitation Units |
| 738 | Training Devices |
| 739 | Telecare |
| 793 | Spare/Wear and Tear Parts for Emergency Care |
| 799 | Spare/Wear and Tear Parts for Non-Dräger Apparatus |

Dräger Medizintechnik 

- 2 -

**8**     <u>Medical Architectural Systems</u>

842     Compressor Plants
843     Vacuum Plants

<u>Operating Theatre Consumable Products of Dräger Australia</u>

1.     Headwear
2.     Theatre Protective Apparel
3.     Surgical Drapes
4.     Impervious Protective Wear
5.     Clothing
6.     Bedding
7.     Sundry Items

(Product details are available in the current product price list.)

This Appendix A2 is subject to changes as provided in Section 21.3 of the Distributor Agreement.

* * *

2650V/fr

## Appendix B

# Standard Terms and Conditions

1. The following terms and conditions (hereinafter "Terms") shall apply. Any derogation from these Terms shall be subject to the lawfully signed written consent of Dräger Medizintechnik GmbH. Any terms of the Customer which derogate from these Terms will be binding only if Dräger Medizintechnik GmbH has expressly accepted such derogating terms in writing.

2. Scope
2.1 These Terms shall apply to all deliveries made and services rendered by Dräger Medizintechnik GmbH to/for the exception of construction services.
... the ... these Terms as referenced in Dräger Medizintechnik GmbH ... terms ... general terms of business of the Customer (unless expressly accepted by Dräger Medizintechnik GmbH in writing) ... day of delivery ... a price contract is concluded. Nos. 1, 4, 6 and 10 – 14 of these Terms shall also apply.

3. Terms of Payment, Set-Off, Right of Retention
The following terms of payment shall apply.
3.1 With respect to deliveries completed and services rendered by Dräger Medizintechnik GmbH in a foreign country, payment shall be made through an irrevocable letter of credit opened and confirmed by a major German bank and payable in favour of Dräger Medizintechnik GmbH upon presentation of documents at maturity.
3.2 Bills of exchange, cheques and other means of payment will be accepted as conditional payment only. With respect to these types of payment, the date on which the funds are made available to Dräger Medizintechnik GmbH shall be deemed the date of payment.
3.3 Discount charges, collection fees and other charges connected with payment shall be borne by the Customer.
3.4 No set-off may be asserted unless the claim is uncontested or has been reduced to final, non-appealable judgement.
3.5 Rights of retention may be asserted only insofar as they relate to the same contract.
3.6 In the event repair exchange parts (Reparaturaustauschteile) are delivered, 10% of the price of the repair exchange part shall, in addition to the price of the repair exchange part, be taxed pursuant to Value Added Tax Act (if required as separate).

4. Shipment, Packing, Passing of Risk
4.1 In the absence of an agreement to the contrary, the Customer shall bear the costs associated with shipment, transportation and packing.
4.2 The risk shall pass to the Customer no later than upon dispatch even where freight costs have been paid, partial deliveries have been made, or Dräger Medizintechnik GmbH has committed itself to provide other services, such as direct delivery and assembly. If shipment becomes impossible through no fault of Dräger Medizintechnik GmbH, the risk shall pass to the Customer when notice is given that the articles are ready for shipment. If, under the terms of the contract of delivery, Dräger Medizintechnik GmbH is obliged to install and place into operation the article to be delivered, then the risk shall pass to the Customer when the article has been placed into operation.
4.3 Where costs are attributable to Dräger Medizintechnik GmbH, are not put into operation within twelve (12) days following written notice that installation is complete, then the risk shall pass to the Customer following expiration of this deadline. Dräger Medizintechnik GmbH agrees in this event to advise the Customer that the goods are deemed to be accepted. Should installation be delayed for reasons attributable to the Customer, the risk shall pass to the Customer for the duration of this delay.

5. Delivery and Time of Delivery
5.1 Weights and dimensions listed in brochures and bid presentations are estimates only. Dräger Medizintechnik GmbH reserves the right to reasonably modify these specifications, design and construction.
5.2 Any reference to technical standards shall represent merely a description of performance unless Dräger Medizintechnik GmbH expressly warrants, in the form of a guaranty (Garantieverpflichtung), that such technical standards have been met. No promises of this kind must be memorialized in writing at the time the Contract is concluded.
5.3 The deadline for deliveries and for rendering services shall not begin to run until the Customer has furnished all documents, approvals or clearances that it is required to procure. Compliance with the deadlines for deliveries and for rendering services is conditional upon the Customer discharging its duties under the Contract.
5.4 The delivery deadline shall be deemed to have been met when the article for delivery has left the factory before the deadline has fallen.
5.5 The deadline for deliveries and for rendering services shall be reasonably extended if events arise which are connected with labour disputes including, inter alia, strikes and lock-outs, and if unforeseeable hindrances occur which are beyond Dräger Medizintechnik GmbH's control, unless such events make delivery or performance of a service impossible. In the event delivery or performance becomes impossible, Dräger Medizintechnik GmbH shall be excused from its duty to discharge the Contract. In cases where the delivery deadline is extended, Dräger Medizintechnik GmbH is excused from its duties to perform the Contract, the Customer may not claim any compensatory damages arising therefrom.

6. Avoidance of Contract
6.1 The Customer may avoid the Contract if overall performance thereunder becomes permanently impossible for Dräger Medizintechnik GmbH prior to the transfer of the risk. The same rule shall see if Dräger Medizintechnik GmbH becomes subjectively incapable of contract performance. The Customer may also avoid the Contract if, with respect to an order for similar articles, it becomes impossible to deliver the quantity needed on a portion of the delivery and the Customer has a legitimate interest in rejecting a partial delivery. If it has no such legitimate interest, the Customer may reduce its counter-performance accordingly.
6.2 Should Dräger Medizintechnik GmbH's contractual performance be delayed, then the Customer may avoid the Contract, provided that the Customer granted Dräger Medizintechnik GmbH in writing a reasonable grace period and expressly declared that it would refuse to accept performance following expiration of this grace period and the grace period was not observed.
6.3 In the cases described in nos. 6.1 and 6.2, no. 10 of these Terms shall govern Dräger Medizintechnik GmbH's liability.

7. Reservation of Title
7.1 Dräger Medizintechnik GmbH will retain title to any articles delivered and/or installed (Retained Goods) until all debts, including future debts arising from the business relations with the Customer, and regardless of the legal basis upon which the enforcement thereof is made, have been paid, even where payments are made on specifically designated receivables. With respect to current accounts, the retained title shall serve as security for the balance due Dräger Medizintechnik GmbH.
As work on or processing of the Retained Goods shall be made under authority of Dräger Medizintechnik GmbH, Dräger Medizintechnik GmbH shall be deemed a manufacturer within the meaning of § 950 of the German Civil Code (BGB) and shall thereby retain entitlement to the products at any given time and any stage of work or processing. Dräger Medizintechnik GmbH shall not be liable for any payment or incurring obligation with respect to such work or processing.
In the event the Customer processes, affixes, or commingles the Retained Goods with other chattels not owned by Dräger Medizintechnik GmbH, the latter shall be entitled to joint ownership in the new property in the proportion of the invoice value of the Retained Goods to the value of the other property used in the distressor at the time such other property was processed, affixed, or commingled. Regardless the new property created as a result of the processing, affixing or commingling, the same provisions shall apply as those covering the Retained Goods.
The sum proceeds shall be deemed Retained Goods within the meaning of these Terms. Where chattels are affixed to buildings or other items of real property, the Customer agrees all Retained Goods/Goods' proceeds to the aggregate the delivered and/or installed work. Retained Goods and to enter title in the articles back to Dräger Medizintechnik GmbH. Should the articles still be deemed should the meaning of these Terms, If the customers sums in the event that the commercial title is paid in full (und in full in payment pursuant to public law, as a public term, Dräger Medizintechnik GmbH may at its own discretion select any of these terms.
7.2 The Customer is entitled to sell, encash, or otherwise dispose of the Retained Goods in the ordinary course of business only. The Customer assigns to Dräger Medizintechnik GmbH its receivables owing from the business relations and resulting from future sales of the Retained Goods to third parties...

---

Even after the assignment has been made the Customer will be authorized to collect the assigned claims unless it discontinues its payments or Dräger Medizintechnik GmbH revokes this authority to collect. In any case Dräger Medizintechnik GmbH reserves the right to collect the assigned claims itself.
The Customer shall upon request provide Dräger Medizintechnik GmbH with prompt written notice of the names of those to whom it has sold the delivered articles and the payment claims to which the Customer is entitled from the sale and shall surrender the documents necessary for collection.
7.3 The Customer shall be authorized and entitled to resell Retained Goods pursuant to no payment...marital relation or other duties ... customer ... spend the ... ... to be a ... contract the ... Medizintechnik GmbH ...
If payment of the delivered articles is this part, The Customer may not dispose of Retained Goods in any other manner, in particular by pledging or assigning such goods as security. The Customer shall at Dräger Medizintechnik GmbH's request notify its purchase at the assignment to Dräger Medizintechnik GmbH for the purposes of payment to the latter.
7.4 Should the value of Dräger Medizintechnik GmbH's security exceed the total amount of Dräger Medizintechnik GmbH's claims by more than 20%, then upon request by the Customer or by a third party whereby all set to Dräger Medizintechnik GmbH's excess security, Dräger Medizintechnik GmbH shall release security of its choice.
7.5 The Customer shall immediately notify Dräger Medizintechnik GmbH of any levy of execution, seizure and other attachments by third parties.

8. Notification of Defect and Acceptance of Delivery
8.1 The Customer shall immediately check all deliveries upon receipt in order to determine any shortages or whether damages occurred during transport. In the event any transport damages occur, such damages shall be revealed in order to preserve evidence for possible damage claims against the carrier (postal authority, railway company, forwarding agent, etc.).
8.2 Any defect in the articles must be claimed within one week after such articles are received, unless the relevant defect is not obvious. To secure its right to free repair work, the Customer shall notify Dräger Medizintechnik GmbH of any defective service performance immediately upon discovery of such defective performance.
8.3 In the event that the Customer is prevented from accepting delivery due to a strike or lock-out, the deadlines for acceptance and notification of defects (as described in the preceding paragraph) shall be reasonably extended.

9. Warranty
9.1 Where new articles delivered or services rendered are defective, Dräger Medizintechnik GmbH provides the following warranty:
9.2 The warranty period shall be twelve (12) months. The warranty period shall begin to run either from the date the services have been fully performed or from the date on which the articles for delivery have been delivered ex works. Notwithstanding the foregoing, the warranty period for wear and tear parts e.g. motors of all types, pumps, compressors, as well as for parts made of rubber, plastic, glass and crucible shall be six (6) months from the date of delivery ex works.
The warranty on the delivered articles shall be limited to a promise that no defects exist therein at the time the articles are shipped from Dräger Medizintechnik GmbH. The service warranty shall be limited to a promise that no defects exist in the services provided at the time the performance of such services has been accepted.
9.3 The warranty shall consist of free repair work or, at Dräger Medizintechnik GmbH's discretion, substitute delivery.
Should the repair work or substitute delivery fail, the Customer may at its option either reduce payment or rescind the Contract or issue.
With respect to any more extensive claims, no. 10 of these Terms shall govern.
9.4 If the Customer has claimed a remedy under the warranty within the time periods set forth in no. 9.2, Dräger Medizintechnik GmbH shall bear all expenses necessary for repair including, but not limited to, transportation and labour costs. These costs shall not be assessed if such expenses have increased as a result of the delivered article having been transported, following delivery, to a location other than the Customer's domicile or place of business, insofar as such transport does not conform to the intended use of the articles.
9.5 The Customer shall enable Dräger Medizintechnik GmbH to undertake repair work, for purposes of performing the warranty, and, upon request, send the delivered article to Dräger Medizintechnik GmbH or to a workshop designated by Dräger Medizintechnik GmbH on a case-by-case basis. Should the Customer fail to comply with this obligation, Dräger Medizintechnik GmbH shall be released from any warranty.
9.6 The warranty shall not apply to any defects caused by acts of the Customer or third parties. In addition, no warranty claims shall exist with respect to delivered articles that have not been stored or maintained in accordance with the instructions for use accompanying such articles.
The warranty shall not extend to natural wear and tear.
9.7 In the event that Dräger Medizintechnik GmbH performs any warranty services, the warranty period shall be suspended for the duration in which the Customer is unable to use the delivered article on account of these activities by Dräger Medizintechnik GmbH.
9.8 All warranty claims, including those for repair or substitute delivery, are hereby expressly excluded for second-hand articles.
9.9 In the event that specially warranted qualities have not been achieved, the Customer may assert statutory claims for compensatory damages. Concerning any more extensive claims such as contract rescission and restitution (Wandelung), reduction in purchase price (Minderung) and right to cure (Nachbesserung) – nos. 9.2 through 9.8 shall apply.

10. Other Liability
Dräger Medizintechnik GmbH shall be liable for intentional and grossly negligent acts. It shall also be liable under the Product Liability Act (Produkthaftungsgesetz) for any personal injury or property damage on the private property of consumers which is caused by defects in the delivered article.
In the event contractual and other damage claims are asserted, Dräger Medizintechnik GmbH shall be liable for intentional acts of gross negligence. In the event of slight negligence, Dräger Medizintechnik GmbH's liability shall be limited to indemnification for the typical, foreseeable damages and shall not include indemnification for financial losses, Dräger Medizintechnik GmbH shall also be liable where the Product Liability Act (Produkthaftungsgesetz) imposes liability for personal injury or property damage to the private property of consumers caused by defects in the delivered article.

11. Copyright
Dräger Medizintechnik GmbH hereby reserves without limitation all ownership and copyrights in drawings, technical documents and other know-how. No such information may be disclosed to any third parties without the consent of Dräger Medizintechnik GmbH.

12. Data Protection
In accordance with § 26 of the Federal Data Protection Act (Bundesdatenschutzgesetz), Dräger Medizintechnik GmbH hereby provides notice that customer data is processed in connection with the business relationship will be processed and stored for Dräger Medizintechnik GmbH's own internal purposes.

13. Safety Regulations
The Customer shall be responsible for compliance with any national statutes, regulations and safety law provisions (product liability and workplace), in particular with respect to admission, installation, operation, maintenance and repair of the goods, and agrees to fulfill any and all such criteria. The Customer shall indemnify Dräger Medizintechnik GmbH against any and all claims arising from the Customer's failure to observe such provisions.

14. Place of Jurisdiction, Governing Law
14.1 Jurisdiction shall be established if the Customer is either a merchant (Kaufmann) as defined in §§ 1, 4 et al. of the German Commercial Code (Handelsgesetzbuch (HGB)) or a legal entity under public law, or a public fund. However, Dräger Medizintechnik GmbH may at its own discretion establish legal proceedings in the court having jurisdiction in the place of the Customer's domicile.
14.2 The law of the Federal Republic of Germany shall govern. The United Nations Convention on Contracts for the International Sale of Goods shall not apply.

Status: July 1997

2651V/fr
MVII

**Appendix C**
**to Distributor Agreement**

between

Dräger Medizintechnik GmbH
23542 Lübeck, Germany

- hereinafter called "Dräger MT" -

and

Life Care Technology S.A.E.
Cairo, Egypt

- hereinafter called "Distributor" -

**After-Sales Service**

Pursuant to Section 10.1 of the Distributor Agreement the Parties agree to the following provisions on establishing and performing the after-sales service by Distributor in the Territory:

**1.** Distributor shall establish and perform the after-sales service on a non-exclusive basis in the Territory according to the following regulations:

1.1 Distributor shall execute after-sales service at its own workshop and on customer's premises by Distributor's field service.

1.2 For after-sales service Distributor shall employ qualified service technicians. At least one technician must have sufficient knowledge of English.

Distributor shall inform Dräger MT of the names of its service technicians who are responsible for after-sales service. Distributor shall inform Dräger MT of any resignation and replacement of its qualified service technicians.

1.3 Distributor shall have its qualified service technicians attend all such training courses which are offered by Dräger MT to Distributor and indicated by Dräger MT as essential for Distributor, e.g. if none of Distributor's responsible service technicians has ever attended a training course

- 2 -

concerning the selected Product or if the selected Product has been changed technically.

1.4 Distributor shall provide its service technicians with workshop, working material, tools and measuring instruments indispensable for the service of the Products and according to the specifications of Dräger MT.

As far as such working material, tools and measuring instruments are manufactured or modified specially for Dräger MT, Distributor shall purchase such items only from Dräger MT.

1.5 For maintenance and repairs Distributor shall use only original Dräger MT Spare Parts and the consumables recommended by Dräger MT.

1.6 Distributor shall maintain at its own cost a stock of spare parts which are necessary for the service of the Products. The stock range must take into account the types and quantities of the Products which have been distributed in the Territory and the recommendations of DrägerService, Lübeck.

1.7 Distributor shall adhere to Dräger MT's "General Instructions on Establishing and Performing the After-Sales Service".

**2.** Dräger MT shall arrange training courses for the service technicians of Distributor in Lübeck, in the country of Seller, in the Territory or in any other country nearby the Territory whatever Dräger MT decides in its own discretion. Subject of the training courses shall be installation and after-sales service of single Products. The training courses shall be held in English.

Training fees and, if the training course is not held in Lübeck, travelling expenses and cost for boarding and lodging of the Dräger MT training manager and expenses for transportation of equipment shall be borne proportionally by the participating distributors.

Travelling expenses, cost for boarding and lodging and all other expenses of its participating service technicians shall be borne by Distributor.

**3.** For each Product Dräger MT will submit to Distributor against payment guidelines and instructions for after-sales service laid down in separate service documents in English. Dräger MT will decide in its own discretion on the kind of transmission (paper, micro film, CD ROM, databank/e.g. Lotus Notes, video clips etc.).

Service documents and other technical documents of Dräger MT shall be treated as confidential information which shall be used by Distributor only within the scope of this Distributor Agreement. Distributor shall not disclose

2651V/fr

- 3 -

any such documents to third parties and shall not submit copies or excerpts of any such documents to third parties.

Service-documents and other technical documents of Dräger MT remain Dräger MT's property and shall be returned to Dräger MT immediately upon expiration of the Distributor Agreement.

For the performance of after-sales service of Products supplied into the Territory Distributor shall follow the service-documents and all other submitted technical documents and shall observe all information of the training courses.

**4.**     Distributor shall perform after-sales service to the following extent:

4.1     Distributor shall, according to Seller's specifications, undertake the assembling, setting to work, testing, commissioning and handing-over of the Products supplied by Seller into the Territory and shall execute the training of the user and customer regarding the proper handling of such Products.

Distributor's labour and travelling cost shall be considered discharged by the discount or net price allowance as per Section 6.1 of the Distributor Agreement or by the commission allowance as per Section 7.2 or Section 7.4 of the Distributor Agreement.

However, if Distributor has not received any commission for direct supplies of Non-Exclusive Products, Distributor shall undertake all such services upon Seller's written order against reimbursement of Distributor's cost.

4.2     For Products supplied by Seller to Distributor, Distributor shall undertake all warranty services.

Distributor's labour and travelling cost shall be considered discharged by the discount or net price allowance as per Section 6.1 of the Distributor Agreement. However, during the warranty period agreed upon between Seller and Distributor, Seller shall deliver the Dräger MT Spare Parts for such repairs free of charge. The defective parts shall be kept available for Dräger MT.

4.3     In case of direct supplies according to Section 7.1 or Section 7.3 of the Distributor Agreement Distributor shall undertake all warranty services.

Distributor's labour and travelling cost shall be considered discharged by the commission allowance as per Section 7.2 or Section 7.4 of the Distributor Agreement. However, during the warranty period agreed upon between Seller and the customer, Seller shall deliver the Dräger Spare Parts for such repairs free of charge. The defective parts shall be kept available for Seller.

– 4 –

However, if Distributor has not received any commission for direct supplies of Non-Exclusive Products, Distributor shall undertake all warranty services upon Seller's written order against reimbursement of Distributor's cost.

4.4    In all other cases Distributor shall perform inspections, maintenance and repairs of the Products in the Territory by individual orders of its customers and for account of its customers.

4.5    In case of Product recall actions or corrective actions made by Seller, Distributor shall perform all services in the Territory as instructed by Seller and shall inform Seller in writing about completion of its service. For such services Seller shall bear the actual net labour and travelling cost and shall deliver the Dräger MT Spare Parts free of charge. The defective parts shall be kept available for Seller.

**5.**    Distributor shall inform Seller on the respective form letter of Seller about each case of defect occurring during the warranty period agreed upon between Seller and Distributor.

**6.**    Distributor shall strictly adhere to Dräger MT's instructions "Immediate Reporting of Customer Complaints" and "Warranty Claims".

**7.**    After prior announcement to Distributor Dräger MT shall be granted free access to Distributor's workshops and other service premises and Distributor shall assist Dräger MT in obtaining information about the efficiency of Distributor's after-sales service.

Lübeck, .....22 Okt. 99.........    Cairo, .....4/11/1999.....

Dräger Medizintechnik GmbH    Life Care Technology S.A.E.

2651V/fr

Dräger Medizintechnik



2654V/fr
MVII

<u>Appendix D</u>
<u>to Distributor Agreement</u>

between

Dräger Medizintechnik GmbH
23542 Lübeck, Germany

- hereinafter called "Dräger MT" -

and

Life Care Technology S.A.E.
Cairo, Egypt

- hereinafter called "Distributor" -

## Dräger Affiliates and their Products
(Issue: 27 October 1999)

"Dräger Affiliates" shall mean the companies of the Dräger-Group as set forth in this Appendix D, from whom Distributor shall order and purchase the following Products under the conditions of the Distributor Agreement and its Appendices A1, A2 and C.

"Seller" or "Sellers" shall mean Dräger MT and Dräger Affiliates jointly or severally.

As per Section 3 of the Distributor Agreement Dräger MT directs Distributor as follows:

1.    From    **N.A.D., Inc.**
**3135 Quarry Road**
**Telford, PA 18969**
**USA**
**Tel.: (* 1) 2 15 / 7 21 54 00**
**Fax: (* 1) 2 15 / 7 21 95 61**

Distributor shall order and purchase all NAD Medical Products.

Dräger Medizintechnik 

- 2 -

2.    From    **Draeger Ltd.**
              **Medical Division**
              **The Willows, Mark Road**
              **Hemel Hempstead**
              **Herts. HP2 7BW**
              **Great Britain**
              **Tel.: (* 44) 14 42 / 21 35 42**
              **Fax: (* 44) 14 42 / 24 03 27**

Distributor shall order and purchase the following Products:

8      **Medical Architectural Systems**

87     **British Standard Gas Management Systems (GB)**
871    Cylinder Manifolds (GB)
872    Compressed Plants (GB)
873    Vacuum Plants (GB)
874    Distribution Systems (GB)
875    Warning and Monitoring Systems (GB)
876    Suction Systems (GB)
877    Wall Outlets (GB)
878    Wall Rail and Accessories (GB)
897    Spare/Wear/Tear Parts for British Standard Gas Management
       Systems (GB)

3.    From    **Physio B.V.**
              **Hulswitweg 8**
              **2031 BG Haarlem**
              **The Netherlands**
              **Tel.: (* 31) 23 / 553 14 14**
              **Fax: (* 31) 23 / 553 14 37**

Distributor shall order and purchase the Products No. 774.

Dräger Medizintechnik 

- 3 -

4.    From    **Dräger Australia Pty. Ltd.**
              **3 Ferntree Place**
              **Notting Hill, Vic. 3168**
              **Australia**
              **Tel.: (* 61) 3 / 92 65 50 00**
              **Fax: (* 61) 3 / 92 65 50 95**

Distributor shall order and purchase all Operating Theatre Consumable Products made by Dräger Australia.

This Appendix D is subject to changes as provided in Section 21.4 of the Distributor Agreement.

* * *

**No. 393 of notary's document register for the year 1999**

This is to certify, that

1.    Holder of special authority Thomas Will,
2.    Holder of special authority Reinhard Frick,
business adress: Moislinger Allee 53-55, 23558 Lübeck, Germany,
- all known to me -,
on this day in my presence have signed this document,
in testimony whereof I have hereunto set my hand and affixed
the notarial Seal of Office.

The Notary asked the Appearer whether he or any member of his firm had acted in the matter
which is the subject of this instrument, except in a notarial capacity. The Appearer replied in
the negative.

Due to my inspection of the Companies'Register at the local court of Lübeck,
Registration No. HRB 4096, from November 18, 1999, I herewith certify that the
above mentioned gentlemen are entitled to jointly represent Dräger Medizintechnik
GmbH in 23558 Lübeck, Moislinger Allee 53-55.

Lübeck, November 29, 1999

Notary

Kostenrechnung

| | |
|---|---|
| Geschäftswert: 5.000,00 DM | |
| Gebühr §§ 141, 32, 45 KostO | 20,00 DM |
| Zusatzgebühr § 3 | 20,00 DM |
| Gebühr § 150 | 25,00 DM |
| Mehrwertsteuer 16 % § 151 a | 10,40 DM |
| Summe | 75,40 DM |

Notar

*vorsteher vorstehender*
Die Echtheit vorstehender Unterschrift des
Notars *Günther Willand*
in *Lübeck*
und die Echtheit des beigedrückten Dienst-
stempels Dienstsiegels werden hiermit be-
stätigt. Zugleich wird bescheinigt, daß der
Vorgenannte zur Vornahme der Amtshand-
lung befugt war.
Lübeck, den *01. Dezember 1999*
Der Präsident des Landgerichts Lübeck
In Vertretung

*A. Horst Greb,*
(Dr. Horst Greb)



Consulate General
Arab Republic of EGYPT
at Hamburg

Seen for legalisation of the signature of

Mr. *Dr. Horst Greb*

and of the seal *Landger. Lübeck*

Legalisation No. *1460*

Fees collected *DM 153,-*

Date *10.12.99*

The Consul General

B

2695V/fr
27/10/99

## Sales and Technical Assistance Agreement

between

Life Care Technology S.A.E.
13 El Khalifa El Wathek
Nasr City - Cairo
Egypt

- hereinafter called "LCT" -

and

Dräger Medizintechnik GmbH
Moislinger Allee 53 - 55
23542 Lübeck
Germany

- hereinafter called "Dräger MT" -

- LCT and Dräger MT together hereinafter called "the Parties" -

- 2 -

### Preamble

Dräger MT has a long-standing tradition of manufacturing medical products and has experience in world-wide sales and after-sales service of medical products.

LCT is distributor of medical products and has been appointed by Dräger MT as its exclusive distributor for Dräger Medical Products in Egypt.

LCT desires to receive from Dräger MT assistance in business management, marketing, sales performance, installation, and after-sales service of medical products, especially Dräger Medical Products, and Dräger MT is willing to grant such assistance to LCT on the terms and conditions set forth below in this Agreement.

NOW, THEREFORE, the Parties have agreed as follows:

1. **Sales and Technical Assistance and Consultancy Services of Dräger MT**

   Dräger MT shall consult, assist and advise LCT in the following matters regarding sales and technical service of medical products:

1.1  Business Management

   - management and control of business

   - organisation of business units (sales and service etc.)

   - selection and development of managers

   - human resources management

   - drafting of business plans

1.2  Finance

   - principles of accounting, controlling and reporting system

   - financing methods (loan, leasing, international aid programmes etc.)

   - contacts to financing institutes and aid organisation

   - working out budgets

- 3 -

### 1.3    Marketing and Sales Performance

- research on market situation and competition

- advertising medical products in appropriate media

- design of sales brochures and technical information material for different customer groups

- design of letter heads

- outfit of a showroom

- participation in exhibitions and congresses

- identification of potential customers and projects with respect to different medical products

- sales strategies and planning of sales activities

- organisation of meetings with potential customers, planning of negotiations with potential customers and demonstration of products

- preparation of sales forecast

### 1.4    Order and Contract Management

- finding and calculation of market prices

- preparation of quotations

- order generating and processing

- standard condition for supplies, installation and technical service (inspection, single repair, comprehensive maintenance etc.)

- keeping records of deliveries (date of dispatch, location, customer, product no. and serial no.)

### 1.5    Technical Service regarding Supply of Medical Products

- assembly and installation

- setting to work and testing

- handing-over of the products and training of the user

- 4 -

1.6    <u>Special Tasks regarding Fixed Installed Medical Gas Supply Systems</u>

- planning and engineering

- purchase of material according to Dräger quality standards

- installation

- supervising

- documentation

- testing and commissioning

- training of the user

1.7    <u>Technical Service</u>

- furnishing the workshop

- purchase of working material, tools, measuring and test equipment according to Dräger standards

- inspection according to Dräger test cards

- repairs and comprehensive maintenance services

1.8    <u>Training Centre</u>

- training of sales managers and engineers of Dräger distributors

- training of hospital engineers for first line repair service

1.9    <u>Services and Management in the Field of Medical Care and Hospital Projects</u>

1.10    <u>Maintaining a Stock</u>

- setting the requirements for a stock of products (for demonstration purposes, urgent deliveries etc.) and spare parts (quantity and types, conditions for delicate parts like plastic, rubber etc.)

- drafting and keeping inventory lists

2695V/fr

- 5 -

**2.      Methods of Services**

Dräger MT shall render its consultancy and assistance services to LCT by the following methods:

2.1     Dräger MT shall arrange training courses for the sales managers and the service technicians of LCT in Cairo or in Lübeck.

If the training course is held in Lübeck, LCT shall bear the travelling expenses, cost for boarding and lodging and other expenses of its participating sales managers and technicians.

2.2     Training managers, sales managers or service engineers of Dräger MT shall be present in Egypt for approximately 48 working days per calendar year in order to render consultancy and assistance services to LCT (i. e. approximately 20 days for technical service, 20 days for sales support and 8 days for business management).

2.3     Dräger MT shall submit to LCT sales and technical service documents in English (e. g. Dräger quality standards, Dräger guidelines and instructions for installation and after-sales service, Dräger management guidelines and principles of accounting and reporting).

2.4     Dräger MT is entitled to render the consultancy and assistance services through other companies of the Dräger Group

| (e. g. | NAD Inc. (USA) | for US-made anaesthesia equipment, |
| | Draeger Ltd. (UK) | for medical gas supply systems according to British Standard, |
| | Dräger TGM GmbH (Germany) | for medical care and hospital management, |
| | DrägerForum GmbH (Germany) | for management training) |

**3.      Fees and Payment**

3.1     In consideration of the consultancy and assistance services rendered by Dräger MT to LCT and in consideration of Dräger MT's grant of the right to use the know-how contained in advices and information transferred orally or in writing by Dräger MT to LCT in order to operate the business and technical services according to Dräger MT's advices, information and documents, LCT shall pay to Dräger MT the following fees:

3.1.1   a basic fee of 2 % of LCT's total gross revenue,

2695V/fr

- 6 -

3.1.2  an incentive fee of          of the net profit before tax which exceeds          of the total annual profit of LCT (before deduction of Egyptian taxes on profit), i. e.:

|   LCT's total   annual profit | calculation basis für the incentive fee is the following profit | the incentive fee is the following profit |
|---|---|---|

3.2  LCT shall make payment

- of the basic fee      until 31 July and 31 January of each year for the preceding calendar half year; and
- of the incentive fee    until 31 January of each year for the preceding calendar year.

## 4.  Responsibilities and Obligations of LCT

4.1  LCT shall employ qualified general manager, sales managers and service technicians who must have sufficient knowledge of English.

LCT shall have its general manager, sales manager and service technicians attend all such training courses which are offered by Dräger MT to LCT and indicated by Dräger MT as essential for LCT.

4.3  LCT shall take care that its general manager, sales managers and service technicians are present whenever it is required by Dräger MT during the visit of its representatives in Egypt (after having given prior announcement of the names of LCT's staff members).

4.4  After prior announcement to LCT Dräger MT shall be granted free access to LCT's premises and workshop and LCT shall assist Dräger MT in obtaining information about the efficiency of LCT's sales efforts and technical service.

-7-

4.5     LCT shall follow the advices of Dräger MT and shall observe all information given by Dräger MT, whenever it is indicated by Dräger MT as essential for successful business of LCT.

4.6     LCT shall not do or omit to do any task which may in the opinion of Dräger MT damage or conflict with the interests of the business or other distributors of Dräger MT.

4.7     LCT shall observe the range of prices recommended by Dräger MT.

**5.**     **Business Plan, Budget and Reports**

LCT shall adhere to Dräger's Business Plan and Budget Procedures and to Dräger's monthly and quarterly Reporting System.

**6.**     **Liability of Dräger MT**

6.1     LCT acknowledges that Dräger MT has based its advices and recommendations for business management, marketing and sales support on experience actually obtained tin its long standing practice but Dräger MT does not give any guarantee or warranty with regard to the matters as contemplated in Section 1 or generally in connection with the sales and service volume and its profitability or any other aspect of the business.

6.2     Regarding the technical advice, assistance and know-how, given by Dräger MT to LCT for installation and technical service of Dräger Medical Products, Dräger MT warrants that such technical information and know-how is sufficient to perform the installation and service of Dräger Medical Products. Such warranty is limited to completion of missing technical documents and to correction of errors in the technical documents with the exclusion of any other direct or indirect liability of Dräger MT.

**7.**     **Confidentiality**

LCT hereby acknowledges that the advices and all information, knowledge and know-how related to the consultancy and assistance services as per Section 1, information of the distribution and service net work of Dräger MT and trade secrets of the Dräger Group (given by Dräger MT to LCT orally or in writing) is of a strictly confidential nature and accordingly LCT shall preserve in strict confidence all such information and know-how and shall refrain from disclosing it to third parties during the period of this Agreement and any time after expiry of this Agreement.

- 8 -

8.    **Period of this Agreement**

8.1    This Agreement shall come into effect immediately after it has been signed by both Parties and it shall continue until 31 December 2003. Thereafter it shall continue from year to year unless terminated by one of the Parties to the end of a calendar year with a 6 months notice. First notice of termination may be given until 30 June 2003 with effect on 31 December 2003.

8.2    Notwithstanding Section 8.1, Dräger MT is entitled to terminate this Agreement with a 30 days notice upon occurrence of the following events:

8.2.1    LCT has failed to receive the governmental approval in Egypt concerning its activities for Dräger Medical Products as importer, distributor (e. g. S 14 Form), installation and engineering company and service workshop until 1 January 2000 or LCT has failed to commence its business until 1 January 2000.

8.2.2    LCT has failed to operate its business according to Dräger MT's advices, consultancy and assistance services which have been indicated by Dräger MT as essential as contemplated in Sections 4.5 and 4.7, and such failure has not been resolved by LCT within 45 days after written notice thereof is given to LCT.

8.2.3    LCT has failed to pay the fees as per Section 3, and such failure has not been resolved by LCT within 30 days after written notice thereof is given to LCT.

8.2.4    LCT has failed to submit to Dräger MT in a timely manner any of the accountings, reports or management information as required under Section 5, and such failure has not been resolved by LCT within 30 days after written notice thereof is given to LCT.

8.3    Notwithstanding Section 8.1, both Parties are entitled to terminate this Agreement with a 30 days notice upon occurrence of the following events:

8.3.1    The other Party has committed any material breach of its obligations hereunder (other than defaults addressed in Section 8.2) and such breach is not resolved within 45 days after written notice thereof is given to the Party in breach of this Agreement.

8.3.2    Either Party has adjudged a bankrupt, or has a receiver appointed in respect of its assets or shall make any arrangement or composition with its creditors or shall be wound up, whether voluntarily or compulsorily, or make a general assignment for the benefit of creditors.

8.4    The notice of termination shall be given be registered mail.

2695V/fr

- 9 -

8.5    Notwithstanding Section 8.1 this Agreement shall be terminated automatically upon termination of the Distributor Agreement between Dräger MT and LCT.

9.    **Return of Information Material**

Immediately after expiration of this Agreement LCT shall return to Dräger MT all samples, specifications, drawings, test schedules, technical information, management information, sales brochures and literature and all other data which LCT has received from Dräger MT or from any other company of the Dräger Group in relation to this Agreement and which are not meant for submission to third parties. In respect of such information and materials LCT has no right of retention.

10.    **Miscellaneous**

10.1    It is hereby expressly agreed between the Parties that each of the obligations and restrictions contained in this Agreement is fair and reasonable and does not unreasonably interfere with the freedom of action of any of the Parties and that both Parties who into this Agreement with the full knowledge of all the provisions hereof.

10.2    All modifications and amendments to this Agreement must be in writing.

10.3    This Agreement and the rights hereby granted and the obligations hereby stated are not assignable or in any manner transferable to any third party.

10.4    In the event any of the provisions of this Agreement become invalid or unenforceable for legal reasons, the validity of the remaining provisions shall not be affected. The Parties undertake to replace such invalid or unenforceable provision in a way that best meets the commercial intentions of this Agreement.

11.    **Applicable Law**

This Agreement shall be governed, construed and interpreted in accordance with the German laws.

12.    **Arbitration**

All disputes arising in connection with this present Agreement shall be exclusively and finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by three Arbitrators appointed in accordance with the said Rules.

2695V/fr

- 10 -

The award shall be in writing and shall contain the reasons for the decision.

The language of the arbitration proceeding shall be English.

The arbitration proceeding shall be held in Cairo, Egypt.

Lübeck,    2 7. Okt. 99

Dräger Medizintechnik GmbH

Cairo, ..... 4./.11./.1.9.9.9....

Life Care Technology S.A.E.

C

1249V/ctb
21/01/00

# First Amendment to the Distributor Agreement
## signed on 27/10/99 and 04/11/1999

between

Dräger Medizintechnik GmbH
Moislinger Allee 53 - 55
23542 Lübeck
Germany

- hereinafter called "Dräger MT" -

and

Life Care Technology S.A.E.
13 El Khalifa El Wathek
Nasr City - Cairo
Egypt

- hereinafter called "Distributor" -

- both Dräger MT and Distributor together hereinafter called "the Parties" -

The Parties wish to amend the Distributor Agreement as follows, and Dräger MT agrees to these amendments.

Clause 7.2.2 shall be replaced by the following wording:

7.2.2   In any case the total commission for arranged direct supplies into the Territory shall be    % on invoiced prices. The commission shall be paid in EURO.

Clause 22 shall be amended and shall read:

22.   **Modifications and Amendments**

22.1   All modifications and amendments to this Agreement and its Appendices must be in writing.

22.2   Dräger MT shall inform the Egyptian Consulate in Hamburg, Germany, of any modification or amendment to this Agreement.

All other provisions of the Distributor Agreement shall remain unchanged.

Lübeck, ....... 2 L 1 00

Dräger Medizintechnik GmbH

Wir beglaubigen die vorstehende *I n*
Unterschrift *I en*

Lübeck, d  2 6. Jan. 2000

Industrie- und Handelskammer zu Lübeck

I. A. H. Gramitzki

1249V/ctb



**Consulate General
Arab Republic of EGYPT
at Hamburg**

Seen for legalisation of the signature of

Mr. Grawitzki

and of the seal Hr Lübeck

Legalisation No. 0477

Fees collected DM 155.—

Date 24.01.2000

The Consul General

D

CERTIFICATE OF ACCURACY

<u>TRANSLATION</u>
From Arabic to English

Mohamadou Issa Bello

1)   I am an attorney by profession and have 3 years experience in translating Arabic to English and English to Arabic. I received an L.L.B. Degree in Law from Law School – AlAzhar University in June 2004.

2)   I am thoroughly conversant in both the Arabic and English languages.

3)   I have carefully made the attached translation from the attached original document written in Arabic.

4)   The attached translation is a true and correct English translation of such original document, to the best of my knowledge and belief.

Dated: 27 March, 2007

Mohamadou Issa Bello

وزارة التجارة و الصناعة

مصلحة التسجيل التجاري

الإدارة العامة لمكتب التسجيل التجاري بالقاهرة

مستخرج رسمي من السجل التجاري رقم ٥١٠٠٢٩١١٥٠٧٤٢

رقم مسلسل المنشأة ٥١٠٠٢٩١١٥٠٧٤٢

١/١ صفحة رقم ٥١٠٠٢٩١١٥٠٧٤٢

١٤:٠٤:٠٤ ٢٠٠٧/١٢/١٢

**Ministry of Commerce and Industry**
**Commercial Registration Department**
**General Administration for Commercial Registry**
**Commercial Registry office for Cairo Governorate**

Exact copy of the Commercial Registry No. 286521
Serial No. of the entity: 521003911 – Page ¼ [(Sic) 1/3]
3 December 2006    12:09:05

| (1)<br>(A)Deposit number<br>(B)Deposit date<br>(C)Registration number in the commercial registry<br>(D)Deposit number of renewal request<br>(E)Date of filing renewal request<br>(F) Renewal date | (A)<br>1- Commercial name<br>2- Commercial mark<br>3- Name which the merchant practices his commerce.<br><br>(B)<br>1-<br>2- Type of the company<br>Name of the company, its name or name of the co-operative society<br>3- Commercial brand<br><br>(c) Commercial brand of the branch | (A) Name of the merchant, his title, his date and place of birth and his nationality.<br>(B) Names and titles of the responsible partners jointing in joint liability or joint-venture companies, date and place of birth for each of them and his nationality.<br>(C) Names and titles of the partners or the others who are authorized for the administration of the company and who have the right of signature with its name, character of each of them, his date and place of birth, his nationality and the extent of their authority in administration and signature.<br>(D) Names and titles of members of the board of directors in joint-venture companies or the co-operative society, their managers' representatives, character of each of them, his date and place of birth, his nationality and the extent of their authority in administration and signature.<br>(E) Name and title of the main branch manager or general agency in Arab Republic of Egypt, his date and place of birth and his nationality (if the general head quarter of the company is abroad). |
| (1) | (2) | (3) |
| 1-<br>(A)<br>a. 19104<br>b. 17/12/1994<br>c. 286521<br>(2)<br>a. 70<br>b. 3/1/2000 | (B)<br>A Joint Stock company<br>Law No.159 of 81 and its regulation<br>1307(D) 1994 signature is authenticated.<br>1-Medequip Co. for Trade & Contracting (S.A.E). | (D)<br>Amgad Zarif Ibrahim, Egypt. (Board of directors' member): His resignation accepted.<br>Farouk Abdel Sameie Hassan Mohamed 12/11/1943 (El-Menia, Egypt) a member in the board of directors shall continue for five years, and he has the right of signing on behalf of the company separate of the Chairman and any of the delegated members of the board of directors and any other member who is delegated by the board for this purpose, the Board may authorize several directors or delegated agents to sign on behalf of the company severally or jointly.<br>Michel Raymond Michel Lakah 26/5/1968 – Egypt, Cairo (Board of Directors member).<br>Ramy Raymond Michel Lakah 10/11/1963 Cairo, Egypt (Board of Directors member). |

Continued (3) (D)

(1)

Michel Raymond Michel Lakah 26/5/1968 (Cairo, Egypt) Vice-Chairman and a Managing Director.

Ramy Raymond Michel Lakah 10/11/1963 (Cairo, Egypt) Chairman and a Managing Director.

Both of Mr. Ramy Raymond Michel Lakah (Chairman and a Managing Director) & Michael Raymond Michel Lakah (Vice-Chairman and a Managing Director) have the right to sign solely on behalf of the company at the banks.

They also have the right to sign on the building sale & purchase contracts in the name of the company and for the purpose of the company before the Real Estate and Authentication Department, the Official authorities and the Public Sector and Private Sector business, in addition to signing on the banking and credit facilities .Each of the said persons has the right to delegate any other person to perform all or any of the above.

Farouk AbdelSameie Hassan Mohamed 12/11/1943 (El-Menia, Egypt) (Member of the Board of Directors).

Continued (3) (D)

(6)

Ramy Raymond Michel Lakah 10/11/1963 (Cairo – Egypt) (Chairman)

Delegating each of / (1) Mohamed Belal Al-Sayed Ali Al-Debag, (2) Lotfy Entewan Lotfy (3) Wageeh Shokry Yonan, to sign on behalf of the company at Cairo Paris Bank, Heliopolis branch.

Secondly: They also have the right of signing separately on behalf of the company for all of the contracts of the banking and credit facilities and mortgage and for the procedures related to them at Cairo-Paris Bank, Heliopolis Branch.

|  |  | Continued (3) (D) |
|--|--|--|
|  |  | (7) Ramy Raymond Michel Lakah 10/11/1963 (Cairo-Egypt) (Chairman). |
|  |  | Delegating Mr. Hany Raymod Michel Lakah for receiving all of the cheques issued for the favor of Medex Co. for Trading & Contracting S.A.E, issued by the Armed Forces, the police Department, and by all of the governmental Authorities. |
|  |  | Continued (3) (D) |
|  |  | (8) Ramy Raymond Michel Lakah 10/11/1963 (Cairo-Egypt) (Chairman and a Managing Director). |
|  |  | Acceptance of the company becoming a subsidiary of the International Co. for Investments ((L.K.H) Group S.A.E, commercial Registry No. 318697 (Cairo) |

| (A)  Type of commerce Or (B)  Purpose of establishing the company or co-operative society. | 1.   Date which the merchant starts his commercial (A) works in Arab Republic of Egypt. 2.   Date of license for practicing the commerce. (B) Date of starting the company, date of its termination and date of license for practicing the commerce or approval of investment authority. (C)   Date of inaugurating the branch or the agency. | (A) Address of the head quarter. (B) Address of the general center of the company or co-operative society. (C)  Number of registering the head quarter or the general center (in case of registering the branch) |
|---|---|---|
| (4) | (5) | (6) |
| (B)Contracting .in general. Specially supply of Turn Key Equipped hospitals - Import and agents and local sale, Marketing, and Distribution – Maintenance and training-Offering the technical - Trading advice within the company objects, and the company has been allowed to have a benefit or to participate in any manner, with companies doing business in similar fields, or with companies which may help it to achieve its objects whether in Egypt or abroad. The company is allowed to take part in these works or to be affiliated to them according to the regulation of the law and its Executive Regulation. | (B) 25 years from 13/12/1994 to 12/12/2019 | (B) 68 Al-Merghany, Apt. No. 16, Heliopolis, Cairo. (B) (4) 1.Ahmed Ismail St., at the back of Sheraton-Heliopolis Hotel, Heliopolis, Cairo. |

| (A)    Addresses of branches and agencies followed to the head quarter or general center.  (B)    Address of the branch or agency (in case of registering the branch or agency) | (A) Authorized Representatives (B)    Manager of branch or agency (name and title of each of them, his date and place of birth and his nationality). | (A)    Amount of the invested capital in the head quarter of the merchant, branches and agencies followed to him.  (B)    Amount of capital of the company or co-operative society.  1-    Amount of money paid.  2-    Amounts of money which the partners committed paying them.  3-    Amount of quota of silent partners.  4-    Amount of material quotas (if found).  (C)    Indebted branch balance to the general position of the company. | (A) Locations which were for the merchant previously.  (B) Locations which are for him.  1- In the circle of the same office.  2- In the circle of other offices. |
|---|---|---|---|
| (7) | (8) | (9) | (10) |
| (B) (3) 25, Victor Emmanuel St., Apt.901, Somoha, Sidi Gaber, Alexandria. | (D) (3) Mr. Mohamed Ali Hamza, Cairo, Egypt (Branch Manager) | (B) The amount of which   the partners committed to pay is 187,500 LE The paid amount is 62500LE The issued capital is 250,000 LE The authorized capital  is20,000,000LE (b) (2) The paid amount is 250000LE (B) (3) The paid  amount is 20000000LE The paid  amount is 20000000LE The issued capital is 20000000LE The issued capital is 20000000LE (B) (5) The authorized capital 200000000LE The paid amount is 80000000LE The issued capital 80000000LE Issuing a  number of 800000    share, each of 100 LE | - |

| Registration No:<br><br>(a) Trade marks<br>(b) B- Patents<br>C- Industrial drawings and forms | A) Financial system which marriage got in accordance with it.<br>B) Commercial nationalism.<br>C) Each contract obligates freeing of the company or laying it under settlement. | Remarks<br>1) Rules and resolutions issued for the signature of confiscation upon the merchant or by appointing the responsible and representatives for the absent or by separating them or by raising the confiscation.<br>B) Rules and orders concerning bankruptcy.<br>C) Rules of re-consideration.<br>D) Rules issued with divorce, bodily or financial separation and resolutions issued by giving the permission to the merchant with merchandising, canceling or restricting it.<br>E) Rules of dismissing the partners or isolating the managers and rules of freeing the companies or voiding them and appointing the settlers or separating them.<br>F) Statements concerning sale of commercial location or mortgaging it in accordance with the law No. 11 for the year 1940. | Margin |
|---|---|---|---|
| (11) | (12) | (13) | (14) |
| - | - | (B)<br><br>Deposited under no. 19104 dated 17/12/1994, in case no. 637 dated 1/1/2001 (the date of the Judgment which ordered that),each of Ramy Raymond Lakah, his wife, his two underage daughters, Michel Raymond Lakah & his wife, and his two sons were restrained from transacting or disposing of any of their properties whether in their real estate, movable, or monies 20010131 | 1. 3665  14/3/1995<br>2. 2900  2/3/1996<br>3. 6273  24/4/1996<br>4. 775  18/2/1998<br>5. 873  30/3/1998<br>6. 3353  29/7/1998<br>7. 3763  17/8/1998<br>8. 6294  19/12/1998<br>9. 3809  13/7/1999<br>10. 4238  3/8/1999<br>11. 4937  9/9/1999<br>12. 1111  1/1/2000<br>13. 70  3/1/2000 |

Continued the squares set forth in the previous page
Any handwritten changes or deletion cancels this document
Serial No. of the company: 521003911 – Page 3/4
/2006   12: 09:05

Continued (No. 3(D)
(9)
Ramy Raymond Michel Lakah 10/11/1963 (Cairo, Egypt) (chairman). The company is managed by aboard of at least 3 members, at most 15 members may be elected by the General Assembly, provided that each member must have a value of shares of at least 5000 LE (five thousand LE). It is allowed, by a decision of the board of directors, to have at most two members of experience to be appointed to the board of directors, who do not own shares provided that the General Assembly to confirm them in its first following session.

Continued (No. 3) (D)
(10)
Michael Raymond Michel Lakah 26/5/1968 (Cairo – Egypt) (vice chairman, and a Managing Director).
Samy Philip Totongy 2/5/1959(Cairo –Egypt)(vice chairman , and a Managing Director).
Ramy Raymond Michel Lakah 10/11/1963 (Cairo –Egypt)( chairman , and a Managing Director). Provided that each of Mr. Ramy Raymond Michel Lakah (chairman) and Mr. Michel Raymond Lakah (vice chairman , and a Managing Director), Mr. Samy Philip Totongy) (vice chairman, and a Managing Director), Mr. Rafeek Michel Shehata (a Managing Director), Mr. Mohamed Belal Al-Sayed Ali, and Mr. Ramy Moustafa Fadel have the right to sign on the behalf of the company but not at the banks and they have the right to sign on the sales & purchases contracts in the name of the company within the scope of the company objects and in the Real Estate Registration and Authentication Department, Official governmental authorities, non governmental, and the public and private sectors. They also have the right to sign on banking and credit facilities contracts and mortgages. Each of the said persons has the right to delegate any other person to perform the aforementioned in full or in part.
Rafeek Michel Shehata 4/10/1963 Cairo-Egypt, a delegated member.
George Shawky Farag 10/2/1962 Egypt a member of the board.
Hala Mohamed Foad Al-Fooly (Egypt)a member of the board
Mona Mohamed Abdel Gawad (Egypt) a member of the board
Amgad Zarif Ibrahim 13/1/1959(Egypt) a member of the board
Wageeh Shokry Barakat 26/8/1961(Cairo, Egypt ) a member of the board.
Ameer Reda Abdel Messiah 29/8/1958(Egypt) a member of the board
Sherif Nageeb Shaerawy (Egypt) a member of the board
Farouk Abdel Samea Hassan Mohammed 12/11/1943 (El-Menia , Egypt) a member of the board : Accepted his resignation

(D)
(11)
Samy Philip Totongy 2/5/1959(Cairo –Egypt)(vice chairman , and a Managing Director)
Michel Raymond Michel Lakah 26/5/1968 (Cairo – Egypt) (vice chairman, and a Managing Director
Ramy Raymond Michel Lakah 10/11/1963 (Cairo – Egypt) (chairman, and a Managing Director), Mr. Michel Raymond Lakah (vice chairman and a Managing Director),Mr. Samy Philip Totongy (vice chairman and a Managing Director), and Mr. Rafeek Michel Shehata (Managing Director) are exclusively authorized to sign on behalf of the company at the all of the banks and they also have been  the right of signing on the sales and purchase and  any other contracts in the name of the company and for its own purposes in the Real Estate Registration and Authentication Department, Official, governmental authorities, public and private business sectors in addition to signing on banking and credit facilities contracts and mortgages. Each of the said persons has the right to delegate any other person to do the said tasks partially or in full.
Rafeek Michel Shehata 4/10/1963 (Cairo-Egypt)( a Managing Director)

(D)
12
Samy  Philip Totongy 2/5/1959 (Cairo – Egypt) (vice chairman, and a Managing Director)
Michel Raymond  Michel Lakah 26/5/1968 (Cairo – Egypt) (vice chairman, and a Managing Director
Ramy Raymond  Michel Lakah 10/11/1963 (Cairo –Egypt) (chairman, and a Managing Director)
Rafeek Michel Shehata 4/10/1963(Cairo-Egypt)( chairman, and Managing Director)
Hala Mohamed Foad Al- Fooly (Egypt)(A member of the board).
Wageeh Shokry Yonan (Egypt) (A member of the board).
Ameer Reda Abdel Messiah 29/8/1958) (A member of the board).
Sherif Nageeb Shaerawy (Egypt) (A member of the board).
Mona Mohamed Abdel Gawad) (A member of the board): her resignation accepted.
Amgad Zarif Ibrahim (A member of the board): his resignation accepted.

---

Government Eagle Seal (Stamp)

---

Name of Request or of Copy
Charges paid by Receipt # 2895 on 13/11/2006
Prepared on 3/12/2006
Secretary of the Commercial Registry Office (Signature)