## DECLARATION OF
## MICHAEL HAIGH

**MICHAEL HAIGH,** states and declares as follows:

I am a citizen of the United Kingdom and currently reside in Attica, Greece.

I am currently a Vice President for International Projects for Dräger Medical AG & Co. KG ("Dräger"). Dräger develops and markets advanced medical technology and equipment, distributed via exclusive partnerships with regional distributors. I have been an employee of Dräger since 2000.

My relationship with Ramy Lakah and the Lakah group of companies began in the mid-1980s. At that time, I was associated with the medical equipment division of Hewlett Packard ("HP") in Geneva, Switzerland. In that capacity, I was involved in, among other things, developing HP's distribution relationships in Egypt. In or about 1986-87, HP began a business relationship with Ramy Lakah, then in his mid twenties.

At that time, the Lakah family business was focused on the distribution of medical equipment. Dr. Raymond Lakah -- the father of Ramy and Michel, and the patriarch of the Lakah family -- began the Lakah medical distribution business in Egypt and developed personal relationships with professionals in the Egyptian Ministry of Health. The Lakah family's medical distribution activities where conducted in Europe by Ramy's uncle, Edmund Lakah. Ramy and his younger brother, Michel Lakah, took over the Egyptian and European businesses in or about 1987.

In or about 1986-87, HP engaged Medequip for Trading and Contracting, S.A.E. ("Medequip"), the Lakah-owned medical distribution company in Egypt, as its exclusive Egyptian distributor. That relationship was successful for HP.

I joined Medequip as Vice President of International Development in or about 1992. In that position, I was principally involved in the development of "turnkey" projects within Egypt. Additionally, I actively participated in the formation of Lakah Group entities to distribute medical equipment in Europe and elsewhere in the Middle East.

For example, Trading Medical Systems Egypt, S.A.E. ("TMSE") was formed in Egypt to service and distribute Toshiba medical products in the Middle East and French speaking Africa -- a relationship that I personally developed together with Ramy Lakah and Ramy Oda Pacha in the mid-1990s.

In Europe and elsewhere in the Middle East, Medequip France, S.A., an entity that had been formed in the 1980's by Ramy Lakah's uncle, Edmund Lakah, conducted the medical equipment business. Medequip France is owned directly by Ramy and Michel Lakah. It was established to consolidate product shipments from various European and Asian medical suppliers, primarily for use in the large-scale turnkey operations in Egypt. It also did some small turnkey projects in countries like Jordan and Oman. Medequip France also did medical equipment distribution through subsidiaries that I helped to form, including Trading Medical Systems Turkey (an entity that distributed medical equipment products in Turkey) and Eurotechniques, Hellas (which distributed HP/Agilent medical products in the Greek market).

During my time with the Lakah Group, which ended in or about May 2000, I had extensive personal and professional contact with Ramy Lakah and to a lesser extent his

brother, Michel. Ramy and Michel retained ownership control over the operating companies within the Lakah Group, including Medequip, TMSE and their respective subsidiaries, by complete or nearly complete stock ownership, or through trusted nominees.

Throughout my employment by the Lakah entities, I personally established Lakah contacts with several medical equipment suppliers, including Dräger, Olympus KeyMed, B Braun, Malincrodt. Through about 1995, Ramy Lakah was intimately involved in the development and growth of these business relationships, but by the mid-1990s I became largely responsible for maintaining supplier relationships.

In the mid-1990's, the Lakahs began to diversify their business beyond the distribution and servicing of medical equipment. During the 1990's, the Lakah group of companies grew to include operations in, among other things, commercial construction, steel production, and commercial airlines.

At that time, day-to-day operations of the medical distribution business in Egypt was largely handled by Lakah's cousin, Sami Toutoungui -- who managed Medequip -- and other close associates like Adel Shourbagy and Ramy Oda Pacha -- who managed TMSE. After 1995, I found it increasingly difficult to communicate directly with Ramy Lakah and often had to go through Michel Lakah, or other intermediaries.

By late 1999, it appeared that many of the Lakah companies were experiencing severe financial shortages. At that time I was working at Eurotechniques, Hellas in Greece, and from that vantage point, funding for medical projects, including those of Eurotechniques, was consistently late or simply unavailable. On the medical side, turnkey projects were not being completed; on the construction side, hotel projects were

stalled and suffering from cost overruns. In short, it appeared from the inside that there were insufficient resources to fund these projects.

The financial problems persisted despite the raising of substantial financing through certain bond issuances by the Lakahs' holding company (Holding Company for Financial Investments) and by the steel factory (Arab Steel Factory), and a 1999 Lakah Group IPO.

From my perspective, it appeared that the Lakah family businesses -- particularly the medical business -- were being bled dry, and newly-raised funds were being siphoned off to other companies and other projects or to pay those other companies' creditors. Indeed, substantial proceeds from completed turnkey projects were obviously not being reinvested into the medical distribution business. Rather, those funds were likely diverted elsewhere to non-medical company projects or to cover the costs of Ramy and Michel Lakah's lavish lifestyles, which included leasing a private airplane and purchasing a great deal of personal real-estate.

This pattern was consistent with what Ramy Lakah had apparently done as early as 1994, when it appeared that he had misused financing that had been obtained based on the representation that it would be used to purchase Toshiba medical equipment; instead, he used it to fund a real estate purchase for the benefit of his steel operations. Meanwhile, the medical equipment distribution business was being deprived of the benefit of its own cash flow and the medical equipment distribution business very much needed the use of its revenues. For example, TMSE was burdened by its having regularly given its customers free long-term warranty contracts on its Toshiba medical

equipment. Those costly warranties contracts generated sales, which satisfied TMSE's suppliers, but were an overall drain on TMSE's profitability.

In or about 1999-2000, I spoke with Michel Lakah concerning shortages of necessary funding for Eurotechniques Hellas ("EH"). At that time, Michel suggested a financing scheme whereby the 1999 12% Eurobonds that were owned by the Lakahs personally would be used as collateral to obtain a substantial credit facility in favor of EH. (I believe that it was at some point during this conversation, or shortly thereafter, that I was told that the Eurobonds had not been fully subscribed, and that the Lakahs themselves had retained/purchased a substantial number of bonds in order to satisfy certain prerequisite requirements for issuance.)

Indeed, it appeared to me that by 1999, the Lakah empire had become something of a pyramid scheme. Indeed, I recall that during one of our conversations during that time, Ramy bragged that he was simply borrowing money from one bank to pay off loans from another.

By March 2000, salaries were no longer being paid from Egypt. I left the Lakah Group with a considerable sum in unpaid salary owing and tried unsuccessfully to recoup some of my losses from the Greek entity. Shortly after I began to develop Dräger's international business and then was appointed Managing Director of its business in the UK and, latterly, international turnkey business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct, and that any annexed documents are complete, accurate and presented here as kept in the ordinary course of business.

Executed: August 31st, 2006.

_____
Michael Haigh