# TERMS AND CONDITIONS OF THE BONDS

The following, subject to completion and amendment, is the text of the terms and conditions of the Bonds (the "Conditions"), which will be attached to the Global Bonds in registered form and will be attached to or endorsed upon each Definitive Bond, with such amendments or modifications thereto as may be made in accordance with such Conditions and the Indenture.

## 1. The Bonds and the Guarantee

### (a) The Bonds Generally

This Bond is one of a duly authorized issue of Bonds, having the benefit of the Guarantee referred to below, issued in accordance with (i) the Indenture dated as of December 8, 1999 (as amended and supplemented from time to time, the "Indenture") among Lakah Funding Limited (the "Issuer"); Holding Company for Financial Investments (Lakah Group), S.A.E. ("the Lakah Holding Company," the "Parent Guarantor" or a "Guarantor"); Medequip for Trading and Contracting, S.A.E, Trading Medical System Equipment, S.A.E. and Arab Steel Factory, S.A.E. (each, a "Guarantor" or a "Subsidiary Guarantor"); and The Bank of New York, acting through its principal corporate trust office in New York City, as the trustee for the holders from time to time of the Bonds (in such capacity and any successor to it in such capacity, the "Trustee"); and (ii) the Paying Agency Agreement dated as of December 8, 1999 (as amended from time to time, the "Paying Agency Agreement") by and among the Issuer, the Guarantors and The Bank of New York, acting through its principal corporate trust office in New York City, as the principal paying agent, a transfer agent and the registrar for the Bonds (in those respective capacities and any successor to it in those capacities, the "Principal Paying Agent," a "Transfer Agent" and the "Registrar"); The Bank of New York, London branch, as a paying agent and a transfer agent for the Bonds (in those respective capacities and any successor to it in those capacities, a "Paying Agent" and a "Transfer Agent"); and Banque Internationale à Luxembourg S.A., as a paying agent and a transfer agent for the Bonds and the agent for the listing of the Bonds on the Luxembourg Stock Exchange (in those respective capacities and any successor to it in those capacities, a "Paying Agent," a "Transfer Agent" and the "Luxembourg Listing Agent").

All Persons from time to time entitled to the benefit of obligations under this Bond and the Guarantee shall be deemed to have notice of all of the provisions of the Indenture and the Paying Agency Agreement and shall be entitled to the benefit of all the provisions of the Indenture and the Paying Agency Agreement. Copies of the Indenture and the Paying Agency Agreement are available for inspection, upon reasonable prior notice and during normal business hours, at the offices of the Trustee, currently located at 101 Barclay Street, Floor 21W, New York, New York 10286; at the offices of the Paying Agent in London, currently located at 1 Canada Square, London E14 5AL, England; and at the offices of the Paying Agent in Luxembourg, currently located at 69 Route d'Esch, L-1470, Luxembourg.

Words and expressions defined in the Indenture shall have the same meanings when used herein unless the context otherwise requires or unless another meaning is given herein to the relevant word or expression. References herein to "Bonds" shall, as the context may require, be deemed to be references to the Global Bonds or the Definitive Bonds (each, as defined below) Outstanding at the relevant time.

The Issuer has the right, from time to time without the consent of the Holders of the Bonds, to issue additional Bonds that will be consolidated with, form a single issue with, and increase the aggregate principal amount of, the Bonds.

### (b) The Guarantee

The payment of all sums expressed to be payable by the Issuer under any Bonds when and as the same become due and payable are jointly and severally, unconditionally and irrevocably guaranteed by the Guarantors pursuant to a guarantee dated as of December 8, 1999 (the "Guarantee") made by the Guarantors in favor of the Trustee for itself and for the benefit of the Holders of the Bonds and the Agents. Each of the Guarantors has agreed to certain covenants contained in the Guarantee and the Indenture.

### (c) Status and Ranking

The Bonds constitute direct, general, unconditional, unsubordinated and, subject to the provisions of Condition 8(a) relating to the Issuer's negative pledge, unsecured obligations of the Issuer and will at all times

A-1

Case 1:17-cv-01799-MSL   Document xx   Filed xx/xx/xx   Page 2 of 22

present and future unsecured and unsubordinated Indebtedness may rank any among themselves with all other may it be preferred by provisions of law that are both mandatory and of general application.

The Guarantee provides that the obligations of each Guarantor under the Guarantee constitute direct, general, unconditional, unsubordinated and, subject to such Guarantor's negative pledge as described in Condition 8(b), unsecured obligations of such Guarantor and will at all times rank at least *pari passu* in priority of payment with all other present and future unsecured and unsubordinated Indebtedness of such Guarantor, except for any obligations that may be preferred by provisions of law that are both mandatory and of general application.

## 2. Form, Title, Transfer and Denomination

### (a) Global Bonds and Definitive Bonds

Bonds sold outside the United States to persons who are not U.S. persons within the meaning of Regulation S will initially be represented by an interest in a single, permanent global Bond in registered form (each, a "Regulation S Global Bond"), which will be deposited on or about the Issue Date with a common depositary outside the United States registered in the name of a nominee of the Euroclear system ("Euroclear"), and Cedelbank, in each case for the accounts of Euroclear and Cedelbank.

Bonds sold to qualified institutional buyers, as defined in and in reliance on Rule 144A under the Securities Act ("Rule 144A"), will initially be represented by a single, permanent global restricted Bond in registered form (each, a "Restricted Global Bond" and, together with any Regulation S Global Bonds, the "Global Bonds"), which will be deposited with The Depository Trust Company ("DTC") or a custodian for, and registered in the name of a nominee of, DTC on or about the Issue Date.

### (b) Registrations and Transfers

The Issuer shall cause the Registrar to keep a register (the "Register") in respect of the Bonds in which the Registrar shall identify the owners of the Bonds and record all transfers and exchanges thereof. All transfers of Bonds and entries on the Register will be made only in accordance with and subject to the detailed regulations concerning transfers of Bonds set forth in the Indenture.

Subject to the provisions of these Conditions and the Indenture, a beneficial owner of Bonds represented by a Global Bond may transfer such Bonds to a person who wishes to take delivery of such Bonds in the form of interests in another Global Bond, subject to the certification requirements set forth in the Indenture. So long as the Bonds are represented by one or more Global Bonds, ownership of any such Bond and the corresponding ownership interests in a Global Bond may be acquired, and transfers thereof may be effected, exclusively through the book-entry settlement systems maintained by DTC, Euroclear and Cedelbank, as the case may be, through an account maintained by the owner of those interests with any such Clearing Agent, subject to the rules established by that Clearing Agent. For all purposes, the securities account records of DTC, Euroclear and Cedelbank shall, in the absence of manifest error, be conclusive evidence of the identity of the owners of beneficial interests in the Bonds and of the respective principal amounts of those Bonds represented by any Global Bond credited to the securities accounts of those owners (but without prejudice to any other means of producing any such records in evidence). The Issuer, the Guarantors, the Trustee, any Paying Agents and all other Agents will have no responsibility for any aspect of the securities account records of DTC, Euroclear or Cedelbank or payments made by any of them on account of the Bonds, and the Issuer, the Guarantors, the Trustee, the Paying Agents and the other Agents have no responsibility for maintaining, supervising or reviewing any such securities account records relating to the Bonds or the interests therein.

Neither any members of, or participants in, DTC, Euroclear or Cedelbank (the "agent members") nor any person on whose behalf agent members may act shall have any rights under any Global Bond, and DTC or the common depositary for Euroclear and Cedelbank, or their respective nominee, as the case may be, may be treated by the Issuer, the Guarantors, the Trustee, the Paying Agents and any other Agents as the absolute owner and Holder of the Global Bond representing the Bonds for all purposes whatsoever, subject to Condition 25. Notwithstanding the foregoing, nothing herein shall prevent the Issuer, the Guarantors, the Trustee, the Paying Agents or any other Agent from giving effect to any written certification, proxy or other authorization furnished by DTC, such common depositary or such nominee, as the case may be, or impair, as

NY—363575.8

between DTC, Euroclear, Cedelbank, such common depositary, their respective agent members and any other Person, the operation of customary practices of such Persons governing the exercise of the rights of a Holder of a Bond.

Any reference herein to Euroclear, Cedelbank or DTC shall, whenever the context so permits, be deemed to include a reference to any additional or alternative clearing system approved by the Issuer, the Guarantors and the Trustee.

### (c)  Bond Denominations

The Regulation S Global Bond will be issued, beneficial interests therein may be acquired, held and transferred, and Definitive Bonds issued in exchange for interests therein upon delivery of the notice to the Issuer required by Condition 3 will be issued, in minimum denominations of U.S. $10,000 and higher integral multiples of U.S. $10,000. The Restricted Global Bond will be issued, beneficial interests therein may be acquired, held and transferred, and Definitive Bonds issued in exchange for interests therein upon delivery of the notice to the Issuer required by Condition 3 will be issued, in minimum denominations of U.S.$100,000 and higher integral multiples of U.S.$10,000.

### (d)  Transfers of Definitive Bonds

A Definitive Bond may be transferred in whole or in part in any authorized denomination upon the surrender thereof, together with the form of transfer duly endorsed on it duly completed and executed, at the specified office of the Registrar or any Transfer Agent. In the case of a transfer of only part of a Definitive Bond, a new Definitive Bond in respect of the balance not transferred will also be issued.

### (e)  Applicable Regulations

All transfers of Bonds will be made subject to the detailed regulations concerning transfers of Bonds set forth in the Indenture.

### 3.  Issuance of Certain Definitive Bonds

### (a)  Issuance of Definitive Bonds for Interests in Global Bonds

Global Bonds deposited with DTC or a custodian for DTC shall be exchangeable in whole, but not in part, for corresponding Definitive Bonds following the delivery of notice to the Issuer by DTC, the Trustee or any Holder of Outstanding Bonds represented thereby that (i) DTC or any successor depositary is no longer willing or able to discharge properly its responsibilities as depositary with respect to the applicable Global Bonds, (ii) DTC has ceased or will cease to be a clearing agency registered under the Exchange Act and the Issuer is unable to appoint a qualified successor within 90 days of receiving notice of the circumstances, (iii) an Event of Default has occurred and is continuing or (iv) a material disadvantage to the Issuer, the Guarantors or the Holders will occur if the Bonds are not in definitive form. Notwithstanding the foregoing, the Definitive Bonds issued in exchange for an interest in a Restricted Global Bond deposited with DTC or a custodian for DTC shall bear the Restrictive Legend as set forth in the Indenture.

### (b)  Issuance of Definitive Bonds for Interests in Regulation S Global Bonds

Regulation S Global Bonds deposited with a common depositary or depositaries for Euroclear and Cedelbank shall be exchangeable in whole, but not in part, for corresponding Definitive Bonds following the delivery of notice to the Issuer by Euroclear or Cedelbank, the Trustee or any Holder of Outstanding Bonds represented thereby that (i) Euroclear or Cedelbank is unwilling or unable to continue as such Clearing Agent for the Regulation S Global Bond, or either Clearing Agent has closed for business for a continuous period of 14 days or more (other than by reason of holidays, statute or otherwise) or has announced an intention permanently to cease business or does in fact do so, and, if the remaining such Clearing Agent is open for business, that remaining Clearing Agent is unwilling or unable to act as the Clearing Agent in respect of the Unrestricted Global Bond, (ii) an Event of Default has occurred and is continuing or (iii) a material disadvantage to the Issuer, the Guarantors or the Holders will occur if the Bonds are not in definitive form. Bonds so issued in exchange shall bear, and be subject to, the applicable Restrictive Legend as set forth in the Indenture.

### (c)  Deliveries of Definitive Bonds Issued upon Exchange for Interests in Global Bonds; Transfers

Upon the Issuer's receipt of any notice specified in Condition 3(a) or 3(b), and subject to the other conditions stated, the Issuer shall cause the Trustee or any other Authenticating Agent, upon presentation and surrender of the relevant Global Bond, to distribute Definitive Bonds to all owners of beneficial interests in that Global

NY—363575.8

Bond, as shown on the account records of DTC, Euroclear or Cedelbank, as the case may be, in like tenor and principal amount as the interests in the Global Bond being exchanged. The Global Bond so surrendered shall then be cancelled. Transfers of Bonds will be effected without charge by or on behalf of the Issuer but upon payment (or the giving of such indemnity as the Trustee or any other Transfer Agent may require) of any expenses of delivery and any tax or other governmental charges that may be imposed in relation to the transfer.

### 4. Interest

Each Bond bears interest from and including December 8, 1999 (the "Issue Date") at the rate of 12 per cent. per annum, payable semi-annually in arrears on June 8 and December 8, in each year, the first such payment being due on June 8, 2000. Each Bond will cease to bear interest from and including the Maturity Date or any earlier date fixed for the redemption thereof unless, upon due presentation, payment of principal is improperly withheld or refused. In such event, it shall continue to bear interest at such rate (both before and after judgement) until whichever is the earlier of (i) the day on which all sums due in respect of such Bond up to that day are received by or on behalf of the relevant Holder, and (ii) the day seven days after the Trustee or, any Paying Agent has notified Holders of receipt of all sums due in respect of all the Bonds up to that seventh day (except to the extent that there is failure in the subsequent payment to the relevant Holders under these Conditions). If interest is required to be calculated for a period of less than one year, it will be calculated on the basis of a 360-day year consisting of 12 months of 30 days each and, in the case of an incomplete month, the number of days elapsed.

### 5. Redemption and Purchase

#### (a) Redemption at Maturity

Unless previously purchased, otherwise redeemed in accordance with this Condition 5 or accelerated as provided in Condition 10, the Issuer will redeem the Bonds at their principal amount, together with all accrued but unpaid interest thereon, on December 8, 2004 (the "Maturity Date").

#### (b) Early Redemption for Tax Reasons

The Bonds may be redeemed at the option of the Issuer in whole, but not in part, at any time, upon the Issuer giving not less than 30 nor more than 60 days' prior notice to the Trustee and, in accordance with Condition 22, notice to the Holders (which notice shall be irrevocable) on the occasion of the next payment due under the Bonds, if:

(i) as a result of any actual change in any law, regulation or ruling of the British Virgin Islands or Egypt (as the case may be) or any political subdivision or any authority thereof or therein having power to tax or any change in the application or official interpretation of such laws or regulations, which change or amendment becomes effective on or after the Issue Date, the Issuer has or will become obliged to pay Additional Amounts as provided in Condition 7 or any Guarantor has or will become obligated to indemnify any Person in respect of taxes pursuant to the Guarantee, in any case, in excess of the amounts that are otherwise payable pursuant to Condition 7 or the relevant provisions of the Guarantee as of the Issue Date; and

(ii) such obligation cannot be avoided by the Issuer or any Guarantor taking reasonable measures available to it;

provided that no such notice of redemption shall be given earlier than 90 days prior to the earliest date on which the Issuer would be obligated to pay such Additional Amounts to any Person or any Guarantor would be obligated so to indemnify any Person were a payment in respect of the Bonds or under the Guarantee then due.

Prior to the publication of any notice of redemption pursuant to this paragraph, the Issuer shall deliver to the Trustee (i) a certificate stating that the Issuer is entitled to effect such redemption and setting forth a statement of facts showing that the conditions precedent to the right of the Issuer so to redeem the Bonds have been fulfilled; and (ii) an opinion of an independent counsel to such effect based on such statement of facts.

Bonds redeemed pursuant to this Condition 5(b) will be redeemed at the principal amount of each Bond plus any accrued but unpaid interest up to and including the date fixed for redemption.

NY—363575.8

(e) *Purchase of Bonds by the Issuer and the Guarantors*

The Issuer or any Guarantor may, to the extent permitted by applicable law, at any time purchase Bonds in the open market or otherwise. Any Bond so purchased by the Issuer and, at the election of any Guarantor, any Bond purchased by such Guarantor, shall be surrendered to the Trustee or the Registrar for cancellation. Any Bond so cancelled may not be reissued or resold. The Indenture provides that any Bond purchased and held by or for the account of any Guarantor shall be deemed not to be Outstanding for various purposes specified in the Indenture, including the right to attend and vote at any meeting of the Holders.

## 6. Payments; Paying Agents and other Agents

### (a) *Payment Currency*

The Bonds will be denominated in, and payments in respect thereof will be payable in, U.S. Dollars.

### (b) *Manner of Payment*

Subject to the provisions of these Conditions relating to payments in respect of Global Bonds, payments of all amounts due in respect of the Bonds will be made against presentation and, in the case of final payment, surrender of the relevant Bonds at the specified office of any Paying Agent by U.S. Dollar check drawn on, or at the option of the Holder, by transfer to a U.S. Dollar account maintained by the payee with, a bank in New York City, all subject to the remaining terms of this Condition and the terms of the Indenture. Payments on a Global Bond will be made through DTC, Euroclear or Cedelbank, as the case may be. All payments under the Bonds are subject in all cases to any applicable fiscal or other laws and regulations. No commissions or expenses shall be charged to Holders in respect of payments under the Bonds.

Payment of any amount due in respect of any Bond (other than in respect of its final redemption) will be paid to the Holder thereof as it appears in the Register kept by the Registrar as at close of business (local time in the place of the specified office of the Registrar) on the fifteenth (15th) calendar day before the due date for that payment (the "Record Date").

Unless otherwise provided herein, if the due date for any payment in respect of any Bond is not a Business Day, then the Holders of that Bond will not be entitled to payment of the amount due on that date until the next following Business Day and will not be entitled to any further interest or other payment in respect of the resulting delay (except in the event there is a subsequent failure to pay in accordance with these Conditions). For purposes hereof, "Business Day" means a day (i) (other than a Saturday or a Sunday) which is not a day on which banking institutions in New York City, New York, are authorized by law or obligated by law to close, (ii) in relation to payments due upon presentation or surrender of any Notes, on which commercial banks are open and foreign exchange markets settle payments in U.S. Dollars in the place of presentation or surrender and (iii) in relation to Global Bonds, on which the Clearing Agents are in operation.

### (c) *Paying Agents*

The initial Paying Agents and their respective initial specified offices are set forth in the Paying Agency Agreement. The Issuer is, upon prior notice to the Trustee, entitled to vary or terminate the appointment of any Paying Agent, the Registrar or any Transfer Agent and/or appoint additional or other Paying Agents, Registrars or Transfer Agents and/or approve any change in the specified office through which any Paying Agent, Registrar or Transfer Agent acts, provided that:

(i)    so long as the Bonds are listed on any stock exchange, there will at all times be a Paying Agent and, if appropriate, a Registrar and a Transfer Agent with a specified office in such place as may be required by the rules and regulations of the relevant stock exchange;

(ii)   there will at all times be a Paying Agent and a Transfer Agent with a specified office in a city in continental Europe (which shall be Luxembourg, so long as the Bonds are listed on the Luxembourg Stock Exchange); and

(iii)  there will at all times be a Registrar and a Transfer Agent with a specified office in New York City.

Any variation, termination, appointment or change shall only take effect (other than in the case of insolvency, when it shall be of immediate effect) after not less than 30 nor more than 45 days' prior notice thereof shall have been given to the Holders in accordance with Condition 22.

NY—363575.8

Agent is acting solely as agent of the Issuer and does not assume any obligation toward or relationship of agency or trust for or with the owner or Holder of any Bond, except that any funds held by any Paying Agent for payment on the Bonds shall be held by it for the benefit of the relevant Holders and applied as set forth herein and in the Indenture, but need not be segregated from other funds held by it, except as required by law. For a description of the duties and the immunities and rights of the Agents under the Indenture and the Paying Agency Agreement, reference is made to the Indenture and the Paying Agency Agreement, and the obligations of the Paying Agents and any other Agents to Holders of Bonds are subject to the immunities and rights provided for therein.

All monies paid by or on behalf of the Issuer to any Paying Agent for a payment due under any Bond that remain unclaimed at the end of two (2) years after the due date for that payment will be repaid to the Issuer, and the Holder of such Bond shall thereafter look only to the Issuer or the Guarantors for payment. Upon repayment pursuant to this provision, all liability of the Trustee, any Paying Agent or any other Agent with respect to the amount repaid shall cease, without, however, limiting in any way the obligation of the Issuer and the Guarantors in respect of the amount so repaid.

*(d)  Issuer's Discharge by Payment*

Subject to Condition 6(b), the Issuer will be discharged of its obligation to pay any amount due under the relevant Bonds by payment in full (but not in part) of the amount to or to the order of any Paying Agent in the manner specified in the Indenture only if, and to the extent that, there is no default by such Paying Agent in payment of the amount so received from the Issuer or the Guarantors to the Holder of those Bonds in accordance with these Conditions. In the event of any such default by a Paying Agent in making payment to a Holder, the Issuer shall pay such additional amounts as will result in receipt by that Holder of the amounts it was entitled to receive from the defaulting Agent. Payments by the Issuer pursuant to this Condition 6(d) shall not discharge or limit in any way any obligations of the Issuer or the Guarantors in respect of amounts that subsequently become payable under the Bonds.

## 7.  Additional Amounts and Taxes

*(a)  Payment of Additional Amounts*

All payments of principal and interest in respect of the Bonds, whether made directly by the Issuer, by any Guarantor under the Guarantee or otherwise, shall be made free and clear of, and without withholding or deduction for or on account of any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the British Virgin Islands or Egypt (as the case may be) or any political subdivision or any authority thereof or therein having power to tax ("BVI Taxes" or "Egyptian Taxes," respectively), unless such withholding or deduction is required by law. If any such deduction or withholding is so required, the Issuer shall pay such additional amounts ("Additional Amounts") as will result in receipt by the Holders of the Bonds of such amounts as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable in respect of any Bond presented for payment:

(i)  by or on behalf of a Holder who is liable to pay such taxes, duties, assessments or governmental charges that were deducted or withheld in respect of such Bond by reason of its having, or having had, some connection with the British Virgin Islands or Egypt (as the case may be), other than the mere holding of the Bond; or

(ii)  more than 30 days after the Relevant Date except to the extent that the Holder of it would have been entitled to such Additional Amounts on presenting such Bond for payment on the last day of such period of 30 days.

"Relevant Date" means whichever is the later of (i) the date on which such payment first becomes due and (ii) if the full amount payable has not been received by a Paying Agent on or prior to such due date, the date on which, the full amount having been so received, notice to that effect shall have been given to the Holders.

*(b)  Guarantors' Tax Indemnity*

Pursuant to the Guarantee, each Guarantor has agreed, subject to certain exceptions similar to the foregoing, that, in the event that any such deduction or withholding is required to be made from any amount payable by

A-6

it to any Holder under the Guarantee, such Guarantor will (i) deduct or withhold the full amount required to be paid and pay such amount to the relevant taxing authorities and (ii) upon the demand of the relevant Holder (or the Trustee on behalf of such Holder), pay to the account of such Holder (or the account of the Trustee for the benefit of such Holder) an amount sufficient to indemnify such Holder fully against, and to reimburse such Holder for, the amount deducted or withheld.

**(c)** *References to Additional Amounts*

All references in these Conditions to any amount payable under the Bonds shall be deemed to include a reference to any Additional Amounts or indemnity payments payable in respect of any BVI Taxes or Egyptian Taxes deducted or withheld from that amount, to the extent the Additional Amounts or indemnity payments are payable as provided in this Condition 7 or the corresponding provisions of the Guarantee, and express mention of payment of Additional Amounts or indemnity payments in any provision shall not be construed as excluding payment of Additional Amounts or indemnity payments where express mention is not made, if the Additional Amounts or indemnity payments are payable pursuant to this Condition 7 or the corresponding provisions of the Guarantee.

**(d)** *Other Taxing Jurisdictions*

If the Issuer or any Guarantor is or becomes subject at any time to taxation by any taxing jurisdiction other than the British Virgin Islands or Egypt, references in these Conditions and the Guarantee to the British Virgin Islands or Egypt and to BVI Taxes or Egyptian Taxes, shall be construed to include each such other taxing jurisdiction and all taxes, duties and other charges that would constitute BVI Taxes or Egyptian Taxes if imposed by or in the British Virgin Islands or Egypt, respectively.

**(e)** *Certificates of an Authorized Representative on Additional Amounts and Evidence of Tax Payments*

At least 30 days before each date on which any payment is due under any Bonds, if the Issuer or a Guarantor will be obligated to pay Additional Amounts or make indemnity payments, as the case may be, in respect of BVI Taxes or Egyptian Taxes on that payment, the Issuer or the relevant Guarantor or Guarantors, as the case may be, shall deliver to the Trustee and each Paying Agent a certificate of an Authorized Representative stating that the Additional Amounts or indemnity payments will be payable, their actual amounts and such other information as is necessary to enable the Trustee or a Paying Agent to arrange for payment of the Additional Amounts or indemnity payments to the Holders on the relevant payment date with the funds provided for the purpose by the Issuer or the relevant Guarantor. The Issuer shall also provide the Trustee with documentation evidencing the payment of BVI Taxes or Egyptian Taxes in respect of which the Issuer or any Guarantor has paid Additional Amounts or made indemnity payments, as the case may be, under the Bonds, so as to enable the Trustee to provide copies of that documentation to the Holders or any Paying Agent, upon request.

**(f)** *Stamp and Similar Taxes*

In addition, the Issuer or the Guarantors shall pay any stamp, issue, registration, documentary or other similar taxes and other duties (including interest thereon and penalties with respect thereto) that may be payable in respect of the issuance or offering of the Bonds or the execution and delivery of, or performance by the Issuer or the Guarantors of their respective obligations under, or enforcement against the Issuer or the Guarantors of, the Bonds, the Guarantee, the Indenture or the Paying Agency Agreement, as the case may be.

**8. Negative Pledge**

**(a)** *Issuer's Negative Pledge and Related Covenants*

So long as any Bond remains Outstanding, the Issuer will not:

(i)   directly or indirectly, create, incur, assume or permit to exist any Lien (as defined below) on or with respect to any of its property or assets, whether now owned or held or hereafter acquired, other than a pledge or assignment of the net proceeds of the Bonds or any similar debt instruments to secure a loan or other financing arrangement made in favor of any one or more of the Guarantors contemporaneously with the issuance of the Bonds or such other debt instruments;

(ii)  engage in any business or activity other than the financing of the business activities of the Lakah Group and such other activities as are incidental thereto or necessary in connection therewith; or

NY... 363575 8

(iii) have or form, or cause or permit to be formed, any Subsidiaries or subsidiary undertakings or have any employees or premises.

**(b)** *Guarantors' Negative Pledge and Related Covenant*

The Guarantors have agreed in the Indenture that, so long as any Bond remains Outstanding, no Guarantor will, and each Guarantor shall procure that none of its Subsidiaries (if any) will, directly or indirectly, create, incur, assume or permit to exist any Lien on or with respect to any of its property or assets or any property or assets of any of its Subsidiaries, whether now owned or held or hereafter acquired, to secure:

(i) any Relevant Indebtedness (as defined below) or any guarantee in respect of any Relevant Indebtedness; or

(ii) any Indebtedness (as defined below) or any guarantee in respect of any Indebtedness, other than a Permitted Lien (as defined below);

unless, in each case, provision has been made whereby the Bonds are secured to the satisfaction of the Trustee equally and ratably with the Relevant Indebtedness or, as the case may be, the Indebtedness secured by such Lien for so long as such Relevant Indebtedness or, as the case may be, Indebtedness is so secured, or such other security or guarantee for the Bonds has been provided, which the Trustee in its absolute discretion shall have deemed to be not materially less prejudicial to the Holders or which shall have been approved by an Extraordinary Resolution (as defined in Condition 15(d)) of the Holders.

In particular, without limiting the generality of the foregoing, so long as any of the Bonds remains Outstanding, no Guarantor will take any action for the liquidation or winding-up of the Issuer.

**(c)** *Defined Terms*

As used in these Conditions, the following terms and expressions have the following meanings:

"guarantee" by any Person means the obligation, contingent or otherwise, of such Person directly or indirectly guaranteeing any Indebtedness of any other Person and, without limiting the generality of the foregoing, any obligation, direct or indirect, contingent or otherwise, of such Person entered into for the purpose of indemnifying or assuring in any other manner the obligee of such Indebtedness of the payment thereof or to protect such obligee against loss in respect thereof (in whole or in part) and the term "guarantee" used as a verb has a corresponding meaning;

"Indebtedness" of any Person includes, without limitation:

(i) amounts borrowed;

(ii) amounts raised by acceptance under any acceptance credit facility;

(iii) the principal and accrued interest in respect of any debenture, bond, note, loan or similar instrument (whether or not issued or raised for a cash consideration);

(iv) the amount of any liability in respect of any purchase price for assets or services the payment of which is deferred for a period in excess of 60 days (other than trade payables, including amounts payable to sellers of medical equipment, incurred in the ordinary course of business);

(v) amounts raised under any other transaction having the commercial effect of a borrowing;

(vi) guarantee obligations in respect of Indebtedness of the foregoing types of any other Person; and

(vii) any obligations of the foregoing types of other Persons secured by a Lien on any assets or property of such Person.

"Lien" means, with respect to any asset, any mortgage, lien, pledge, charge, security interest or encumbrance of any kind in respect of such asset;

A-8

"Permitted Lien" means:

(i) Liens in existence on the Issue Date and any extension, renewal or replacement thereof, provided, however, that the total amount of Indebtedness so secured shall not exceed the amount so secured on the Issue Date;

(ii) Liens created to secure taxes, assessments and other governmental charges, the payment of which is being contested in good faith by appropriate proceedings promptly initiated and diligently conducted and for which such reserves or other appropriate provision, if any, as shall be required by International Accounting Standards (in the case of the Parent Guarantor) or Egyptian Accounting Standards (in the case of any Subsidiary Guarantor) shall have been made and which have not been enforced against the assets to which they attach;

(iii) Liens arising by operation of law, which have not been enforced against the assets to which they attach;

(iv) Liens created or, as the case may be, given in the ordinary course of business of the relevant Guarantor or its Subsidiary, including, without limitation, (A) Liens over lease receivables or promissory notes issued by lessees or purchasers of medical equipment created to secure or, as the case may be, given in respect of Indebtedness of the relevant Guarantor or its Subsidiary to finance medical equipment sales or leases and (B) Liens created to secure or, as the case may be, given in respect of performance bonds given by the relevant Guarantor in the ordinary course of its business, which, in any case, in the opinion of the Board of Directors of the Parent Guarantor, acting reasonably and in good faith, do not (either alone or together with any one or more other such Liens) materially impair the operation of such business and which have not been enforced against the assets to which they attach;

(v) Liens created to secure or, as the case may be, given in respect of all or any part of the purchase price, or to secure or, as the case may be, given in respect of any Indebtedness incurred or assumed to pay all or any part of the purchase price, of property, assets or services acquired by any Guarantor after the Issue Date of the Bonds, provided that (A) any such security shall be confined solely to the property, assets or services so acquired; (B) the giving of any such security shall have been a term of the agreement first evidencing the Indebtedness entered into for the purposes of the acquisition; and (C) the amount secured by such Lien shall not exceed the said purchase price; and

(vi) (in addition to the foregoing Permitted Liens) Liens created to secure or, as the case may be, given in respect of the Indebtedness of any Guarantor or guarantees by any Guarantor of, or in respect of, any third party's Indebtedness, not exceeding in the aggregate at any one time U.S. $2,000,000 (or the equivalent in other currencies at the time of determination);

"Person" means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof; and

"Relevant Indebtedness" means any present or future Indebtedness in the form of, or represented by, bonds, notes, debentures, loan certificates or other securities, which are for the time being, or are intended to be quoted, listed, or ordinarily dealt with in or on any stock exchange, over-the-counter or other securities market.

## 9. Certain Affirmative Covenants (Financial Covenants)

*(a)  Maintenance of Net Worth*

The Parent Guarantor has agreed in the Indenture that, so long as any Bond remains Outstanding, it will, at all times, maintain a Net Worth (as defined below) of not less than E£1 billion.

*(b)  Financial Ratios*

The Parent Guarantor has agreed in the Indenture that, so long as any Bond remains Outstanding:

(i) the ratio of its Indebtedness (as defined in Condition 8, except that there shall be excluded therefrom, solely for purposes of this Condition 9, any Indebtedness incurred in connection with the purchase of medical equipment, which is then leased or resold, provided that the Indebtedness is fully secured by

A-9

shall not exceed 1:1;

(ii) the ratio of its Indebtedness (as defined in Condition 8, except that there shall be excluded therefrom, solely for purposes of this Condition 9, any Indebtedness incurred in connection with the purchase of medical equipment, which is then leased or resold, provided that the Indebtedness is fully secured by lease receivables or promissory notes issued by lessees or purchasers of such equipment) to EBITDA shall not exceed 4.5:1; and

(iii) at each Calculation Date, the ratio of EBITDA to Interest shall not be less than 3.0:1.

(c)  *Compliance Certificate*

Not later than 90 days after each Calculation Date falling on December 31 in any year, the Issuer shall deliver, or shall cause to be delivered, to the Trustee a certificate duly executed by any two members of the Board of Directors of the Parent Guarantor and a certificate of Mostafa Shawki & Co Deloitte & Touche, the independent auditors of the Parent Guarantor (or such other auditing firm of international reputation as shall at the time be acting as the independent auditors of the Parent Guarantor, the "Independent Auditors"), in each case, certifying, to the best of their knowledge and belief (after reasonable inquiry), whether or not the Parent Guarantor was in compliance with the covenants set forth in Condition 9(a) and Condition 9(b)(i), (ii) and (iii) above on the last Calculation Date; and, not later than 60 days after each Calculation Date falling on June 30 in any year, the Issuer shall deliver, or shall cause to be delivered, to the Trustee a certificate duly executed by any two members of the Board of Directors of the Parent Guarantor and a certificate of the Independent Auditors, in each case, certifying, to the best of their knowledge and belief (after reasonable inquiry), whether or not the Parent Guarantor was in compliance with the covenants set forth in Condition 9(a) and Condition 9(b)(i) above on the last Calculation Date.

(d)  *Opportunity to Remedy*

Notwithstanding the foregoing, the Parent Guarantor has agreed in the Indenture that, on the first occasion that it is not in compliance with the covenant set forth in Condition 9(a) or any ratio set forth in Condition 9(b)(i), (ii) or (iii), it shall, prior to the date which is not later than 90 days from the Calculation Date certified by any two directors of the Parent Guarantor and the Independent Auditors to be the first date upon which such covenant or ratio (as the case may be) was not complied with and the next date on which interest or any other amount is or becomes due and payable in respect of the Bonds, whichever is earlier, remedy such non-compliance, such remedy to be confirmed by a certificate given by the Independent Auditors, within 14 days of such remedy; and provided further that the Parent Guarantor shall have the right to remedy any such non-compliance in the manner set out in this Condition 9(d) on not more than one occasion.

(e)  *Defined Terms*

For the purpose of these Conditions, the following terms shall have the following meanings:

"Calculation Date" means June 30 and December 31 of each year on which any Bond is Outstanding.

"Capital Stock" of any Person means any and all shares, interests, rights to purchase, warrants, options, participations or other equivalents of or interests in (however designated) equity of such Person, including any Preferred Stock, but excluding any debt securities convertible into such equity.

"Cash Equivalents" means (i) securities or other obligations, which have been assigned a rating of at least "A" or the equivalent thereof by Standard & Poor's Ratings Services, or "A" or the equivalent thereof by Moody's Investors Service, or carrying an equivalent rating by an internationally recognized rating agency if both of the two named rating agencies cease publishing ratings of investments; and (ii) securities or other obligations, which have been assigned a rating at least equivalent to the rating then assigned to Egypt or which are issued by or directly and fully guaranteed by any bank or financial institution in Egypt that is majority owned by the government of Egypt or any agency or instrumentality thereof.

"Consolidated Net Income" means, for any period, the net income (loss) of the Parent Guarantor and its Subsidiaries; provided, however, that there shall not be included in such Consolidated Net Income:

A-10

(i)     any gain (loss) realized upon the sale or other disposition of any property, plant or equipment of the Parent Guarantor or any of its Subsidiaries (including pursuant to any sale and leaseback transaction), which is not sold or otherwise disposed of in the ordinary course of business and any gain (loss) realized upon the sale or other disposition of any capital stock of any person;

(ii)    any other extraordinary gain or loss;

(iii)   the cumulative effect of a change in accounting principles;

(iv)    any non-cash charges resulting from any write-up or write-down of assets of the Parent Guarantor and its Subsidiaries; and

(v)     any gain (loss) arising from currency or interest rate swap, collar or other hedging arrangements or financial futures transactions or any other derivative transactions.

"EBITDA" means Consolidated Net Income, but adding back, if applicable:

(i)     any amounts attributable to depreciation or amortization; and

(ii)    any provision for advance corporation tax, mainstream corporation tax and their equivalent in any relevant jurisdiction or any other tax on incomes or gains.

"Interest", in respect of any relevant period, means:

(i)     interest and amounts in the nature of interest;

(ii)    prepayment penalties or premiums in connection with the repayment or prepayment of any Indebtedness;

(iii)   discount fees and acceptance fees in respect of any Indebtedness (including all fees in connection with any letter of credit or guarantee); and

(iv)    any other costs, expenses and deductions of like effect (including, without limitation, the Interest element of finance leases) and any net payment (or, if appropriate in the context, receipt) under any interest rate hedging agreement or instrument, taking into account any premiums payable for the same and the interest element of any net payment (plus or minus any accrued exchange gains or losses) under any currency hedging instrument or arrangement;

in each case, accrued on Indebtedness of the Parent Guarantor during such relevant period.

"Net Worth" means, with respect to any period, the sum of the issued and paid-up Capital Stock of the Parent Guarantor, adjusted as follows:

(i)     by adding the aggregate amount standing to the credit of the reserves of the Parent Guarantor or any of its Subsidiaries (on a consolidated basis, including retained income);

(ii)    by adding or subtracting any amount standing to the credit or debit, as the case may be, of Consolidated Net Income to the extent not already included in retained income;

(iii)   by adding any amounts attributable to goodwill or other intangible assets;

(iv)    by adding any amounts representing minority interests of the Parent Guarantor;

(v)     by subtracting any amounts set aside for dividends or taxes; and

(vi)    by subtracting any impairments of the issued share capital of the Parent Guarantor;

in each case, for such period.

"Preferred Stock," as applied to the Capital Stock of any Person, means Capital Stock of any class or classes (however designated), which is preferred as to the payment of dividends or distributions, or as to the distribution of assets upon any voluntary or involuntary liquidation or dissolution of such Person, over shares of Capital Stock of any other class of such Person. .

NY—363575.8

*(j) Application of IAS.*

All terms defined in Condition 9(e) above are to be determined in accordance with International Accounting Standards ("IAS") and from the financial statements of the Parent Guarantor and its Subsidiaries (as applicable for the relevant periods). No item shall be deducted or credited more than once in any calculation made for the purpose of determining compliance with the covenant set forth in Condition 9(a) or any ratio set forth in Condition 9(b)(i), (ii) or (iii) above.

## 10.  Events of Default

*(a)  Events of Default*

Each of the events and circumstances listed in this Condition shall constitute an "Event of Default":..

(i)   *Non-payment of Principal:*  any payment due in respect of principal of any Bond is not made on its due date (or if, in the opinion of the Trustee, any such failure is due to technical or administrative reasons alone, within three (3) Business Days of its due date); or

(ii)  *Non-payment of Interest:*  any payment of any interest due on any Bond is not made within five (5) days of its due date; or

(iii) *Breach of representation or warranty:*  any representation or warranty of the Issuer or a Guarantor in the Bonds, the Guarantee or the Indenture or any other document delivered by such Issuer or Guarantor, as the case may be, in connection with the issuance of the Bonds and the giving of the Guarantee proves to have been incorrect, incomplete or misleading in any material respect at the time it was made; or

(iv)  *Breach of other Obligations:*  the Issuer or any Guarantor defaults in the performance or observance of any other covenant, undertaking, condition or provision contained in the Bonds, the Guarantee or the Indenture and (except where such default is not, in the opinion of the Trustee, capable of remedy) such default continues for a period of 30 days (or such longer period as the Trustee may permit) after any applicable cure period next following the service by the Trustee on the Issuer of a notice in writing requiring the same to be remedied and indicating that this provision may be invoked if it is not; or

(v)   *Cross-default:*  (A) any Indebtedness (as defined in Condition 8) of the Issuer, any Guarantor or any Subsidiary of a Guarantor becomes (or becomes capable of being declared) due and repayable prematurely by reason of an event of default; or (B) the Issuer, any Guarantor or any Subsidiary of a Guarantor fails to make any payment of principal or interest in respect of any Indebtedness on the due date for such payment as extended by any original grace period; or (C) default is made by the Issuer, any Guarantor or any Subsidiary of a Guarantor in the honoring of any guarantee or indemnity in respect of any Indebtedness when due as extended by any original grace period; provided that the aggregate amount of all such Indebtedness in respect of which such an event or events as is or are referred to in sub-paragraphs (A) to (C) inclusive of this paragraph (iv) occur is not less than U.S. $2,000,000 or the equivalent in other currencies (as used herein, "original grace period" means that grace period fixed by the terms of the agreement or instrument under which such Indebtedness was created but specifically not including any extension in time permitted for such payment, any waiver or delay in the requirement for such payment which has been separately agreed to between the obligor and obligee); or

(vi)  *Guarantee, etc.:*  the Guarantee is not (or is claimed by any Guarantor not to be) in full force and effect or the Indenture or any other relevant document delivered by the Issuer or a Guarantor in connection with the issuance of the Bonds ceases to be in full force and effect in accordance with its terms or the binding effect or enforceability of the Indenture or the Guarantee is contested by the Issuer or a Guarantor or the Issuer or a Guarantor denies that it has any further liability or obligation under or in respect of the Indenture or the Guarantee; or

(vii) *Enforcement proceeding:*  a distress, attachment, execution or other legal process is levied, enforced or sued out on or against any part of the property, assets or revenues of the Issuer, any Guarantor or any Subsidiary of a Guarantor and is not discharged or stayed within 30 days; provided that, in the case of any Subsidiary that is not a Guarantor, the aggregate value of the relevant property, assets or revenues exceeds U.S. $2,000,000; or

(viii)  *Security enforced:*  any mortgage, charge, pledge, lien or other encumbrance, present or future, created or assumed by the Issuer (including, in particular, but without limiting the generality of the foregoing, the Charge over Deposit (as defined in the Indenture) or any similar pledge or assignment), any Guarantor or any Subsidiary of a Guarantor becomes enforceable and any step is taken to enforce it (including the taking of possession or the appointment of a receiver, manager or other similar person); provided that, in the case of any Subsidiary that is not a Guarantor, the aggregate value of the relevant security exceeds U.S. $2,000,000; or

(ix)  *Insolvency:*  the Issuer, any Guarantor or any Subsidiary of a Guarantor is (or is, or could be, deemed by law or a court to be) insolvent or bankrupt or unable to pay its debts, stops, suspends or threatens to stop or suspend payment of all or a material part of its debts, proposes or makes any agreement for the deferral, rescheduling or other readjustment of all of its debts, proposes or makes a general assignment or an arrangement or composition with or for the benefit of the relevant creditors in respect of any of such debts or a moratorium is agreed or declared in respect of or affecting all or any part of the debts of the Issuer, such Guarantor or any such Subsidiary; or

(x)  *Winding-up:*  an order is made or an effective resolution passed for the winding-up or dissolution of the Issuer, any Guarantor or any Subsidiary of a Guarantor, or the Issuer, any Guarantor or any Subsidiary of a Guarantor ceases to carry on all or, in the opinion of the Trustee, a material part of its business or operations, except for the purpose of and followed by a reconstruction, amalgamation, reorganization, merger or consolidation (a) on terms approved by the Trustee or by an Extraordinary Resolution (as defined in Condition 15(d)) of the Holders, or (b) unless payment in respect of the Bonds is assumed expressly or by operation of law by the surviving entity; or

(xi)  *Judgements:*  a final judgement or final judgements for the payment of money have been entered by a court or courts of competent jurisdiction against the Issuer or a Guarantor or any Subsidiary of a Guarantor and remain undischarged for a period of at least 60 days without stay of execution of the relevant judgement or judgements during the period, and the aggregate amount of all such judgements at any time outstanding (to the extent not paid or to be paid by insurance) exceeds U.S. $2,000,000 or the equivalent in any other currency (for this purpose, any deductibles, self-insurance or retention shall not be treated as covered by insurance); or

(xii)  *Governmental Intervention; Nationalization:*  (A) by or under the authority of any governmental or regulatory agency or authority, the management of the Issuer, any Guarantor or any Subsidiary of a Guarantor is (in the opinion of the Trustee) wholly or partially displaced or the authority of the Issuer, any Guarantor or any Subsidiary of a Guarantor in the conduct of its business is (in the opinion of the Trustee) wholly or partially curtailed or (B) any step is taken by any person with a view to the seizure, compulsory acquisition, expropriation or nationalization of all or a material part of the assets of the Issuer, any Guarantor or any Subsidiary of a Guarantor; or

(xiii)  *Ownership:*  Messrs Ramy Lakah and Michel Lakah, members of their immediate families and/or one or more trusts the sole beneficiaries of which are any of the foregoing (the "Lakah Family") cease to own directly at least 51 per cent. of the issued share capital of, and to control, the Parent Guarantor; or the Parent Guarantor and/or the Lakah Family ceases to own together (directly or indirectly) at least 51 per cent. of the issued share capital of, and to control, the Issuer or any Subsidiary Guarantor; or

(xiv)  *Authorization and consents:*  any action, condition or thing (including the obtaining or effecting of any necessary consent, approval, authorization, exemption, filing, license, order, recording or registration) at any time required to be taken, fulfilled or done in order (A) to enable the Issuer or any Guarantor lawfully to enter into, and exercise its rights and perform and comply with its obligations under, the Bonds, the Guarantee and the Indenture or (B) to ensure that those obligations are legally binding and enforceable is not done, lapses and is not renewed or is cancelled; or

(xv)  *Illegality:*  it is or will become unlawful for the Issuer or any Guarantor to perform or comply with any one or more of its obligations under any of the Bonds, the Guarantee or the Indenture; or

(xvi)  *Analogous events:*  any event occurs which under the laws of any relevant jurisdiction has an analogous effect to any of the events referred to in any of the foregoing paragraphs.

NY—363575.8

(b)  *Acceleration*

If an Event of Default occurs and is continuing, then the Trustee may, and (subject to its rights under the Indenture to be indemnified to its satisfaction), if so requested by the Holders of not less than 10 per cent. in aggregate principal amount of the outstanding Bonds, shall, by written notice to the Issuer (with a copy to each Guarantor), declare all of the Outstanding Bonds to be immediately due and payable, provided, however, that (i) in the case of the occurrence at any time of any of the Events of Default described in clauses (ix), (x) or, to the extent relevant, (xvi) of Condition 10(a) occurs, all amounts payable under all Outstanding Bonds shall become immediately due and payable, without any notice to the Issuer or any Guarantor or any other act by the Trustee or any Holder of any Bond. Upon any such declaration of acceleration or automatic acceleration, the principal amount of the Bonds subject to the acceleration, together with all accrued but unpaid interest thereon, and all Additional Amounts and other amounts payable with respect thereto, shall become and be immediately due and payable. If the Event of Default or Events of Default giving rise to any such declaration of acceleration are cured following any such declaration, the declaration may be rescinded by the Holders in the manner set forth in the Indenture.

11.  **Limitations on Related Party Transactions**

(a)  *Limitations applicable to the Guarantors*

The Guarantors have agreed in the Indenture that, so long as any Bond remains Outstanding, no Guarantor shall, or shall permit any of its Subsidiaries to, directly or indirectly, enter into any transaction with a Related Party (as defined below), including the renewal or extension of any such transaction, other than transactions intended to effect the plan of reorganization referred to in Condition 13(b)(v) below, unless (A) the transaction has been approved by the Trustee or by an Extraordinary Resolution of Holders or (B) (1) the transaction is on terms no less favorable to such Guarantor or such Subsidiary than those that could be obtained in a comparable arm's length transaction with an entity that is not a Related Party, (2) such Guarantor or such Subsidiary, as the case may be, has complied with, and has obtained all regulatory and other approvals necessary under, applicable law and regulations of Egypt or any other applicable jurisdiction, (3) the transaction is in the ordinary course of the business activities of such Guarantor or such Subsidiary, as the case may be, and (4) the transaction has been approved by at least a majority of the disinterested members of the Board of Directors of such Guarantor or such Subsidiary, as the case may be.

The terms of this Condition 11 shall not apply to any transaction, or series of similar transactions, involving an aggregate amount of U.S. $250,000 or less (or the equivalent in any other currency) between any Guarantor or any Subsidiary of a Guarantor, on the one hand, and any Related Party, on the other.

As soon as practicable following (and in any event within ten Business Days after) the completion of the annual audit by the independent auditors of the financial statements of each Guarantor, the relevant Guarantor shall cause such auditors to deliver to the Trustee a letter certifying, based on such audit, that neither such Guarantor nor any of its Subsidiaries has, directly or indirectly, entered into any transaction with a Related Party (including any renewal or extension of any such transaction), except in compliance with the provisions of this Condition 11. Thereafter, from time to time, but not more frequently than once within any period of 30 consecutive calendar days, at the request of the Trustee, each Guarantor shall deliver to the Trustee a certificate of a duly authorized representative of such Guarantor to the effect that, as of the date of such certificate, neither such Guarantor nor any of its Subsidiaries has, directly or indirectly, entered into any transaction with a Related Party (including the renewal or extension of any such transaction), except in compliance with the provisions of this Condition 11.

For purposes hereof, "Related Party" means (A) any Person owning, directly or indirectly, at least 25 per cent. of the outstanding capital stock of or other ownership interests in the Issuer, any Guarantor or any Subsidiary of a Guarantor and (B) any Person directly or indirectly controlling or controlled by or under direct or indirect common control with the Issuer, any Guarantor or any Subsidiary of a Guarantor. For the purposes of this definition, "control" when used with respect to any Person means the power to elect a majority of the board of directors or other Persons performing similar functions of the Issuer, any Guarantor or any Subsidiary of a Guarantor and/or the power to direct the management and policies of the Issuer, any Guarantor or any Subsidiary of a Guarantor, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise.

NY—363575.8

**(b)** *Lakah Family Undertaking*

Mr. Ramy Lakah and Mr. Michel Lakah have agreed, for the benefit of the Trustee and the Holders, that, so long as any Bond remains Outstanding, they will not directly or indirectly own or control more than 35 per cent. of the Capital Stock of, or otherwise exercise control of or assume any managerial or executive position in, any company or other entity (other than any Subsidiary in existence on the Issue Date, so long as the Parent Guarantor and/or the Lakah Family together continue to own at least 35 per cent. of the issued share capital of, and to control, such Subsidiary) conducting any of the following activities in Egypt in competition with any of the Subsidiaries: (i) the distribution, sale or leasing of medical equipment and supplies; (ii) the construction, sale and leasing of medical facilities; or (iii) the management and servicing of hospitals and medical centers.

### 12. Provisions Concerning Distributions

**(a)** *Limitations on the Issuer*

So long as any Bond remains Outstanding, the Issuer shall not declare or pay any dividends to its shareholders or make any other distribution of assets, properties, cash, rights, obligations or securities on account of any interest in the Issuer.

**(b)** *Limitations on the Parent Guarantor; Funding Obligation*

The Parent Guarantor has agreed in the Indenture that, so long as any Bond remains Outstanding, it shall not declare or pay any dividends to its shareholders or make any other distribution of assets, properties, cash, rights, obligations or securities on account of any interest in the Parent Guarantor or any of its Subsidiaries (i) at any time when there exists an Event of Default or an event that, with the passage of time, the giving of notice, or both, may give rise to an Event of Default, or (ii) at any time when no such Event of Default exists, (A) more frequently than once during any calendar year or (B) in an aggregate amount exceeding 75 per cent. of the Consolidated Net Income (as defined in Condition 9(e)) of the Parent Guarantor for the period in respect of which the dividends are being paid or the distribution is being made. The foregoing limitation shall not, however, apply to distributions by the Parent Guarantor of shares of its capital stock in connection with an increase of capital. The Parent Guarantor has further agreed that it will procure that sufficient funds are at all times made available to the Issuer to enable it to meet its liabilities in respect of the Bonds and otherwise under the Indenture as and when they fall due.

**(c)** *Obligations Binding on the Subsidiary Guarantors*

The Guarantors have agreed in the Indenture that, so long as any Bond remains Outstanding, no Guarantor will, and each Guarantor will not permit any of its Subsidiaries to, directly or indirectly, create or suffer to exist or enter into any agreement with any person that would cause any consensual encumbrance or restriction of any kind on the ability of such Guarantor or any of its Subsidiaries (i) to pay dividends or make other distributions in respect of its capital stock; (ii) to pay Indebtedness owed to the Issuer or any other Guarantor; (iii) to make any loans or advances to the Issuer or any other Guarantor; (iv) to transfer any of its properties or assets to the Issuer or any other Guarantor; or (v) to guarantee any Indebtedness of the Issuer or any other Guarantor; in any case, except for such encumbrances or restrictions existing under or by reason of (A) applicable law, (B) customary provisions restricting subletting or assignment of any lease or assignment of any other contract to which any Guarantor is a party or to which any of their respective properties or assets are subject, (C) any agreement or other instrument of a Person acquired by any Guarantor in existence at the time of such acquisition (but not created in contemplation thereof), which encumbrance or restriction is not applicable to any Person, or the properties or assets of any Person, other than the Person, or the property or assets of the Person, so acquired, so long as the agreement containing such restriction does not violate any other provision of these Conditions or the Indenture, (D) encumbrances and restrictions in effect on the Issue Date and (E) encumbrances and restrictions substantially similar to those contained in these Conditions or the Indenture or otherwise in accordance with normal banking practices in Egypt.

### 13. Restrictions on Disposals of Assets.

**(a)** *Disposals of Assets*

So long as any Bond remains Outstanding, none of the Issuer or any Guarantor will, and each will procure that its Subsidiaries will not, either in a single transaction or in a series of transactions, whether related or not and whether voluntarily or involuntarily, sell, assign, convey, transfer, grant or otherwise dispose of any of its or their assets or property to any Person, other than to another Guarantor or a Subsidiary of a Guarantor.

NY—363575.8

*(b)  Exceptions*

The restrictions set forth in Condition 13(a) shall not apply to:

(i)  disposals of any assets for Fair Market Value the consideration for which is received by the Issuer or the Guarantor making such disposal simultaneously with the disposal in cash or Cash Equivalents or, to the extent of not more than 25 per cent. of such consideration, evidenced by a promissory note or other similar debt instrument of the purchaser or assignee secured by the assets or property then being sold or assigned;

(ii)  disposals of trading assets or the expenditure of cash in the ordinary course of trading for Fair Market Value;

(iii)  disposals of obsolete or redundant plant and equipment, or of real property not required for the operation of its business, for Fair Market Value;

(iv)  disposals of assets for Fair Market Value where the proceeds of the disposal are to be reinvested in the purchase of replacement assets, which are comparable or superior as to type, value and quality;

(v)  subject to Condition 14 and the related provisions of the Indenture contained in Section 1005(f) thereof, disposals of all or any part of the Capital Stock of any Subsidiary Guarantor, or of any other Subsidiary of the Parent Guarantor or any Subsidiary Guarantor, in accordance with a plan of reorganization pursuant to which such Capital Stock is transferred to another entity or entities (the "New Owner(s)"), provided that (A) after giving effect to such reorganization, the Parent Guarantor and/or the Lakah Family together own at least 51 per cent. of the issued share capital of, and control, the New Owner(s), (B) the New Owner(s) unconditionally and irrevocably guarantee the obligations of the Issuer in respect of the Bonds on a joint and several basis with the Guarantors on the terms set forth in the Guarantee and (C) for purposes of calculating and determining compliance with the covenants set forth in Condition 9(a) and Condition 9(b)(i), (ii) and (iii), the financial statements of the Parent Guarantor and the New Owner(s) shall be consolidated on a pro forma basis;

(vi)  the payment of fees, interest and expenses under and in connection with the Bonds; and

(vii)  disposals of assets for Fair Market Value not otherwise permitted under this Condition 13, provided that the aggregate Fair Market Value of assets disposed of since January 1st in any year shall not exceed U.S. $5,000,000 during any consecutive 12 calendar months.

*(c)  Defined Term*

For purposes hereof, "Fair Market Value" means, with respect to any asset or property, the price which could be negotiated in an arm's-length, free market, transaction for cash between a willing seller and a willing buyer, neither of whom is under undue pressure or compulsion to complete the transaction. Fair market value shall be determined by the Board of Directors of the Parent Guarantor, acting reasonably and in good faith, and shall be evidenced by (in the case of a transaction where the aggregate consideration does not exceed U.S. $2,000,000) a certificate to the effect duly executed by any two members of the Board of Directors of the Parent Guarantor and (in the case of the transaction where the aggregate consideration exceeds U.S. $2,000,000) a resolution of the Board of Directors of the Parent Guarantor, in each case delivered to the Trustee.

**14.  Consolidation, Merger, Conveyance or Transfer**

*(a)  Conditions to Consolidation, Merger, Conveyance or Transfer*

Neither the Issuer nor any Guarantor shall, except as permitted by the Trustee or an Extraordinary Resolution (as defined in Condition 15(d)) of Holders, consolidate with or merge into any other Person or convey or transfer in one transaction or a series of transactions all or substantially all of its properties or assets to any other Person unless:

(i)  the Person formed by the consolidation or into which the Issuer or such Guarantor is merged or the Person that acquires by conveyance or transfer all or substantially all of the properties and assets of the Issuer or such Guarantor (the "*Successor Company*") agrees in writing to assume the obligation to make

due and punctual payment of all amounts payable under the Bonds and the Guarantee (as the case may be) and all other obligations of the Issuer or such Guarantor (as the case may be) under the Bonds, the Guarantee and the Indenture;

(ii)  immediately after giving effect to the transaction, no Event of Default will have occurred and be continuing;

(iii)  the Issuer or such Guarantor, as the case may be, has delivered to the Trustee (A) a certificate of an Authorized Representative thereof stating that the consolidation, merger, conveyance or transfer complies with this Condition 14 and that all requirements set forth herein relating to the transaction have been complied with and (B) an opinion of counsel that the Successor Company has validly assumed the obligations to be assumed by it pursuant to clause (i) above and that the Indenture, the Guarantee and the Bonds constitute legal, valid and binding obligations of the Successor Company, enforceable against it in accordance with their terms, subject to bankruptcy, insolvency, reorganization or other laws of general applicability relating to or affecting the enforcement of creditors' rights and to general equity principles; and

(iv)  the Successor Company expressly agrees (A) to indemnify each Holder of a Bond against any BVI Taxes or Egyptian Taxes (as the case may be) thereafter imposed on that Holder solely as a consequence of the consolidation, merger, conveyance or transfer, and (B) subject to Condition 7, to pay such Additional Amounts or provide such indemnity as may be necessary in order that the net amounts received by the Holders of Bonds shall, after any deduction or withholding of BVI Taxes or Egyptian Taxes and any present or future taxes, duties, assessments or other governmental charges of whatever nature imposed or levied by or on behalf of, or within any political subdivision of, or any authority having power to tax in any other jurisdiction in which the Successor Company is incorporated or is engaged in business, equal the amounts that would have been received in respect of those Bonds in the absence of the consolidation, merger, conveyance or transfer.

(b)  *Effect of Consolidation, Merger Conveyance or Transfer*
Upon any consolidation, merger, conveyance or transfer in accordance with this Condition 14, the Successor Company shall succeed to and be substituted for, may exercise every right and power of, and shall be bound by every obligation of, the Issuer or the relevant Guarantor, as the case may be, under the Bonds and the Guarantee with the same effect as if the Successor Company had been named as the Issuer or Guarantor, as the case may be.

## 15.  Modifications, Waivers and Amendments

(a)  *Modifications without Consent of Holders*
The Indenture, the Guarantee and the Bonds (including these Conditions) may be modified or amended without the consent of the Holders for the purposes of curing any ambiguity, or of curing, correcting or supplementing any defective or inconsistent provisions contained therein or in any other manner that the Issuer or the Guarantors, as the case may be, may deem necessary or desirable and that will not adversely affect the interests of the Holders in any material respect. Any other modifications or amendments will be made in accordance with the procedures set forth in Condition 15(b).

(b)  *Modifications with Consent of Holders*
Modifications and amendments to the terms and conditions of the Bonds (including these Conditions), the Guarantee and the Indenture may also be made, and future compliance therewith or past default by the Issuer or, if applicable, the Guarantors may be waived, either with the consent of Holders representing a majority in aggregate principal amount of the Bonds at the time Outstanding or by the adoption of a resolution at a meeting of the Holders held in accordance with the provisions of the Indenture by Persons entitled to vote a majority in aggregate principal amount of the Bonds represented at that meeting; provided, however, that no such modification or amendment and no such waiver may, without the written consent or the affirmative vote of each Holder, (i) change the due date for any amount payable under any Bond or, if applicable, by the Guarantors under the Guarantee; (ii) reduce the principal amount of any Bond; (iii) modify the rate at which interest accrues under the Bonds; (iv) change the obligation of the Issuer or the Guarantors to pay Additional Amounts pursuant to Condition 7 with respect to any Bond or under the Guarantee; (v) change the currency in which amounts are payable under the Bonds or under the Guarantee; (vi) make any change to the

A-17

Guarantee; (vii) reduce the percentage of the aggregate principal amount of Bonds at the time Outstanding necessary to modify or amend the Bonds or to waive any future compliance or past default by the Issuer or the Guarantors with the Bonds or reduce the percentage of the aggregate principal amount of Bonds required for the taking of action or the quorum required at any meeting of Holders at which a resolution is adopted; or (viii) modify the Issuer's obligation to maintain a Paying Agent (and, to the extent required by a stock exchange on which any such Bonds are listed, a Paying Agent in the place required for that listing), in accordance with Condition 6; provided, further, however, that no such modification or amendment and no such waiver may, unless approved by an Extraordinary Resolution of the Holders, modify or amend any terms of, or waive any non-compliance with, Condition 8 (relating to the negative pledges of the Issuer and the Guarantors) or Condition 9 (relating to certain financial covenants of the Parent Guarantor). Any such modifications, amendments or waivers will be conclusive and binding on all Holders of Bonds, whether or not they have given their consent or were present at the meeting, and on all future Holders of Bonds, whether or not notation of the modifications, amendments or waivers is made on such Bonds. Any instrument given by or on behalf of any Holder of a Bond or of all the Bonds Outstanding, as applicable, in connection with any consent to any such modification, amendment or waiver will be irrevocable once given and will be conclusive and binding on all subsequent Holders of that Bond.

*(c) Meetings and Quorum*

The Indenture contains provisions for calling meetings of Holders of the Bonds for the purpose of taking any action authorized to be taken by the Holders pursuant to Condition 15(b). Such meetings may be called by the Issuer, the Holders representing at least one-third in aggregate principal amount of the Bonds then Outstanding or the Trustee at the direction of the Issuer.

*(d) Defined Term*

For purposes hereof, (i) "Extraordinary Resolution" means a resolution of Holders of Bonds approved by Persons present and entitled to vote at least 75 per cent. in principal amount of the Bonds represented and voting at a Meeting of Holders duly called for the purposes covered by such resolution in accordance with the provisions of Section 902 of the Indenture and at which a Quorum is present and acting throughout; and (ii) "Quorum" means, for the purposes of any Meeting, one or more Persons entitled to vote present in person or represented by proxy 66⅔ per cent. in principal amount of the Outstanding Bonds, provided, however, that, at any reconvening of a Meeting adjourned for lack of Quorum, one or more Persons entitled to vote present in person a majority in principal amount of the Outstanding Bonds shall constitute a Quorum.

**16.  Replacement of Bonds**

As provided in the Indenture, if any Bond is mutilated or defaced or destroyed, lost or stolen, it may be replaced at the respective specified offices of the Trustee, the Registrar or any Transfer Agent, subject to all applicable laws and the requirements of any stock exchange on which the Bond may be listed, upon payment by the claimant of all expenses incurred in the replacement and upon such terms as to evidence, security, indemnity and otherwise as each of the Issuer, the Guarantors, the Trustee, the Registrar or the relevant Transfer Agent may require. Mutilated or defaced Bonds must be surrendered before replacements therefor will be issued.

**17.  Delivery of Certain Information**

So long as any Bonds remain Outstanding and are "restricted securities" within the meaning of Rule 144A(a)(3) under the Securities Act, if the Issuer or a Guarantor, as the case may be, at any time is neither subject to Section 13 or 15(d) of the Exchange Act nor exempt from reporting pursuant to Rule 12g3-2(b) under the Exchange Act, upon the request of a Holder or beneficial owner of a Bond, the Issuer and each Guarantor will promptly furnish or cause to be furnished to that Holder or beneficial owner, to a prospective purchaser of that Bond designated by that Holder or beneficial owner or to the Trustee or any relevant Paying Agent for delivery to that Holder or beneficial owner or prospective purchaser designated by that Holder or beneficial owner, as the case may be, in order to permit compliance by that Holder or beneficial owner with Rule 144A under the Securities Act in connection with the resale of that Bond by that Holder or beneficial owner, such information as is specified pursuant to Rule 144A(d)(4) under the Securities Act (or any successor provision), and the Issuer and each Guarantor will otherwise comply with the requirements of Rule 144A(d)(4) under the Securities Act.

A-18

NY—363575.8

**18.  Arbitration**

*(a)  Submission to Arbitration*

Subject to Condition 18(d) below, any dispute or difference whatsoever between the Issuer or any Guarantor, as the case may be, and the Trustee or a Holder of the Bonds arising out of or in connection with the Bonds, the Guarantee or the Indenture shall be finally settled by submission to arbitration by the American Arbitration Association under its Commercial Rules of Arbitration, as at the time in force, by a panel of three arbitrators appointed in accordance with such Rules.

*(b)  Terms of the Arbitration*

The place of the arbitration shall be New York, New York or London, England; the language of the arbitration shall be English; and the appointing authority shall be the American Arbitration Association.

*(c)  Entry of Judgement upon Award*

Without prejudice to the provisions of Condition 19, judgement upon on the award rendered by the arbitrators may be entered in any court of competent jurisdiction.

*(d)  Election Not to Submit to Arbitration*

The Issuer and the Guarantors each hereby irrevocably agrees that (i) before the Trustee or a Holder gives notice of arbitration with respect to any particular dispute or difference or (ii) if the Trustee or a Holder shall have received a notice of arbitration from the Issuer or any Guarantor, as the case may be, in respect of any such dispute or difference, the Trustee or such Holder may elect, by written notice to the Issuer and the Guarantors, that such dispute or difference shall be resolved by litigation rather than arbitration.

**19.  Governing Law; Submission to Jurisdiction**

*(a)  Governing Law*

The Bonds are governed by, and shall be construed in accordance with, the laws of the State of New York, without reference to its choice of law principles.

*(b)  Jurisdiction*

For the benefit of the Trustee, any Agent and any Holder that elects, in accordance with Condition 18(d) above, to resolve a dispute or difference of the type referred to in Condition 18(a) by litigation and for the benefit of any Person seeking to confirm an arbitration award with respect to such a dispute or difference, each of the Issuer and the Guarantors (i) irrevocably agrees that the courts of the State of New York and of the United States sitting in New York City, in the Borough of Manhattan, shall have non-exclusive jurisdiction for the purposes of any suit, action or proceeding arising out of or relating to the Bonds, the Guarantee or the Indenture, and, accordingly, each of the Issuer and the Guarantors hereby submits to the non-exclusive jurisdiction of each such court in connection with any such suit, action or proceeding; (ii) irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of venue of any such suit, action or proceeding in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum; and (iii) irrevocably appoints Corporation Service Company with an office on the date hereof at 375 Hudson Street, New York, New York 10014, as its agent upon whom process may be served in any such suit, action or proceeding brought in any New York State or United States federal court sitting in New York City, in the Borough of Manhattan, and agrees that service of process in any such action or proceeding may be made upon it at the principal office in New York City of that agent or in any other manner permitted by applicable law. Nothing contained in this Condition shall limit or otherwise restrict the right of any Person that elects, in accordance with Condition 18(d) above, to resolve a dispute or difference by litigation to bring an action against the Issuer or any Guarantor in any other jurisdiction in which the Issuer or such Guarantor or any of its respective assets are located, whether initially or to enforce a judgement obtained in any such action or proceeding brought in any of the courts referred to above.

*(c)  Waiver of Immunity*

To the extent that the Issuer or any Guarantor may in any jurisdiction claim for itself or its assets immunity (to the extent that it may now or hereafter exist, whether on the grounds of sovereign immunity or otherwise) from suit, execution, attachment (whether in aid of execution, before judgement or otherwise) or other legal process (whether through service or notice or otherwise), and to the extent that in any such jurisdiction there

may be attributed to the Issuer or any Guarantor or its assets any such immunity (whether or not claimed), each of the Issuer and the Guarantors irrevocably agrees for the benefit of the Holders, the Trustee and the Agents not to claim, and irrevocably waives, all such immunity to the full extent permitted by the laws of that jurisdiction.

(d)   *Related Statutory Provisions*
The choice of New York law as the governing law for the Bonds and the choice of the jurisdiction of the New York State courts hereunder are made pursuant to New York General Obligations Law Sections 5-1401 and 5-1402. The Issuer and the Guarantors agree, and each Holder of a Bond, by its acquisition thereof, is deemed to agree, that each Bond is part of a transaction covering in the aggregate not less than U.S.$1,000,000.

## 20.  Descriptive Headings
The descriptive headings appearing in these Conditions are for convenience of reference only and shall not alter, limit or define the provisions hereof.

## 21.  Currency Indemnity
Each reference in these Conditions to a specified currency is of the essence. All payments hereunder shall be made in U.S. Dollars. To the fullest extent permitted by applicable law, the obligations of the Issuer and the Guarantors in respect of any amount due under the Bonds or the Guarantee shall, notwithstanding any payment in any other currency (whether pursuant to a judgement or otherwise), be discharged only to the extent of the amount in U.S. Dollars that the Holder entitled to receive that payment may, in accordance with normal banking procedures, purchase with the sum paid in such other currency (after any premium and costs of exchange) on the Business Day immediately following the date on which that Holder receives that payment, and the Issuer and the Guarantors shall indemnify the Holders against any deficiency arising or resulting from any variation in rates of exchange between the date as of which the amount of due in U.S. Dollars is notionally converted into such other currency for the purposes of any such judgement or otherwise and the date of actual payment in such other currency. If the amount in U.S. Dollars that may be so purchased for any reason falls short of the amount originally due, the Issuer or the Guarantors shall pay such additional amount, in U.S. Dollars, as may be necessary to compensate for the shortfall. Any obligation of the Issuer or a Guarantor not discharged by payment in such other currency shall be due as a separate and independent obligation, which, to the extent permitted by applicable law, shall continue in full force and effect, until discharged as provided herein, notwithstanding any judgement or order for a liquidated sum or sums in respect of amounts due in respect of the Bonds or under any such judgement or order or any indulgence granted from time to time, and shall give rise to a separate and independent cause of action. Any such shortfall will be deemed to constitute a loss suffered by the relevant Holders and no proof or evidence of any loss will be required.

## 22.  Notices

(a)   *Publication of Notices*
Notices to be given by the Issuer or a Guarantor to Holders will be published (i) in the manner and at the times required pursuant to the applicable provisions of the law of Egypt or any other applicable jurisdiction, (ii) in an English language daily newspaper of general circulation in London, England (which is expected to be the *Financial Times*), and (iii) for so long as any Bonds are listed on the Luxembourg Stock Exchange and the rules of the Luxembourg Stock Exchange so require, in a daily newspaper of general circulation in Luxembourg (which is expected to be the *Luxemburger Wort*). Any notice published as provided above shall be deemed to have been given on the date of its publication, or if published more than once, on the date of its first publication. Except as otherwise required by applicable law, if publication as described above is not practicable, notice will be validly given if made in accordance with the requirements of the Luxembourg Stock Exchange.

(b)   *Notices through Clearing Agents*
Except in the case of Bonds listed on the Luxembourg Stock Exchange (in which instance notice shall be given as provided in Condition 22(a)), provided that applicable provisions of the law of Egypt and of any other applicable jurisdiction have been complied with, until such time as any Definitive Bonds are issued (provided that, in the case of Bonds listed on a stock exchange, the rules of the stock exchange allow) and so long as any Global Bond is held on behalf of DTC, Euroclear or Cedelbank, there may be substituted for publication in

NY—363575.8

Agent for communication by it to the Holders of Bonds held in accounts with that Clearing Agent.

**(c)** *Notices to Holders of Definitive Bonds*

Notices to Holders of Definitive Bonds will be deemed to be validly given (i) if sent by first class mail (or the equivalent) or (if posted to an overseas address) by air mail to the Holders of those Bonds at their respective addresses as recorded in the register for those Bonds, and (ii) for so long as any Bonds are listed on the Luxembourg Stock Exchange and the rules of the Luxembourg Stock Exchange so require, published in a daily newspaper of general circulation in Luxembourg (which is expected to be the *Luxemburger Wort*). Any such notice will be deemed to have been validly given on the fourth day after the date of mailing as provided above and, if published as provided above, on the date of its publication or, if published more than once, on the date of its first publication.

**(d)** *Effect of Certain Notices*

Neither the failure to give notice nor any defect in any notice given to any particular Holder of a Bond shall affect the sufficiency of any notice with respect to other Holders.

**(e)** *Notices to the Issuer and the Guarantor*

Notice to be given by any Holder to the Issuer or a Guarantor shall be in writing and given by forwarding the notice to each of the Trustee and the Luxembourg Paying Agent. While any Bonds are represented by a Global Bond, any such notice may be given by any Holder of an interest in that Global Bond to the Trustee or any Paying Agent through DTC, Euroclear or Cedelbank, in such manner as the Trustee and DTC, Euroclear or Cedelbank, as the case may be, may approve for this purpose.

**23. Prescription**

Claims against the Issuer for payments under any Bonds shall be prescribed unless made within a period of ten (10) years (in the case of payments of principal amounts) and five (5) years (in the case of interest and other payments) from the Relevant Date in respect of that payment.

**24. Listing**

Application has been made (i) for the Bonds to be listed on the Luxembourg Stock Exchange and (ii) for the Bonds offered and sold in reliance on Rule 144A under the Securities Act to be designated as eligible for trading on the Portal Market^SM, a subsidiary of The Nasdaq Stock Market, Inc.

**25. Enforcement**

**(a)** The Indenture contains provisions to the effect that if any Event of Default occurs and is continuing, the Trustee, may, in its discretion, proceed to enforce the respective rights of the Holders by such appropriate judicial proceedings or such other procedures as the Trustee deems most effective to protect and enforce any such rights, but shall not be obligated to do so unless (i) the Holders of not less than 10 per cent. of the aggregate principal amount of the Bonds Outstanding shall have, by an Act of Holders, so directed the Trustee and (ii) the Trustee shall have been indemnified to its reasonable satisfaction. No Holder shall have any right to proceed directly against the Issuer or any Guarantor unless the Trustee, having become bound to so proceed, fails to do so within 30 days.

**(b)** So long as the Bonds are represented by one or more Global Bonds, subject to the limitations described in the preceding paragraph and applicable law, if an Event of Default shall have occurred and be continuing, each Holder of an interest in that Global Bond (as evidenced by the records of accounts with DTC, Euroclear or Cedelbank, as the case may be) may, after notice to the registered owner of that Global Bond, but without the consent of that registered owner, and without joining that registered owner, file any claim, take any action or institute any proceedings to enforce directly against the Issuer or the Guarantors, as the case may be, or otherwise in respect of the Issuer's or the Guarantors' obligations in respect of the Bonds relating to that Holder's interest therein, as it appears on the date the proceedings are commenced in the book-entry settlement system of DTC, Euroclear or Cedelbank, as the case may be, without need to produce that Global Bond or the Guarantee, as the case may be, provided that the registered owner thereof has not theretofore filed a claim, taken action or instituted proceedings to enforce those obligations. The aggregate principal amount of that Global Bond shall be reduced by the principal amount of each Bond represented thereby in

A-21

NY—363575.8

respect of which the Issuer's obligations have been discharged as a result of any such claim, action or proceedings brought by the Holder of such an interest, or final settlement in respect thereof.

## 26.  Indemnification of the Trustee and other Agents

The Indenture contains provisions for the indemnification of the Trustee, each Paying Agent and the other Agents and for their relief from responsibility. The Trustee and each other Agent are entitled to enter into business transactions with the Issuer or the Guarantors and any entity related to the Issuer or the Guarantors without accounting to the Holders for any profit.

NY—363575.8