United States District Court
Southern District of New York

In the matter of the application of
RAMY LAKAH AND MICHEL LAKAH
                Petitioner

07-CV-2799

REPLY DECLARATION
OF GAMIL HALIM

- against-

for a judgment pursuant to Article 75 of the
C.P.L.E staying the arbitration commenced by

UBS AG, EXPORTERS INSURANCE
COMPANY, LTD ARAB BANGING
CORPORATION, NATIONAL BANK OF ABU
DHABI AND NATIONAL BANK OF OMAN,

**Respondents**

---

Mr. Gamil Halim, declares :

1. I am member of the Bar of the syndicate of Lawyers in Egypt, under number 43491, dated November 11, 1982. I received my law degree from the Ain Shams University in 1982 and have practiced law in Egypt, continuously, for the past twenty five years with a primary concentration in commercial law.

2. I submit this declaration in support of the application of Ramy Lakah and Micheal Lakah to stay arbitration against them which I understand is pending in New York City.

3. I am counsel to Ramy Lakah and Michel Lakah in Egypt and have acted as their counsel for many years. Since 2001, certain agencies of the Egyptian government have investigated allegations against Ramy Lakah and Michel Lakah and I have

-1-



presented them during these investigations in Egypt. investigations to which I refer are those investigations in Eg. referred to in respondents papers.

4. I submit this declaration at the Lakah reuest to respond to what I know to be materially false statements in Respondents papers regarding the referenced legal proceeding.

5. First, Respondents suggest Ramy Lakah and Michel Lakah, in collusion with three other persons, engaged in bank fraud, i.e. acquiring false bank certificates in collusion with Misr International Bank ("Misr"), inflating the value of certain of their company's shares. At the request of the prosecutor general, a court imposed an asset freeze on the assets of all the individuals supposedly involved in that purported misconduct (and their families) who were identified in a preliminary investigative report issued by a consultant to the Cairo Market Authority ("CMA").

6. It is important to understand how our courts work to understand what the freeze represented. The freeze order was based on a "report" from a researcher at the Cairo Market Authority that articulated the researcher's suspicion that three named persons and the Lakahs "colluded" or engage in purported bank and securities fraud. Based upon the language of subsequent orders of the court, the freeze orders that issued against Ramy Lakah and Michel Lakah were imposed because neither was in country at that time ands the court felt is was prudent. Precautionary measure in their absence.

7. To be absolutely clear, no complaint was ever field against Ramy Lakah or Michel Lakah regarding either Al Eman Brokerage for financial investors ("Al Eman") or Misr International Bank.

8. No indictment was ever field against them by the public prosecutor.

-٢-



9. There has never been a trial of any of the persons at issue.

10. No factual findings of wronging have been made by any co\. against any of the persons involved, despite the fact that freeze has been in effect for roughly four years.

11. On separate application of two of the three purported "co-conspirators" in the alleged wrongdoing (the third died), courts have twice, separately, determined that no evidence sufficient to justify the freeze orders had been produced by the prosecutor and, for lack of ant sufficient evidence, the courts vacated the freeze orders against each of the persons applying to lift freeze.

12. Specifically, one of those individuals was Mr. Mohammed Naguib Ibrahim. By order and judgment of the Judicial Court of Cairo, on the March 14,2005 all allegations against Mr. Mohammed Naguib Ibrahim were dismissed and the asset freeze previously imposed upon him, his wife and children was vacated. (Ex, GH_1) (including certified translation).

13. By virtue of this order and judgment, and at such time as each of Ramy Lakah and Michel Lakah make a direct and in-person application to the court that issued the freeze order (it cannot be accomplished through an appearance of counsel), as a matter of law, they will have the allegations against them dismissed and the previously issued freeze order vacated. Id.

14. Mr. Samberg's statements in his Declaration, primarily at 38-40 merely restate the suspicions of the CMA researcher set forth in Exhibits 18 and 19 of the Samberg Declaration. These suspicions are refuted by the actual orders of our courts which vacated the



freeze orders for lack of any sufficient factual basis an\ prosecutor stating to the court that it had no evidence to offer.

15. The order of the Cairo Court regarding Misr Bank has been available, in public documents, since at least March, 2005, but the (implicit) vindications of Ramy Lakah and Michel Lakah, by virtue of this order and judgment, are not mentioned in respondents papers.

16. Two other persons, Mr. Mohammed Sabri Abdel Gayyed and Mr. Ayman Mohammed Sabri Andel Gayyed, were also accused of collusion with Ramy Lakah and Michel Lakah. By order and judgment of the Judicial Court of Giza dated April 8, 2007, the seizure order imposed on Mr. Mohammed Sabri Abdel Gayyed and Mr. Ayman Mohammed Sabri Abdel Gayyed involving purported improper trading with Ramy Lakah and Michel Lakah, through Al Eman, was lifted by order and judgment on April 8, 2007 (Ex, GH_2) (including certified translation).

17. By virtue of the judgments issued from Cairo criminal court for each of Mr./ Mohammed Naguib Ibrahim and Mohammed Sabri, Ayman Mohammed Sabri, thus, both of Ramy Lakah and Micheal Lakah have the right to present to Cairo criminal court an application to lift the freeze order as their partners.

18. Mr. Samberg's statements, primarily at 34-37 (based on bar allegations) have again been held by our courts to be without factual basis.

19. Mr. Samberg, in his declaration, also references an Interpol Alert issued against Ramy Lakah based on orders of two other Egyptian Courts. What he has not mentioned to the court is that both of these orders are vacated by Egypt's courts. (EX, GH_3 and Ex. GH_4). It is also of significance that the translation of the Arabic Interpol alert is not complete, as the wording in Arabic clearly states "secret not to be disclosed or publicized" and this is not reflected in the English translation – a statement that would

-٤-


El-Zini Center
Certified Translation
C.R. 327560

open the serious question, as to in what manner this docu. was obtained.

20. My representation of the Lakahs is very well know in Egypt.

21. On October 5, 2006, I unexpectedly received ay my office, an envelope containing documents apparently relevant to the Euro Bond Offering.

22. Included was a copy of document dated December 3, 1999 which appears to have been modified on December 6, 1999 by a officer of an Egyptian bank called Banque du Caire, which no longer exists (BDC"), (Ex.GH_5).

23. Also included in this package were certain pages of what appears to be a report of Barclay's Bank to the bondholders dated February 18, 2002, memorializing conversation had by personal from Arab Banking Corporation with personnel at BDC, (Ex, GH_6).

24. The documents appear to memorialize BDC's own statements to agents of the bondholders that BDC asserted a pledge over the proceeds of sale of a subsidiary of Holding Company for Financial Investments ("HCFI"), Arab Steel Factory, S.A.E ("ASF"), via power of attorney BDC then held, (Ex. GH_6).

25. I have used to word "appear" in the above paragraphs because I have no personal knowledge or these documents, beyond my reading their content and, also, my statement that they were delivered to my office.

26. UBS appears to have been copied on the above documents, along with the other bondholders.

27. I declare under penalty of perjury under the laws of the United States of America that the foregoing in true and correct.

28. Executed this ___ day of June, 2007.

**GAMIL HALIM**



-5-

يات المتحدة قطاع المحكمة

المنطقة الجنوبية لنيويورك

فيما يخص طلب / رامي لكح وميشيل لكح          ۰۷۰. – سي.في. ۲۷۹۹

الموضوع :

تصريح رد للسيد / جميل حليم

ضـــــد

للحكم طبقاً للمادة ۷٥ من إس.بي.أر البقاء للتحكيم التي بدأت بـ يو.بي.إس إيــه ، شركة تأمين المصدرين المحدودة – البنك الأهلي أبو ظبي والبنك الأهلي في عمان.
المدعي عليهم

يصرح الأستاذ / جميل حليم أن :

١- أنــا عضو في نقابة المحامين في مصر ، برقم ٤٣٤٩١ ، بتاريخ ۱۱ نوفمبر ۱۹۸۲ ، حصلت على ليسانس الحقوق من جامعة عين شمس عام ۱۹۸۲ ومارست المحاماة في مصر ، باستمرار ، لخمس وعشرون عاماً وبتركيــز أساســي علــى القــانون التجاري.

٢- ولقد قدمت هذا التصريح بدعم من طلب رامي لكح وميشيل لكح لبقاء التحكيم ضدهما والتي كما فهمت معلقة في مدينة نيويورك.

٣- أنا محامي رامي لكح وميشيل لكح في مصر وكنت المحامى لهما للعديد من السنوات ، منذ عام ۲۰۰۱ ، و قد قامت العديد من الوكــالات التابعــة للحكومــة المــصرية بالتحرى عن الإدعاءات التى قدمت ضد رامي لكح وميشيل لكح وقد قمت بتمثــيلهم خلال هذه التحقيقات في مصر. والتحقيقات التي أشير إليها هي التحقيقات التي حدثت في مصر والمشار إليها في أوراق المدعي عليهم.

-۱-

قدمت هذا التصريح بناء على طلب لكح للرد على ما أعرف أنها تصريحات كاذبة في أوراق المدعي عليهم فيما يتعلق بالإجراءات القانونية المشار إليها.

٥- أولاً ، يدعي المدعى عليهم أن رامي لكح وميشيل لكح بالتواطؤ مع ثلاثة أشخاص آخرين ، اشتركوا في النصب على بنك ...الخ. ملحوظة: الحصول على شهادات بنك مزورة بالتواطؤ مع بنك مصر الدولي ،و بزيادة قيمة بعض أسهم شركتهم. وبناء على طلب النائب العام ، حكمت المحكمة بتجميد أصول كل الأفراد المشتركون في سوء السلوك المزعوم (وأسرتهم) والذين تم تحديدهم. في تقرير التحقيق التمهيدي الذي أصدره مستشار هيئة سوق المال بالقاهرة (سي.إم.إيه).

٦- من المهم فهم كيف تعمل المحاكم في مصر من أجل فهم ما يعنى التجميد. أمر التجميد جاء بناء على "تقرير" من باحث من هيئة سوق المال بالقاهرة شك أن أسماء ثلاثة أشخاص ورامي وميشيل لكح "تواطؤا" في الاشتراك في النصب على بنك وتزوير سندات مالية. استناداً إلى لغة الأوامر اللاحقة للمحكمة ، أوامر التجميد التي صدرت ضد رامي لكح وميشيل لكح تم فرضها لأن كلاهما لم يكونوا داخل البلد في هذا الوقت وقد رأت المحكمة أن هذا هو القرار الحكيم والاحترازى في غيابهم.

٧- لنكون أكثر وضوحاً ، لم يتقدم أحد بشكوى ضد رامي لكح أو ميشيل لكح فيما يخص شركة الإيمان للسمسرة وللمستثمرين الحاليين (الإيمان) أو بنك مصر الدولي.

٨- لم يتقدم النائب العام بأي إتهام ضدهما.

٩- لم تكن هناك أبداً أي محاكمة ضد أي من الأشخاص في القضية.

١٠- لم تقم أي محكمة بإيجاد أي نتائج واقعية للإثم ضد أي من الأشخاص المتهمين بالرغم من حقيقة التجميد الذى ظل ساري المفعول لمدة أربع سنوات تقريباً.

وفي طلبين منفصلين لأثنين من الثلاثة المدعي عليهم (المتآمرون) في القضية (توفي الطرف الثالث). قامت المحاكم المصرية مرتان منفصلتان بالتأكيد أنه لا يوجد دليل كافي لتبرير أوامر التجميد التي قام النائب العام بإصدارها ولنقص الدلائل الكافية قامت المحكمة بإبطال أوامر التجميد ضد كل من الأشخاص الذين تقدموا بطلب لإلغاء التجميد.

١٢- وعلى وجه الخصوص ، وأحد من هؤلاء الأفراد كان السيد محمد نجيب إبراهيم. بأمر وبحكم المحكمة في القاهرة في ١٥ مارس ٢٠٠٥ تم إلغاء كل الإدعاءات ضد السيد محمد نجيب إبراهيم وتم إلغاء كل تجميد الأصول التي فرضت عليه ، وعلى زوجته وأولاده ، (المرفق رقم ١) (متضمناً ترجمة معتمدة).

١٣- وبموجب هذا الأمر والحكم ، وفي هذا الوقت حيث قام كل من رامي لكح وميشيل لكح بعمل طلب شخصي ومباشر للمحكمة التى اصدرت أمر التجميد (لا يمكن أن تنفذ من خلال ظهور المحامي) ، من الناحية القانونية سيتم إلغاء الادعاءات المقدمة ضدهم ويلغى أمر التجميد الصادر سابقاً.

١٤- ما أدلى به السيد سامبرج في تصريحاته ، أولاً من ٣٨-٤٠ قام بالتصريح ثانية بشكوك الباحث في الهيئة العامة لسوق المال المصرية والتي تم نشرها في المستند القانوني ١٨ و ١٩ من تصريح سامبرج. ولقد تم تدحيض هذه الشكوك من المستند القانوني فإن الأوامر الفعلية لمحكمتنا والتي ألغت أوامر التجميد لنقص أي دلائل واقعية كافية وصرح النائب العام للمحكمة أنه ليس لديه أي دليل ليقدمه .

١٥- أمر محكمة القاهرة فيما يخص بنك مصر كان متاح في الصحف العامة على الأقل منذ مارس ٢٠٠٥ ، ولكن التبرئة (الضمنية) لرامي لكح وميشيل لكح بموجب هذا الأمر والحكم ، لم يتم ذكرهم في أوراق المدعي عليهم.

-٣-

تم اتهام شخصان آخران هم الأستاذ / محمد صبري عبد الجيد وأستاذ / أيمن محمد صبري عبد الجيد ، بالتواطؤ مع رامي لكح وميشيل لكح وبأمر وبحكــم محكمــة الجيزة بتاريخ ٨ إبريل ٢٠٠٧ أمر التجميد الذى تم فرضة على كلا من أســتاذ / محمد صبري عبد الجيد وأستاذ/ أيمن محمد صبري عبد الجيد والذين اشتركوا في تجارة غير مشروعة مع رامي لكح وميشيل لكح ، من خلال شركة "الإيمان" قد تم إلغاءه بأمر وحكم المحكمة فى ٨ إبريل ٢٠٠٧ (مرفق رقم ٢) (متــضمناً ترجمــة معتمدة).

١٧- وبموجب الاحكام الصادرة لصالح كل من السيد / محمد نجيب ابــراهيم و محمــد صبرى ، وايمن محمد صبرى من محكمة جنايات القاهرة يحق لكلا من رامى لكح و ميشيل لكح التقدم لمحكمة جنايات القاهرة بطلب لالغاء امر المنع من التــصرف مثل شركاؤهم .

١٨- إدعاءات سامبرج ، بداية من ٣٤-٣٧ (على أساس الإدعاءات المجردة) تم إقامتها مرة أخري عن طريق محاكمنا لتكون بدون أسس واقعية.

١٩- ولقد أشار أستاذ / سامبرج ، في أقواله ، إلى صدور إنذار من الإنتربول ضد رامي لكح بناء على أوامر محكمتان مصريتان ، ما لم يقم سامبرج بذكرة للمحكمة هو أن هذه الأوامر قد تم إلغائها بأمر المحاكم المصرية. (مرفق رقم ٣ ومرفــق رقــم ٤) ومن المهم أيضاً ذكر أن ترجمة إنذار الإنتربول باللغة العربية غير كاملة ، حيث أن الكلمات بالعربي تنص بوضوح على "السر لا يمكن الإفشاء به أو الإعلان عنه" السؤال الهام ، هو كيف تم الحصول على هذه الوثيقة.

٢٠- تمثيلي لعائلة لكح معروف جداً في مصر.

٢١- في ٥ أكتوبر ٢٠٠٦ ، استلمت بشكل غير متوقع ، في مكتبي ، ظرف يحتوى على وثائق متعلقة بعرض سند اليورو.

-٤-

تضمن الظرف نسخة من وثائق بتاريخ ٣ ديسمبر ١٩٩٩، والتي من الواضح أنه تم تعديلها في ٦ ديسمبر ١٩٩٩، و تم ذلك من خلال موظف في بنك مصر يدعي "بنك القاهرة"، والذي لم يعد له وجود (بي.دي.سي) (مرفق رقم ٥).

٢٣- تضمن أيضاً هذا الطرد على بعض الصفحات والتي من الواضح أنها تقرير من بنك باركليز لحاملي السندات بتاريخ ١٨ فبراير ٢٠٠٢، وتذكيراً بحديث تم بين موظفين من الشركة المصرفية العربية مع موظفين من بنك القاهرة (مرفق رقم ٦).

٢٤- يبدو أن الوثائق كانت للتذكير ببيانات خاصة ببنك القاهرة لوكلاء حاملوا السندات والتي قام بنك القاهرة بالتأكيد على رهان عائدات بيع فرع من الشركة المساهمة للاستثمارات المالية (إتش. سي. إن.أي) المصنع العربى للحديد إس. إيه.إن. إيـن (إيه.إس.إف) بواسطة محامي بنك القاهرة الذي تولي بعد ذلك (مرفق رقم ٢٦).

٢٥- لقد استخدمت كلمة "يبدو" في الفقرات السابقة لأنني لا أملك أي معلومات شخصية عن هذه الوثائق ، بخلاف قرائتى للمحتويات وأيضاً تصريحي الذي تم تحويله لمكتبى.

٢٦- يبدو أن يو.بي.إس تم نسخهم على الوثائق المذكورة أعلي، بالإضافة إلى حاملي الأسهم الأخرى.

٢٧- أنا أعلن تحت وطأة عقوبة اليمين المزور طبقاً لقانون الولايات المتحدة الأمريكية أن السابق حقيقي وصحيح.

٢٨- تم ذلك في يوم         من يونيه ٢٠٠٧

