UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In the Matter of the Application of

RAMY LAKAH and MICHEL LAKAH,

                            Petitioners,

       -against-

for a judgment pursuant to Article 75 of the
C.P.L.R. staying the arbitration commenced by

UBS AG, EXPORTERS INSURANCE
COMPANY, LTD., ARAB BANKING
CORPORATION, NATIONAL BANK OF ABU
DHABI and NATIONAL BANK OF OMAN,

                            Respondents.
----------------------------------------------------------------x

07-CV-2799

**REPLY DECLARATION
OF MICHEL LAKAH**

     Michel Lakah, being sworn, states:

     1.    I am one of the petitioners in this proceeding. I have read respondents' papers and submit this reply declaration under penalty of perjury. Respondents have submitted utterly and demonstrably false information to this court. I submit this reply declaration in further support of my petition to stay arbitration against me.

     2.    As detailed in our legal memorandum, there is no arbitration agreement binding us to arbitration. I never agreed, directly or indirectly, to arbitrate any dispute with Respondents.

     3.    I have never committed any fraud, as explained in detail in the declarations of Brian Murphy and our attorney Gamil Halim, to which I respectfully direct this Court.

4. As detailed in my original affidavit sworn on March 14, 2007, I have never abused the HCFI subsidiary companies, nor co-mingled my assets with company assets.

5. To the best of my knowledge, the HCFI companies scrupulously honored corporate and legal formalities. See the Sherif George Halim and Brian Murphy declarations.

6. Respondents' assertions that Medical Technology, Technowave, and Lifecare are successors to the HCFI guarantor entities are false. I address each of the purported "successors," separately.

7. First, Medical Technology, confirms that neither I nor my brother, Ramy, nor any of our companies, has anything to do with Medical Technology. Medical Technology attaches relevant documents to its response in the underlying arbitration, which we annex as an exhibit. (Ex.ML_1). I add the following.

8. I know that respondent National Bank of Abu Dhabi is one of the main bankers of Medical Technology. National Bank of Abu Dhabi, as a matter of standard practice, would have carried out due diligence on Medical Technology prior to granting them banking facilities. The bank would never have consented to do so if there was any suggestion that Medical Technology was a successor company to HCFI, or that my family had any direct or indirect association with that company. Respondents are engaged in pure, speculation in their assertions about Medical Technology being a purported "successor".

9. Second, Technowave confirms that neither I nor my brother, Ramy, nor any of our companies has anything to do with Technowave. Technowave has attached the

relevant documents to its response in the underlying arbitration, which we attach here as an exhibits. (Ex.ML-2 and ML_3). I add only that to the best of my knowledge, Technowave deals primarily in laboratory equipment, a sector of the business in which neither HCFI nor any of its subsidiaries has ever actively engaged.

10. Third, with respect to Lifecare, Respondents have set forth arguments based primarily on the declaration of Amgad Zarif, a two time convicted felon.

11. On information and belief, Zarif's affidavit was obtained in exchange for a release from liability in the underlying AAA arbitration where the company, Lifecare, is named as a purported "successor" company of one HCFI guarantor. Lifecare is the only purported "successor" that has not responded in the arbitration. Note the qualifier "(either currently or in the past)" in the Declaration of Gilbert A. Samberg dated April 16, 2007 and the language in paragraph 135 of Respondent's Demand for Arbitration and Statement of Claim dated June 8, 2006.

12. Mr Amgad Zarif worked for HCFI as a manager of a division of Medequip which handled the Olympus and Draeger accounts. Zarif was a manager and a then director/board member, as evidenced by the fact that, as of April 15, 1999, he was negotiating directly, on behalf of Medequip, the Draeger distribution agreement of Medequip (Ex.ML_4).

13. Amgad Zarif, like other senior officers of the HCFI subsidiaries, had the power to execute orders, to make all pricing decisions and to submit competitive bidding documents, to manage teams, involving service and technology personnel.

14. With Ramy Lakah, we asked Mr. Amgad Zarif to resign when we learned, in or about January, 2000, that he had not disclosed to the company that he had been

sentenced to six months in jail for theft of public property on or about September 1995 (Ex.ML_5). He was then, sentenced, again, in a different case, also for theft of public property, on or about March 1996, to six months jail time, (Ex.ML_6).

15. With respect to the substance of his declaration concerning the termination of the Draeger representation with Medequip, his assertions are completely false and are discussed in detail in the Murphy reply declaration.

16. Michael Haigh is an ex-employee of Eurotechniques Hellas, a privately owned Lakah family company, who was fired for inappropriate behavior when he ceased attending critical meetings and coming to work, as our records indicate. (Ex.ML_7). After he was fired, he misappropriated company property and the company commenced legal proceedings against him; he subsequently returned the stolen property after our law suit was filed.(Ex.ML_8).

17. Haigh claims the Lakah companies experienced "severe financial shortages" which he suggests, supposedly on personal knowledge, stating they were caused by improper behavior by Ramy Lakah or Michel Lakah. His testimony should be given no weight. First, Haigh worked for Medequip, not HCFI, and he had and has no knowledge of HCFI finances. His own language shows he is doing nothing more than speculating, even about Medequip. For example, the second full paragraph on page 4, he writes: "From my perspective, it appeared. . . "projects were obviously not being reinvested . . . and ""funds were likely diverted. . . " The third full paragraph on page 4 states: "this pattern was consistent with what Ramy Lakah had apparently done as early as 1994, when it appeared that he had misused funds." At the second paragraph on page 5, he writes: "[I]t appeared to me that 1999, the Lakah empire had become something of a

pyramid scheme." Use of these types of terms and phrases show Haigh has no personal knowledge of the matters to which he is swearing.

18. Mr. Haigh's affidavit shows, on its face, both a motive to lie about both Ramy Lakah and myself and an independent basis for this Court rejecting his assertions.

19. On page 5, he states that, by March 2000, salaries were no longer being paid at Medequip and that he left the company with a considerable sum owing in unpaid salary. Notably, he claims he left Medequip but fails to mention he left to work at another Lakah-owned company, the latter, in Greece, called Eurotechniques.

20. If the facts were as he suggests, Haigh would not be seeking to continue his employment with the Lakah companies, he would have been running away from them as fast as he could.

21. The truth is that Medequip paid Haigh every pound he was owed.

22. Mr. Haigh has no such personal knowledge of any of these matters and he was never in a position to have such knowledge.

23. Contrary to the assertions of Zarif and Haigh, our companies scrupulously followed formalities. See the reply declarations of our auditor, Sherif George Halim and, also, the reply declaration of Brian Murphy.

24. Our petition to permanently stay arbitration against us should be granted and the cross-petition to compel is to arbitrate should be denied.

25. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of July, 2007

_____
Michel Lakah