UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In the Matter of the Application of

RAMY LAKAH and MICHEL LAKAH,

                                   Petitioners,          DECLARATION OF
                                                         SHERIF GEORGE HALIM

             — against —

for a judgment pursuant to Article 75 of the
C.P.L.R. staying the arbitration commenced by

UBS AG, EXPORTERS INSURANCE
COMPANY, LTD., ARAB BANKING
CORPORATION, NATIONAL BANK OF ABU
DHABI and NATIONAL BANK OF OMAN,

                                     Respondents.
-----------------------------------------------------------------X

        Sherif George Halim declares:

        1.       I am an audit manager at Arab Chartered Accountants – RSM Egypt,
which acted as auditor Holding Company for Investments (Lakah Group) ("HCFI") and
its subsidiaries. I am one of three audit managers with responsibilities of overseeing the
preparation of financial documentation that was the basis for the consolidated balance
sheet of HCFI. My responsibilities were to review and to audit.

        2.       I am submitting this declaration to address certain arguments Respondents
have made based on exhibits 18 and 19 attached to the Gilbert Samberg declaration,
which are letters from the Cairo Market Authority ("CMA"). My statements are made
based on my personal knowledge of the events at issue, my review of documents and my
personal investigation of the issues discussed.

El-Zini Center
1292824
0105752490
Certified
Translation
C.R. 327560
El-Merghany St.
Heliopolis

3.     Respondents question how HCFI's capital could increase from LE3 million on or about November, 1998 to LE1,149,900,000, on or about December 8, 1998. Respondents urge the explanation must be a massive fraud, but there is a different explanation. It is necessary to first understand how the numbers were calculated.

4.     First, the LE3 million is the amount of cash deposited in MiBank, on or about November 25, 1998, to serve as the capital for the formation of HCFI. (Ex. 1) These funds were contributed by Ramy Lakah, Michel Lakah and Mr. Farouk Abd El Samiaa. (Id.)

5.     Between December 1 and December 6, 1998, Michel and Ramy Lakah transferred almost 97% of their own shares of all eight of the HCFI subsidiaries into HCFI, as permitted under Egyptian and international accounting rules. Ramy's and Michel's 97% shareholders' equity (book value) in the subsidiaries was equal to LE953,545,952 which was calculated after our firm reviewed and audited the balance sheets for each of the HCFI subsidiary company. This information is set forth in the balance sheet for the subsidiaries dated December 31, 1998. (Ex. 2-8)

6.     All eight subsidiaries were listed on the exchange, but only three of the subsidiaries were traded. Certain shares were transferred from the subsidiaries to HCFI at market value and other at book value, based on one factor. Shares were transferred at market value if the shares were then being traded on the market. If not, they were transferred at their book value.

7.     According to international accounting standards, the consideration for the transfer by Ramy and Michel Lakah of their shares of the subsidiaries into HCFI was recorded as shareholders "credit balances" due Ramy and Michel Lakah by HCFI.

El-Zini Cente
Certified
Translation
C.R. 327560
86, El-Mergha-
Heliopo¹

2

compliance with governing formalities, on December 7, 1998, during a general assembly meeting of the HCFI shareholders, a resolution was passed increasing HCFI's capital to LE1,149,880,000, showing that credit balances had been provided to Ramy and Michel Lakah in consideration of the transfer. At that time, the shareholders' credit balances were cancelled and Ramy and Michel Lakah were issued HCFI shares equal in amount to the value of the securities they transferred to HCFI, as set forth in the General Assembly Resolution of December 7, 1998. (Ex. 9)

8.  In other words, on December 7, 1998, HCFI increased its stated capital to LE1,149,880,000 which was comprised of the initial LE3 million cash, plus the book value for 97% of shares of the HCFI subsidiaries that Ramy and Michel transferred (LE953,545,954), plus the market value differential for the companies that were then trading in the market, an overall increase of just about 17%, over the book value of the transferred securities.

9.  HCFI's capital was increased a second time prior to the Eurobond Offering in December, 1999.

10.  On June 28, 1999, HCFI's Board resolved that HCFI's capital should be increased from LE1,499,880,000, in preparation for the issuance in July, 1999 of LE35 million Global Depository Reserves ("GDRs"). This increase in capital was achieved in four steps, consistent with Egyptian law: (i) HCFI's Board resolved to deposit, on June 28, 1999, LE35 million at the Mib Bank (Giza branch), representing 10% of the increase (Ex.10) ; (ii) HCFI's Board resolved to deposit, LE52,500,000, on December 12, 1999, at the Mib Bank (Giza branch), representing 15% of the increase (Ex. 11); (iii) HCFI's Board resolved to deposit, LE140,000,000, on December 25, 1999, at the Banque du

3

Tel. 2912824

El-Zini Cent

Certified Translation C.R. 327560

86, El-Merghany Heliopolis

Caire (Tharwat branch), representing 40% of the increase (Ex. 12); and (iv) HCFI's Board resolved to deposit, LE122,500,000, on December 27, 1999, at the Mib Bank (Giza branch), representing 35% of the increase. (Ex. 13)  All the funds identified in this paragraph were paid by Ramy and Michel Lakah, as shown in Ex. 10-13)

11.    By the end of 1999 and following the issuance of the GDRs, HCFI's capital was fully subscribed in the amount of LE1,499,880,000, as indicated in the balance sheet dated December 31, 1999.

12.    I am aware respondents have taken the position that the value of HCFI stock was "manipulated." I understand Egypt's courts have issued orders or judgments regarding this matter and that that issue is discussed in the declaration of attorney Gamil Halim. I have no personal knowledge of these orders or judgments, but I note the following.

13.    I know certain ASF assets were sold in or about February, 2000 for LE331 million, as set forth in the purchase and sale contract for that transaction. Ex. 14. The purchaser bought these particular ASF assets for more than their stated value, as shown on ASF's December, 1999 balance sheet. Ex. 15.  If ASF's numbers overstated the real value of its underlying assets, ASF would not have been able to sell them, shortly after the December balance sheet valuation and after due diligence by the buyer, for an amount above their stated value.

14.    There was no impropriety in how HCFI's capital increased and the entire process was in careful compliance with corporate formalities and Egyptian law.

15.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

16.    Executed at Cairo, Egypt, on June \_\_\_\_\_ , 2007.

_____

SHERIF GEORGE HALIM

891176



شهد أنا شريف جورج حليم :

(١)    اشغل منصب مدير مراجعة فى مكتب المحاسبون القانونيون العرب – أر أس أم مصر ، والتى كانت مراقب حسابات الشركة القابضة للاستثمارات المالية (لكح جروب) والشركات التابعة لها ، ولقد كنت أحد ثلاث مديرين مراجعة مسئولين عن مراجعة المستندات المالية التى تكون الاساس فى اعداد الميزانية المالية المجمعة للكح جروب ، وكانت مسئوليتى تنحصر فى الاطلاع والمراجعة .

(٢)    لقد تقدمت بهذه الشهادة للرد على الأوراق المقدمة من السيد / جيلبرت سامبرج فى شهادته فى الملحق رقم ١٨ ورقم ١٩ ، وهى عبارة عن خطابين من الهيئة العامة لسوق المال المصـــــــرية ( CMA ) . ولقد أعتمدت فى شهادتى على المعلومات الشخصية عن هذه الواقعة وكذلك على اطلاعى على المستندات وعلى تحقيقاتى الشخصية على هذا الموضوع .

(٣)    بخصوص الاستفسارات المثارة حول زيادة رأس مال لكح جروب من مبلغ ٣ مليون جنيه مصرى فى خلال شهر نوفمبر ١٩٩٨ الى مبلغ ١,١٤٩,٨٨٠,٠٠٠ جنيه مصرى فى ٨ ديسمبر ١٩٩٨ والادعاءات بأن ذلك تم عن طريق الاحتيال الضخم ، ولكن هناك توضيح مختلف أولاً يجب تفهم كيفية الوصول لتلك الأرقام .

(٤)    أولاً .. مبلغ ٣ مليون جنيه مصرى تم ايداعه نقداً فى بنك مصر الدولى فى حوالى يوم ٢٥ نوفمبر ١٩٩٨ وذلك كرأس مال انشاء لكح جروب ( مرفق رقم ١ ) ، ولقد ضخ هذا المبلغ بواسطة كل من رامى لكح ، ميشيل لكح وفاروق عبد السميع .

(٥)    مابين الأول والسادس من ديسمبر ١٩٩٨، ميشيل ورامى لكح قاما بتحويل حوالى ٩٧% من الاسهم المملوكة لهم فى ثمانية من الشركات التابعة الى لكح جروب ، وطبقاً للقواعد المحاسبية والقوانين المصرية وكانت قيمة تلك الـ ٩٧% من حقوق الملكية ( طبقاً للدفاتر ) فى الشركات التابعة تساوى مبلغ ٩٥٣,٥٤٥,٩٥٢ جنيه مصرى والتى قمنا بحسابها بعد اطلاعنا ومراجعتنا للقوائم المالية لكل من الشركات التابعة .. ولقد ظهرت هذه المعلومات بوضوح فى ميزانيات الشركات التابعة فى ٣١ ديسمبر ١٩٩٨ ( مرفق رقم ٢ ٨-٢) .

(٦)    كل الشركات الثمانية التابعة كانت مقيدة فى البورصة ، ولكن كان يتم التداول على ثلاثة فقط منها وتلك الاسهم تم نقلها من الشركات التابعة الى لكح جروب بقيمتها السوقية وباقى الشركات بقيمتها الدفترية ، وذلك طبقاً لحقيقة واحدة ، فالشركات التى تم نقل اسهمها طبقاً للقيمة السوقية هى الشركات التى يتم التداول عليها واذا لم يكن هناك عليها تداول فتم النقل بالقيمة الدفترية .

1

(٧)   طبقاً لمعايير المحاسبة الدولية ، تم قيد عملية نقل رامى وميشيل لكح لاسهمهم فى الشركات التابعة الى لكح جروب فى الحسابات الدائنة لرامى وميشيل لكح فى لكح جروب ، وبناء على ذلك فى خلال الجمعية العمومية لشركة لكح جروب المنعقدة فى ٧ ديسمبر ١٩٩٨ ثم إقرار زيادة رأس مال لكح جروب الى مبلغ ١,١٤٩,٨٨٠,٠٠٠ جنيه مصرى باستخدام الأرصدة الدائنة لرامى وميشيل لكح المتعلقة بنقل الاسهم ، وبناء على ذلك تم الغاء الأرصدة الدائنة لرامى وميشيل لكح مقابل اصدار اسهم فى لكح جروب مساوية تماما لقيمة الاسهم التى تم نقلها الى لكح جروب ، وكما هو موضح فى قرارات الجمعية العمومية للشركة المنعقدة فى ٧ ديسمبر ١٩٩٨ ( مرفق رقم ٩ ) .

(٨)   بعبارة أخرى ، فى ٧ ديسمبر ١٩٩٨ ، لكح جروب قامت بزيادة رأسمالها الى ١,١٤٩,٨٨٠,٠٠٠ جنيه مصرى مستخدمة كل من الثلاثة ملايين جنيه مصرى الاولى النقدية ، بالاضافة الى القيمة الدفترية لـ ٩٧% من أسهم الشركات التابعة والتى قام كل من رامى وميشيل بنقلها وهى حوالى ٩٥٣,٥٤٥,٩٥٤ جنيه مصرى ، بالاضافة الى القيمة السوقية الاضافية للشركات المتداولة فى السوق ، والتى لا تمثل إلا أقل من ١٧% أكثر من القيمة الدفترية للاسهم المنقولة .

(٩)   لقد تم زيادة رأسمال لكح جروب مرة أخرى وذلك قبل اصدار السندات الأوربية فى ديسمبر ١٩٩٩.

(١٠)  فى ٢٨ يونيو ١٩٩٩ قرر مجلس ادارة لكح جروب زيادة رأسمال الشركة الى ١,٤٩٩,٨٨٠,٠٠٠ جنيه مصرى وذلك استعداداً لاصدار شهادات ايداع دولية ( GDR'S ) فى يوليو ١٩٩٩ ، ولقد تمت هذه الزيادة على أربعة مراحل طبقاً للقوانين المصرية .
(أ) قرر مجلس ادارة لكح جروب فى ٢٨ يونيو ١٩٩٩ ايداع مبلغ ٣٥ مليون جنيه مصرى فى بنك مصر الدولى ( فرع الجيزة ) وهى تمثل ١٠% من الزيادة ( مرفق رقم ١٠ ) . (ب) قرر مجلس ادارة لكح جروب فى ١٢ ديسمبر ١٩٩٩ ايداع مبلغ ٥٢,٥٠٠,٠٠٠ جنيه مصرى فى بنك مصر الدولى ( فرع الجيزة ) وهى تمثل ١٥% من الزيادة ( مرفق رقم ١١ ) . (ج) قرر مجلس ادارة لكح جروب فى ٢٥ ديسمبر ١٩٩٩ ايداع مبلغ ١٤٠,٠٠٠,٠٠٠ جنيه مصرى فى بنك القاهرة ( فرع ثروت ) وهى تمثل ٤٠% من الزيادة ( مرفق رقم ١٢ ) . و (د) قرر مجلس ادارة لكح جروب فى ٢٧ ديسمبر ١٩٩٩ ايداع مبلغ ١٢٢,٥٠٠,٠٠٠ جنيه مصرى فى بنك مصـــــر الدولى ( فرع الجيزة ) وهى تمثل ٣٥% من قيمة الزيادة ( مرفق رقم ١٣ ) وكل هذه المبالغ المذكورة تم تمويلها من رامى وميشيل لكح كما هو موضح بالمرفقات ( ١٠ الى ١٣ ) .

2

(١١) بنهاية عام ١٩٩٩ وعقب اصدار الـ GDR'S رأسمال لكح جروب تم استكماله الى مبلغ ١,٤٩٩,٨٨٠,٠٠٠ جنيه مصرى بالكامل كما هو موضح فى القوائم المالية للشركة فى ٣١ ديسمبر ١٩٩٩ .

(١٢) انى أعلم ان اجراءات تم اتخاذها على أساس قيمة اسهم لكح جروب تم التلاعب فيها ، وانا أفهم ان هناك أمر محكمة بمصر صدر بخصوص هذا الأمر ، واعلم أنه تم مناقشة ذلك فى الشهادة المقدمة من المحامى جميل حليم ، ورغم انى ليس لدى معلومات شخصية عن أمر المحكمة السابق إلا أن لدى الملاحظات التالية .

(١٣) أنا اعلم أن بعض أصول المصنع العربى للحديد تم بيعها فى خلال شهر فبراير ٢٠٠٠ بمبلغ ٣٣١ مليون جنيه مصرى وذلك كما هو موضح فى عقد البيع الخاص لهذه العملية ( مرفق ١٤ ) .. المشترى قام بشراء تلك الاصول للمصنع العربى للحديد بقيمة أكبر من قيمتها الدفترية ، وذلك كما هو موضح بالقوائم المالية للمصنع العربى للحديد فى ديسمبر ١٩٩٩ ( مرفق رقم ١٥) ، فإذا كانت أرقام المصنع العربى للحديد أكبر من قيمتها الحقيقية ومبالغ فيها ، فاذا لم يكن باستطاعته بيعها بعد تقييم المشترى للقوائم المالية للشركة فى ديسمبر وبعد اجراء المشترى للفحص النافى للجهالة بمبلغ أكبر من القيمة المسجلة .

(١٤) ليس هناك أى خطأ فى طريقة زيادة رأس مال لكح جروب واجراءاتها التى تمت طبقاً للوائح الشركة والقوانين المصرية .

(١٥) انا اعلن تحت وطأة عقوبة اليمين المزور طبقا لقانون الولايات المتحدة الامريكية أن السابق حقيقــى و صحيح.

القاهرة فى : ٧ يونيو ٢٠٠٧

٧/٦/٧

3



( النشرة رقم ٢٤١٩ فى ٢٥ ديسمبر سنة ١٩٩٨ )

مرفق رقم ١

## وزارة الاقتصاد

### الهيئة العامة لسوق المال

# صحيفة الشركات

حقوق الطبع محفوظة

القاهرة

الهيئة العامة لشئون المطابع الأميرية

١٩٩٨

## الباب الثانى

## فى رأس مال الشركة

مادة ٦ – حــدد رأس مـال الشـركة المرخص بـه بمـبـلـغ ( خمسـة عـشر مليون جنيه مصرى ) .

وحدد رأس مال الشركة المصدر بمبلغ ( ثلاثة ملايين جنيه مصرى ) .

مـوزعاً عـلى ثلاثمائة ألف سـهم قيمـة كل سـهم ١٠ جنيهات مصرية ( عشرة جنيهات لاغير ) وجميعها أسهم نقدية .

مادة ٧ – يتـكون رأس مـال الشـركة مـن ٣٠٠٠٠٠ سهم اسمى قيمـة كل سهم ١٠ جم وقد تم الاكتتاب فى رأس المال على النحو التالى :

| العملة التى تم الوفاء بها | القيمة الاسمية | عـدد الأسهم | الاسم والجنسية |
|---|---|---|---|
| | | | **المؤسسون :** |
| جنيه مصرى | ١٠٠٠٠ | ١٠٠٠ | ١ – رامى ريون ميشيل لكج ............. |
| » » | ١٠٠٠٠ | ١٠٠٠ | ٢ – ميشيل ريون ميشيل لكج ............. |
| » » | ٥٠٠٠ | ٥٠٠ | ٣ – فاروق عبد السميع محمد ............. |
| | | | **المكتتبون :** |
| » » | ١٤٨٧٥٠٠ | ١٤٨٧٥٠ | ١ – رامى ريون ميشيل لكج ............. |
| » » | ١٤٨٧٥٠٠ | ١٤٨٧٥٠ | ٢ – ميشيل ريون ميشيل لكج ............. |
| | ٣٠٠٠٠٠٠ | ٣٠٠٠٠٠ | الإجمالى ....... |

وتبلغ نسبة مشاركة المصريين ١٠٠ ٪ .

وقد دفع المكتتبون ( ١٠٠٪) قيمة الأسهم الاسمية .