4-The Council of State, under a Bench of Administrative Judicial Bench would lack venue jurisdiction to hear the present lawsuits, as the People's Assembly to the exclusion of any other entity, would be the entity having such jurisdiction in accordance with Article 93, in the Constitution. As the matter is relating to validity of membership - irrespective of the causes on which these lawsuits are being based; and no matter whether those causes be preceding to, or contemporaneous with or subsequent to announcing the Results. On the grounds that resolving the lawsuits - under all circumstances – would necessarily have an impact by reason of exigency, on membership of those announced as the winners in the Elections ; and accordingly would involve a Challenge, in connection with validity of membership.

5- Law No. 73/1956 dealing with exercising political rights, has specified under Article Two thereof, by way of limitation thereto, such cases that would be prohibited from exercising political right; and the case dealing with persons of dual nationality have not be cited there amongst. Likewise, the law of the People's Assembly No. 38/ 1972, has specifically stated, under Article Five thereof, those who would have the right to stand as candidate for membership of the People's Assembly; yet it has not been stipulated thereunder that those of dual nationality would be prohibited from such nomination. Accordingly, the conclusion arrived at, under the Challenged Ruling, in stating that those of dual nationality would be prohibited from standing as candidates for membership of the People's Assembly, is an utterance not being corroborated by a provision in law or in the Constitution. Actually, such prohibition should be contained in an

Authorship & Translation
Scientific Bureau
FOUAD NEMAH,
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Chiro Tel. 3922124
Accurate True Translation

Lakah                                       27

express provision; as there would be in interpretative judgment when
an express provision exists. Besides Article First in the law dealing
with Immigration No. 11/1983, has been express and categorical in
stipulating that an Egyptian National, acquiring a foreignnationality
would retain his Egyptian Nationality together with hisconstitutional
and legal rights in full, without whatever detraction therefrom. And in
this regard, the Challenged Ruling is deemed in breach of the law and
thus deserving that it be annulled.

Likewise, the two **PETITIONERS**, in connection with Challenge sub.
No. 5344/46 High J., imputed to the Challenged Ruling, the following
shortcomings :

1- Lack of "venue" Jurisdiction of the Courts of the Council of State, to
hear the present lawsuits; and the differentiation made by the
Challenged Ruling between the litigations raised, dealing with the
proceedings prior to the electoral process and thus becoming an
object of the Adm. Judicial Control and those ones coming
subsequent thereto, about which the People's Assembly would be
duly concerned to be heard before it – owing to their being relating to
the voters' volition – pursuant to the fact that the Parliament would
take exclusive possession of matters relating to its members and their
lots, only subsequent to the consolidation of their valid membership,
emanating from the volition of the people. On the grounds that this
sort of differentiation is not being backed up by rules in the
Constitution and provisions of the law; as Article 93 in the
Constitution and 20 in the law of the People's Assembly No. 38/1972
& (349) in the Internal Regulations of the People's Assembly - all of

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4406214
37 Kasr El-Nil St., Cairo Tel. 3922124

which are provisions regulating in purport and contents thereof on one single topic; namely : verifying validity of the process of the Electoral Campaign in all phases thereof; taking into account that it is a composite process, that would commence upon submittal of papers of nomination and objections raised thereagainst and thereafter casting votes and sorting out such votes and eventually announcing results. Further, the word "election", that has been mentioned repeatedly in the foregoing texts would cover and absorb all stages of the electoral process; hence, it would not be allowable to separate one from another. Additionally, the principle of popular volition is so sublimes, so much so that should voters express their points of view in selecting their representative, it would not be allowable for a Challenged Ruling to order to conduct elections DE NOVO, in accordance with the conditions to be specified by it. However, despite the fact that Court Rulings would be enforceable, on the grounds that they are issued in the name of the People, it would not be allowable rationally and logically and from the national viewpoint that a Ruling issued in the name of the people be against the people's volition being expressed by the electorate ; as it would rather be necessary to consolidate such volition and honor it, as such volition should have the upper hand.

2- Ordinary Judiciary is legally qualified to look into "executive complaints", filed in connection with Rulings issued from Adm. Causes Courts; on the basis that no law was promulgated, dealing with proceedings to be taken before the Courts affiliated to the Council of State; hence, the Judge of Execution would be the one duly empowered to hear such "executive complaints".

Scientific Bureau
FOUAD NEMAH
i4(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922129
Accurate True Translation

3- What was cited in the Challenged Ruling, maintaining that dual
nationality is deemed a barrier precluding from nomination for
membership in Parliamentary Councils is a controversial statement. In
the sense that the effect entailed from acquiring the Egyptian
nationality would be the enjoyment of exercising political rights – and
the most important ones of such rights being the right to elect and
to stand as a candidate. Likewise, the law dealing with exercising
political rights has designated through explicit provisions, such
cases that would prohibit from exercising those rights; no mention has
been made, thereamongst of dual nationality. Actually, the
interpretative judgment concluded by the Challenged Ruling,
maintaining thereunder that there would be a split loyalty among
those having dual nationality is off point. On the grounds that there
would be no interpretative Judgment, in face of presence of explicit
provisions.

And the **PETITIONERS** came to the conclusion to petitioning that a
Ruling be issued in their favor, that the petitions referred to at the
forefront of this Ruling be awarded thereto.

And whereas the petitions of the **PETITIONERS** in the connection with
the two Challenges could be represented in their demand that a Ruling be
issued in their favor; ordering :

- "That the Challenged Ruling be quashed;
- That a Ruling be issued DE NOVO, ordering :
  Principally :
1- Lack of "venue" Jurisdiction of Courts affiliated to Council of State
to hear the lawsuits, object of the two Challenges;

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2367808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

2- That  a Ruling be issued ordering acceptance of the MEMO indicating

evidences of falsifications, "in form";

- and "on  merits" relating to the claim of falsifications (ordering) :

- That the wording added by way f deletion and addition, in the

minutes of the hearing of 5.12.2000 and in the Roll of the Hon.

Justice/President of Circuit I, affiliated to he Adm. Causes Court, be

returned and annulled; and be deemed null and void;

- together with all effects entailed from the foregoing – the most

important effects of which being : nullity of the Challenged Ruling and

nullity of what was ordered thereunder; together with lack of

Jurisdiction of Circuit VII to hear the lawsuits object of the Challenge;

and ordering their referral to the Adm. Causes Court to resolve

"subject-matter" thereof DE NOVO;

• And as a  subsidiary measure; (ordering) :

- That  the present lawsuits be rejected and that the Challenged **Decision**

be duly confirmed."

However, the **PETITIONER** in connection with Challenge sub. No.
5329/47 J., added to his petitions incoming in the Report on the
Challenge, a  new petition before this Court, namely : discontnuing
hearing the Challenge; pending resolving lawsuit sub. No. 8/23 J./
Conflict – filed by him before the High Constitutional Court, on 1.7.2001.

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

And whereas the Ruling on the said two Challenges, could require Dealing with the petition of the **PETTIONER**, in connection wth Challenge sub. No. 5329/47 J., discontinuing hearing the Challenge; pending resolving lawsuit sub. No. 8/23 J/Conflict; filed before the High Constitutional Court; And whereas it would also require scrutinizing the extent of Jurisdiction of Courts affiliated to the Council of State to hear the lawsuits object of the present two Challenges, namely:

Lawsuit sub. No. 617/55 J., pursuant to the Challenge filed in connection with the Decision ordered by the Committee of Scrutinizing Objections Against Candidates for Membership of the People's Assembly, in terms of what was included therein, comprising registering the name of Mr./"**RAMY RAYMOND MICHEL LAKAH**" on the Statement of such Candidates;

And Lawsuit sub. No. 885/55 J., pursuant to the petition seeking continuance in implementation of the Ruling issued on lawsuit sub. no.617/55 J., ordering stay of execution of the Decree ordering inclusion of the above-named person (i.e. Mr./"LAKAH") on the Statement of such Candidates;

- And likewise lawsuits sub. nos. 971, 1010 & 1196/55 J., by way of Challenging the Decree promulgated by Mr/ Minister of Interior, dealing with announcing results of Elections at Constituency of El-Zaher & El-Azbakia, in terms of what was included therein, ordering that Mr./"RAMY LAKAH" be the winner of the (electoral) seat allocated to "Professionals".

Likewise, the Ruling petitioned looking into the plea raised seeking lack of Jurisdiction of Circuit VII affiliated to the Adm. Causes Court to hear the lawsuits referred to previously; and thereafter dealing with the

Authorship & Translation
Scientific Bureau
**FOUAD NEMAH**
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

question of extent of legitimacy of the Decision issued from the Committee of Scrutinizing the Objections Raised Against the Candidates for membership of the People's Assembly in terms of what was included therein, concerning the registration of the name of Mr./"**RAMY LAKAH**" on the Statement of such Candidates; And likewise, the extent of legitimacy of the Decree promulgated by the Minister of Interior ordering that the above-named person (Mr./"LAKAH") be the winner of the seat of allocated to "Professionals" in the Constituency of El-Zaher & El-Azbakia.

- Likewise, the Ruling on the two Challenges referred, to would require discussing what has been raised by the PETITIONERS concerning the effects of the "Executive Complaints" filed before Civil Courts in connection with Rulings issued from Courts affiliated to the Council of State and extent of acting in compliance with the Rulings issued from the High Constitutional Court, in connection with the lawsuits relating to the litigation. And eventually, it would be required to discuss some of the shortcomings imputed by the State Legal Authority to the Challenged Ruling :

And whereas concerning the petition invoked by the PETITIONER in connection with Challenge sub. no. 5329/47 High J., seeking discontinuing hearing the Challenge; pending resolving the lawsuit of conflict, filed by him, under sub. no. 8/23 J., before the High Constitutional Court; it is duly confirmed in this connection that on 5.11.2000, there was issued a Ruling on lawsuit sub. no. 617/55 J., ordering stay of execution of the Decision of the Committee of

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506819
37 Kasr El-Nil St., Cairo Tel. 3922724
Accurate True Translation

Lakah                                    33

Scrutinizing Objections Raised Against  Candidates for membership of
the People's Assembly, of Year 2000, in terms of what was included
therein, comprising rejecting the Objection, submitted by Dr./**Abd
El-Ahad  Gamal El-Din**, against Mr./**"RAMY LAKAH"** and acceptance
of the  candidacy of the latter one, onto the Statement of Candidates for
the Constituency of El-Zaher & El-Azbakia,    at the sea allocated to
"Professionals";

- together with all effects that is to be entailed therefrom; the most of
  important of such effects being his exclusion from standing as a
  Candidate for Membership of the People's Assembly.

And on 6.11.2000, D./**Abd El-Ahad Gamal El-Din**, filed lawsuit sub.
no. 855/55 J. petitioning thereunder that a Ruling be issued, on a
Summary Matter, ordering :
- "That the Ruling on lawsuit sub. no. 617/55 J., be sustained."
In support of his lawsuit, he stated what follows :
- Mr./Minister of Interior tried to obstruct the said Ruling, by way of
  filing an "Executive Complaint" in its connection, despite being based
  on no factual or legal grounds; and in addition, he refrained from
  implementation thereof, despite including therein, its implementation
  without giving notice thereof. And on 11.11.2000, Dr./**Abd El-Ahad
  Gamal El-Din** filed lawsuit sub. no. 971/55 J., in conclusion of which
  he petitioned that a Ruling be issued thereunder; ordering :

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(g) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922/24
Accurate True Translation

"That execution of the Decree of Minister of Interior be stayed and annuled, that ordered announcing results of the Parliamentary Elections of the People's Assembly in year 1000 at the Constituency of El- Zaher & El- Azbakia allocated for "professionals" in terms of announcing the winning of **Mr./ "RAMY RAYMON MICHEL LAKAH"**,

- together with all effects entailed from such stay of execution and nullity; the most important of these results being prohibiting the above- named person **(Mr./ LAKAH)** from taking the constitutional vote;

- And that the valid results be announced subsequent to excluding the above- named candidate;

- And that the Summary (Urgent) Sector, be implemented, by virtue of its draft, and without giving notice thereof."


And in support of his lawsuit, he **(Dr./ Gamal El- Din)** stated what follows:

Mr./ Minister of Interior refrained from implementing the Ruling issued on lawsuit sub no. 617/ 55 J., on the pretext that **Mr./ "RAMY LAKAH"**, had filed an "Executive Complaint" before the Civil Court, entered under sub no. 7696/ 2000, Civil/ Summary/ Cairo, and which was scheduled to be heard before it, in the hearing of 11.12.2000; the fact that empowered **Mr./ "RAMY LAKAH"**, to enter into the Parliamentary Elections, conducted on 8.11.2000, and thereafter announcing his being the winner of the Parliamentary seat allocated to :Professionals" in the Constituency referred to. And on 16.11.2000, **Dr./ Abdel- Ahad Gamal El- Din,** filed a challenge, submitted to Mr./ Speaker of the People's Assembly, in which he petitioned that the Parliamentary Elections of the People's Assembly for year 2000, at the Constituency of El- Zaher & Al- Azbakia be annulled, and that all proceedings required be taken for the

34

Scienturic Bu. out
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4606219
37 Kasr El-Nil St., Chiro Tel- 3922124

implementation of the Ruling issued on lawsuit sub no. 617/ 55 J., that ordered excluding **Mr./ "RAMY LAKAH"**; together with all effects entailed from such exclusion; the most important effects of which being prohibiting the above- named (i.e. **Mr./ LAKAH**) from taking the constitutional oath. "And as to the People's Assembly, it ordered the referral of the Challenge referred to, bearing sub no. 422/ 2000, to the Court of Cassation which heard it and came to the conclusion in its connection, that:

"The Elections Process at the Constituency, object of the Challenge has been vitrated with the defect of breaching the law, due to the fofesture by the **RESPONDENT** of a crucial condition, required for standing as a Candidate, owing to the fact of his being of dual nationality (Egyptian & French). Likewise, the Adm. Court came to that conclusion in its Rulings that are enforceable; and which are being deemed of determinative effect, vis- á- vis each and everybody. And the Court maintained that the Parliamentary Elections carried out at the Constituency at El- Zaher & Al- Azbakia, of Year 2000, is null and void; and all effects entailed therefrom are to be annulled; and the most important of such effects being nullity of membership of the Candidate, who was announced winner of the Seat at this Constituency, namely: **Mr./ "RAMY LAKAH"** and the Court informed the People's Assembly of its Report, in this connection.

And whereas the PETITIONER, in connection with Challenge sub no. 5329/ 47 High J., stated in hearings dedicated to pleadings and by virtue of his MEMO, submitted before this Court, that there is positive litigating concerning its jurisdiction for resolving the validity of membership of the **PETITIONER** in the People's Assembly, at the stage coming subsequent to conducting the Parliamentary Elections and announcing the Results between the Council of State on the present Challenge- on the one hand, and the People's assembly, in connection with Challenge sub no. 422/

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis,
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

m738

2000, Challenges/ Elections- on the other. The fact, that forced it to resort to the High Constitutional Court, by way of filing lawsuit sub no. 8/23 J./ conflict, with a view to resolving this positive litigating in connection with Jurisdiction; and with a view to designating the Authority duly empowered to resolve the Challenge in connection with the validity of membership for the people's Assembly of Year 2000- Cairo- at a stage subsequent to terminating the Elections, and the promulgation of the Decree of Minister of Interior ordering that its Results be announced.

And the PETITIONER added that in accordance with Articles 25 & 26 in the Law no. 48/1979, dealing with the High Constitutional Court, the submittal of his petition aforementioned to the High Constitutional Court entails, discontinuing hearing the present Challenge, pending resolving the lawsuit of litigating sub no. 8/ 23, Constitutional/ High J.

And whereas it is stipulated, under Article 25, in the law of the High Constitutional Court no. 48/ 1979, that:
"The High Constitutional Court, to the exclusion of any other Entity, shall be duly empowered to what follows:

**First:** ------------

**Second:** Resolving conflicts in terms of Jurisdiction, through designating the Entity duly empowered from among Entities of the Judiciary or Authorities having Jurisdiction- when a lawsuit is filed in connection with one single subject matter before two Entities or Authorities, and one of which has not renounced hearing such lawsuit or when both of them renounced doing so.

**Third:** ------------

And it is stipulated under Article 31, in the said Law that

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

36

"For whoever is duly concerned, to petition from the High Constitutional Court to designate the duly empowered Judiciary Authority or Entity, to hearing the lawsuit in the case referred to, under Item Second, in Article (25)."

However, there must be made clear in the petition, subject- matter of the dispute, as well the Judicial Authorities or Entities that heard it and what has been taken by each one thereof, in its connection.

And the submittal of such petition shall entail stay of execution of the existing lawsuit, relating thereto, pending resolving it."

And whereas the two foregoing provisions, would presume conflicts in terms of Jurisdiction between Judicial Entities or Authorities, vested with such Jurisdiction; And whereas the Council of the State is a Judicial Entity by virtue of the Constitution (Article 172), yet the People's Assembly is categorically not so. On the grounds that the people's Assembly pursuant to the provision of Article 86 in the Constitution assumes the power of legislation and duly ratifies the State General Policy, as well as the General Scheme for Economic and Social Development and the State General Budget; and it is also entrusted with exercising control over works of the Executive Power. Likewise, the People's Assembly is not deemed an Entity having Jurisdiction; that is to say, an Entity available therein all constituents existing in Judicial Authorities; on the grounds that nature of an authority having Jurisdiction would differ from nature of the People's Assembly. As an Authority having Jurisdiction would issue Judicial Rulings uncovering aspects of right in connection with litigations filed before it; and there is to be taken into account, when setting up this Authority the Judicial neutral character,

Scientific Bureau
FOUAD NEMAN
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Acrtifate True Translation

37

having no political considerations and also having experience and a specialized legal knowledge. However, such Judicial Authority would guarantee all rights of defense, including thereamongst, applying for the withdrawal of the President and Members of such Authority in case of existence of causes conducing to unfitness in connection with resolving the litigation. And after all, these attributes do not exist in connection with the People's Assembly's; and accordingly is not deemed an Authority having Jurisdiction. And whereas the People's Assembly has been vested with the authority to resolve the validity of membership of its M.P's; nevertheless, this sort of authority; does not make of it a Judicial Authority or Entity having jurisdiction. Actually, the pursuant of Article (25 Second) in the Law of the High Constitutional Court, being the emergence of a conflict between Judicial Entities on the one hand or Authorities having jurisdiction, on the other. And whereas the People's assembly is not deemed a Judicial Entity or an Authority having Jurisdiction, and even if it is presumed to be entrusted with undertaking a judicial deed, when resolving validity of membership of its M.P's; nonetheless, such act would not include it among Judicial Entities or Authorities having jurisdiction before which there would possibly emerge conflict in competence thereof, pursuant to the purport of Article (25 Second) in the law of the High Constitutional Court. Accordingly, it is not legally appropriate that there would be conflict in terms of authority between the Council of State and the People's Assembly, in connection with the present litigation.

And whereas in addition to the foregoing, the litigation between subject-matter of the two present challenges, is not related to the question of resolving the validity of membership of **Mr./ RAMY LAKAH**, in such a way that it could possibly claimed existence of a positive conflict in terms

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4586219
37 Kasr El-Nil St., Cairo Tel. 3922124

of authority between the Council of State and the People's Assembly. Actually, the present litigation relates to the extent of legitimacy of the Adm. Decision, ordering the inclusion of the name of Mr./"RAMY LAKAH", on the Statement of Candidates for Membership of the People's Assembly on behalf of the Constituency of El- Zaher & Al- Azbakia; and thereafter the extent of legitimacy of Decree No. 17106/2000, promulgated by Mr./ Minister of Interior, ordering announcing the above- named person (Mr./ LAKAH) as the winner in the Elections: but it would not be concerned with the extent of validity of membership of the above- named person as M.P. in the People's Assembly. And whereas hearing the extent of legitimacy of the Decision that ordered the inclusion of the name of Mr./ "RAMY LAKAH" on the Statement of the Candidates would indisputably enter into the Jurisdiction of the Council of State- pursuant to what shall be cited in all details thereof thereafter- yet the Decree promulgated by Minister of Interior, ordering announcing that Mr./ "RAMY LAKAH" as the winner of the Seat allocated for "Professionals" at the Constituency of El- Zaher and Al- Azbakia, would not remit the present litigation from a Challenge in connection with an Adm. Decision relating to validity of membership of Mr./ R. LAKAH; and accordingly, would make it subject to the stipulation under Article (93) in the Constitution. On the grounds that we would only be dealing with validity of membership, when the Candidate concerned would stand for elections while meeting all the conditions required for nomination; one of such conditions being holder of pure Egyptian nationality; and wherein his legal status would be complemented upon being announced as the winner in such Elections. However, should such Candidate stand for elections- as in the case of the PETITIONER, MR./ RAMY LAKAH, while forfeiting one of the conditions that must be available in an M.P. in the people's Assembly;

39

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate Legal Translation

m738

And whereas such forfeiture was ascertained by virtue of an enforceable Judicial Ruling, having been disregarded by the Adm. Authority, which had made it allowable for the above- named person (i.e. **Mr./ LAKAH**) to stand for the elections, in this case, the volition of the electorate is deemed to have focused, Legally speaking- on "an absentee", in connection with the electoral campaign; and accordingly would not be an M.P. in the people's Assembly. And neither would the validity of his membership be put under discussion. And thereby, the Decree promulgated by the Minister of Interior, ordering announcing that **Mr./ RAMY LAKAH** as the winner of the Constituency, is vitiated with a grievous defect, thus degrading it, to a degree of nullity. And hence, it would be reviewed, in terms of its legitimacy to the Ruling of the Council of State; and would not be included within the scope of Challenges relating to validity of membership, being authorized to be heard before the People's Assembly. The purport of the claim that we are dealing with a challenge relating to validity of membership of **MR./ RAMY LAKAH** for the mere issue of a Decree promulgated by Minister of Interior ordering announcing his winning would approve encroaching an a competence, categorically and absolutely ascertained for the Courts affiliated to the Council of State, and would implicitly signify empowering those concerned to obstruct implementation of Judicial Rulings, in breach of the provision under Article (72) in the Constitution, which stipulates refraining from implementation of Court Rulings, or obstructing execution thereof, is a crime punishable in law.

And whereas **Dr./ Abdel- Ahad Gamal El- Din** had submitted challenge sub no. 422/ 2000, on 16.11.2000, to the People's Assembly, thus intending not so much resolving validity of membership of **Mr./ "RAMY LAKAH"**, pursuant to Article 63 in the Constitution, as the actual

40

Authorship & Translation
Scientific Bureau
**FOUAD NEMAH**
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124

m738

objective underlying such challenge- in accordance with what came in the Challenge Citation and as per the Report of Court of Cassation, on the challenge, referred to- being annulment of the People's assembly Elections of year 2000, at the Constituency of El- Zaher & Al- Azbakia; together with taking all legal proceedings required towards implementation of the Ruling issued on lawsuit sub no. 617/ 55 J; ordering excluding **Mr./ "RAMY LAKAH",** and all effects entailed therefrom; the most important of such effects, being prohibiting him from taking the Constitutional Oath. On its part, the People's Assembly referred to the Challenge, submitted by **Dr./ Abdel- Ahad Gamal El- Din,** to the Court of Cassation; which came to the conclusion that it would be necessary to implement the Ruling of the Adm. Judicial Court. Therefore, there is no positive conflict, in terms of competence, in this case; on the grounds that one that submitted challenge sub no. 422/2000, had not petitioned the People's Assembly to resolve validity of membership of **Mr./ "RAMY LAKAH",** but he petitioned that the Ruling of the Adm. Judicial Court, be executed, together with all effects that are to be entailed therefrom. Likewise, Court of Cassation, had not conducted investigations, concerning validity of membership of **Mr./ "RAMY LAKAH",** in accordance with Article 92, on the Constitution, but it came to the conclusion of the necessity to execute the enforceable Ruling of the Administrative Judiciary Court; and accordingly it cannot possibly be claimed the emergence of positive conflict in terms of compelence, in the present case. So, the issue is being represented, whether from the part of the one submitting the Challenge, or from the Court of Cassation, on the necessity that the enforceable Ruling of the Adm. Judicial Court on lawsuit sub no. 617/ 55J, be duly executed; but it was not represented in investigations and resolving the validity of membership of **Mr./ "RAMY LAKAH",** on the grounds that the

41

m738

enforceable   Court Ruling has already resolved a litigation, and accordingly it would not be allowable to be investigated and resolved, from the part of the two said Authorities, as all those concerned would be required to have it executed, as it is having a determinative effect vis- á-vis all those concerned, including thereamongst Court of Cassation and the People's Assembly. And whereas in view of the foregoing, it would be inrelevat to state that there is a conflict in terms of competence, between the Council of State and the People's Assembly.

And whereas constructing on all the foregoing, the petition lodged by the **PETITIONER, MR./ "RAMY LAKAH",** seeking discontinuing hearing the challenge; pending resolving the lawsuit sub no. 8/ 83 J, filed by him before the  High Constitutional Court, by way of reliance on the two  Articles 25 & 31 in the Law of the High Constitutional Court No. 48/ 1979, would  be based on no legal grounds, and thereby making it necessary that it be rejected.

And whereas concerning the plea  seeking lack of venue Jurisdiction of the Council of State to hear the litigation, on the presumption that the people's Assembly is duly empowered to resolve the validity of membership of its M.P.'S, in accordance with Article 93, in the Constitution, it has been established pursuant to the Rulings of this Court and also pursuant to the Rulings of the High Constitutional Court, that the Council of State, pursuant  to the provision of Article 172, in the Constitution, is the Public Law Judge in connection with Administrative Litigations, in all their forms and types (Ruling of High Adm. Court on lawsuit  sub no.  7/ 20 J.- conflict- issued in the hearing of 6.5.2000; And its Ruling on lawsuit sub no. 224/ 19J./ Constitutional, issued in the hearing of 9.9.2000.).

42

Authorsip & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo
Accurate True Translation

m738

And whereas provision under Article 93 in the Constitution stipulates that the people's Assembly is authorized to resolve the validity of its M.P.'S, subsequent to investigation carried out by the Court of Cassation in this connection, yet this sort of authorization would not exhaust the competence of the Council of State, with a view to fact that it is the holder of overall Jurisdiction, in connection with hearing litigations relating to the proceedings, taking place prior to the Polling Operation, in the technical and strict concept; And which would be based on the volition of the Electorate, taking into account that the Jurisdiction of the Council of State and the Parliamentary Authorization vested in the People's Assembly, each of which having originated from its provisions of the Constitution. Nonetheless, it would be permanently required to apply the provisions of the Constitution in such a way that would realize coordinator between them; hence, the Adm. Decisions coming prior to the Electoral Campaign would not bring about a legislation in Parliamentarian Act, in which the Parliament would be duly concerned, as they would be among the Adm. Deeds to be exercised by the Adm. Entity in this regard. Actually, the Parliament would have exclusive power on its M.P.'S, only subsequent to ascertainment of their valid membership therein, originating from the volition of the Electorate in the light of what is stipulated under Article 93 in the Constitution. Likewise, resolving the Adm. Decisions, issued in connection with preparations for the Electoral Operation, is basically a Jurisdiction that cannot possibly be differentiated from any other type of Judicial Authorities.

And whereas in view of the foregoing; hence, Courts of the Council of State are duly empowered to hear the present litigation, with a view to the fact that they are having overall authority to resolve it (i.e. the litigation);

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567358 - 4350219
37 Kasr El-Nil St., Cairo

43

m738

and there would be nothing that could possibly conceal from the Courts of the Council of State a Jurisdiction duly empowered thereto, and there would be nothing that would preclude it from resolving the present litigation.

And whereas concerning the plea seeking nullity of the Challenged Ruling, due to being issued from a circuit lacking jurisdiction, namely: Circuit III, due to non- linkage of this circuit to the lawsuit referred to it, from Circuit I, claiming occurrence of falsifications on the Roll of the Hon. Justice/ President of Circuit I, of the Adm. Causes Court, in the hearing of 5.12.2000, being represented in the referral to Circuit III instead of Circuit I. And therefore Circuit III would not be duly authorized to hear these lawsuits and thus nullifying the challenged Ruling. Nonetheless, this plea, is rebutted as follows:

**First:**     The Adm. Judicial Court is duly empowered to hear the lawsuits referred to; and it is one single Court, yet having numerous Circuits; hence, any one of it Circuits would be duly empowered to hear the lawsuits referred to. And the claim that Circuit III is not duly empowered to do so, is invalid, and rebutted.

**Second:**    What took place was nothing but a material error; and the Court is entitled to set it right on its own accord., in accordance with Article (191) in the Civil Procedure Code. And after all, the Court was inclined to order such referral to Circuit III, on the evidence of the wording coming at the posterior of the Decision of Referral, namely: "to be heard in the hearing of 18.2.2000". being a Sunday on which hearings of Circuit VII, and not Circuit V are being held."



Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4306219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

44

m738

**Third:** Whereas the lawsuits would enter within the competence of Circuit I of the Adm. Judicial Court; And whereas this Circuit has withdrawn from hearing these lawsuits of its own accord; And after all there is no difference between all these Circuits- and all of which are duly empowered, and authorized to resolve these lawsuits.

**Fourth:** Referral to Circuit VII, has not entailed whatever infringement or disregard to any of the warranties required in connection with litigating.

And in view of all the foregoing, the rejection by the Court of the Challenged Ruling, in connection with the plea seeking falsification and referral to investigation, due to not being concerned of its seriousness, and due to its being non- productive in connection with the lawsuits, and being in keeping with the provision under Article 52 in the law of Evidence on Civil and Commercial Matters. In other words, disparaging the challenged ruling, and seeking nullity due to this cause is irrelevant, and thus making it incumbent that it be disregarded.

And whereas concerning subject- matter, it is stipulated under article five in law no. 38/ 1977, in respect of those who would so wish to stand for elections, for the People's Assembly what follows:

"1. That such candidate be an Egyptian national, descended from an Egyptian father

2. ------------

3. ------------

4. ------------

5. That he has performed Compulsory Military Service; or exempted from it, in accordance with the law."



Authorship & Translation
Scientific Bureau
FOUAD NEMAN
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124

45

m738

And whereas it is required to specify the concept of nationality, which signifies Juristically and Judicially a bond emerging between an individual and a State, pursuant to which such individual would be in terms of his loyalty to the state to which he is affiliated via his nationality. And in return that State must necessarily protect him, by way of bestowing on him such safeguards required, when having to whatever transgression or encroachment. Hence, the purport of the foregoing, and its inevitable and logical significance would be, when a person belongs to two states, by virtue of his acquiring two nationalities; such person would have multiple loyalties due to plurality of nationalities.

And whereas Law No 38/ 1977, dealing with the People's Assembly stipulates under Article Five, that whoever runs for membership of the People's assembly is bound to be an Egyptian national, descended from an Egyptian father, yet, it has not found it sufficient for such a person to acquire the Egyptian nationality but it required that he be descended from an Egyptian father. Actually, this is an indication that must necessarily be fully absorbed and that could be summed up, in the fact that the lawmaker requires for whoever so wishes to be elected in the People's assembly, for acting on behalf of the Egyptian People that his affiliation to the soil of the homeland, be deep- rooted, fully interested in its problems and causes, being duly concerned about such problems and causes, even if he departs to the remotest parts in the world, working, holding in the innermost parts of his mind and his heart, and by words of his mouth, that his homeland would be the foremost among all nations of the world, in terms of dignity and advancement, not extending his loyalty for Egypt, to another homeland, even if such other homeland is more advanced politically or economically or socially. And the acquisition of a nationality by one and the same person, other than the Egyptian nationality would signify that

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124

46

absolute and complete and necessary loyalty, emanating from his heart, has split, legally speaking, into a dual loyalty, one of which to Egypt and the second one to another foreign homeland. And when there is a plurality of such loyalties to Egypt and another foreign homeland; and under such circumstances all the foregoing concepts, aimed to be attained, and which the Egyptian lawmaker has cited specifically, would recede. On the grounds that the full loyalty that is to be devoted to Egypt and its people and its aspiration and its soil, would be deemed insufficient and incomplete when divided between Egypt and another homeland. And after all, representation on behalf of the Egyptian People, would require full loyalty to Egypt; particularly, when taking into account, that the job duly assigned to the People's Assembly, in accordance with Article 86 in the Constitution being assuming the legislative power and ratifying the State General Policy, together with exercising Control over the Executive Power.

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

47

48

And whereas the established practice in terms of law No.26/1975, dealing with Egyptian nationality being that the acquisition of a foreign nationality, when permitted an Egyptian national is permitted to do so, would entail the coming to an end of the Egyptian nationality (Article 10/2); nevertheless, and by way of an exception to that, it has been made allowable that such authorization in terms of acquiring a new nationality, such Licensee would retain the Egyptian nationality. Actually, the foregoing authorization is granted due to considerations imposed by practical necessities, that could be represented in reassuring Egyptian nationals, settling abroad, and acquiring nationality other than that of their homeland, that they are still associated with their principal homeland, and they would return thereto, whenever they so desire; and thereby granting them a sort of a large spiritual and psychological force, in their struggle, overseas – pursuant to what came in the Explanatory Note pertaining to draft law No.26/1975 and the Report of the Legislative Committee, in this connection. Therefore, making it allowable to acquire dual nationalities, aims principally at supporting Egyptian nationals who settled abroad and thus acquiring the nationality of the country wherein they emigrated; as well as encouraging them to keep on their struggle overseas. Nevertheless, should such Egyptian national, of dual nationalities, return from abroad, to settle down in Egypt, and practice a job therein, hence, the cause underlying his retaining the foreign nationality would be eliminated; unless in case his acquiring such foreign nationality side by side with the Egyptian nationality, would represent from his own viewpoint, an honor attached thereto, which he would not desire to relinquish; or that it would represent to him a protection granted thereto, originating from a foreign county, which he would not desire to be forfeited. And in both cases, this would necessarily shake the certitude of being affiliated to Egypt solely; on the grounds that a true Egyptian

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219

49                                    Fan 101a

national is the one who holds his Egyptianity dear to his heart, and who would absolutely reject the concept that a homeland other than his beloved Egyptian homeland would contend therewith – whatsoever it be.

And whereas the law of Military Service No.127/1980, stipulates under Article (1) thereof, that:

"Military Service shall be imposed on each and every male Egyptian national, having reached 18 years old ….."

-And it is stipulated under Article (6), that:

"There shall be excepted from applying the provision in Article (1):

First: ---------------

**Fourth:** Categories, about whom rules and conditions for exclusion thereof, shall be issued, by virtue of a Decree promulgated by Minister of Defence, in accordance with requirement of the general welfare or the State Security. There shall be issued a Decree promulgated by Minister of Defense, in connection with such exclusion. ….."

And whereas Minister of Defense perceived sensitivity of the topic of duality of nationality in respect of conscription in the Egyptian Armed Forces; hence, he dealt therewith in such a way as to preserve Egypt's best interests, and not subject its security to potential dangers. Therefore, there was promulgated by him, Decree No.280/1986, dealing with rules and conditions for exclusion from performing Military and National Service among the categories incoming under par. (Fourth) in Article (6) in the law of Military & National Service. And under Article One, the following is stipulated:

Authorship & Translation
Scientific Bureau
**FOUAD NEMAH**
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 392212
Accurate True Translation

"There is to be added to Article (1) in the Decree promulgated by Minister of Defense & Military Production No.115/1981, referred to, a new par.(D), stipulating that Egyptians, residing in a foreign country who would acquire the nationality of this country, together with retaining their Egyptian nationality; and this exception would be eliminated in case of the forfeiture by such individual of his foreign nationality". And whereas the said Decree, has excluded the Egyptian national of dual nationality from performing Military Service as a soldier in the Armed Forces; and whereas this being the matter, in respect of such soldier; yet, that would uncover the necessity of this provision – and the more so – in respect of the Candidates for the People's Assembly, who are having dual nationality, who would be assuming the legislative power, and would ratify the State Overall Policy of economic and social development as well as the State Budget and Control Over Works of the Executive Power. And whereas the job undertaken by the soldier is glorious and sacred pursuant to its description incoming in the provision of Article 58 in the Constitution, we find that job of an M.P. in the People's Assembly is on the same degree of sacredness, in the sense that membership of the People's Assembly, pursuant to what is stipulated under Article (151) in the Constitution, that:

"An M.P is to be entrusted with the holy obligations, presumed to be dealt with by an M.P. in the People's Assembly, in defense of the security of the homeland, whether when undertaking his jobs, relating to managing International Relations of Egypt or when an approval be given, by the People's Assembly on Peace Treaties, as well as Treaties on Alliances, Commerce, and Navigation; and in all treaties and conventions, that would entail therefrom, modification in State territories or those ones that would be relating to rights of sovereignty or that would involve some expenditures incoming in the Budget. And the People's

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
17 Kasr El-Nil St., Cairo Tel. 3922124