Assembly would also contribute to deciding the State Overall Policy and Exercising Control over the Executive Power, in the manner, regulated, under the Provisions of Article 86 in the Constitution. And whereas that the foregoing constitutional self-evident truth is reaffirmed by the fact that laws, of some Entities stipulates for whoever is employed to go on serving therewith, not to be married to a foreign woman, such as the law of Diplomatic and Consular Corps No.45/1982, which stipulates, in Article 5/2 that:

"It is stipulated for whoever is to be employed in one of the posts of the corps....."

2- That such employee be not married to a foreign wife.

And it is stipulated in Law No.232/1959, dealing with conditions required for ongoing service and promotion in respect of Officers in the Armed Forces that:

"It shall not be allowable for Army Offices to be married to a foreign spouse ..."

And whereas the foregoing Entities, would prohibit, that those affiliated thereto or continue being affiliated thereto from among those married to a foreign spouse; hence, it would be required that this rule be extended to the person who would so desire to be affiliated to a Parliamentary Authority, on the grounds that it would be required also to prohibit a Candidate from membership of the People's Assembly.

And whereas in addition to the foregoing, we find that pursuant to Article 90 in the Constitution, it would be necessary for an M.P. to take an oath, prior to exercising his ongoing post, that he would preserve the safety of the homeland, and look after the best interests of the people; And accordingly it would be inconceivable, by way of logical inference, that loyalty to the homeland would be shared by a homeland other than the foregoing one, or to a people other than that for the people of Egypt.

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

52                                    Fan 101a

And whereas legislations regulating the provisions dealing with nationality would make it allowable, within the limits and pursuant to the conditions prescribed, the acquisition by an Egyptian national of a foreign nationality, while retaining his Egyptian nationality; yet such admissibility cannot possibly serve as a support or a basis for shaking the purport of the provisions of the Constitution that cannot possibly be interpreted or construed by way of making it allowable for a person that could act on behalf of the people and express volition thereof and feel its sufferings and respond to its aspirations, to be one who should necessarily be a national of pure and exclusive Egyptianity. As this sacred bond cannot be shared by another one therewith; for that would be incompatible with and would be running counter to the express wording provided for under Article 90 in the Constitution, referred to. As the Egyptian nationality required as a condition for acting as a candidate for membership of the People's Assembly would not be bear a partnership with another one, nor would it accept a competitor or a co-partner therewith. As the oath to be taken, would deal with a right having profound significance, and would entail, in itself, obligations, and presume availability of substantive conditions, for whoever is duly entitled to have the right of membership of the People's Assembly; at the foremost and most important of which being loyalty to Egypt solely; the fact that would be shaken when the person concerned is being of dual nationality. As a nationality would signify exclusive loyalty to a homeland, and such loyalty would be exclusive, when it would be unilateral.

And whereas the Court would like to reaffirm in this scope that the Constitutional provision emanating from the wordings of the oath that has to be taken by an M.P. in the People's Assembly prior to assuming matters relating to membership cannot possibly be designated to specific

Authorized Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sheriff St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124

53                                                      Fan 101a

cases.   On the ground that this Court is not dealing with and is having
nothing to do with actual loyalty, in connection with each specific case
separately;  as the matter would rather be attributed to a substantive
provision, based in the purport of provisions of the Constitution, being
supported  by  the  mere  legal  codification  relating  to  the  bond  of
nationality.    On the basis that foreign nationality would presume, legally
speaking, such loyalty and affiliation that would bring about a collision
with the requirement of the Constitutional provision; as this matter would
deal with the mere legal codification would be far above designation of
specific cases.

    And whereas it would be invalid to maintain that requiring a sole
Egyptian nationality in an M.P. in the People's Assembly would represent
a defaulting on the rule of equality prescribed for all Egyptians, which is
the rule stipulated under Article 40 in the Constitution; on the grounds
that such equality would presume conformity in legal positions.
However, it would not be allowable to resort to the foregoing rule in
connection with the present case; as the condition requiring a unilateral
Egyptian nationality emanates from provisions of the Constitution
themselves.   Accordingly, it cannot possibly be claimed that the
foregoing would be regarded as an infringement of the rule of equality
stipulated in the Constitution; on the grounds that it would be required to
apply provisions of the Constitution in such a way as to bring about a sort
of coordination and harmony between such provisions. Therefore, the
condition required pursuant to the Constitution that whoever would stand
for election that could possibly be M.P. in the People's Assembly, should
necessarily acquire the Egyptian nationality alone, could not possibly be
alleged to be in collision with the fundamental rule that provides for
equality between all Egyptians. As the political position of an Egyptian
national who is associated at the same time, with the nationality of

Scientific Bureau
FOUAD NEMATI
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219

54

Fan 101a

another country would not be identical, from the purely legal position, with the other Egyptian individual who is having the Egyptian nationality alone. For after all, the constitutional provision based on the purport of the wording of the oath is confined to membership of the Parliament, which would constitute nothing but a pure application of General Rules that would govern the validity of acts of an Proxy or a Representative. And this would be applicable to an M.P. in the Parliament who would act as a representative of all the people. These General Rules would make it necessary non-existence of whatever inconsistency in terms of interests existing in respect of the Proxy or the Representative. And in view of all the foregoing, the constitutional stipulation emanating expressly from the provision in Article 90 in the Constitution could not possibly be inconsistent or in collision with the provision in Article 40, in the selfsame Constitution which stipulates the General Rule of equality between nationals.

And whereas the foregoing is not breached by what is provided for under Article 9 in the law of Nationality No.26/1975, which would authorize for a foreigner that has acquired the Egyptian nationality the right of nomination as a candidate for Representational Authorities subsequent to the elapse of ten years from acquiring the nationality. This is due to the cause that such an individual, who has thus acquired the Egyptian nationality would be of deeper loyalty than an Egyptian national, who has been allowed to acquire a foreign nationality; as it is stipulated under Article 9 aforementioned, would deal with a naturalized Egyptian national, but not one of dual nationality. Besides, a naturalized person is not having the right to run for membership in the People's Assembly, as he has not been descended from an Egyptian father. In other words, the provision of Article (9) in the law of Nationality is a general provision being designated by the provision under Article five in

Authorized Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4596219

the law of the People's Assembly, and accordingly, there would be no scope for applying the provision of Article (9) in connection with running for membership of the People's Assembly.

And whereas the foregoing would not prejudice what is stipulated under Article (1) in the law of Emigration and caring for Egyptian nationals abroad; stating:

"Egyptian nationals, whether they be individuals or groups, shall have the right to emigrate permanently or temporarily abroad; And whether the object underlying this sort of emigration would require permanent or temporary stay abroad, in accordance with provisions of this laws and other laws in force. However, those who would retain their Egyptian nationality, pursuant to the provisions of the law, dealing with the Egyptian nationality; and their permanent or temporary emigration does not entail breaching their constitutional or legal rights enjoyed by them, in their capacity as Egyptian nationals, so long as they retain their Egyptian nationality". On the grounds that it is self-evident, that the provision would bestow on the Egyptian national, residing abroad, and retaining his Egyptian nationality, the right to enjoy constitutional and legal rights that would not be incompatible with the stipulation of the Constitution as well as the requirements of general welfare or State Security. As these rights would differ in accordance with the difference of the status of an Egyptian national abroad; that is to say, pursuant to whether such a national retains his Egyptian nationality solely or whether he would add to it a foreign nationality. In the former case, such an Egyptian national would enjoy all constitutional and legal rights enjoyed by an Egyptian national holder of an Egyptian nationality solely; and in the latter case, he would enjoy constitutional and legal rights prescribed for an Egyptian national, other than those ones required by virtue of the Constitution, on general welfare or State Security not to enjoy them, such

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4606219
17 Kasr El-Nil St., Chiro Tel. 3922124

as conscription in the Armed Forces and also holding sensitive posts in all the State Apparatuses, as well running for membership of Representational Councils.

And whereas the foregoing would not be altered by stating that non-allowing to run for membership of the People's Assembly would contravene the International Agreement dealing with Economic, and Social and Cultural Rights, approved by the General Assembly of the U.N. on 16.12.66, and which was signed by A.R.E. on 4.8.67, and approved by the President, pursuant to Presidential Decree No.536/1981, on 1.10.81 and ratified on 8.12.1981, and published in the Official Gazette, and coming into force as of 14.4.1982. On the grounds that the said Agreement stipulates under Article 2 that:

"1- "Each and every State, being a party to the present Agreement, hereby undertakes to honor and secure the rights prescribed in the present Agreement to all individuals within its territories and being subject to its authority without discrimination of whatever kind whether that be due to the origin, or color a race or language or religion or political opinion or otherwise; or national or social origin or ownership or other attributes relating to birth or otherwise";

2- --------------------------- ;  3- ---------------------------------------"

And it is stipulated under Article 25, that:

"Each and every national shall enjoy the right and be given an opportunity, without whatever discrimination, pursuant to what is incoming under Article (2) and without unreasonable restrictions :

A- To participate in the ongoing march of Public life whether directly a through representatives, to be selected freely;

Authorized to Translate
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922
Accurate True Translation

57                                        Fan 101a

B- To elect or be elected in periodical election, principal and general; and on the basis of equality; provided, however, that elections be conducted by way of secret balloting and that they would guarantee free opinion of the will of voters ..

C- ------------------------------".

And pursuant to the two foregoing provisions, a citizen shall have the right to elect and be elected; that is to say, exercising the two rights of electing and standing as a candidate for election, without discrimination between nationals , and without unreasonable restrictions. Such non-discriminations between nationals – pursuant to the concept of the Agreement – would no doubt be contingent on their legal positions; in the sense that should their legal positions differ, this would make it allowable to discriminate. Actually, there would be no equality between those not being equal in their legal positions. In other words, should a citizen's loyalty be multiple, his legal position would differ from that of a citizen having one exclusive loyalty, and thus discrimination between both of them in terms of standing as a candidate would be legally permissible, and thus not in conflict with the said Agreement. Further, the said Agreement, notwithstanding providing warranties to citizens without discrimination, in terms of providing thereto the right to exercise political rights – and one of which being naturally, the right to be a candidate, has made it allowable to lay down some reasonable restrictions on practising these rights, so long as they (i.e. such restrictions) would be imposed due to requirements of the general welfare. There is not doubt, that among such reasonable restrictions being such ones that would make it inadmissible for a citizen, holder of a foreign nationality, beside that one of his own nationality, to stand for membership of the Representational Council of his principal country. The said Agreement would not require – within the field of candidacy (in an election) – complete equality

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 · 4506219
37 Kasr El-Nil St., Cairo Tel 3928124

-58-

Fan 101a

between citizens; as it would rather  make it permissible to impose restrictions on  the right to such candidacy, so long as the general welfare would be  the cause underlying imposing  such restrictions; and so long that  such  restrictions would he quite reasonable.  Undoubtedly, the loyalty of a citizen of multiple loyalty to more than one single state, would be  the cause justifying the restriction which would be represented in prohibiting him from standing as  a candidate for membership of the People's Assembly;  and  thus making it serve as a reasonable restriction. And whereas the Court has differentiated, in this  Ruling, between an Egyptian national having  one single loyalty and an Egyptian national of multiple  loyalties, on the  basis that their legal positions would be different,  and on the basis of the general welfare; hence, its Ruling would not  be incompatible with the International Agreement on Economical and Social  and Cultural rights, and thereby stating that the conclusion arrived at  by  the  Court,  on the sad Agreement to have been in inviolation of the purport of the said Agreement, would be inappropriate .

And  whereas in view of the foregoing, it is stipulated for standing as  a candidate for membership of the People's Assembly in Egypt, such a candidate  must be  a holder of a single nationality, namely: the Egyptian nationality;  so much  so, that should he combine it together with another nationality,   he would forfeit the right to act as a candidate.  Actually, this condition  is  not  the  only   one for being affiliated to the People's Assembly,  as it is a condition for fitness to proceed in membership of this Council,  and  thereby  making  it  incumbent to accompany the candidate concerned, throughout the period of his membership.

And  whereas in application of the  foregoing, And as it was duly confirmed  that  the **PETITIONER** in connection with Challenge sub no.5329/47  High  J.,  namely,  Mr./**RAMY  RAYMON  MICHEL LAKAH**,  has  acquired  the  French  nationality;  and  a  Decree

Authorenip & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4806219

No.1111/1991, dated 25.2.1991, was promulgated by Mr./Minister of Interior, authorizing that he be naturalized as a French citizen, together with retaining his Egyptian nationality; And that due to this reason, he was exempted from performing Military and National Service on 24.3.91; hence, he is of dual nationality. And in other words, a crucial and essential condition required to be met in terms of those ones prescribed for candidacy for membership of the People's Assembly, is proven to be missing. And accordingly, the Challenged Decree, in terms of what was included therein, in respect of acceptance of his papers for candidacy and of rejecting the objection submitted thereagainst is found to have been issued in such away as to be incompatible with provisions of the Constitution and Law.

And whereas the Adm. Causes Court, in connection with the Urgent (i.e. Summary) Section of lawsuit sub no.617/55J., came to the conclusion of "stay of execution of the Decision issued from the Committee of Scrutinizing the Objections Raised Against Candidate For Membership of the People's Assembly in Year 2000, in terms of what was contained therein, of rejecting the Objection submitted against Mr./ **RAMY RAYMON MICHEL LAKAH**, and accepting his candidacy among the Statement of Candidates, allocated to "Professionals" at the Constituency of El-Zaher & Al-Azbakia; together with all effects that are to be entailed therefrom; accordingly, this Ruling issued is found to be in keeping with appropriate Rule of the law.

And whereas the Rule of the Council of State No.47/1972, pursuant to Article 52 thereof, bestows on all Rulings of the Council of State, and thereamongst such Rulings issued on the Urgent (i.e. Summary) Section, the Status of RES JUDICATA (i.e.a final & irrevocable Ruling); And whereas under Article 50, it is stipulated that a Challenge filed before the Adm. Causes Court, in connection with Rulings issued from Adm.

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
17 Kasr El-Nil St., Cairo Tel. 3922124

Courts, does entail, stay of execution thereof, unless when the Court orders otherwise;  And whereas a Challenge filed before the High Court in connection with Rulings issued from the Adm. Causes Court does not entail stay of execution thereof, unless otherwise ordered by the Circuit of Scrutinizing Challenges;

And whereas in accordance with the foregoing, hence, upon the issue of the Ruling on lawsuit sub no.617/55J, it has become incumbent on the Adm. Entity – pursuant to Article 54 in the law of the Council of State that it has to hasten to put the said Ruling into effect; and to lend a helping hand to have it implemented, even forcibly.  That being in compliance with purport of such Ruling and in conformity with the determinative effect acquired by it, which overtops even the considerations required by Public Order; so much so, that should it refrain from taking what is required therefrom by virtue of this sort of determinative effect, under whatever pretext, such refrainment , would constitute  a grievous infringement in connection with the law.  Likewise, any  proceeding or disposition taken by it and being inconsistent with this Ruling, would be regarded inexistent.

And whereas it is duly confirmed, that the Adm. Entity, which is entrusted  with implementation of Judicial Rulings, and carrying out what would  be required thereunder, in confirmation of the principle of a sovereignty of the law, under which the State is governed, and the sole basis for legitimacy of authority, has failed to put into effect the Ruling issued on the Summary Section in connection with lawsuit sub no.617/55J, and accordingly empowered, without whatever right to do so, Mr./ **RAMY RAYMON MICHEL LAKAH**, to stand for the elections that had been conducted on 8.11.2000, at the Constituency of El-Zaher & Al-Azbakia for the seat allocated to "Professionals", by way of putting his name together with the other candidates, to cast votes thereon from

Authorized  Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
22 ... ..... 61-Nil St   Chiro Tel. 3922124

the electorate; notwithstanding his forfeiture of the condition required in respect of possessing exclusive Egyptian nationality, in stark defiance of the determinative effect of the Ruling issued on the Summary (i.e. Urgent) Section in the lawsuit. And thereafter, it announced the Results of such Elections at the said Constituency, including therein that the above-named person (i.e. Mr./Lakah) being the winner of the seat allocated to "Professionals".

And whereas Elections were conducted, contrary to what was concluded in the enforceable Ruling, issued on lawsuit sub no.617/55J; hence, the Result of such Elections in respect of the seat allocated to "Professionals", would be worthless and should necessarily be disregarded. And accordingly the Decree promulgated by Mr./Minister of Interior, issued in connection with announcing this Result would be regarded null and void. And in this case, the volition of the Electorate are proven to have been expressed on a candidate, in whom one of the crucial conditions required by the Constitution and the law, does not exist; and accordingly, he is deemed, in law, not to have been registered on the Statement of such candidates; and so the volition of the Electorate, in his connection, cannot possibly be duly recognized.

And whereas the Appealed Ruling ordered revoking the Decision of the Committee of Scrutinizing Objections Raised Against Candidates For Membership of the People's Assembly of Year 2000, in Cairo Governorate, in terms of what was included therein concerning registration of the name of Mr./ **"RAMY RAYMON MICHEL LAKAH"** among the Candidates at El-Zaher & Al-Azabkia Constituency, for the seat allocated to "Professionals";

-together with all effects entailed from such revocation; particularly excluding his name from Statements of Candidates at this Constituency;

Authorship & Translation
Scientific Bureau
**FOUAD NEMAH**
14(a) Sherif St., Heliopolis
Tel. 2567808 – 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124
Accurate True Translation

-And likewise, ordering cancelling Decree No.17106/2000, promulgated by Mr./Minister of Interior on 9.11.2000, in terms of what was included therein, concerning announcing that the above-named person (i.e. Mr./**LAKAH**) was the winner of the seat allocated to "Professionals" at the Constituency within the precinct of the Police Station of El-Zaher & Al-Azbakia – Cairo Governorate;

-together with all effects entailed from such revocation, particularly, his non-acquisition of membership of the People's Assembly;

-as well as nullity of the fact, concerning taking the vote and his registration among its (i.e. the People's Assembly) M.P.'s;

-and repeat of Elections DE NOVO, among all candidates for the seat allocated to "Professionals", at this Constituency, except the above-named person (Mr./LAKAH);

-on the grounds that the conclusion arrived at by the Appealed Ruling, is in keeping with the appropriate provisions of the law".

And whereas the foregoing conclusion, would not be changed by what was raised by the PETITIONERS in connection with the two present Challenges, as the PETITIONER, in connection with Challenge sub no.5329/47 High J., filed an Executive Complaint in connection with implementing the Ruling of the Adm. Causes Court, issued on lawsuit sub no.617/55 J., in the hearing of 5.11.2000, and which ordered:

"Stay of execution of Decision ordered by the Committee of Scrutinizing Objections Against Candidates for Membership of the People's Assembly of year of the People's Assembly For year 2000, in terms of what was included therein concerning registering the name of Mr./**RAMY RAYMON MICHEL LAKAH**, on the list of Candidates for membership of the People's Assembly at the said Constituency before Cairo Court For Summary Matters;

Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506210
37 Kasr El-Nil St., Chiro Tel. 3922124
Accurate True Translation

Fan 101a

-And whereas this Executive Complaint filed before a Civil Court – pursuant to what is claimed by them – is having a suspensive effect, yet the entry of the PETITIONER into the Election, would be in keeping with the law; Likewise, it shall not be permissible for the Appealed Ruling, as stated by them – to raise an objection in connection with the present litigation, by virtue of the Ruling of the High Constitutional Court, issued on lawsuit sub no.11/20J./Conflict – and which we are going to deal therewith thereafter – on the grounds that it does not acquire absolute determinative effect. As what would acquire such absolute determinative effect among Rulings of the High Adm. Court, being solely such Rulings issued on Constitutional Lawsuits; and likewise Decision relating to interpretation. Nonetheless, Rulings issued from the Court in connection with lawsuits dealing with conflicts, would only acquire such determinative effect between its parties solely and within the scope of the litigation brought before the Court.

Therefore, we would like to state herein that what was raised by the **PETITIONERS**, in the manner referred to, would not alter the findings arrived at by us, in terms of validity of conclusions reached by the Appealed Ruling. On the grounds that what was raised by the **PETITIONERS** is rebutted by what is stipulated under Article 172, in the Constitution, running as follows:

"The Council of State is an Autonomous Judicial Authority, and shall be duly qualified to resolve Administrative Litigations as well as Disciplinary Lawsuits. And its competences, other than the foregoing ones, shall be determined by law."

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506210
17 Kasr El-Nil St., Cairo Tel. 3922
Accurate True Translation

64

Fau 101a

-And thereafter there was promulgated the law dealing with the Council of State No.47/1972, in which Article Ten thereof determined such competences that are to be exclusively heard by Courts of the Council of State, to the exclusion of Courts other than the foregoing ones – in such a way that those Courts have become the Natural Judge and also the Judge of the Public Law in respect of Adm. Litigations.

-And it has been established, via Rulings of the High Adm. Court that the Council of State has become pursuant to the competences passed thereto, by virtue of Article (72) in the Constitution and Article Ten, in Law no.47/1972, holder of Overall Jurisdiction to hear various Adm. Litigations, and Natural Judge thereof, in such a way that no Adm. Litigation would keep away from jurisdiction thereof.

-And whereas the Council of State is the holder of Overall Jurisdiction in connection with all Adm. Litigations, it would also be duly qualified to hear what would branch from these litigations relating to implementation of Rulings issued from its Courts – due to what is prescribed, that a Judge dealing with a principal issue is the Judge of a branch therefrom. In other words, Courts of the Council of State, issuing Rulings, whose implementation is faced with problems, obstructing implementation thereof, would be having jurisdiction in resolving these Executive Complaints.

-And accordingly, the referral of an Executive Complaint, in connection with a Ruling on an Adm. Litigation before Civil Courts would be productive if no effects. And this being the finding arrived at by the High Constitutional Court, in concluding that: A conflict in implementation of a Ruling issued form the part of Adm. Court – which would order either proceeding in implementation, or suspension thereof – even though it would be described in terms of its kind, that it is a conflict in implementation – yet that would not disprove its being affiliated as a

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4406219

general established practice – to the same kind of litigation, in which there was issued that Ruling.

-And accordingly, it would retain its administrative nature, and would be registered under such description among litigations of the Public Law, about which Adm. Judicial Courts would be duly qualified to hear them.

-However, the foregoing conclusion would not be changed by the provision under Article 275 in the Civil Procedure Code, concerning the competence of the Judge of Execution – with a view to the fact, of being a Branch of Ordinary Judiciary – in terms litigation of implementation: substantive and temporary.

-Accordingly, this Ruling would be dedicated to litigations of implementation, which would be heard before Ordinary Courts – without surpassing to an Adm. Causes Authority.

(Ruling of the Court on lawsuit no.11/20 J. Conflict in the hearing of 1.8.99)

And whereas the Ruling of the High Constitutional Court makes it incumbent on the two Judicial Authorities, between both of which a conflict erupted, would also involve a legal principle required to act in compliance therewith, and honor it, applying what would be required therefrom from the part of all authorities and individuals – so long as the State – pursuant to the Constitution – is subject to the law – and that sovereignty of the law is the basis under which the governance of the State is being founded.

And whereas additionally to the foregoing, and in view of the special nature of Adm. Litigation, it is stipulated in the law of the Council of State No.47/1972, under Article (3) in Articles of promulgation thereof, that:

Authorship & Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922126
Accurate True Translation

"Proceedings provided for under the law, shall be applied; and there shall be applied provisions of the Civil Procedure Code, in case of absence of an appropriate provision therein; pending the promulgation of a law dealing with the Judicial Section."

Likewise, it is stipulated under Article 50/1 that:

"A Challenge before the High Adm. Court, does not entail stay of execution of the Challenged Ruling, unless when the ad hoc Circuit of Scrutinizing Challenges ordered otherwise."

So, the Council of State is not constrained in its proceedings by all provisions that are provided for in the Civil Procedure Code; but it would select out of those provisions what would be in keeping with the nature of an Adm. Litigation by way of applying it thereto; and setting aside what would be incompatible with nature thereof, and thus would exclude them. And when the said Law stipulates what would make it necessary to put into effect Rulings of the Adm. Causes Court, despite the Challenge filed thereon, and when it would order expressly and clearly that a Challenge thereon before the High Adm. Court would not entail stay of execution thereof, unless when the ad hoc Circuit of Challenges of that Court would order stay of execution thereof, when petitioned to act likewise, it would be required to abide by the rule of the law, pursuant to what would be incoming in law in this connection. However, should a party concerned turn round the valid provision of the law, by resorting to the Civil Courts petitioning therefrom stay of execution of Ruling issued from the Adm. Causes Court; the Adm. Authority entrusted, would make a short shrift of his executive complaint, by way of rebuttal thereof, and thus hasten, in implementation of such Ruling.

Authorized Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922129
Accurate True Translation

67                                    Fan 101a

And whereas the Adm. Authority entrusted with the implementation of the Ruling of the Adm. Causes Court, on lawsuit sub no.617/55J, has refrained from such implementation thereof, notwithstanding the fact that the **PETITIONER**, namely Mr./ **RAMY RAYMON MICHEL LAKAH**, has lodged an Executive Complaint in connection with the said Ruling, before Cairo Court For Summary Matters; that is to say, before a Court lacking jurisdiction; and whereas such Executive Complaint was scheduled to be heard on a date subsequent to end of the elections, thus signifying obstructing implementation of the Ruling and exhausting time pending finalizing such Elections; hence, this failure in implementation from the part of the Adm. Entity, constitutes departure from the Constitution and disrupting its provisions. And whereas the Constitution has confirmed separation between Powers, and prohibited that whatever Adm. Act or Decision be safeguarded from being reviewed by Judicial authorities; Further, it is stipulated that failure in implementation enforceable Court Rulings or standing in the way of implementation thereof is a crime, punishable in law; as failure in implementation enforceable Judicial Rulings issued from the Council of State would constitute an act in violation of the Constitution; for no Authority or Jurisdiction would remain to Adm. Judicial Authorities which are being duly qualified, to resolve Adm. Litigations, when Rulings issued therefrom would be disregarded.

And whereas though the Adm. Entity had committed a hostile act against the law by means of the Executive Complaint lodged by the PETITIONER before the Civil Judicial Authorities, and thus made it allowable for him to be a candidate in the Elections, via this Executive Complaint, filed before a non-legally qualified Court, and scheduled to be heard on a date coming subsequent to the date on which such Elections

Authorized Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506819

Pan 101a

would be conducted, and thereby disrupting the implementation of an enforceable Ruling that should necessarily be deemed inexistent; Further, it should necessarily be non-productive of whatever effects; and accordingly such Elections carried out on the seat allocated to "Professionals" are null and void. In other words, announcing that Mr./ RAMY RAYMON MICHEL LAKAH, being the winner of the seat allocated to "Professionals" as well as his membership of the People's Assembly, is a form of futility; and thereafter, taking the constitutional oath by the above-named (Mr./LAKAH) before the People's Assembly would be worthless. On the grounds that such oath would not make him acquire membership of the People's Assembly; so long as the Decision ordering his registration among candidates for the People's Assembly would entail no legal effect, and from which there would not originate whatever right. And so long as it has been duly confirmed that he was deprived of acquiring an exclusive Egyptian nationality which is not only a condition required for being affiliated to the People's Assembly, but it would also be a condition for continuance of membership therein.

And whereas the shortcomings imputed by the State Legal Authority – author of Challenge sub.no.5344 High J., to the appealed Rulings, by virtue of the Complementary Memo, attached to its defense, submitted on 16.7.2001, in which it had stated that in view of non-existence of a provision prohibiting citizens of dual nationality from standing as candidates for membership of Representational Councils; hence, the appealed Ruling had found it necessary to resort to and refer the matter to provisions of the Constitution (Article 90 thereof), in pursuit of the desired objective that those of dual nationality would not be loyal to the homeland. Likewise, the Appealed Ruling examined extent of legitimacy of the nomination of a citizen of dual nationality, not only from the perspective of the legal provisions regulating the process of

Authorized Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567803 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922124

69

Fan 101a

candidacy and election, but also from the prespective of constitutional provisions.    While resolving an Adm. Litigation must necessarily be based on looking into extent of discrepancy between an Adm. Decision and a provision in a law or regulation solely; without looking into aspect of inconsistency between the Decision and the relevant provision in the Constitution.    On the grounds that the scope of the foregoing being the constitutional control and not the legitimacy control.

And whereas it is required first and foremost to point to the foregoing Statement of Defense, that had mistakenly attributed to the Appealed Ruling, having recourse to Article 90 in the Constitution, to arrive at what is being pursued by it. Actually, this is quite queer, as the Ruling has not made reference to the said Article, as it was the Report of the State Commissioners' Authority that had made reference to it, through a foregoing Ruling issued from the High Adm. Court, passed on Challenge sub.no. 1960/47 High J., in the hearing of 6.11.2000, on which the Report relied, in support of its viewpoint. However, there was contained in the Memo, in this connection, numerous faults, that could be represented in what follows:

**First:** That the Constitution cannot be listed within the purport of laws, for this is a queer statement. Actually, the Constitution is an inseparate and integral part of the laws of the country. And whereas the Constitution is the basic law in a country; hence, all other laws, that are inferior thereto in status, should necessarily be subject to it. And the foregoing would be applicable to individual Adm. Decisions.    Thus disproving the status of the law, to the Constitution is an arbitrary interpretation being intended to reach a certain conclusion; namely: inadmissibility to look into the legitimacy of an Adm. Individual Decision, in pursuit of registering Mr./**RAMY LAKAH** on the Statement of Candidates For membership of the People's Assembly in the light of

Authorized Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sharif St., Heliopolis
Tel. 2567808 - 4506219

provisions of the Constitution, in the capacity of not being a law, so as to litigate against this Decision in the light of laws and regulations solely, to the exclusion of the Constitution. This would constitutes an unacceptable departure from the law and from objectivity, that should be complied with when dealing with the issue raised.

**Second:** The statement in the Memo, that the constitutional provisions, should necessarily be an object of constitutional control on the basis of their being the means for safeguarding political rights and obligations that would spring principally from the Constitution, is in violation of both the Constitution and the law, together. The statement in the Memo, that control emanating from the High Constitutional Court over Constitutional provisions constitutes a departure from the Constitution itself and the law pursuant to which the Court itself is being governed.

**Third:** The statement in the Memo that resolving the present litigation would be based on looking into the extent of discrepancy between the Decision and the provision in the Constitution, runs counter to the fact that the object of constitutional Judicial control, and the Decisions ordering registration or non-registration of the names of some nationals on the Statement of Candidates for the People's Assembly cannot be regarded similar thereto. For after all, these Decisions cannot be regarded, in their content, a principal or subsidiary legislation, on the grounds that legal status originated therefrom or modified or revoked by them would be considered as individual positions whose scope of validity to certain persons, namely: Candidates for the People's Assembly and thereby forfeiting the characteristics of legislative acts to which control over constitutional acts would be extended. And whereas in view of the foregoing, the High Adm. Court or the Adm. Causes Court, would be

Authorized  Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
 St.  Cairo Tel. 3922124

71                                    Fan 101a

duly entitled to control extent of legitimacy of any Adm. Individual Decision by way of applying thereto the rule of the law; for such Decision should necessarily be regarded not only within the framework of the principles incorporated in Ordinary a Subsidiary legislation, but also - if need be - with the governing principle of the Constitution. For after all, such individual Decisions, should not be left without control, as would sometime be issued in violation of the Constitution. So, the shortcomings attributed in the Complementary Memo of the State Legal Authority to the foregoing Ruling issued from the High Constitutional Court, is not based on the appropriate provisions of the law.

And whereas this Court has observed the same wordings incoming in the Report on Challenge No.5329/47 High J., filed by Mr./ **RAMY RAYMON MICHEL LAKAH**, and in the defense of the State Legal Authority, by way of departing from proper ethics of litigating; hence, the Judge would be duly entitled to order that such harsh wordings, that are in breach of Public Order or Ethics, be deleted in application of Article 105, in the Civil Procedure Code.

And whereas the Complementary MEMO, conveying the Defense of the State Legal Authority submitted to this Court on 19.7.2000, stated that the two Laws of the Peoples' Assembly and the law dealing with Exercising Political Rights are void of a Section prohibiting Candidacy For membership of Representational Councils, in respect of citizens holding dual nationalities, hence, the Appealed Ruling – and thereafter the Report of the Commissioners' Authority, had recourse to the provisions of the Constitution (Article 90 thereof), by way of interpreting such Article, in pursuit of desired objective, namely: a citizen having dual nationality would have no loyalty for the homeland. Actually, such statement constitutes a false accusation against the Court and against facts

Authorised Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506019
Cairo Tel. 3922124

72

Fan 101a

as well. On the grounds that the Appealed Ruling had nothing to do with Article (90) in the Constitution; but the Ruling had actually relied on the Ruling of the High Adm. Court issued on Challenge No.1960/47 J., in the hearing of 6.11.2000; and on which the Report of the State Commissions' Report had relied. And as to the High Adm. Court, when issuing its Ruling in which it stated that a citizen of dual nationality would have no loyalty to the homeland, had been aiming solely on imposing legitimacy in light of the Constitution and the laws of the State as well as the general welfare and National Security of Egypt; but has not been aiming at all bringing about casting a sort of skepticism in respect of citizens acquiring dual nationality. Indeed, and due to its Autonomous Status and neutrality and impartiality and detachment, the High Adm. Court is being in permanent search for legitimacy and sovereignty of law and the best and real interests of Egypt. However, its Ruling stated that plurality of nationality, would be a sort plurality in terms of loyalty to the homeland – and this is quite natural and would stand to logic. For after all, the plurality of such loyalty is an acknowledged matter, from the legal viewpoint, regardless of the such actual or genuine loyalty. And when there are numerous legal loyalties, it would become legitimate, legally speaking to state that Egyptian nationals who are having an exclusive nationality, different from Egyptian nationals having dual nationality, in cases requiring such different treatment, one of which: concerning candidacy for membership of the People's Assembly for the Egyptian citizen who is holder of an exclusive Egyptian nationality. And such different treatment – additionally to its legitimacy would undoubtedly lift the sense of embarrassment in respect of the Egyptian national who is holder of dual nationality when prohibiting him from holding a sensitive post, in which he could find himself undecided between adopting the best interests of Egypt, on the one hand and being alligned to the interests of

Authorized A. Translation
Scientific Bureau
FOUAD NEMAH
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219

Fan 101a

the other State, which is the holder of its nationality – in the case in which the best interests of such two countries would be incompatible. Indeed, the Memo of Defense, submitted by the State Legal Authority should not have stated that its Ruling has been aiming at – contrary to facts – pursuing an objective for arriving at the wrongful conclusion that citizens acquiring dual nationalities are not having genuine loyalty to Egypt. Hence, this Court hereby orders deletion of such irrelevant wordings incoming under Item Second in the Complementary Note of the State Legal Authority that maintains:

"So, the resort and the recourse, in respect of the Appealed Ruling – as well as the Commissioners' Report thereafter being, having rescourse to provisions of the Constitution (Article 90) in terms of interpretation thereof – by way of reaching the desired target that those of dual nationality, would not be loyal to the homeland".

And whereas the failed litigant is to be condemned to effect payment of costs thereof, in application of the provision of Article the Civil Procedure Code;

### CONSEQUENTLY

The Court issued its Ruling; ordering:

First:    "Rejecting the petition of the **PETITIONER,** in connection with Challenge sub no.5329/47 High J., seeking discontinuing hearing the Challenge – pending resolving lawsuit sub no.8/23 J./Conflict; filed before the High Constitutional Court;

Authorship & Translation
Scientific Bureau
FOUAD NEMAR
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 3922424
Accurate True Translation

74                                    Fan 101a

**Second:**  -That the two Challenges be accepted  "in form"; and be
rejected "on merit";

-That the two **PETITIONERS** be condemned, each  one of
whom, to effect payment of costs relating to his Challenge ; and

**Third:**  That  the wordings incoming in Challenge sub.no.5329/47/High
J., and in the  Complementary MEMO of Defense of the State
Legal  Authority  –  indicated  specifically in the legal causes of
the Ruling – be deleted".

Court Secretary                          Court President

(signed)                                  (signed)

-Seal: Council of State – High Adm. Court.

Authorship of Translation
Scientific Bureau
**FOUAD NEMAN**
14(a) Sherif St., Heliopolis
Tel. 2567808 - 4506219
37 Kasr El-Nil St., Cairo Tel. 392212
Accurate True Translation

29.10.2001