# INDENTURE

By and Among

**Lakah Funding Limited**
as Issuer

**Holding Company for Financial Investments**
**(Lakah Group), S.A.E.**
**Medequip for Trading and Contracting, S.A.E.**
**Trading Medical System Egypt, S.A.E.**
**Arab Steel Factory, S.A.E.**
as Guarantors

and

**The Bank of New York**
as Trustee

Dated as of
December 8, 1999

U.S. $100,000,000 12 per cent. Bonds due 2004

THIS INDENTURE IS NOT QUALIFIED UNDER THE UNITED STATES TRUST INDENTURE
ACT OF 1939, AS AMENDED, OR ANY SIMILAR STATUTE OF ANY JURISDICTION.

## TABLE OF CONTENTS

Page

RECITALS...................................................................................................1

ARTICLE ONE DEFINITIONS AND OTHER PROVISIONS OF GENERAL
APPLICATION ...........................................................................1

SECTION 101.    Definitions.................................................................1
SECTION 102.    Form of Documents Delivered to Trustee .........................12
SECTION 103.    Acts of Holders...........................................................12
SECTION 104.    Notices, Etc., to the Trustee, the Issuer and the Guarantors. ...........14
SECTION 105.    Notice to Holders of Bonds; Waiver................................14
SECTION 106.    Effect of Headings and Table of Contents. ......................15
SECTION 107.    Successors and Assigns.................................................15
SECTION 108.    Separability Clause.......................................................15
SECTION 109.    Benefits of Indenture.....................................................15
SECTION 110.    Arbitration..................................................................15
SECTION 111.    Governing Law; Submission to Jurisdiction......................16
SECTION 112.    Legal Holdings.............................................................16

ARTICLE TWO FORMS OF BONDS ...........................................................17

SECTION 201.    Forms Generally...........................................................17
SECTION 202.    Certificates of Euroclear, Cedelbank and DTC. .................17

ARTICLE THREE THE BONDS ..................................................................18

SECTION 301.    Aggregate Amount.......................................................18
SECTION 302.    Denominations.............................................................18
SECTION 303.    Execution, Authentication and Delivery............................18
SECTION 304.    The Bonds..................................................................18
SECTION 305.    Exchanges; Transfers....................................................19
SECTION 306.    Replacement Bonds. ....................................................24
SECTION 307.    Status........................................................................24
SECTION 308.    Cancellation of Bonds...................................................25
SECTION 309.    Payment to the Principal Paying Agent; Payments to Holders
of Bonds; Repayment by the Principal Paying Agent. .........25
SECTION 310.    Withholding.................................................................29
SECTION 311.    Persons to be Treated as Holders....................................30
SECTION 312.    Receipt and Publication of Notices...................................30
SECTION 313.    CUSIP Numbers...........................................................30

ARTICLE FOUR REMEDIES ......................................................................31

SECTION 401.    Events of Default. ........................................................31
SECTION 402.    Acceleration of Maturity; Rescission and Annulment...........31

SECTION 403.    Collection of Indebtedness and Suits for Enforcement.........................31
SECTION 404.    Trustee May File Proofs of Claim. ..........................................................31
SECTION 405.    Trustee May Enforce Claims Without Possession of Bonds. ................32
SECTION 406.    Application of Cash or Other Property Collected.................................32
SECTION 407.    Limitation on Suits...................................................................................32
SECTION 408.    Unconditional Right of Holders to Receive All Payments Due
                on the Bonds. .........................................................................................33
SECTION 409.    Restoration of Rights and Remedies.......................................................34
SECTION 410.    Rights and Remedies Cumulative............................................................34
SECTION 411.    Delay or Omission Not Waiver................................................................34
SECTION 412.    Control by Holders of Bonds..................................................................34
SECTION 413.    Waiver of Past Defaults. ..........................................................................34
SECTION 414.    Costs of Proceedings................................................................................35
SECTION 415.    Waiver of Stay or Extension Laws. .........................................................35

ARTICLE FIVE THE TRUSTEE AND THE AGENTS .........................................................35

SECTION 501.    Appointment; Certain Duties and Responsibilities.................................35
SECTION 502.    Certain Rights of the Trustee and Agents. ..............................................37
SECTION 503.    Not Responsible for Recitals or Issuance of Bonds................................38
SECTION 504.    Trustee and Agents May Hold Bonds......................................................39
SECTION 505.    Money Held in Fiduciary Capacity. ........................................................39
SECTION 506.    Compensation, Reimbursement and Indemnification...............................39
SECTION 507.    Trustee, Paying Agents, Transfer Agents and Registrar
                Required; Eligibility. .............................................................................40
SECTION 508.    Resignation and Removal; Appointment of Successor............................40
SECTION 509.    Acceptance of Appointment by Successor. .............................................42
SECTION 510.    Merger, Conversion, Consolidation or Succession to Business. ...........42
SECTION 511.    Appointment of Co-Agents, Co-Trustee and Additional Agents..........42
SECTION 512.    Authenticating Agents. ............................................................................44

ARTICLE SIX THE REGISTRAR AND THE TRANSFER AGENT......................................45

SECTION 601.    Duties of the Transfer Agent....................................................................45
SECTION 602.    Duties of the Registrar. ............................................................................45
SECTION 603.    Documents and Forms for the Registrar. ................................................46

ARTICLE SEVEN REDEMPTION ......................................................................................46

SECTION 701.    Redemption. ..............................................................................................46

ARTICLE EIGHT SUPPLEMENTAL INDENTURES .........................................................46

SECTION 801.    Supplemental Indentures Without Consent of Holders. .........................46
SECTION 802.    Supplemental Indentures With Consent of Holders..............................47
SECTION 803.    Execution of Supplemental Indentures....................................................48
SECTION 804.    Effect of Supplemental Indentures...........................................................48
SECTION 805.    Reference in Bonds to Supplemental Indentures. ...................................48

NY—363575.8

SECTION 806.    Notice of Supplemental Indentures.................................................48

ARTICLE NINE MEETINGS OF HOLDERS OF BONDS.............................................49

SECTION 901.    Purposes for Which Meetings May Be Called........................49
SECTION 902.    Call, Notice and Place of Meetings..................................49
SECTION 903.    Persons Entitled to Vote at Meetings...............................49
SECTION 904.    Quorum; Action...........................................................49
SECTION 905.    Determination of Voting Rights; Conduct of Meetings...........50
SECTION 906.    Counting Votes and Recording Action of Meetings.............50
SECTION 907.    Act of Holders in Lieu of Meetings.................................51

ARTICLE TEN COVENANTS AND REPRESENTATIONS...............................51

SECTION 1001.    Taxes and Stamp Duties; Other Costs and Expenses..........51
SECTION 1002.    Currency Indemnity. ...................................................51
SECTION 1003.    Payment of Principal, Interest and Other Amounts. ............52
SECTION 1004.    Status...................................................................52
SECTION 1005.    Covenants in Conditions and Guarantee.........................52
SECTION 1006.    Maintenance of Offices or Agencies; Changes in Agents. ....58
SECTION 1007.    Delivery of Certain Information. ...................................58
SECTION 1008.    Money or Property to Be Held by the Paying Agents. .........59
SECTION 1009.    Further Assurances...................................................60
SECTION 1010.    Compliance with Laws. ..............................................60
SECTION 1011.    Use of Proceeds......................................................60

NY----363575.8

**ANNEXES**

Annex I        Form of Paying Agency Agreement
Annex II       Form of Letter of Appointment

**EXHIBITS**

Exhibit A      Terms and Conditions of the Bonds
Exhibit B      Form of Global Bond
Exhibit C      Form of Definitive Bonds
Exhibit D      Form of Written Certification for Exchange of Interests in a Restricted Global Bond for Interests in a Regulation S Global Bond
Exhibit E      Form of Written Certification for Exchange of Interests in a Regulation S Global Bond for Interests in a Restricted Global Bond

iv

NY—363575.8

**INDENTURE** dated as of December 8, 1999 by and among Lakah Funding Limited, a company with limited liability organized under the International Business Companies Act (CAP 291) of the British Virgin Islands (the *"Issuer"*), having its registered office at c/o CITCO B.V.I. Limited, CITCO Building, Wickhams Cay, P.O. Box 662, Road Town, Tortola, British Virgin Islands; Holding Company for Financial Investments (Lakah Group), S.A.E., Medequip for Trading and Contracting, S.A.E., Trading Medical System Equipment, S.A.E. and Arab Steel Factory, S.A.E., each a joint stock company incorporated under the laws of Egypt (collectively, the *"Guarantors"* and each, individually, a *"Guarantor"*), each having its registered office at 68, Merghany Street, Heliopolis, Cairo, Egypt; and The Bank of New York, a bank organized under the laws of the State of New York, acting through its principal corporate trust office in New York City at 101 Barclay Street, Floor 21W, New York, New York 10286, as trustee (in such capacity and any successor to it in such capacity, the *"Trustee"*).

## RECITALS

WHEREAS, the Issuer has duly authorized the execution and delivery of this Indenture to provide for the issuance on the date hereof of its U.S. $100,000,000 12 per cent. Bonds due 2004 (the *"Bonds"*); and

WHEREAS, each of the Guarantors has duly authorized the execution and delivery by it of this Indenture and the Guarantee referred to below to provide, among other things, for the joint and several, unconditional and irrevocable guarantee by each of them of the Issuer's obligations to make payments in respect of the Bonds and otherwise under this Indenture as provided herein; and

WHEREAS, the Issuer and the Guarantors have each duly authorized the execution and delivery of a subscription agreement dated as of December 6, 1999 (the *"Subscription Agreement"*) among the Issuer, the Guarantors and UBS AG, acting through its division Warburg Dillon Read (*"Warburg Dillon Read"*), Barclays Bank PLC, Arab Banking Corporation (B.S.C.), The National Commercial Bank and Banque Libanaise Pour Le Commerce S.A.L. (each, a *"Manager"* and, collectively with Warburg Dillon Read, the *"Managers"*), pursuant to which the Manager has agreed, subject to the terms and conditions thereof, to subscribe for the Bonds.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of Bonds by the Holders thereof, it is mutually covenanted and agreed, for the benefit of the Holders of the Bonds in accordance with their respective interests therein, as follows:

## ARTICLE ONE

## DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.    Definitions

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(i)    the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

   (ii) unless otherwise provided, all references to any agreement or instrument shall be to that agreement or instrument as in effect from time to time;

   (iii) the words "*herein,*" "*hereof*" and "*hereunder*" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision or Annex or Exhibit (each of which is an integral part hereof); and

   (iv) All terms defined herein for the purposes of (and used in) Section 1005 are to be determined in accordance with IAS and from the financial statements of the Parent Guarantor and its Subsidiaries (as applicable for the relevant periods) and no item shall be deducted or credited more than once in any calculation made for the purpose of determining compliance with the financial covenants set forth in Section 1005 (b)(i) or any ratio set forth Section 1005 (b)(ii)(A), (B) or (C).

"*Accession Agreement*" means, in relation to any Person that is appointed as an Agent under the Paying Agency Agreement after the date of this Indenture, the agreement of that Person to be bound by the terms of the Paying Agency Agreement expressed through that Person's acknowledgment in the Letter of Appointment delivered to it as provided therein.

"*Act*" when used with respect to any Holder of a Bond, has the meaning specified in Section 103.

"*Additional Amounts*" has the meaning given to the term in Condition 7.

"*Affiliate*" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with that specified Person.

"*Agent*" means each of the Registrar, each Transfer Agent, the Principal Paying Agent, each other Paying Agent, each Authenticating Agent, the Luxembourg Listing Agent and their successors.

"*Agent Member*" means any member of, or participant in, the relevant Clearing Agent.

"*Applicable Procedures*" has the meaning given to the term in Section 305(b).

"*Authenticating Agent*" means each Person authorized pursuant to Section 512 to authenticate Bonds and any Person authorized pursuant to Section 512 to act on behalf of the Principal Paying Agent to authenticate Bonds.

"*Banque du Caire Pledge*" means the pledge on 800,000 shares of Medequip for Trading and Contracting, S.A.E. and 400,000 shares of Trading Medical System Equipment, S.A.E. granted by the Parent Guarantor in favor of Banque du Caire.

"*Board of Directors*" means, in relation to any Person, either the board of directors or other governing body of that Person or any duly authorized committee of that board or body.

"*Board Resolution*" means, in relation to any Person, a resolution duly adopted by the Board of Directors of that Person, a copy of which, certified by a director of that Person to be in full force and effect on the date of that certification, shall have been delivered to the Trustee.

"*Bond*" means any one of the U.S. $100,000,000 12 per cent. Bonds due 2004 of the Issuer issued pursuant to this Indenture, with the *aval* of the Guarantors affixed thereto.

NY—363575.8

*"Business Day"* means a day (i) (other than a Saturday or a Sunday) which is not a day on which banking institutions in New York City, New York, are authorized or obligated by law to close, (ii) in relation to payments due upon presentation or surrender of any Bonds, on which commercial banks are open and foreign exchange markets settle payments in U.S. Dollars in the place of presentation or surrender and (iii) in relation to Global Bonds, on which the Clearing Agents are in operation.

*"BVI Taxes"* means any present or future taxes, duties, assessments or other governmental charges of whatever nature imposed or levied by or on behalf of the British Virgin Islands or any political subdivision or any authority thereof or therein, or by any authority having power to tax therein.

*"Calculation Date"* means June 30 and December 31 of each year on which any Bond is Outstanding.

*"Capital Stock"* of any Person means any and all shares, interests, rights to purchase, warrants, options, participations or other equivalents of or interests in (however designated) equity of such Person, including any Preferred Stock, but excluding any debt securities convertible into such equity.

*"Cash Equivalents"* means (i) securities or other obligations, which have been assigned a rating of at least "A" or the equivalent thereof by Standard & Poor's Ratings Services, or "A" or the equivalent thereof by Moody's Investors Service, or carrying an equivalent rating by an internationally recognized rating agency if both of the two named rating agencies cease publishing ratings of investments; and (ii) securities or other obligations, which have been assigned a rating at least equivalent to the rating then assigned to Egypt or which are issued by or directly and fully guaranteed by any bank or financial institution in Egypt that is majority owned by the government of Egypt or any agency or instrumentality thereof.

*"Cedelbank"* means Cedelbank and its successors.

*"Charge over Deposit"* has the meaning given to that term in Section 1011.

*"Clearing Agent"* means each of DTC, Cedelbank and Euroclear and their successors and any additional or alternative clearing system approved by the Issuer and the Principal Paying Agent.

*"Conditions"* means the terms and conditions that are attached to on or incorporated by reference into the Bonds, substantially in the form set forth in Exhibit A.

*"Consolidated Net Income"* means, for any period, the net income (loss) of the Parent Guarantor and its Subsidiaries; provided, however, that there shall not be included in such Consolidated Net Income:

(a)    any gain (loss) realized upon the sale or other disposition of any property, plant or equipment of the Parent Guarantor or any of its Subsidiaries (including pursuant to any sale and leaseback transaction), which is not sold or otherwise disposed of in the ordinary course of business and any gain (loss) realized upon the sale or other disposition of any capital stock of any person;

(b)    any other extraordinary gain or loss;

(c)    the cumulative effect of a change in accounting principles;

3

(d)    any non-cash charges resulting from any write-up or write-down of assets of the Parent Guarantor and its Subsidiaries; and

(e)    any gain (loss) arising from currency or interest rate swap, collar or other hedging arrangements or financial futures transactions or any other derivative transactions.

*"control"* means, for the purposes of the definitions set forth in this Section 101, when used with respect to any Person, the power to elect a majority of the board of directors or other Persons performing similar functions of the Issuer, any Guarantor or any Subsidiary of a Guarantor and/or the power to direct the management and policies of the Issuer, any Guarantor or any Subsidiary of a Guarantor, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled by" have correlative meanings.

*"Definitive Bond"* means a Bond in definitive, registered form, substantially in the form set forth in Exhibit C, with the *aval* of the Guarantors affixed thereto and having the Conditions and a Form of Transfer attached thereto or endorsed thereon.

*"Distribution Compliance Period"* means, with respect to any Bond offered and sold in reliance on Regulation S, the period of 40 days beginning on and including the later of (i) the date on which Bonds were first offered to persons other than distributors in reliance upon Regulation S and (ii) the Issue Date.

*"DTC"* means The Depository Trust Company at its office at 55 Water Street, New York, New York 10041, United States of America.

*"DTC Bond"* means a Restricted Global Bond deposited with a custodian for, and registered in the name of a nominee of, DTC and accepted into DTC's book-entry settlement system.

*"EBITDA"* means Consolidated Net Income, but adding back, if applicable:

(i)    any amounts attributable to depreciation or amortization; and

(ii)    any provision for advance corporation tax, mainstream corporation tax and their equivalent in any relevant jurisdiction or any other tax on incomes or gains.

*"Egyptian Taxes"* means any present or future taxes, duties, assessments or other governmental charges of whatever nature imposed or levied by or on behalf of the Arab Republic of Egypt or any political subdivision or any authority thereof or therein, or by any authority having power to tax therein.

*"Euroclear"* means Morgan Guarantee Trust Company of New York, Brussels office, as operator of the Euroclear System.

*"Event of Default"* has the meaning given to the term in Section 401.

*"Exchange Act"* means the United States Securities Exchange Act of 1934, as amended.

*"Extraordinary Resolution"* means a resolution of Holders of Bonds approved by Persons entitled to vote present at least 75 per cent. in principal amount of the Bonds represented and voting at a Meeting of Holders duly called for the purposes covered by such resolution in

NY--363575.8

accordance with the provisions of Section 902 and at which a Quorum is present and acting throughout.

*"Fair Market Value"* means, with respect to any asset or property, the price which could be negotiated in an arm's-length, free market, transaction for cash between a willing seller and a willing buyer, neither of whom is under undue pressure or compulsion to complete the transaction. Fair market value shall be determined by the Board of Directors of the Parent Guarantor, acting reasonably and in good faith, and shall be evidenced by (in the case of a transaction where the aggregate consideration does not exceed U.S. $2,000,000) a certificate to the effect duly executed by any two members of the Board of Directors of the Parent Guarantor and (in the case of the transaction where the aggregate consideration exceeds U.S. $2,000,000) a resolution of the Board of Directors of the Parent Guarantor, in each case delivered to the Trustee.

*"Form of Transfer"* means a form of transfer to be endorsed on a Definitive Bond, substantially in the form set forth in the form of transfer included in Exhibit C.

*"Global Bond"* means any Regulation S Global Bond and any Restricted Global Bond.

*"Guarantee"* means the guarantee dated as of the date hereof made by each of the Guarantors, jointly and severally, in favor the Trustee for itself and for the benefit of the Holders and the Agents.

*"guarantee"* by any Person means the obligation, contingent or otherwise, of such Person directly or indirectly guaranteeing any Indebtedness of any other Person and, without limiting the generality of the foregoing, any obligation, direct or indirect, contingent or otherwise, of such Person entered into for the purpose of indemnifying or assuring in any other manner the obligee of such Indebtedness of the payment thereof or to protect such obligee against loss in respect thereof (in whole or in part) and the term "guarantee" used as a verb has a corresponding meaning;

*"Guarantor"* means each of Holding Company for Financial Investments (Lakah Group), S.A.E.; Medequip for Trading and Contracting, S.A.E., Trading Medical System Equipment, S.A.E. and Arab Steel Factory, S.A.E.

*"Holder"* means, with respect to any Bond at any time, the Person in whose name that Bond is registered in the Register at the time; provided, that, so long as any of the Bonds is represented by a Global Bond held on behalf of any Clearing Agent or its nominee, each Person who at the time is shown in the records of that Clearing Agent as the holder of a particular principal amount of the Bonds (as evidenced by a certificate or confirmation as contemplated in Section 202) shall be treated by the Issuer, the Guarantors, the Trustee, the Agents and any agent of any of them as the Holder of that principal amount of those Bonds for all purposes other than with respect to the payment of a portion of the principal amount or interest or any other amount on the Bonds, for which purpose the registered owner of the relevant Global Bond shall be treated by the Issuer, the Trustee, the Guarantors, the Trustee, the Agents and any agent of any of them as the Holder of those Bonds in accordance with and subject to the terms of the relevant Global Bond (and the expressions *"Holder of Bonds"* and related expressions shall be construed accordingly).

*"IAS"* means International Accounting Standards.

*"Indebtedness"* of any Person includes, without limitation:

5

NY—363575.8

(i)     amounts borrowed;

(ii)    amounts raised by acceptance under any acceptance credit facility;

(iii)   the principal and accrued interest in respect of any debenture, bond, note, loan or similar instrument (whether or not issued or raised for a cash consideration);

(iv)    the amount of any liability in respect of any purchase price for assets or services the payment of which is deferred for a period in excess of 60 days (other than trade payables, including amounts payable to sellers of medical equipment, incurred in the ordinary course of business);

(v)     amounts raised under any other transaction having the commercial effect of a borrowing;

(vi)    guarantee obligations in respect of Indebtedness of the foregoing types of any other Person; and

(vii)   any obligations of the foregoing types of other Persons secured by a Lien on any assets or property of such Person.

*"Indenture"* means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more Supplemental Indentures entered into pursuant to the applicable provisions herein.

*"Independent Auditors"* means Mostafa Shawki & Co Deloitte & Touche, the independent auditors of the Parent Guarantor (or such other auditing firm of international reputation as shall at the time be acting as the independent auditors of the Parent Guarantor).

*"Interest"*, in respect of any relevant period, means

(i)     interest and amounts in the nature of interest;

(ii)    prepayment penalties or premiums in connection with the repayment or prepayment of any Indebtedness;

(iii).   discount fees and acceptance fees in respect of any Indebtedness (including all fees in connection with any letter of credit or guarantee); and

(iv)    any other costs, expenses and deductions of like effect (including, without limitation, the interest element of finance leases) and any net payment (or, if appropriate in the context, receipt) under any interest rate hedging agreement or instrument, taking into account any premiums payable for the same and the interest element of any net payment (plus or minus any accrued exchange gains or losses) under any currency hedging instrument or arrangement;

in each case, accrued on Indebtedness of the Parent Guarantor during such relevant period.

*"Issue Date"* means December 8, 1999.

*"Issuer"* means Lakah Funding Limited.

NY—363575.8

*"Issuer Order"* means a written request or order in the form of an Officer's Certificate of the Issuer.

*"Lien"* means, with respect to any asset, any mortgage, lien, pledge, charge, security interest or encumbrance of any kind in respect of such asset;

*"Letter of Appointment"* means a letter in substantially the form set forth in Annex III, executed by the Issuer and delivered by it to a Person being appointed under the Paying Agency Agreement as an Agent after the date of this Indenture, as contemplated in Section 511.

*"Luxembourg Listing Agent"* means Banque Internationale à Luxembourg S.A. or its successor as listing agent under the Paying Agency Agreement.

*"Maturity"* when used in relation to any Bond, means the date on which all payments due in respect of that Bond become due and payable as therein or herein provided, whether on the Maturity Date, by declaration of acceleration or otherwise.

*"Maturity Date"* means December 8, 2004.

*"Meeting"* means a meeting of Holders convened in accordance with Article Nine.

*"Net Worth"* means, with respect to any period, the sum of the issued and paid-up Capital Stock of the Parent Guarantor, adjusted as follows:

(i)     by adding the aggregate amount standing to the credit of the reserves of the Parent Guarantor or any of its Subsidiaries (on a consolidated basis, including retained income);

(ii)    by adding or subtracting any amount standing to the credit or debit, as the case may be, of Consolidated Net Income to the extent not already included in retained income;

(iii)   by adding any amounts attributable to goodwill or other intangible assets;

(iv)    by adding any amounts representing minority interests of the Parent Guarantor;

(v)     by subtracting any amounts set aside for dividends or taxes; and

(vi)    by subtracting any impairments of the issued share capital of the Parent Guarantor;

in each case, for such period.

*"Office"* means, in relation to the Trustee, its office specified for purposes of notices herein, and in relation to any Agent, the office of that Agent located at the address specified for it in the Paying Agency Agreement or such other address as that Agent may have identified by notice given to the Issuer, the Guarantors, the other Agents and the Trustee in accordance with Section 104, or in the case of a Person that becomes an Agent after the date hereof in connection with the Paying Agency Agreement, in the Accession Agreement of that Agent.

*"Officer's Certificate"* means, in relation to any Person, a certificate signed by any director or two directors (as required) of that Person and delivered to the Trustee or any Agent as contemplated herein.

7

*"Opinion of Counsel"* means a written opinion of counsel, who may be counsel for the Issuer (unless the terms of this Indenture require an opinion of independent counsel), and who shall be reasonably satisfactory to the Trustee.

*"Outstanding"* means, in relation to the Bonds, as of any date of determination, all Bonds, except (i) Bonds theretofore redeemed in full in accordance with the Conditions, (ii) Bonds in respect of which the date for redemption in accordance with the Conditions has occurred and with respect to which monies sufficient to pay all amounts due in respect thereof (including all interest, if any, accrued thereon to the date for redemption and interest, if any, payable under Condition 4(b) after that date) have been duly paid to the Principal Paying Agent or any other Paying Agent as provided herein (and, where appropriate, notice has been given to that effect in accordance with Condition 21) and remain available for payment against presentation of the relevant Bonds, (iii) Bonds that have become void under Condition 22, (iv) Bonds that have been purchased and cancelled as provided in Condition 5, (v) Bonds that have been mutilated or defaced and have been surrendered in exchange for replacement Bonds pursuant to Condition 16, (vi) Bonds (for the purpose only of determining how many Bonds are Outstanding and without prejudice to their status for any other purpose) alleged to have been lost, stolen or destroyed and in respect of which replacement Bonds have been issued pursuant to Condition 16 and (vii) a Global Bond, to the extent that it has been exchanged for Definitive Bonds or an interest in another Global Bond pursuant to its provisions; provided, however, that the Bonds, if any, that are held by or for the account of any of the Guarantors shall be deemed not to be Outstanding, unless and until they cease to be so held, for the purpose of determining the right to attend and vote at any Meeting, for the purpose of determining whether the Issuer's obligations are payable pursuant to the Guarantee, and for the purpose of requesting or directing the Trustee to take or not to take action pursuant to Article Four (whether pursuant to this Indenture or under the Bonds and whether or not at a Meeting).

*"Parent Guarantor"* means Holding Company for Financial Investments (Lakah Group), S.A.E.

*"Paying Agency Agreement"* means the Paying Agency Agreement dated as of the date of this Indenture among the Issuer, the Guarantors, The Bank of New York, acting through its principal corporate trust office in New York City, as Principal Paying Agent, a Transfer Agent and the Registrar; The Bank of New York, London branch, acting through its corporate trust office in London, as a Paying Agent and a Transfer Agent; and Banque Internationale à Luxembourg S.A., as a Paying Agent and the Luxembourg Listing Agent, in the form set forth in Annex I.

*"Paying Agent"* means any Person authorized by the Issuer, with the consent of the Guarantors, to pay the principal amount of or interest or any other amount on any Bonds on behalf of the Issuer or any Guarantor, and initially means The Bank of New York, acting through its principal corporate trust office in New York City, as Principal Paying Agent; The Bank of New York, London branch, acting through its corporate trust office in London; and Banque Internationale à Luxembourg S.A.

*"Permitted Lien"* means:

(i)     Liens in existence on the Issue Date and any extension, renewal or replacement thereof, provided, however, that the total amount of Indebtedness so secured shall not exceed the amount so secured on the Issue Date;

(ii)    Liens created to secure taxes, assessments and other governmental charges, the payment of which is being contested in good faith by appropriate proceedings promptly initiated

8

*"Record Date"* has the meaning given to the term in Section 309(b)(iii)(D).

*"Register"* means the register for the Bonds to be maintained in accordance with Section 602.

*"Registrar"* means any Person authorized by the Issuer and with the consent of the Guarantors to act as registrar in respect of the Bonds, and initially means The Bank of New York, acting through its principal corporate trust office in New York City.

*"Regulation S"* means Regulation S under the Securities Act.

*"Regulation S Global Bond"* means a Bond in global, registered form, substantially in the form of Exhibit B, with the *aval* of the Guarantors affixed thereto and having the Conditions either attached thereto or endorsed thereon, comprising some or all of the Bonds issued or to be issued for sale outside the United States in reliance on Regulation S, and bearing the appropriate legend indicated in Exhibit B.

*"Related Party"* means (A) any Person owning, directly or indirectly, at least 25 per cent. of the outstanding capital stock of or other ownership interests in the Issuer, any Guarantor or any Subsidiary of a Guarantor and (B) any Person directly or indirectly controlling or controlled by or under direct or indirect common control with the Issuer, any Guarantor or any Subsidiary of a Guarantor.

*"Relevant Banking Day"* means a day on which banking institutions are open for business in the place where the specified office of the Trustee, the Registrar or the Transfer Agent or any other Agent, as the case may require, is located.

*"Relevant Date"* means whichever is the later of (i) the date on which such payment first becomes due and (ii) if the full amount payable has not been received by a Paying Agent on or prior to such due date, the date on which, the full amount having been so received, notice to that effect shall have been given to the Holders.

*"Relevant Indebtedness"* means any present or future Indebtedness in the form of, or represented by, bonds, notes, debentures, loan certificates or other securities, which are for the time being, or are intended to be quoted, listed, or ordinarily dealt with in or on any stock exchange, over-the-counter or other securities market.

*"Responsible Officer"* shall mean, when used with respect to the Trustee, any officer within the corporate trust department of the Trustee, including any vice president, assistant vice president, assistant secretary, assistant treasurer, trust officer or any other officer of the Trustee who customarily performs functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of such person's knowledge of and familiarity with the particular subject and who shall have direct responsibility for the administration of this Indenture.

*"Restricted Global Bond"* means a Bond in global, registered form, substantially in the form of Exhibit B, with the *aval* of the Guarantors affixed thereto and having the Conditions either attached thereto or endorsed thereon, comprising some or all of the Bonds issued or to be issued for resale to Qualified Institutional Buyers in reliance on Rule 144A, and bearing the appropriate Restrictive Legend indicated in Exhibit B.

NY—363575.8

*"Restricted Bond"* means each Bond represented by a Restricted Global Bond and each Definitive Bond issued in exchange for a Restricted Global Bond.

*"Restrictive Legend"* means the legend to be affixed to any Restricted Bond, substantially in the form of the legend identified as to be used for the purpose in Exhibit B and Exhibit C, as more fully defined in Section 305(f).

*"Rule 144A"* means Rule 144A under the Securities Act.

*"Rule 144A Information"* has the meaning given to the term in Section 1007.

*"Securities Act"* means the United States Securities Act of 1933, as amended.

*"Specified Denomination"* means:

(i)      in the case of a Bond sold pursuant to Regulation S, U.S. $10,000 and higher integral multiples of U.S. $10,000; and

(ii)     in the case of a Bond that is issued for resale pursuant to Rule 144A, U.S. $100,000 and higher integral multiples of U.S. $10,000.

*"Stock Exchange"* means the Luxembourg Stock Exchange and any other stock exchange on which the Bonds may, from time to time, be listed in accordance with the Conditions.

*"Subscription Agreement"* has the meaning given to the term in the recitals hereto.

*"Subsidiary"* means any corporation or other entity of which at least a majority of the outstanding capital stock or other ownership interests having, by the terms thereof, ordinary voting power to elect a majority of the board of directors or other Persons performing similar functions of such corporation or other entity (irrespective of whether or not at the time any capital stock or other ownership interests of any other class or classes of such corporation or entity shall have or might have voting power by reason of the happening of any contingency) is at the time directly or indirectly owned or controlled by the Parent Guarantor and/or one or more of its other Subsidiaries.

*"Subsidiary Guarantor"* means each of Medequip for Trading and Contracting, S.A.E., Trading Medical System Equipment, S.A.E. and Arab Steel Factory, S.A.E.

*"Successor Company"* has the meaning given to the term in Section 1005(f).

*"Supplemental Indenture"* means each indenture supplemental to this Indenture entered into in accordance with Article Eight.

*"Transfer Agent"* means any Person authorized by the Issuer to act as transfer agent in respect of the Bonds, and initially means The Bank of New York, acting through its principal corporate trust office in New York City, as its Transfer Agent in New York; The Bank of New York, London branch, acting through its corporate trust office in London, as its Transfer Agent in London, and Banque Internationale à Luxembourg S.A., as its Transfer Agent in Luxembourg.

11

*"Trustee"* means the Person named as the Trustee in the first paragraph of this instrument or the Person, if any, that at the relevant time shall have become a successor Trustee pursuant to the applicable provisions of this Indenture.

*"United States"* or *"U.S."* means the United States of America, its territories and possessions, any State of the United States and the District of Columbia.

*"U.S. Dollars"* or *"U.S. $"* means a dollar or other equivalent unit in such coin or currency of the United States as at the time shall be legal tender for the payment of public and private debts.

SECTION 102.    Form of Documents Delivered to Trustee

(a)    In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

(b)    Any certificate or opinion of a director of the Issuer or a Guarantor may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless that officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which that certificate or opinion is based is or are erroneous. Any such certificate or opinion of counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, a director of the Issuer or a Guarantor stating that the information with respect to those factual matters is in the possession of the Issuer or that Guarantor, unless such counsel knows, or in the exercise of its professional duties should know, that the certificate or opinion or representations with respect to those matters is or are erroneous.

(c)    If any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

(d)    If any Person is required by this Indenture or the Bonds, or in connection with any such Bonds, to certify compliance with any of the Conditions or any of the covenants in this Indenture, or if an opinion of counsel is required in relation to compliance with any of the Conditions or any such covenant, the relevant Officer's Certificate or opinion of counsel, as the case may be, delivered to the Trustee shall include: (i) a statement that the Person signing the Officer's Certificate or opinion has read such Condition or covenant; (ii) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such Officer's Certificate or opinion are based; (iii) a statement that, in the opinion of such Person, he or she has made such examination or investigation as is necessary to enable him or her to express an informed opinion as to whether or not such Condition or covenant has been complied with; and (iv) a statement as to whether or not, in the opinion of such Person, such Condition or covenant has been complied with.

SECTION 103.    Acts of Holders.

(a)    Any request, demand, authorization, direction, notice, consent, election, waiver or other action that this Indenture provides is to be given or taken by Holders of Bonds may be embodied in and evidenced by:

12

NY—363575.8

(i)    one or more instruments of substantially similar tenor signed by those Holders in person or by agent (including any Clearing Agent) or proxy duly appointed in writing,

(ii)    the record of Holders of Bonds voting in favor thereof, either in person or by proxies duly appointed in writing, at any Meeting duly called and held in accordance with the Conditions and this Indenture, or

(iii)    a combination of such instruments and any such record.

Except as herein otherwise expressly provided, any such request, demand, authorization, direction, notice, consent, election, waiver or other action shall become effective when the record of it so created is delivered to the Trustee and, if hereby expressly required, to the Issuer and the Guarantors or any relevant Guarantor. That record (and the action of any such kind embodied therein and evidenced thereby) is herein sometimes referred to as the "Act" of the Holder or Holders of Bonds so voting at the relevant Meeting. No Act of the Holders of Bonds shall be effective unless the subject matter thereof shall have been duly approved at a Meeting of the Holders called and held in compliance with the requirements set forth herein.

(b)    Proof of execution of any such instrument or of a writing appointing any such agent or proxy, or of the holding by any Person of a Bond, shall be sufficient for any purpose of this Indenture and (subject to Section 501) conclusive in favor of the Trustee and the Issuer and the Guarantors if made in the manner provided in this Section. The record of any Meeting shall be proved in the manner provided in Section 906.

(c)    Actions of the Holders in respect of (i) the exchange of Global Bonds for Definitive Bonds, (ii) the acceleration of the Maturity of any Bonds and (iii) acceptance of substitute security shall be governed by Section 305, Condition 8 and Condition 10(b), respectively, and shall not constitute Acts of the Holders as contemplated in this Section 103(a).

(d)    The principal amount and serial numbers of the Bonds held by any Person and the dates they are so held may be proved by presentation of a copy of the pertinent page of the Register certified by a Responsible Officer of the Person charged with the maintenance of the Register pursuant to this Indenture. The principal amount and serial numbers of the Bonds held by any Person and the dates they are so held may also be proved in any other manner that the Trustee deems sufficient, subject to compliance with applicable law; and the Trustee may in any instance require further proof with respect to any of the matters referred to in this Section.

(e)    Any request, demand, authorization, direction, notice, consent, election, waiver or other Act of the Holder of any Bond shall bind every future Holder of the same Bond and the Holder of every Bond issued in lieu of or in exchange for that Bond in respect of anything done, omitted or suffered to be done by the Trustee, any Agent or the Issuer in reliance on that Act, whether or not notation of the Act is made upon that Bond.

(f)    Notice to be given by any Holder to the Trustee shall be in writing and given as provided in Section 104. While any Bonds are represented by a Global Bond, any such notice may be given by any Holder of an interest in that Global Bond to the Trustee via DTC, Euroclear or Cedelbank or any other applicable Clearing Agent, in such manner as the Trustee and DTC, Euroclear, Cedelbank or that other Clearing Agent, as the case may be, may approve for this purpose.

13

**SECTION 104.     Notices, Etc., to the Trustee, the Issuer and the Guarantors.**

(a)     Except as otherwise expressly provided herein, any request, demand, authorization, direction, notice, consent, election, waiver or other Act of Holders of Bonds or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with:

(i)     the Trustee or any Agent by any Holder of Bonds or by the Issuer or a Guarantor shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to the Trustee or the Agent that is the addressee at its address specified on the signature pages of this Indenture or in the Paying Agency Agreement or an Accession Agreement, if applicable, or at any other address previously furnished by notice given in accordance with this Section 104 and shall be deemed to have been validly given when received by the Trustee or the relevant Agent; or

(ii)     (A) the Issuer by the Trustee or any Agent or a Guarantor or (B) a Guarantor by the Trustee or the Issuer or any Agent, in any case shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if made, given, furnished or filed in writing to or with the Issuer or the Guarantor, as the case may be, at the address specified on the signature pages of this Indenture, or at any other address previously furnished by notice in writing given in accordance with this Section 104 by the Issuer or the relevant Guarantor, as the case may be, to the Person giving the notice or otherwise seeking to communicate with the Issuer or the Guarantors, as the case may be; or

(iii)     the Issuer or a Guarantor by any Holder of any Bond may be given only in writing and through the Trustee, and the Trustee shall give to the Issuer and each Guarantor, promptly after receipt, each such communication from any Holder of Bonds or other Act of Holders of the Bonds addressed to the Trustee for delivery to the Issuer or any Guarantor.

(b)     Any such notice by a Holder may be furnished or filed by any standard form of telecommunications, including telecopier, telex or telegram so long as the notice is confirmed in writing by the Holder or its agent and delivered promptly by airmail to the Trustee or the relevant Agent or, so long as the relevant Bonds are represented by a Global Bond, through the relevant Clearing Agent's internal communication system utilized for communication with its respective member organizations. The Issuer, the Guarantors, the Trustee and any Agent may require any Holder giving notice to furnish proof of its holding of Bonds.

**SECTION 105.     Notice to Holders of Bonds; Waiver.**

(a)     Where this Indenture provides for notice to Holders of any event, such notice will be deemed to be validly given if sent by first class mail (or the equivalent) or, if delivered to an overseas address, by air mail to them at their respective addresses as recorded in the Register, and will be deemed to have been validly given on the fourth day after the date of mailing as provided above.

(b)     So long as any Global Bond is held on behalf of DTC, Euroclear, Cedelbank, or any other relevant Clearing Agent, notices to Holders of Bonds represented thereby may, in the alternative, be given through delivery of the relevant notice to the relevant Clearing Agent, provided that, (i) in the case of Bonds listed on any Stock Exchange, the requirements, if any, of each such Stock Exchange have been complied with and (ii) in all cases, the applicable provisions of Egyptian law have been complied with.

(c)     Any notice to be given to the Holders of Bonds shall also be given in writing to each clearing system with which any Bonds have been deposited.

14

NY—363575.8

(d)     Neither the failure to give notice nor any defect in any notice given to any particular Holder of a Bond shall affect the sufficiency of any notice with respect to other Holders.

**SECTION 106.**     Effect of Headings and Table of Contents.

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

**SECTION 107.**     Successors and Assigns.

All covenants and agreements in this Indenture by a party shall bind its successors and assigns, whether or not the covenant or agreement so states.

**SECTION 108.**     Separability Clause.

If any provision in this Indenture or in the Bonds is determined to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired by the circumstances.

**SECTION 109.**     Benefits of Indenture.

Nothing in this Indenture or in the Bonds, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Holders of Bonds, any benefit or any legal or equitable right, remedy or claim under this Indenture, except for the Agents, each of which (and their respective successors) shall be entitled to the benefits of this Indenture stated herein to run to that Agent.

**SECTION 110.**     Arbitration.

(a)     Subject to Section 110(d) below, any dispute or difference whatsoever arising between the Issuer or any Guarantor, as the case may be, and the Trustee (or a Holder of Bonds) or any Agent arising out of or in connection with the Bonds, the Guarantee or this Indenture shall be finally settled by submission to arbitration by the American Arbitration Association under its Commercial Arbitration Rules, as at the time in force, by a panel of three arbitrators appointed in accordance with such rules.

(b)     The place of the arbitration shall be New York, New York or London, England; the language of the arbitration shall be English; and the appointing authority shall be the American Arbitration Association.

(c)     Without prejudice to the provisions of Section 111 below, judgment upon the award rendered by the arbitrators may be entered in any court of competent jurisdiction.

(d)     The Issuer and each Guarantor hereby irrevocably agree that (i) before the Trustee (or a Holder) or any Agent gives notice of arbitration with respect to any particular dispute or difference or (ii) if the Trustee (or a Holder) or any Agent shall have received notice of arbitration from the Issuer or a Guarantor, as the case may be, in respect of any such dispute or difference, the Trustee (or such Holder) or the relevant Agent may elect, by written notice to the Issuer and the Guarantors, that such dispute or difference shall be resolved by litigation rather than arbitration.

15

SECTION 111.    Governing Law; Submission to Jurisdiction.

(a)    This Indenture and each of the Bonds are governed by, and shall be construed in accordance with, the laws of the State of New York, without reference to its choice of law principles.

(b)    For the benefit of the Trustee and each Agent and Holders that elect, in accordance with Section 110(d) above, to resolve a dispute or difference of the type referred to in Section 110(a), by litigation and for the benefit of any Person seeking to confirm an arbitral award with respect to such a dispute or difference each of the Issuer and the Guarantors (i) irrevocably agrees that the courts of the State of New York and of the United States sitting in the Borough of Manhattan, shall have non-exclusive jurisdiction for the purposes of any such suit, action or proceeding and, accordingly, each of the Issuer and the Guarantors hereby submits to the non-exclusive jurisdiction of each such court in connection with any such suit, action or proceeding; (ii) irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of venue of any such suit, action or proceeding in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum; and (iii) irrevocably appoints Corporation Service Company with an office on the date hereof at 375 Hudson Street, New York, New York 10014, as its agent upon whom process may be served in any such suit, action or proceeding brought in any New York State or United States federal court sitting in New York City, in the Borough of Manhattan, and agrees that service of process in any such action or proceeding may be made upon it at the principal office in New York City of that agent or in any other manner permitted by applicable law.  Nothing contained herein shall limit or otherwise restrict the right of any Person that elects, in accordance with Section 110(d) above, to resolve a dispute or difference by litigation to bring an action against the Issuer or any Guarantor in any other jurisdiction in which the Issuer or such Guarantor or any of its respective assets are located, whether initially or to enforce a judgement obtained in any such action or proceeding brought in any of the courts referred to above.

(c)    To the extent that the Issuer or any Guarantor may in any jurisdiction claim for itself or its assets immunity (to the extent that it may now or hereafter exist, whether on the grounds of sovereign immunity or otherwise) from suit, execution, attachment (whether in aid of execution, before judgement or otherwise) or other legal process (whether through service or notice or otherwise), and to the extent that in any such jurisdiction there may be attributed to the Issuer or any Guarantor or its assets any such immunity (whether or not claimed), each of the Issuer and the Guarantors irrevocably agrees for the benefit of the Trustee, each Agent and the Holders not to claim, and irrevocably waives, all such immunity to the full extent permitted by the laws of that jurisdiction.

(d)    The choice of New York law as the governing law for the Bonds and the choice of the jurisdiction of the New York State courts hereunder are made pursuant to New York General Obligations Law Sections 5-1401 and 5-1402. The Issuer and the Guarantors agree, and each Holder of a Bond, by its acquisition thereof, is deemed to agree, that each Bond is part of a transaction covering in the aggregate not less than U.S. $1,000,000.

SECTION 112.    Legal Holdings.

If the Maturity or other due date for payment of any amount in respect of any Bond is not a Business Day in the place of payment, then the Holder shall not be entitled to payment on such day and (notwithstanding any other provision of this Indenture or the Bonds) payment of all amounts due on the Bonds on such date need not be made at such place of payment on such date but may be made on the next succeeding Business Day at such place of payment with the same force and effect as if made on the Maturity or other due date and, in the case of payment on such next succeeding Business Day, no interest

16

shall accrue for the intervening period (except in the event there is a subsequent failure to pay in accordance with this Indenture and the Conditions).

ARTICLE TWO

FORMS OF BONDS

SECTION 201.    Forms Generally.

(a)    The Bonds may be issued in registered form only as more fully set forth below, in the Specified Denominations provided for herein. The Conditions applicable to the Bonds, and the form of the Global Bonds and the Definitive Bonds shall be in substantially the forms set forth in Exhibits A, B and C, respectively. The Bonds shall be serially numbered, shall be endorsed with the appropriate legend as indicated in Exhibits A, B and C, shall have the *aval* of the Guarantors endorsed thereon, shall be endorsed with or have attached thereto the Conditions and, in the case of Definitive Bonds, shall be endorsed with a Form of Transfer. The Bonds shall have such other appropriate insertions, omissions and substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with the rules of any Stock Exchange or applicable law, to conform to general usage or as may, consistently herewith, be determined necessary or appropriate by the officers executing such Bonds, as evidenced by their execution of the Bonds. The certificate of authentication in respect of the Global Bond and the Definitive Bonds hereinafter provided for shall be in substantially the form set forth in the respective forms of Bonds set forth in Exhibits B and C.



(b)    The forms of Definitive Bonds and Global Bonds and certificates of authentication set forth in the Exhibits to this Indenture shall for all purposes have the same effect as though fully set forth at this place.

(c)    Global Bonds shall be prepared in such manner as determined by a director of the Issuer or the attorney-in-fact executing such Global Bonds and in conformity with the requirements of the Stock Exchange. Definitive Bonds may be security printed in accordance with industry practice.

SECTION 202.    Certificates of Euroclear, Cedelbank and DTC.

The Issuer, the Trustee and the Principal Paying Agent may call for and, except in the case of manifest error known to the Issuer, Trustee and the Principal Paying Agent, shall be at liberty to accept and place full reliance on a certificate or letter of confirmation issued on behalf of Euroclear, Cedelbank or DTC or any other applicable Clearing Agent for any Bonds represented by a Global Bond or any form of record made by any of them, to the effect that at any particular time or throughout any particular period any particular Person is, was, or will be, shown in its records as the Holder (or beneficial owner) of a particular principal amount of Bonds represented by a Global Bond. Any such certificate or confirmation shall be sufficient evidence of those matters stated therein and shall be conclusive and binding for all purposes except in the case of manifest error known to the Issuer, Trustee and the Principal Paying Agent.

17

## ARTICLE THREE

## THE BONDS

**SECTION 301.    Aggregate Amount.**

The aggregate principal amount of Bonds that may be authenticated and delivered under this Indenture and that may be Outstanding at any time shall not exceed U.S. $100,000,000.

**SECTION 302.    Denominations.**

Bonds shall be issued in the Specified Denominations.

**SECTION 303.    Execution, Authentication and Delivery.**

(a)    Each Bond shall be executed on behalf of the Issuer by one of its directors or a duly authorized attorney-in-fact, whose signature thereon may be manual or facsimile. The Guarantee shall be endorsed on each Bond on behalf of each Guarantor by one of its directors or a duly authorized attorney-in-fact, the signature of each of which thereon may be manual or by facsimile.

(b)    The Bonds bearing the manual or facsimile signature of any Person who was at the time the signature was affixed a director or a duly authorized attorney-in-fact of the Issuer or a Guarantor shall bind the Issuer or the relevant Guarantor, notwithstanding that such Person has ceased to hold office or to be so authorized prior to the authentication and delivery of those Bonds or did not hold the relevant office or was not so authorized at the date of delivery of those Bonds.

(c)    The Issuer shall deliver each Bond executed by the Issuer and so endorsed by each Guarantor in accordance with Section 303(a) to, or to the order of, the Principal Paying Agent or any other Authenticating Agent for authentication and delivery. The Principal Paying Agent or any Authenticating Agent, in accordance with the Issuer Order, shall authenticate and deliver those Bonds as provided in this Indenture and not otherwise. Each Bond shall be dated the date of its authentication.

(d)    No Bond shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Bond a certificate of authentication substantially in the form set forth in the respective Exhibit hereto executed by the Principal Paying Agent or any other applicable Authenticating Agent by manual signature, and such certificate upon any Bond shall be conclusive evidence, and the only evidence, that such Bond has been duly authenticated and delivered hereunder.

**SECTION 304.    The Bonds.**

(a)    Bonds offered and sold in reliance on Rule 144A shall initially be issued in the form of a Restricted Global Bond with the Restricted Bonds Legend, which shall be deposited with a custodian for, and registered in the name of a nominee of, DTC.

(b)    Bonds offered and sold in reliance on Regulation S shall initially be issued in the form of a Regulation S Global Bond, which may be deposited with a common depositary outside the United States for Euroclear and Cedelbank and any other applicable Clearing Agent.

(c)    Beneficial interests in the Global Bonds will be shown on, and exchanges and transfers thereof will be effected only through, records maintained by DTC, Euroclear and Cedelbank, or any other relevant Clearing Agent, and the respective participants of each of them. Beneficial interests in the

18

Global Bonds shall be exchangeable and transferable only in accordance with, and subject to, the provisions of the Global Bonds and the rules and operating procedures for the time being of DTC, Euroclear and Cedelbank, or any other relevant Clearing Agent, as the case may be, including the requirement that all Definitive Bonds issued in exchange for a Restricted Global Bond shall bear a legend in the same form as that set forth on the Restricted Global Bond.

(d)    Title to the Definitive Bonds shall pass upon the registration of transfers in respect thereof in accordance with the provisions of this Indenture.

SECTION 305.    Exchanges; Transfers.

Set forth below are certain procedures applicable to exchanges of Bonds and interests in Global Bonds. The Issuer shall cause the indicated Agents to follow these procedures.

(a)    <u>Exchange of Interests in Global Bonds for Definitive Bonds</u>.

(i)    In the case of DTC Bonds, in the event that (A) DTC or any successor depositary notifies the Issuer that it is no longer willing or able to discharge properly its responsibilities as depositary with respect to the DTC Bonds, or (B) DTC ceases to be a clearing agency registered under the Exchange Act and the Issuer is unable to appoint a qualified successor within 90 days of receiving notice of the circumstances, or (C) an Event of Default occurs and is continuing, or (D) a material disadvantage to the Issuer or the Holders will occur if the Bonds are not in definitive form, upon delivery of notice to the Issuer by DTC or the Holders of 10 per cent. or more in aggregate face amount of the Outstanding Bonds represented thereby or the Trustee, the Issuer will, at its own cost and expense, cause sufficient Definitive Bonds to be executed and endorsed with the *aval* of the Guarantors and delivered to the Registrar for completion, authentication and delivery to each relevant Holder of the DTC Bonds in accordance with the Conditions and this Section 305(a).

(ii)    In the case of Regulation S Global Bonds deposited with a common depositary or depositaries for Euroclear and Cedelbank or any other relevant Clearing Agent, in the event that (A) either Euroclear or Cedelbank or any other relevant Clearing Agent is closed for business for a continuous period of 14 days (other than by reason of public holidays) or announces an intention to cease business permanently or does in fact do so, or (B) an Event of Default occurs and is continuing, or (C) a material disadvantage to the Issuer or the Holders will occur if the Bonds are not in definitive form, upon delivery of notice to the Issuer by Euroclear or Cedelbank or the Holders of 10 per cent. or more in aggregate face amount of the Outstanding Bonds represented thereby or the Trustee, the Issuer will, at its own cost and expense, cause sufficient Definitive Bonds to be executed and endorsed with the *aval* of the Guarantors and delivered to the Registrar for completion, authentication and delivery to each relevant Holder of the Regulation S Global Bonds in accordance with the Conditions and this Section 305(a).

(iii)    In any such event, or in any other circumstance in which, under this Indenture, an interest in a Global Bond may be exchanged for Definitive Bonds, the Holders of the relevant Global Bonds shall provide the Trustee and the Registrar or the Principal Paying Agent, as the case may be, with:  (A) written instructions and such other information as the Issuer and the Registrar, the Trustee or the Principal Paying Agent, as the case may be, may require to complete, execute and have endorsed by the Guarantors and deliver the Definitive Bonds to which the Holder is entitled; and (B) in the case of a Restricted Global Bond only, a fully completed, signed certification substantially to the effect that the Holder is not transferring its interest at the time of

19