UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————x

In the Matter of the Application of )
)
RAMY LAKAH and MICHEL LAKAH, )
)
    Petitioners, )
)
For a judgment pursuant to Article 75 of )
the C.P.L.R. staying the arbitration )    07-CV-2799 (MGC) (FM)
commenced by )
)
UBS AG, EXPORTERS INSURANCE )
COMPANY, LTD., ARAB BANKING )
CORPORATION, NATIONAL BANK OF ABU )
DHABI and NATIONAL BANK OF OMAN, )
)
    Respondents. )

————————————————————x

## RESPONDENTS' MEMORANDUM OF LAW IN OPPOSITION TO, AND SEEKING SUMMARY DISMISSAL OF, THE LAKAHS' PETITION UNDER N.Y. CPLR §7503(b) TO STAY ARBITRATION

Gilbert A. Samberg (GASamberg@mintz.com)
Kevin N. Ainsworth (KAinsworth@mintz.com)
David L. Barres (DLBarres@mintz.com)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
The Chrysler Center
666 Third Avenue, 25th Floor
New York, New York 10017
(212) 935-3000

*Attorneys for Respondents-Cross-Petitioners*
*UBS AG, Exporters Insurance Company, Ltd., Arab Banking Corporation,*
*National Bank of Abu Dhabi and National Bank of Oman*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS .............................................................................. 6

ARGUMENT ................................................................................................ 10

THE LAKAHS' PETITION TO STAY ARBITRATION SHOULD BE  DISMISSED
UNDER NEW YORK CPLR §7503(c) BECAUSE THEY DID NOT APPLY FOR A
STAY WITHIN TWENTY DAYS OF BEING  SERVED WITH DUE NOTICE AND
A DEMAND FOR ARBITRATION ................................................................. 10

1.  The Twenty-Day Time Limit of N.Y. CPLR §7503(c) Applies to Parties,
    Like the Lakahs, Who Contend They Are Not Signatories to a Relevant
    Arbitration Agreement. ........................................................................... 12

2.  The Respondents' Defense Based on CPLR §7503(c) Is Not Waived. ..................... 17

CONCLUSION.............................................................................................. 18

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Aetna Life & Cas. Co. v. Stekardis*,
   34 N.Y.2d 182, 356 N.Y.S.2d 587 (1974) ............................................... 12

*DelCostello v. International Bhd. of Teamsters*,
   462 U.S. 151 (1983) ......................................................................... 11

*Favara, Skahan, Tabaczyk, Ltd. v. Ewing*,
   No. 91 Civ. 7878 (JFK), 1992 WL 80659 & n.2 (S.D.N.Y. Apr. 9, 1992) .. 11, 15, 16, 17

*Fiveco, Inc. v. Haber*,
   11 N.Y.3d 140, 863 N.Y.S.2d 391 (2008) .................................... 13, 14, 16

*Giamo v. Visscher*,,
   94 A.D.3d 1395, 942 N.Y.S.2d 705 (3d Dep't 2012) ........................... 15, 16

*In re Herman Miller, Inc.*,
   No. 97 Civ. 7878 (SAS), 1998 WL 193213, at *3 (S.D.N.Y. Apr. 21, 1998),
   *aff'd*, 173 F.3d 844 (2d Cir. 1999) ..................................................... 11

*Kulzer v. Pittsburgh-Corning Corp.*,
   942 F.2d 122 (2d Cir. 1991) ............................................................... 18

*Lane v. Abel-Bey*,
   50 N.Y.2d 864, 430 N.Y.S.2d 41 (1980) ................................. 12, 13, 14, 16

*Matarasso v. Continental Cas. Co.*,
   56 N.Y.2d 264, 451 N.Y.S.2d 703 (1982) ............................................. 14

*Mobius Mgmt. Sys., Inc. v. Technologic Software Concepts, Inc.*,
   No. 02 Civ. 2820 (RWS), 2002 WL 31106409 (S.D.N.Y. Sept. 20, 2002) ...... 11, 15, 16

*Thomson-CSF, S.A. v. American Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995) ................................................................. 16

*Van Buskirk v. New York Times Co.*,
   325 F.3d 87 (2d Cir. 2003) ................................................................ 12

*Woodcrest Fabrics, Inc. v. Taritex, Inc.*,,
   98 A.D.2d 52, 469 N.Y.S.2d 728 (1st Dep't 1983) .............................. 16, 17

**Statutes**

9 U.S.C. §2 ............................................................................................................. 11

9 U.S.C. §4 .................................................................................................... 1, 10, 17

9 U.S.C. §6 ............................................................................................................. 17

9 U.S.C. §202 ......................................................................................................... 11

9 U.S.C. §206 ......................................................................................................... 10

N.Y. CPLR §7503(a) .............................................................................................. 12

N.Y. CPLR §7503(b) ............................................................................ 1, 3, 4, 5, 9, 11

N.Y. CPLR §7503(c) ........................................................................................ passim

6898759v.5

Respondents-Cross-Petitioners UBS AG, Exporters Insurance Company, Ltd. (c/k/a Island Capital Ltd.), Arab Banking Corporation, National Bank of Abu Dhabi, and National Bank of Oman (collectively "Respondents") respectfully submit this Memorandum of Law and the Declaration of Kevin N. Ainsworth, dated October 24, 2012 ("Ainsworth Declaration") in opposition to, and seeking the summary dismissal of, the petition by Ramy and Michel Lakah (the "Lakahs" or the "Petitioners") under N.Y. CPLR §7503(b) to stay arbitration.  This application is made pursuant to Section 4 of the Federal Arbitration Act (9 U.S.C. §4), and is based on the time bar set out in N.Y. CPLR §7503(c).

This application was originally made as part of a larger application by Respondents, filed September 25, 2012, that also included a cross-motion to compel arbitration, pursuant to FAA §4.  In accordance with the Court's request at a conference on October 10, 2012, Respondents submit this element of their larger application for the Court's initial consideration.

## INTRODUCTION

The genesis of the underlying commercial arbitration in New York was the virtually complete default by the Issuer and four Guarantors of a US$100 million Eurobond.  The Issuer and Guarantor companies were approximately 70% owned and entirely controlled by the Lakahs.  The Lakahs had been deeply involved in the Eurobond transaction and were each signatories of the transaction documents in their personal capacities (in the bond Indenture) and generally as the sole signatories on behalf of the Issuer and Guarantor companies.

It is not in dispute that the Eurobond transaction documents included three relevant (and virtually identical) arbitration clauses.  Moreover, the transaction documents were all expressly governed by New York law, and the arbitration clauses provided for arbitration in New York.

The Respondents – holders of the defaulted Eurobond – commenced an arbitration in New York and served each of the Lakahs, respectively, with a Notice of Arbitration and Statement of Claim and a separate specific "Notice Pursuant to New York Civil Practice Law and Rule §7503(c)" (the "CPLR §7503(c) Notice").

The Statement of Claim indicated several grounds upon which the Respondents contended that the Lakahs were bound by the relevant arbitration agreements, including (i) veil piercing/alter ego, (ii) estoppel, and (iii) the fact that the Lakahs were signatories in their personal capacities to the Indenture (which contained one of the pertinent arbitration agreements).

Furthermore, the CPLR §7503(c) Notice apprised the Lakahs as follows:

> "Unless within twenty (20) days after the service of this Notice, you apply, pursuant to the provisions of Section 7503(c) of the New York Civil Practice Law and Rules, for a stay of arbitration, you will thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time."[1]

---

[1]   N.Y. CPLR §7503(c) provides in pertinent part that:

> "A party may serve upon another party a demand for arbitration … specifying the agreement pursuant to which arbitration is sought … and stating that unless the party served applies to stay the arbitration within twenty days after such service, he shall thereafter be precluded from objecting that a valid agreement was not made …. An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded."

Thus, the Lakahs were on notice from the outset that the New York Legislature had established a 20-day limitation period within which a notified party could seek a stay of arbitration in a court in New York on the asserted ground that "a valid [arbitration] agreement was not made".  If the Lakahs failed to seek a stay on that ground within the statutorily allotted period, they would be precluded thereafter from doing so, and presumably would be relegated to raising such a defense, if any, in the arbitration itself.

Michel Lakah received the aforesaid Notices on or about June 12, 2006, and Ramy Lakah received them on or about July 20, 2006.  They chose to ignore them.

On March 20, 2007, some 8 - 9 months after the Lakahs received the aforesaid Notices, they commenced a proceeding by petition to the Supreme Court of the State of New York, New York County,[2] seeking a stay of arbitration "pursuant to CPLR Section 7503(b)"[3] on precisely the ground that had been specified in N.Y. CPLR §7503(c) and therefore was precluded – i.e., that "a valid [arbitration] agreement  was not made."  In particular, the Lakahs argued in their belated stay petition under N.Y. CPLR §7503(b) that they were "not signatories to the arbitration clauses."[4]

Ironically, the Lakahs maintain on the very same basis – i.e., that they were not signatories in their personal capacities to the arbitration agreements – and solely on that basis, that the provisions of N.Y. CPLR §7503(c) did not apply to them.

---

[2]   That proceeding, upon removal by the Respondents, became this proceeding.

[3]   N.Y. CPLR §7503(b) provides in pertinent part that

> "Subject to the provisions of subdivision (c), a party…may apply to
> stay arbitration on the ground that a valid agreement was not
> made…."

[4]   More specifically, the Lakahs argued that, they had not agreed in their personal capacities to submit to arbitration.  They thus claimed to be "non-signatories" of the pertinent arbitration agreements.

Thus, the Lakahs are before this Court seeking a stay under N.Y. CPLR §7503(b) on the ground that "a valid [arbitration] agreement was not made," while at the same time arguing that they were not within the ambit of N.Y. CPLR §7503(c), by which the New York Legislature required them to make that stay application on that specific ground within the 20 day period or be precluded from doing so.  Plainly, the Lakahs' position is untenable on its face.

Moreover, the law is that a non-signatory is routinely within the ambit of N.Y. CPLR §7503(c) except where no arbitration agreement whatever exists.  The statute itself sets only one condition for triggering the requirement that a party seek a judicial stay of arbitration on certain grounds within 20 days or be precluded from doing so – that is, service upon that party of due notice. [5]  In the usual case, a non-signatory is held to the 20-day time limit under CPLR §7503(c) because the statute makes no exception for one claiming to be a non-signatory to the arbitration agreement in question.  Indeed, if a party (like the Lakahs) intends to argue that it is not a signatory to a relevant existing arbitration agreement, that party would seem to be squarely within the ambit of the N.Y. CPLR §7503(c) mandate concerning an application for a judicial stay on the ground that "a valid [arbitration] agreement was not made."

---

[5]   One might argue that N.Y. CPLR §7503(c) also ought not apply where the non-signatory contends that he is an utter stranger and has no relationship whatever to the underlying commercial transaction or the transaction documents containing an arbitration agreement. (The following, for example, might be such a case: a vendor in Detroit sells automotive parts to a vendee in Rochester, does not deliver, and then the New York company sends notice of arbitration to an unsuspecting baker in Saskatchewan.)  However, we have found no judicial authority with regard to such an anomalous case, probably because service of a CPLR §7503(c) Notice on such a stranger would most likely have been an error that was correctable without judicial intervention.  In any event, we need not ponder such a scenario, as no such circumstance obtains in this case.

It is undisputed in this case (i) that there are three relevant arbitration agreements; (ii) that the Lakahs were not strangers to the matter, but instead were involved in the bond issuance transaction in question and were signatories of various bond transaction documents; (iii) that the bond transaction documents are expressly governed by New York law and provide for arbitration in New York; (iv) that the Lakahs received notice that the Respondents contended that the Lakahs were parties to the arbitration agreements on several grounds (including estoppel and veil piercing); (v) that the Lakahs received notice regarding the statutory limitation period prescribed in N.Y. CPLR §7503(c); (vi) that the Lakahs ignored the notices and did not act within the 20 days allowed by the New York Legislature; and (vii) that the Lakahs then applied to the court many months later for a stay under N.Y. CPLR §7503(b) on precisely the ground that had been precluded pursuant to N.Y.CPLR §7503(c).

Accordingly, the Lakahs were and are precluded from seeking a judicial stay of the arbitration on the ground that "a valid [arbitration] agreement was not made," and their petition under N.Y. CPLR §7503(b) should be dismissed.

Respondents furthermore submit that there are no genuine issues of material fact concerning their statutory defense to the Lakahs' petition, that the Lakahs' petition should therefore be dismissed summarily, and that the Lakahs should be directed forthwith to proceed to arbitration in the proceeding that is pending in New York before the International Center for Dispute Resolution of the American Arbitration Association.

## STATEMENT OF FACTS

On December 8, 1999, Lakah Funding Ltd. ("LFL") issued a 5-year Eurobond in the principal amount of $100,000,000, paying interest semi-annually at 12% per annum, and guaranteed jointly and severally by the Holding Company for Financial Investments (Lakah Group), S.A.E. ("HCFI"), Medequip for Trading and Contracting, S.A.E. ("Medequip"), Trading Medical System Egypt, S.A.E. ("TMSE"), and Arab Steel Factory, S.A.E. ("ASF") (collectively, the "Guarantors").  The Issuer and Guarantors defaulted on the Lakah Eurobond on or about June 8, 2001 and have been in default since then.

The Eurobond transaction documents included the Indenture; the Regulation S Global Bond ("Bond"), including Terms and Conditions of the Bonds ("TCB"); and the Guarantee.  (Exhs. "A"-"C".)[6]

The Indenture provides for the arbitration of "any dispute or difference . . . arising out of or in connection with the Bonds, the Guarantee, or this Indenture" in New York, New York or London, England.  (Exh. "A", § 110.)  The Indenture also provides that it and the Bonds "are governed by, and shall be construed in accordance with, the laws of the State of New York, without reference to its choice of law principles."  (*Id.* § 111(a).) The TCB and Guarantee contain substantially the same arbitration and choice-of-law clauses as the Indenture.  (Exh. "B", §§ 18-19(a); Exh. "C", §§ 13-14(a).)

Ramy Lakah signed the Indenture, the Bond (which expressly incorporates the TCB), and the Guarantee on behalf of the Issuer and each of the Guarantors.  (*See* Exh. "A" at 61; Exh. "B" at 4; Exh. "C" at 10-11.)  Michel Lakah certified Ramy Lakah's authorizations to execute the Eurobond transaction documents as the sole signatory on

---

[6]   All exhibit references are to exhibits to the Ainsworth Declaration.

behalf of each of the respective Guarantors.  (See, Exh. "D").  In that certification, dated

December 8, 1999 (the date of the Eurobond issue), Michel Lakah purported to sign on

behalf of HCFI in certifying that Ramy Lakah was the sole authorized signatory of each

of the Guarantors "for all purposes of the Indenture and the Bonds," and that the

signature exemplars on that page (all from Ramy Lakah) were "genuine signatures".

Both Ramy and Michel Lakah each also signed the Indenture in their personal

capacities "solely for purpose of Section 1005(c)(ii)", a covenant by which they each

agreed not to own, control or manage any business that competed with the purported

businesses of the Guarantor companies. (*See* Exh. "A" at 62.)

At the time of the issuance of the Eurobond, the Lakahs owned approximately

70% of HCFI.  (Exh. "E" at 16.)  The Eurobond Offering Circular furthermore indicated

that the Lakahs had complete control of Guarantor HCFI:

<u>Control of the Lakah Holding Company</u>

> As at the date hereof [December 6, 1999], Messrs. Ramy Lakah
> and Michel Lakah owned approximately 70 per cent. of the outstanding
> shares of the Lakah Holding Company [HCFI].  These shareholders are
> able to exert substantial control over the Lakah Holding Company [HCFI]
> and, as long as they directly or indirectly own such shares, they will have
> the ability to elect all of the Lakah Holding Company's directors, to cast a
> majority of the votes with respect to virtually all matters submitted to a vote
> of the Lakah Holding Company's shareholders and to prevent a change in
> control of the Lakah Holding Company.  (*Id.*)

And the Lakahs' control of HCFI meant that they also had complete control of the other

Guarantors and of the Issuer, because HCFI owned 97.8% of Medequip's shares;

97.6% of TMSE's shares; 97.9% of ASF's shares; and 100% of LFL's shares.  (Exh. "E"

at 20, F-41.)

In addition, the Lakahs were the principal officers and directors of HCFI and of the other Guarantors. For example, with respect to HCFI, Ramy Lakah was its Chairman and CEO, and Michel Lakah was its Vice Chairman and "Co-CEO"; and with respect to Medequip, Ramy Lakah was its Chairman and Managing Director, and Michel Lakah was its Vice Chairman and Managing Director. (Exh. "E" at 71; Exh. "F" [Commercial Register], transl. at 3-4.)

Moreover, Ramy Lakah and Michel Lakah were each specifically designated as a "Related Party" vis-à-vis each Eurobond transaction document. A "Related Party" was defined as:

> (A) any Person owning, directly or indirectly, at least 25 per cent. of the outstanding capital stock of or other ownership interest in the Issuer, any Guarantor, or any Subsidiary of a Guarantor, and (B) any person directly or indirectly controlling or controlled by or in the direct or indirect common control with the Issuer, any Guarantor, or any Subsidiary of a Guarantor. (E.g., Exh. "A" at p. 10.)

The Respondents are holders of the Eurobond. Due to the aforesaid defaults on all of the required Eurobond principal payments and most of the required interest payments, the Respondents commenced an arbitration in New York against the Guarantors and the Lakahs on June 8, 2006 by filing their Demand for Arbitration and Statement of Claim (the "Demand" or "Demand for Arbitration") with the American Arbitration Association. (Exh. "G".)

On June 12, 2006, Michel Lakah received copies of the Demand and of a "Notice Pursuant to New York Civil Practice Law and Rules §7503(c)" (the "CPLR §7503(c) Notice") (Exh. "H") via Federal Express at both his residence and his place of business in Quebec, Canada. (*See* Exh. "J".) On July 20, 2006, a French bailiff served copies of

the Demand and of the CPLR §7503(c) Notice on Ramy Lakah at his residence in Paris

in accordance with French law.  (Exh. "I".)

The Statement of Claim indicated that the Bondholders maintained that the

Lakahs were bound by the arbitration agreements in the Eurobond transaction

documents based on, *inter alia,* (a) estoppel, (b) veil piercing/*alter ego,* and/or (c) the

fact that the Lakahs signed the Eurobond Indenture in their individual capacities.  (Exh.

"G" at ¶¶ 6-12, 60, 92-111, 121-24.)

The CPLR §7503(c) Notice, dated June 8, 2006, stated:

> Unless within twenty (20) days after the service of this Notice, you
> apply, pursuant to the provisions of § 7503(c) of the New York Civil
> Practice Law and Rules, for a stay of the arbitration, you will thereafter be
> precluded from objecting that a valid agreement was not made or has not
> been complied with and from asserting in court the bar of a limitation of
> time.  (Exh. "H".)

The Lakahs took no action within the 20 days provided by statute.

Instead, 8-9 months later, on March 20, 2007, the Lakahs commenced a

proceeding in the Supreme Court of New York, New York County, by filing an

application by order to show cause for a stay of arbitration (Exh. "K"), and a Petition for

Stay of Arbitration (Exh. "L"), under N.Y. CPLR §7503(b) on the ground that "a valid

[arbitration] agreement was not made."  The Lakahs maintained that they were not

obligated to arbitrate because they were not signatories to the arbitration clauses in

question, but rather signed in their individual capacities only as to Section 1005(c)(ii) of

the Indenture.  (Exh. "K", Rothman Aff., ¶¶ 13-16; Exh. "L" at ¶¶ 16-20.)  They also

argued that the statutory time limitation of N.Y. CPLR §7503(c) did not apply to them for

the same reason – because they were not signatories in their personal capacities to an

arbitration agreement.  (Exh. "K" Rothman Aff., ¶ 19.)

Respondents removed the Lakahs' petition to this Court and filed an Answer and Cross-Petition to Compel Arbitration, with supporting Memorandum of Law dated April 16, 2007, in which they sought (a) denial of the Lakahs' petition and (b) an order compelling arbitration under the Federal Arbitration Act (9 U.S.C. §§ 4 and 206). Among other things, Respondents argued that the Lakahs' petition for a stay was time-barred under N.Y. CPLR §7503(c).  (Exh. "M" at 36-38.)

## ARGUMENT

### THE LAKAHS' PETITION TO STAY ARBITRATION SHOULD BE DISMISSED UNDER NEW YORK CPLR §7503(c) BECAUSE THEY DID NOT APPLY FOR A STAY WITHIN TWENTY DAYS OF BEING SERVED WITH DUE NOTICE AND A DEMAND FOR ARBITRATION

N.Y. CPLR §7503(c) provides in its entirety:

> *A party may serve upon another party a demand for arbitration or a notice of intention to arbitrate,* specifying the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice, or of an officer or agent thereof if such party is an association or corporation, and *stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made* or has not been complied with and from asserting in court the bar of a limitation of time.  Such notice or demand shall be served in the same manner as a summon or by registered or certified mail, return receipt requested.  *An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded.*  Notice of such application shall be served in the same manner as a summons or by registered or certified mail, return receipt requested.  Service of the application may be made upon the adverse party, or upon his attorney if the attorney's name appears on the demand for arbitration or the notice of intention to arbitrate.  Service of the application by mail shall be timely if such application is posted within the prescribed period.  Any provision in an arbitration agreement or arbitration rules which waives the right to apply for a stay of arbitration is hereby declared null and void.

N.Y. CPLR §7503(c) (McKinney 1998) (emphasis added).

Although this proceeding is governed by the FAA, *see* 9 U.S.C. §§ 2, 202, New York is the chosen situs of arbitration and New York law was chosen to govern the pertinent agreements. (*See* Exh. "A", §§ 110(b), 111(a); Exh. "B", §§ 18(b), 19(a); Exh. "C", §§ 13(b), 14(a).)  Hence, the time bar of N. Y. CPLR §7503(c) is applicable here. *See, e.g., Favara, Skahan, Tabaczyk, Ltd. v. Ewing*, No. 91 Civ. 7878 (JFK), 1992 WL 80659, at *1-2 & n.2 (S.D.N.Y. Apr. 9, 1992); *Mobius Mgmt. Sys., Inc. v. Technologic Software Concepts, Inc.*, No. 02 Civ. 2820 (RWS), 2002 WL 31106409, at *2 (S.D.N.Y. Sept. 20, 2002); *In re Herman Miller, Inc.*, No. 97 Civ. 7878 (SAS), 1998 WL 193213, at *3 (S.D.N.Y. Apr. 21, 1998), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *see also DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 171 (1983) ("resort to state law remains the norm for borrowing of limitations periods" when federal statute lacks one).

It is not in dispute that the Lakahs filed their application for a stay under N.Y. CPLR §7503(b) some 8-9 months after receiving the CPLR §7503(c) Notice (along with the Demand for Arbitration and Statement of Claim). (*See* Exhs. "H"-"L".)  It is also undisputed that there are three relevant arbitration agreements in the Eurobond transaction documents.  The only question for purposes of this application for summary adjudication, then, is whether the Lakahs are) within the ambit of N.Y. CPLR §7503(c). If they are, then the Lakahs' belated petition must be denied summarily, leaving them to raise their defense, if any, in the arbitration proceeding.

A court has no authority to consider an application for a stay of arbitration based on the assertion that "a valid [arbitration] agreement was not made" if the application is filed after the expiration of the 20-day statutory period fixed in N.Y. CPLR §7503(c).

*See Aetna Life & Cas. Co. v. Stekardis*, 34 N.Y.2d 182, 185-87, 356 N.Y.S.2d 587, 589-90 (1974).

On its face, N.Y. CPLR §7503(c) requires that any party that receives due notice must make an application for a judicial stay of arbitration on the ground that "a valid [arbitration] agreement was not made" within 20 days of receipt of such notice, or that party will be precluded thereafter from seeking such a stay from a court in New York on that ground.  The statute makes no exception for a party that, like the Lakahs, contends that it is not a signatory to an arbitration agreement.  Indeed, if anything, the statutory terms imply that the Lakahs are precisely the sort of party that was intended to be within its ambit.  It is therefore telling that the Lakahs eventually made -- albeit 8-9 months late -- the exact stay application that was precluded by the time bar of N.Y. CPLR §7503(c).  That belated application by the Lakahs is what is currently in question.

1. **The Twenty-Day Time Limit of N.Y. CPLR §7503(c) Applies to Parties, Like the Lakahs, Who Contend They Are Not Signatories to a Relevant Arbitration Agreement.**

This Court is bound to apply New York law as determined by the New York Court of Appeals.  *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003).  The Court of Appeals has indicated that the time bar of CPLR §7503(a) applies in cases involving facts comparable to those herein.  The caselaw from the lower New York courts are consistent with that.

In *Lane v. Abel-Bey*, 50 N.Y.2d 864, 430 N.Y.S.2d 41 (1980), a stockholders' agreement had been executed by individual shareholders of a corporation but not on behalf of the corporation itself.  The corporation had received notice pursuant to N.Y. CPLR §7503(c).  The court held that whether the non-signatory corporation was bound

by the arbitration agreement was a threshold question that had to be raised by the company in a timely application for a stay, which the company had not done. The company's belated stay application therefore was barred under CPLR §7503(c). *Id.* at 866, 430 N.Y.S.2d at 42.

*Lane* is the mirror image of the instant case. In *Lane,* the non-signatory corporation argued that it was not bound by an arbitration agreement that was signed only by the individual shareholders; here, the alleged non-signatory shareholders argue that they are not bound in their individual capacities by an arbitration agreement that they contend they signed only on behalf of the Guarantor corporations. However, *Lane* makes it clear that a purported non-signatory to a relevant arbitration agreement is routinely within the ambit of N.Y. CPLR §7503(c). That is, a party that contends that it is a non-signatory and that receives due notice must move for a stay of arbitration within the allotted time, or be precluded thereafter from seeking a judicial stay on the asserted ground that a valid arbitration agreement was not made.

In *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 863 N.Y.S.2d 391 (2008), the petitioner that belatedly sought a stay of arbitration was not a signatory to the pertinent arbitration agreements, and argued also that the commercial agreements (for installation and maintenance of coin-operated games), which contained the arbitration clauses, had expired. The petitioner could be deemed bound by the arbitration agreements, however, on the ground that it had assumed them from a predecessor. *Id.* at 142, 863 N.Y.S.2d at 392. The court held that "[b]ecause the contracts at issue in this case contain an arbitration provision, it cannot be said that the parties never agreed to arbitrate or that no agreement to arbitrate has ever been made." *Id.* at 145, 863

N.Y.S.2d at 394 (quotations omitted).   The petitioner therefore was within the ambit of CLPR §7503(c), and its belated petition for a stay was time-barred accordingly.   *Id.* at 144-45, 863 N.Y.S.2d at 394.

In *Matarasso v. Continental Cas. Co.*, 56 N.Y.2d 264, 267-68, 451 N.Y.S.2d 703, 704-05 (1982), the Court of Appeals defined an exception to the applicability of the time limit of CPLR §7503(c) where the commercial agreement at issue contained no arbitration provision whatsoever.[7]   However, the Court indicated, if the contract in issue contains an arbitration provision, it cannot be said that "the parties never agreed to arbitrate" or that "no agreement to arbitrate has ever been made".   *Id.* at 266, 267. Thus, the *Matarasso* exception clearly does not apply here.   The pertinent agreements in the instant case indisputably contain relevant arbitration clauses.

Moreover, the Lakahs were not strangers to those arbitration agreements because, among other things, (i) they were participants in the bond issuance transaction in which the transaction documents were developed; (ii) they signed all of the bond transaction documents on behalf of the Guarantors; (iii) they each signed the Indenture in their personal capacities; (iv) they are admittedly the principal shareholders, officers and directors of, and thus closely related to, all of the Guarantors; (v) Ramy Lakah was the Guarantors' sole signatory representative in the Eurobond transaction; and (vi) Michel Lakah certified Ramy Lakah's authority to bind the Guarantor companies to

---

[7]   *Fiveco,* 11 N.Y. 3d at 142.

The *Matarasso* court distinguished *Lane v. Abel-Bey*, in which <u>an arbitration agreement existed</u> among the corporation's shareholders, and therefore the question of whether the non-signatory corporation was bound by that agreement had to be raised in a timely motion for a stay or be precluded.   *Matarasso*, 56 N.Y.2d at 267 n*, 451 N.Y.S.2d at n.*.

the Eurobond transaction documents in question by his signature, and certified the

exemplars of Ramy Lakah's signature for that purpose.

Furthermore, other New York state and federal courts have consistently held that

the 20-day limit of CPLR §7503(c) applies in cases like this one, in which a corporate

shareholder or officer claims not to be a party to an arbitration agreement because he or

she signed it only on behalf of the corporation.  *See Giamo v. Visscher*, 94 A.D.3d 1395,

1396, 942 N.Y.S.2d 705, 707 (3d Dep't 2012) ("By arguing that he signed the contract

on behalf of MVCI, rather than individually, . . . respondent was in effect claiming that

there was no agreement to arbitrate between himself and petitioner. . . .  Thus, if it was

respondent's position that he never agreed to be bound in his individual capacity under

the contract, and never agreed in his individual capacity to be bound by the arbitration

clause contained therein, his recourse was to [timely] move pursuant to CPLR §7503(c)

to permanently stay arbitration against him in his individual capacity"); *Favara, Skahan,*

*Tabaczyk, Ltd. v. Ewing*, No. 91 Civ. 7878 (JFK), 1992 WL 80659, at *2-3 (S.D.N.Y.

Apr. 9, 1992) (corporate president who claimed she signed only on behalf of company,

but did not move for stay within time limit period of CPLR §7503(c), was precluded from

arguing that she was not a party to the arbitration agreement; and her argument that

she was a "stranger" to the arbitration agreement was unpersuasive "[g]iven the

apparently close connection" between her and the company); *Mobius Mgmt. Sys., Inc.*

*v. Technologic Software Concepts, Inc.*, No. 02 Civ. 2820 (RWS), 2002 WL 31106409,

at *2 (S.D.N.Y. Sept. 20, 2002) (corporate president and majority shareholder who failed

to timely seek stay of arbitration, based on his argument that he was not an *alter ego* of

the company when he signed arbitration agreement on behalf of corporation, was

15

precluded by CPLR §7503(c) from maintaining in court that he was not a party to the arbitration agreement).

These authorities indicate consistently that a non-signatory who receives due notice is routinely within the ambit of N.Y. CPLR §7503(c).  If there is a relevant arbitration agreement, then that party must make its application within the statutorily allotted time or be precluded from seeking a judicial stay thereafter on the ground that "a valid [arbitration] agreement was not made."[8]

Like the non-signatories in the various cases cited above, the Lakahs cannot claim that they are unfairly surprised by the application here of the time bar of N.Y. CPLR §7503(c).  The Lakahs were deeply involved in the Eurobond transaction and in making and executing the bond transaction documents.  All of those agreements were expressly governed by New York law, and several of them contained substantially identical arbitration agreements providing for arbitration in New York.  The Lakahs received a Demand for Arbitration and Statement of Claim that articulated several grounds on which the Bondholders contend that the Lakahs were bound by the relevant arbitration agreements, including veil piercing/alter ego and estoppel (*see* Exh. "G" ¶¶ 6-

---

[8]   Indeed, on the ultimate question, which presumably could be adjudicated by an arbitration panel if and when raised properly by the Lakahs, there is ample authority that a non-signatory may be deemed bound by an arbitration agreement, as for any other contract.  In *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776-79 (2d Cir. 1995), the court identified five common bases for binding non-signatories to an arbitration agreement: (1) assumption, (2) agency, (3) veil-piercing/alter ego; (4) estoppel; and (5) incorporation by reference.  Accordingly, there is ample authority not only that a non-signatory to an arbitration agreement is routinely within the ambit of CPLR §7503(c), but also that such a party will ultimately be deemed bound by that agreement by reason of one of the aforesaid theories.  *See, e.g., Lane*, 50 N.Y.2d at 865-66, 430 N.Y.S.2d at 42 (agency); *Fiveco*, 11 N.Y.3d at 143-45, 863 N.Y.S.2d at 392-94 (assumption); *Giamo*, 94 A.D.3d at 1396, 942 N.Y.S.2d at 707 (alter ego); *Favara, Skahan*, 1992 WL 80659, at *2-3 (alter ego); *Mobius Mgmt.*, 2002 WL 31106409, at *2 (alter ego); *Woodcrest Fabrics, Inc. v. Taritex, Inc.*, 98 A.D.2d 52, 52-57, 469 N.Y.S.2d 728, 729-31 (1st Dep't 1983) (estoppel).

12, 60, 92-102, 121-24), as well as the fact that the Lakahs were signatories in their personal capacities to one of those agreements (*id.* ¶¶ 103-11).  The Demand for Arbitration furthermore indicated that an arbitration against the Lakahs had been commenced in New York.  And the Lakahs received due notice of the New York statutory 20-day time limit on their seeking a judicial stay of arbitration based on the contention that "a valid [arbitration] agreement was not made."  (*See* Exhs. "H"-"J").  They simply ignored all of that, and they are therefore precluded now from seeking a stay of arbitration in this Court on that ground.[9]

Hence, the Lakahs' belated petition for a stay should promptly be dismissed.

2.    <u>The Respondents' Defense Based on CPLR §7503(c) Is Not Waived</u>.

"The time period contained in CPLR §7503(c) is the equivalent of a statute of limitations . . . ." *Woodcrest Fabrics*, 98 A.D.2d at 54, 469 N.Y.S.2d at 730.

At the outset of this proceeding, Respondents asserted this affirmative defense in their papers opposing the Lakahs' application and petition for stay of arbitration.  (*See, e.g.,* Exh. "M" at pp. at 36-38.)  As the Court is aware, this proceeding is a motion by nature from beginning to end.  *See* FAA §§4, 6 (9 U.S.C. §§4, 6).  In this case, court-supervised discovery was taken over a lengthy period before the Respondents were able to submit their arguments to the Court on the merits.  But that timing is obviously not a legally cognizable ground for contending that the Respondents waived their statutory time limitation defense.  Such an affirmative defense would not be waived merely by reason of the passage of time, no matter how much time had passed

---

[9]   "It is axiomatic that equity aids the vigilant and not those that sleep on their rights." *Favara, Skahan*, 1992 WL 80659 at *2.

between its initial assertion and its ultimate litigation on the merits. *See Kulzer v.*
*Pittsburgh-Corning Corp.*, 942 F.2d 122, 124-25 (2d Cir. 1991) (reversing district court
finding of waiver of statute-of-limitations defense, where defendant made bare assertion
of statute of limitations in its answer and did not raise it in pretrial motions, but instead
waited until middle of trial to raise it in  motion for directed verdict).

## CONCLUSION

For the foregoing reasons, the Lakahs' Petition to Stay Arbitration, along with any
related application by them for a stay, should be dismissed summarily and forthwith.

Dated:   October 24, 2012
         New York, New York

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.

By: _____
Gilbert A. Samberg (GS-2610)
Kevin N. Ainsworth (KA-8493)
David L. Barres (DB-2129)

The Chrysler Center
666 Third Avenue
New York, New York 10017
(212) 935-3000
(212) 983-3115 (facsimile)

*Attorneys for Respondents-Cross-Petitioners*