Gilbert A. Samberg
Kevin N. Ainsworth
David L. Barres
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
(212) 935-3000
(212) 983-3115 (facsimile)
*Attorneys for Respondents UBS AG, Exporters Insurance Company, Ltd., Arab Banking Corporation, National Bank of Abu Dhabi and National Bank of Oman*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| In the Matter of the Application of ) | |
| ) | |
| RAMY LAKAH and MICHEL LAKAH, ) | 07-CV-2799 (MGC) (FM) |
| ) | |
| Petitioners, ) | |
| ) | **DECLARATION** |
| For a judgment pursuant to Article 75 of ) | **OF TAMIM H. FODA** |
| the C.P.L.R. staying the arbitration ) | **CONCERNING EGYPTIAN** |
| commenced by ) | **LAW AFFECTING THE** |
| ) | **EXERCISE OF** |
| UBS AG, EXPORTERS INSURANCE ) | **PROSECUTORIAL** |
| COMPANY, LTD., ARAB BANKING ) | **DISCRETION** |
| CORPORATION, NATIONAL BANK OF ABU ) | **REGARDING WHETHER** |
| DHABI and NATIONAL BANK OF OMAN, ) | **TO BRING A FELONY** |
| ) | **CASE TO A** |
| Respondents. ) | <u>**TRIAL IN ABSENTIA**</u> |

------------------------------------------------------------x

TAMIM HASSAN FODA states and declares as follows:

1.     I have been requested to provide an opinion concerning Egyptian law with respect to (a) the prosecution in an Egyptian Felonies Court of felony crime charges against a defendant who is outside of Egypt at the time of trial (that is, a criminal trial *in absentia*); (b) the legal effect of a judgment of felony conviction by a Court of Felonies after a trial of the defendant *in absentia*; (c) the

elements of Egyptian law that would be pertinent, and therefore would likely be considered by an Egyptian Public Prosecutor in deciding whether or not to bring criminal felony charges to a trial against an absent defendant; and (d) the significance of all of the foregoing with respect to the actions of the Egyptian Supreme Public Prosecution for Public Funds concerning Case No. 637 for the year 2001 against Ramy Lakah and Michel Lakah. (Case No. 637 for the year 2001, which was investigated by the Supreme Public Prosecution for Public Funds, concerned charges that the Lakahs had committed felonies, resulting in their usurping public funds, in violation of Articles 116 and 116/bis of the Egyptian Penal Code.)

2. In sum, due to several provisions of Egyptian law that pertain (a) to trial *in absentia,* (b) to judgments rendered after trial *in absentia,* and (c) to the limited "life span" of criminal penalties ordered after a criminal trial *in absentia,* the Egyptian Public Prosecutor had good and clear reasons to choose not to bring the Lakahs to a criminal trial *in absentia* before a Court of Felonies, while keeping the prosecution case open, during the lengthy period -- from Spring 2000 (Michel) or Summer 2001 (Ramy) until March 2010 -- that the Lakahs stayed outside of Egypt after they fled the country.

3. The Egyptian Public Prosecution has authority to prosecute a criminal case at trial even if the accused is not present at trial -- for example, when the defendant has fled from Egypt. Criminal Procedures Code ("CPC") Art 1(1) ("*The Public Prosecution alone has jurisdiction to file the criminal case and to prosecute same, and any criminal case may not be filed by any other party*

2

*except in the cases provided for by law."*); CPC Art. 214 (*"If the Public Prosecution is of the opinion, following conducting the investigation, that the incident constitutes a felony, misdemeanor, or violation, and that the evidence against the accused is sufficient, it <u>may</u> refer the case to the competent court."*); Dr. Mamoun Salama, CPC with comments of scholars and Court of Cassation rulings, Part 1, Publisher: Dar El Nahda El Arabia, Second Edition, page 534 (Criminal felony cases are filed with a court by referral by the Attorney General or his deputy to the Court of Felonies through an indictment. The Public Prosecution serves notice to the parties of its directive to refer the case to the Court of Felonies within 10 days following the issuance of its directive. Commentators have interpreted this to mean that the criminal case is deemed to be filed when the directive to refer same to the Court has been issued, even if the accused was not served notice thereof.); Dr. Abdel Raouf Mahdy, Explanation of the General Rules of the Criminal Procedures, Publisher: Dar El Nahda El Arabia, Year 2006, page 374 (It is not a necessary condition that the accused should appear in order for the criminal case to be deemed filed with a court against such accused); Challenge No. 2413 for the year 30J, at the hearing of February 20, 1961, Court of Cassation Publications No. 45, 12[th] year, page 251 (The Public Prosecution may examine the investigation documents during the investigation in the absence of the accused and the absence of the accused may not nullify the said procedure.).

    4.    A judgment by a Felonies Court of criminal conviction of a felony after a trial *in absentia* is valid. See CPC Art. 395(1) ("*if the party convicted in*

*absentia* appears before the Court or is captured prior to the lapse of the penalty by prescription, the head of the Court of Appeal shall schedule the soonest hearing to re-examine the Case and the apprehended party shall appear in custody before the Court at that hearing and the Court may order that the convicted party be released or temporarily remain in custody. The judgment rendered *in absentia* shall not lapse regarding the penalty . . . unless the convicted party appears at the court hearings...."); Dr. Ahmed Shawky Abou Khatwa, Criminal Judgment *in Absentia*. Publisher: Dar El Nahda El Arabia, Second Edition, Year 1997, page 153 (a felony judgment rendered *in absentia* by the Court of Felonies is a valid judgment since the judgment is supported by all required elements and grounds. Accordingly, the appearance of the party convicted *in absentia* or the capture thereof shall not result in the nullity of the judgment rendered *in absentia*, but shall result in the lapse of the judgment by force of law.); CPC Article 238(1) ("if the party was served notice to attend before the court, and did not appear at the date mentioned in the summons, and did send a representative thereof in cases where such an action is permitted, a judgment *in absentia* may be rendered following the examination of the documents, except if the summons to attend was delivered thereto in person and it was revealed to the Court that there was no reason for the failure of such person to attend, in which case, the judgment shall be deemed *in presentia*."); CPC Art. 384 ("if an order to refer the accused in a felony to the Court of Felonies was issued, and he did not appear following being duly served with the referral and the summons, the Court may render a judgment *in absentia* or may decide to

4

postpone the case and re-summon the accused"); CPC Art. 387 ("If the accused was residing abroad, he may be served notice of the referral and the summons at his residence, if known, at least one month prior to the hearing to examine the case, and if he did not attend following being served notice, a judgment in absentia may be issued.")

5.   However, a felony conviction, rendered *in absentia* by a Court of Felonies, will automatically "lapse" -- i.e., it will cease to have effect by law -- if the convicted party later appears before the Court of Felonies either voluntarily or as a result of having been captured and brought before the Court. Article 395(1) of the CPC provides that

> If the convicted party against whom a judgment is rendered *in absentia* [later] appears [before the Court] or is apprehended [and appears before the Court] before the time within which the [criminal] penalty may be enforced has lapsed through prescription, the Head of the Court of Appeal shall schedule the earliest hearing to re-examine the case, and the apprehended party shall be *brought from* custody to attend the hearing, and the Court may release the apprehended party or remand the apprehended party in custody pending the review of the case. The judgment rendered *in absentia*, whether with respect to the actual [criminal] penalty or the resultant obligation to pay compensation [in a related civil case], may not lapse except when the party against whom the judgment is rendered attends the court hearings, in which case the court may not render a harsher penalty than that prescribed in the judgment *in absentia*.

Thus, a felony judgment that is issued by a Felony Court after trial of the defendant *in absentia* automatically lapses and ceases to have effect by law (Dr. Ahmed Shawky Abou Khatwa, Criminal Judgment *in Absentia*. Publisher: Dar El Nahda El Arabia, Second Edition, Year 1997, page 153) if and when the

convicted defendant appears before the Felonies Court at a later date, and a new trial will be conducted.

6. Therefore, there is no need for a defendant to challenge and oppose a judgment of felony conviction by a Felonies Court after trial *in absentia*. The defendant thus convicted need only appear later before the Court. Dr. Mohamed Abd El-Hamid Makky, Methods of Challenge to Criminal Judgments, Part 1, 2001 Edition, page 40.

7. Accordingly, a felony judgment issued *in absentia* is valid for so long as the party convicted *in absentia* does not later appear before the Felonies Court either voluntarily or due to his being captured and brought to the court. The judgment *in absentia* will lapse as soon as the convicted party appears before the Court for the re-examination of the case. CPC Art. 395.

8. The effects of the later "lapse" of a judgment of felony conviction rendered by a Court of Felonies *in absentia* include that both the criminal penalty that was ordered *in absentia* and any consequent judicially-ordered obligation to pay civil compensation due to that conviction will be nullified by law.

9. Furthermore, a penalty imposed after a felony conviction rendered *in absentia* will, as for any criminal penalty imposed after any trial, lapse by prescription over time. For example, Article 528 of the CPC provides that

> "[t]he penalty imposed in a felony shall lapse [after] 20 Gregorian years except for the penalty of death that lapses [after] 30 Gregorian years.

6

> The penalty imposed in a misdemeanor shall lapse [after] 5 years.
>
> The penalty imposed for a violation shall lapse [after] two years."

Article 529 of the CPC provides that

> "the prescription period shall commence as of the date the judgment becomes final, except in cases where the judgment was rendered *in absentia* by a Court of Felonies in a felony, in which case, the prescription period shall commence on the day the judgment was issued."

10. Also, when a judgment issued *in absentia* lapses by reason of the return of the defendant to the Court, the defendant receives a new trial, but may not receive a more severe penalty than the one issued by the Court *in absentia*. Originally, the Court of Cassation held (in 1966) that

> "It is established that retrial by the Court of Felony pursuant to Article 395 of the Criminal Procedure Code is not the result of a grievance filed by the convicted party, but such retrial takes place by force of law, and is considered a completely new trial, and accordingly the retrial court may freely and unrestrictedly rule upon the whole case without regard to the judgment rendered *in absentia*, whereby the court may issue a lesser or more severe sentence and in either case its judgment shall be held to be legally valid."

Cassation 14/11/1966, Cassation Rulings Collection, Record 17, No.20, p 1098.

Cassation 4/4/1971, Cassation Rulings Collection, Record 22, No.83, p 339.

Cassation 15/5/1980, Cassation Rulings Collection, Record 31, No.120, p 621.

Cassation 9/5/1982, Cassation Rulings Collection, Record 33, No.163, p 561.

Cassation 10/4/1984, Cassation Rulings Collection, Record 35, No.90, p 411.

However, when Law No. 95 of 2003 was issued, amending certain provisions of the CPC, it revised CPC Article 395 and prohibited a Court that "re-examined" such a case from ordering a penalty that was more severe than the penalty that

was adjudged by the Court that had ruled *in absentia*. CPC Art. 395(1) thus has provided since 2003 that the felony retrial court "may not issue a penalty more severe than that which was adjudged by the judgment rendered *in absentia*." Accordingly, a court re-examining such a felony case would have three alternatives: (a) issue the same penalty as that specified in the judgment rendered *in absentia*; (b) issue a lesser penalty than that ordered after trial *in absentia*; or (c) issue a judgment of acquittal.

11. I have been asked to assume that Michel Lakah left his home country of Egypt in approximately April or May 2000, and did not return to Egypt until March 2010. I have also been asked to assume that Ramy Lakah left his home country of Egypt in approximately August 2001, and did not return to Egypt until March 2010. (These assumptions are consistent with my recollection of news articles that were published in Cairo at various times during 2000, 2001 and thereafter.)

12. The Supreme Public Prosecution for Public Funds (the "Public Funds Bureau") is a bureau within the office of the Egyptian Public Prosecutor that prosecutes crimes affecting public funds. The relevant Public Funds Bureau records, which I have reviewed, indicate that it took the lead in continuing investigations of alleged crimes by Ramy and Michel Lakah that had been begun earlier by other Egyptian government agencies and were then referred to the Public Prosecutor. The Public Funds Bureau investigation file was open and active from approximately June 2002 until approximately late in 2009. During that time, the Public Funds Bureau did not bring the charges against the Lakahs

to a criminal trial in Egypt. By roughly the middle of 2009, the Lakahs had reached conciliations with their Egyptian bank creditors, which were government-owned (thus their funds were "public funds"), and the criminal charges against the Lakahs were consequently archived in the first quarter of 2010 in accordance with the provisions of Articles 131 and 133 of Banking Law No. 88 for the year 2003.

13. One cannot know with full certainty what reasons the responsible heads of the Supreme Public Prosecution for Public Funds had for exercising their discretion to choose not to bring the pending criminal charges against the Lakahs to trial during the time that the Lakahs were fugitives living outside of Egypt. However, we can be certain that they had in mind the legal points described above. <u>First</u>, if the charges against the Lakahs had been brought to trial, and felony convictions had been rendered *in absentia*, no criminal penalty thus ordered could be enforced on the Lakahs during the time that they were fugitives residing outside of Egypt. <u>Second</u>, any judgment of felony conviction rendered against the Lakahs *in absentia* would lapse (and thus be effectively nullified) automatically by law if and when the Lakahs simply returned to Egypt and appeared before a Felonies Court (or were apprehended and thus did so). <u>Third</u>, any criminal penalty ordered by a Felonies Court after a trial of the Lakahs *in absentia* would lapse by prescription under Egyptian law after a time, probably while the Lakahs remained outside of Egypt, and there would be no basis thereafter to impose or enforce any penalty whatever for their crimes. <u>Fourth</u>, assuming that a penalty ordered after trial *in absentia* had not lapsed by

9

prescription, a court later re-trying the Lakahs for felonies would have been limited with respect to the criminal penalties that it could impose, which by law could be no more severe than the penalty previously imposed after trial of the Lakahs *in absentia,* no matter what the evidence at the later re-trial showed.

14. During the time that the Lakahs were fugitives living outside of Egypt, the criminal investigations by the Public Funds Bureau of their activities were not dropped, and the Public Prosecution's criminal investigation file concerning them remained open and active.

15. Furthermore, sometime after the Lakahs fled from Egypt and after a period of investigation by the Public Funds Bureau, the Public Prosecution (1) obtained a court order in January 2003 freezing the assets of the Lakahs, and (2) placed the Lakahs on a list of persons whose arrival in Egypt was to be monitored so that, if they returned, they would be arrested (and presumably brought before a Criminal Court). Those orders remained in place until 2010. The Lakahs did not return to Egypt until they had made settlements with their Egyptian bank creditors, the criminal charges against them were archived by reason of special Banking Law provisions (noted above), and the orders described above were lifted.

16. Thus, due to the relevant provisions of Egyptian law, there were many strategic reasons for the Supreme Public Prosecution for Public Funds to exercise their discretion (see CPC Art. 214) to choose not to bring the Lakahs to a criminal trial *in absentia* before the Court of Felonies during the time that the

10

Lakahs had fled from Egypt and remained outside the country, while maintaining the charges against the Lakahs in an open and pending criminal investigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:  July 17, 2012
           Cairo, Egypt

_____
Tamim H. Foda