UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAMY LAKAH and MICHEL LAKAH,

                Petitioners,

-against-

UBS AG, et al.,

                Respondents.

07-cv-2799 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Michel Lakah's ("Petitioner") motion to vacate a November 2, 2018, arbitration award (the "Award") issued in favor of Respondents UBS AG, Exporters Insurance Company, National Bank of Abu Dhabi, National Bank of Oman, and Arab Banking Corporation ("Respondents"). (See dkt. no. 505, Motion to Vacate the Arbitration Award, Feb. 4, 2019 [the "First Petition"].)[1]

---

[1] In addition to Petitioner's Motion, he has also filed a Memorandum of Law in Support of his Motion to Vacate the Arbitration Award, see dkt. no. 506 ["Petitioner's First Brief" or "Pet. 1st Br."]; the Declaration of Daniel F. Paige in Support of Petitioner's Motion, and Exhibits 1-5 attached thereto, see dkt. no. 507 ["First Paige Declaration" or "1st Paige Decl."]; and a Reply Brief in Support of his Motion to Vacate the Arbitration Award, see dkt. no. 524 ["Petitioner's First Reply" or "Pet. 1st Reply"].

Respondents oppose the motion and cross-move to confirm the award.[2] Additionally, Petitioner moves to vacate a January 22, 2019 order (the "Order") dismissing Petitioner's counterclaims and terminating any further proceedings in the arbitration. (See dkt. no. 525, Motion to Vacate the Arbitration Award, April 22, 2019 [the "Second Petition"].)[3] Because Petitioner's motions overlap significantly in legal argument and factual basis, the Court will decide them together. For the reasons stated below, Petitioner's First Petition is DENIED, Respondent's Cross-Motion confirming the November 2018 award is GRANTED, and Petitioner's Second Petition is DENIED.

## I.  Background

The Court assumes general familiarity with the voluminous and

---

[2] Respondents have filed a Memorandum of Law in Opposition to Petitioner's Motion to Vacate Arbitration Award and in Support of Respondents' Cross-Motion to Confirm Award, (see dkt. no. 519 ["Respondents' First Opposition" or "Resp. 1st Opp."]), and the Declaration of Christina Leathley in Opposition of Petitioner's Motion, and Exhibit 1 attached thereto, (see dkt. no. 520 ["Leathley Declaration" or "Leathley Decl."]).

[3] In addition to the First Petition, Petitioner has also filed a Memorandum of Law in Support of his Motion to Vacate the Arbitration Award, and Exhibit 1 attached thereto, (see dkt. no. 526 ["Petitioner's Second Brief" or "Pet. 2nd Br."]); the Declaration of Daniel F. Paige in Support of Petitioner's Motion, (see dkt. no. 527 ["Second Paige Declaration" or "2nd Paige Decl."]); and a Reply Brief in Support of his Motion to Vacate the Arbitration Award, (see dkt. no. 531 ["Petitioner's Second Reply" or "Pet. 2nd Reply"]). In response, Respondents have filed a Memorandum of Law in Opposition to Petitioner's Motion to Vacate the Arbitration Award, (see dkt. no. 529 ["Respondents' Second Opposition" or "Resp. 2nd Opp."]); and the Declaration of Thomas E. Riley in Opposition of Petitioner's Motion, and Exhibits 1 and 2 attached thereto, (see dkt. no. 530 ["Riley Declaration" or "Riley Decl."]).

complex facts of this case, detailed summaries of which may be found in this Court's Findings of Fact and Conclusions of Law, (see dkt. no. 491) [hereinafter "FOF/COL"]), and the Arbitration Panel's Phase 3 Part 1 Final Award, (see 1st Paige Decl. Exhibit 1) [hereinafter the "Award"]). However, a brief recitation of facts pertinent to the instant motions is warranted.

On June 8, 2006, Respondents commenced arbitration against Petitioners Michel and Remy Lakah, as well as other companies involved in the issuing of $100 million in Eurobonds.[4] (See FOF/COL at 8.)

On March 19, 2007, the Lakahs petitioned the Supreme Court of the State of New York to stay the arbitration proceeding on the ground that they had no obligation to arbitrate with Respondents because they did not sign the Eurobond transaction documents in their individual capacities. (Id.) That action was removed to this Court on April 6, 2007, and Respondents filed a cross-petition to compel arbitration on April 16, 2007. (Id.) The basis of the cross-petition was that Petitioners should be bound to the arbitration agreements in the Eurobond transaction documents on

---

[4] Until Phase 3 of the Arbitration, Remy Lakah was an active participant in the proceedings. Starting April 24, 2017, he refused to participate further, leaving his brother, Michel Lakah, as the sole participant in the proceedings. Consequently, when referring to the period when both brothers were active participants, the term "Petitioners" is used. When only Michel Lakah was involved, the term "Petitioner" is used. This naming convention applies throughout this opinion.

theories of veil-piercing and equitable estoppel.  (See id. at 9.)

The parties then engaged in over nine years of active litigation.  (See id.)  In that time, the Court granted Petitioners' motion to preliminarily enjoin the arbitration panel (hereinafter "the Panel") from determining whether Petitioners were bound by the arbitration agreements.  See In re Lakah, 602 F. Supp. 2d 497, 498 (S.D.N.Y. 2009).  Later, the Court denied Respondents' motion for summary judgment, finding that there existed issues of fact as to whether Petitioners should be treated as parties to the arbitration agreements and that a trial was necessary.  See Lakah v. UBS AG, 996 F. Supp. 2d 250, 269 (S.D.N.Y. 2014).  A trial date was eventually set for July 5, 2016.  (See FOF/COL at 11.)

Afterward, the parties engaged in extensive motion practice. (See id. at 9.)  Then, days before trial, Petitioners discovered an Egyptian proceeding that allegedly exonerated them of all wrongdoing.  (Id. at 12.)  They asserted that Respondents had unsuccessfully appealed a dismissal of a criminal investigation against Petitioners, failed to disclose this appeal, and that the Egyptian Public Prosecutors' Office had determined that the Petitioners had not broken any Egyptian laws.  (Id.)  Consequently, Petitioners argued, this Court should be collaterally estopped from relitigating the same issues raised in the Egyptian appeal.  (Id.) However, the evidence supporting such claims was insufficient, and this Court found that "Petitioners had not made a sufficient showing

4

collaterally to estop Respondents from litigating the instant action." (Id. at 12-13; see also dkt. no. 476 at 21 ["The June 30, 2016 Hearing Transcript"].) At the same time, this Court made evidentiary determinations including, inter alia, admission of testimony favorable to Petitioners' claims concerning the Egyptian proceeding. (See FOF/COL at 13, Award at 43.)

On July 4, 2016, the night before trial, Petitioners moved for the recusal of the undersigned from the case. (See dkt. no. 460 ["Motion for Recusal"].) The following day, this Court denied the motion after explaining why the undersigned did not have a disqualifying interest. (See dkt. no. 485 at 2:9-10:12 [the "July 5, 2016 Trial Transcript"].) Immediately, Petitioners' counsel presented a motion to dismiss for mootness and lack of subject matter jurisdiction. (See FOF/COL at 15.) Counsel also submitted declarations on behalf of both Petitioners, who were not present at trial, stating:

> As a result of the Court's denial of or failure to timely rule upon my Motion to Recuse, and because I do not believe that I can get a fair trial in this matter, I hereby irrevocably consent to arbitrate the claims previously asserted against me in the Statement of Claim filed in the arbitration pending before the [Panel].

(See dkt. nos. 464, 465.) Petitioners' counsel then argued that, because the Petitioners had consented to proceed with the arbitration, the instant action was moot and the Court no longer retained subject matter jurisdiction. (See dkt. no. 485 at 11:10-

12.)  Alternatively, they sought the Court's permission to dismiss the case voluntarily with prejudice under Federal Rule of Civil Procedure 41(a)(2).  (<u>Id.</u> at 40:11-13.)  The Court sought briefing on the matter and continued with the trial.  (<u>Id.</u> at 34:19-20.)

Petitioners' counsel then stated that their clients instructed them not to participate in the trial.  (<u>Id.</u> at 37:15-19.)  Furthermore, they affirmed that, by declining to participate, their clients had waived their right to put in contrary evidence.  (<u>Id.</u> at 40:17-23.)  Respondents' counsel acknowledged that any subsequent findings by the Court may have collateral estoppel effect on the arbitration, to which Petitioners' counsel did not respond.  (<u>Id.</u> at 18:8-10.)  Without Petitioners' participation, the Court deemed the trial concluded, permitting Respondents to submit evidence at a later time in lieu of live testimony at trial.  (<u>Id.</u> at 51:10-12, FOF/COL at 17 n.8 (listing trial evidence submitted).)

On July 29, 2016, this Court denied in part and granted in part Petitioners' motion to dismiss.  (<u>See</u> dkt. no. 479.)  The motion to dismiss for lack of subject matter jurisdiction was denied, but the Court allowed Petitioners to dismiss their own 2007 petition voluntarily with prejudice on the condition that Respondents' cross-petition would remain pending.  (<u>See</u> FOF/COL at 16-17.)

On February 14, 2017, this Court issued its Findings of Fact and Conclusions of Law, granting the Respondents' cross-petition to compel arbitration upon finding that the Petitioners were bound to

6

the arbitration agreements by reason of the doctrines of equitable estoppel and piercing the corporate veil.  (Id. at 265-266.)

Phase 3 of the arbitral proceedings began on April 24, 2017, when Respondents notified the International Center for Dispute Resolution that arbitration would resume, per the rulings of this Court.  (See Award at 20.)  Thus began about twenty months of arbitration, during which, inter alia, three events relevant to the instant motions occurred.

First, on October 30, 2017, Petitioner submitted a Statement of Defense and Counterclaims.[5]  (See Award at 34.)  Four days later he paid the filing fee of $8,625 for the proposed counterclaims.  (Id.)  Prior to this point, Respondents had advanced Petitioner's share of all arbitral costs because Petitioner had refused to pay.  (Id. at 27.)  However, Respondents refused to fund Petitioner's counterclaims, and, instead, they invited the Panel to suspend or terminate the counterclaims for nonpayment of fees under AAA Rule R-54.  (Id.)  In response, the Panel bifurcated Phase 3 of the proceedings into two parts, waiting to address Petitioner's counterclaims until Phase 3 Part 2 to give him additional time to pay his fees.  (Id. at 38.)

---

[5] Only Michel Lakah appeared in the arbitration proceedings. His brother, Remy, has refused to appear in any capacity since the July 2016 District Court proceedings, which is why Michel Lakah is the only party seeking vacatur in the instant motions.  (See Award at 24.)

Second, on November 2, 2018, the Panel issued its 123-page award, titled "Final Award in Part 1 of Phase 3 Addressing Claimants' Application and Defenses Asserted by Phase 3 Respondents," holding that Petitioners were jointly and severally liable to Respondents in an amount exceeding $192 million, plus interest. (Id. at 121-123.)

Third, on January 22, 2019, the Panel issued an order, titled "Phase 3 Order No. 8 on Claimants' Rule R-54 Application," dismissing Petitioner's counterclaims and terminating any further proceedings in the arbitration for nonpayment of fees. (See 1st Paige Decl. Exhibit 3 at 22 (hereinafter "Order")).

On February 4, 2019, Petitioner filed his First Petition, which was followed later by the April 22, 2019, filing of his Second Petition. (See dkt. nos. 505, 525.)

## II. **Legal Standard**

The Federal Arbitration Act ("FAA") provides four grounds for vacating an arbitration award, two of which are relevant to the instant motions:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §§ 10(a)(3)-(4) (emphasis added)

Additionally, the Court of Appeals has held that courts may vacate an arbitration award if the arbitrator "has acted in manifest disregard of the law." Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007). However, vacatur for manifest disregard is warranted only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator[] is apparent." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010)(citation omitted); see also Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) ("[T]he doctrine gives extreme deference to arbitrators." (internal quotations omitted)). "To succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." Seneca Nation of Indians v. N.Y., 988 F.3d 618, 626 (2d Cir. 2021) (quoting Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) (internal quotation marks omitted).

Generally, the party "moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citing Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d

9, 12 (2d Cir. 1997)); see also Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010) ("It is not enough for [a party] to show that the [arbitrator] committed an error—or even a serious error."). Arbitration awards should be enforced "if there is a barely colorable justification for the outcome reached." T.Co Metals, LLC, 592 F.3d at 339 (emphasis in original); see also GEM Yield Bahamas Ltd. v. Mullen Techs., Inc., 24 Civ. 1120 (KPF), 2024 WL 2959259, at *15 (S.D.N.Y. June 11, 2024) ("The Court must confirm the Arbitrator's decision unless he failed to offer a barely colorable justification for the outcome reached." (quoting Jock v. Sterling Jewelers Inc., 646 F.3d 113, 122 (2d Cir. 2011)) internal quotations omitted).

Moreover, "arbitrators are afforded broad discretion to determine whether to hear or not hear evidence, or whether additional evidence is necessary or would simply prolong the proceedings." Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280, 286 (S.D.N.Y. 2007); see also Inficon, Inc. v. Verionix, Inc., 182 F. Supp. 3d 32, 40 (S.D.N.Y. 2016) ("FAA § 10(a)(3) has been narrowly construed to avoid impinging on the 'broad discretion' afforded [to] arbitrators to decide what evidence should be presented, and cases have recognized the broad latitude arbitrators enjoy in conducting hearings."); Kruse v. Sands Bros. & Co., 226 F. Supp. 2d 484, 488 (S.D.N.Y. 2002) ("[E]ven a refusal to hear evidence does not necessarily require vacatur."); Stifel, Nicolaus & Co. v. Forster,

2015 WL 509684, at *11 (S.D.N.Y. Feb. 6, 2015) (finding that disagreement with an arbitrator's decisions on the weight and admissibility of evidence was not grounds for a court to vacate an award).

Courts have permitted vacatur under § 10(3) "only if the misconduct amounts to violation of fundamental fairness." Oracle Corp. v. Wilson, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017), appeal withdrawn, 2017 WL 8289590 (2d Cir. Dec. 27, 2017) (internal quotation omitted).  Fundamental fairness is violated when the "right to be heard has been grossly and totally blocked."  Id. (quoting Stifel, 2015 WL 509684, at *5).  Arbitrators are only required to "give each of the parties to the dispute an adequate opportunity to present its evidence and argument."  Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997) (citation omitted).  However, that opportunity need not comport with the Federal Rules of Civil Procedure or Federal Rules of Evidence.  Id. Moreover, an arbitrator can perform a fundamentally fair hearing without hearing all evidence put forth by a party.  Id.; see also Oracle, 276 F. Supp. 3d at 29; ST Shipping & Transp. PTE, Ltd. v. Agathonissos Special Mar. Enter., 2016 WL 5475987, at *4 (S.D.N.Y. June 6, 2016) (affirming that arbitrators are not required to conduct oral hearings to hear all evidence proffered by parties).

## III. **Discussion**

### A. **The 2018 Award**

Petitioner claims the Panel violated fundamental fairness because it (1) applied collateral estoppel effect to this Court's FOF/COL, (2) denied him a fundamentally fair hearing, (3) refused to conduct additional evidentiary hearings, and (4) treated Petitioner as party to the Phase 1 proceedings. (See generally Pet. 1st Br. at 17-30; Pet. 1st Reply at 6-16.) This Court is not the first recipient of these arguments. The Panel already thoroughly addressed and rejected the substance of each of these assertions in its extensive and detailed Award. (See Award at 93-103, 109-113.) Here, Petitioner rehashes the same grievances and fails to meet his "very high" burden. Gottdiener, 462 F.3d at 110. Consequently, vacatur of the Award is not warranted.

#### 1. The Collateral Estoppel Effect of the FOF/COL on the Arbitration Proceedings

Petitioner argues that this Court's FOF/COL has no preclusive effect on the Panel because (a) the FOF/COL was an impermissible judgment on the merits of the arbitration and (b) the Panel erroneously relied upon the FOF/COL as necessary to support its Award. (See Pet. 1st Br. at 18-20, 23-26, 29-30.) Furthermore, in determining that the Court's FOF/COL had preclusive effect on the arbitration proceedings, Petitioner argues that the Panel (c) showed a manifest disregard of the law and (d) exceeded its authority. See

id. The Court will address each argument in turn.

### a. The FOF/COL was not a Judgement on the Merits

The Court first rejects Petitioner's argument that its FOF/COL constituted a judgment on the merits of the arbitration. The Court's FOF/COL made determinations only about the specific arbitrability question before it—whether or not veil-piercing and equitable estoppel applied to compel Petitioner to arbitrate. (See FOF/COL at 265 ¶¶ 39-41; Award at 95.) Arbitrability is a matter of contract law that involves interpreting parties' intent to enter into arbitration. See Dr.'s Assocs. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019). That process necessarily involves analyzing the undisputed facts concerning the existence of an arbitration agreement, something Petitioner confuses with an analysis of the merits of the arbitration. See 9 U.S.C. § 4 (to issue an order compelling arbitration, a court must consider "the making of the agreement for arbitration"); Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011) ("where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue"); but see (Pet. 1st Br. at 22 n.8 ("[T]he stayed action includes rulings and findings that go to the merits, rather than purely arbitrability . . . .")) The Court's analysis went no further than the boundaries of contract interpretation, looking only to whether Petitioner was

ultimately compelled to arbitrate under the applicable arbitration agreements.  (<u>See</u> FOF/COL at 265.)  This was proper because "threshold questions of arbitrability presumptively should be resolved by the court and not referred to the arbitrator." <u>Alemayehu</u>, 934 F.3d at 250.  Consequently, the Court left the merits of the arbitration, i.e., Petitioner's liability for the fraud surrounding the Eurobond Transactions, untouched for the Panel to decide.

The Court agrees with Petitioner's statement that its FOF/COL, a document that only exists to determine arbitrability on the bases of veil-piercing and equitable estoppel, "<u>concerned a matter purely preliminary</u> to the arbitration . . . i.e. whether Petitioner was bound in his personal capacity to arbitrate."  (<u>See</u> Pet. 1st Br. at 29 (emphasis added).)  However, he contradicts himself at other points by arguing that "it was not necessary for the Court to make findings and rulings as to veil piercing and alter ego as a basis for arbitrability," which was an improper and unnecessary venture "into the merits of the dispute." (<u>See</u> Pet. 1st Br. at 25.)  Because Petitioner is seeking vacatur, the Court assumes that the latter statement is his more firmly held of the two assertions.  Therefore, Petitioner seems to suggest that there must have been another way, apart from veil-piercing and equitable estoppel, for the Court to determine arbitrability.  There was not.

The Court made its FOF/COL in response to a motion to compel

arbitration that was premised on theories of veil-piercing and equitable estoppel. (See dkt. no. 3 at 5, FOF/COL at 8-9.) To make an arbitrability determination, the Court had to address those two theories. Courts may not sua sponte compel arbitration on grounds not presented to them, something especially true when it is unclear whether a party is even bound by the arbitration agreement, as was the case here. See Hickey v. Smith, 2024 WL 912041, at *3 (S.D.N.Y. Mar. 4, 2024) (noting that it is inappropriate "for a court to sua sponte enforce an arbitration clause . . . 'when the issue has not been properly briefed'") (quoting Lefkowitz v. Reissman, 2014 WL 925410, at *8 (S.D.N.Y. Mar. 7, 2014)); Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Pan., S.A., 312 F.2d 299, 300-01 (2d Cir. 1963) (vacating an arbitration award that involved a corporation not party to the arbitration agreement); (see also FOF/COL at 265 ¶¶ 39-41 (holding that Petitioner was bound in his individual capacity by the arbitration agreements and therefore compelled to arbitrate).) Consequently, there was no way for the Court to address the arbitrability question in the motion before it without making determinations about veil-piercing and equitable estoppel. That those determinations were based on findings of fact also relevant to the later arbitration proceedings does not, in it of itself, mean that the Court's analysis crossed the threshold from an arbitrability decision to a decision on the merits.

With respect to the issue of veil-piercing, it would have been impossible for the Court to proceed without conducting a comprehensive review of the record because "such veil-piercing claims are, necessarily, fact bound inquiries." Hughes v. BCI Int'l Holdings, Inc., 452 F. Supp. 2d 290, 308 (S.D.N.Y. 2006). Indeed, the Court could not have resolved the issue of veil-piercing without first determining, upon a review of the factual record, that "the Lakahs dominated and controlled the Guarantors and used that control to commit wrongdoing that proximately caused injury to the Bondholder-Respondents." (See FOF/COL at 261.) In other words, the Court's conclusions about veil-piercing—and thus about arbitrability—required the Court's analysis of hundreds of pages of facts that demonstrated the dominating, controlling, and abusive actions the Lakahs asserted upon five different corporations over the course of multiple years. (See generally FOF/COL at 32-251.)

These same fact-intensive principles apply equally to the Court's equitable estoppel analysis. (See FOF/COL at 263-264.) "Equitable estoppel is an equitable remedy, and its application turns upon a close examination of the facts and equities." Halifax Fund, L.P. v. MRV Commc'ns, Inc., 54 F. App'x 718, 719 (2d Cir. 2003) (quoting Halifax Fund, L.P. v. MRVCommc'ns, Inc., 2001 WL 1622261, at *3 (S.D.N.Y. Dec. 18, 2001)). Here, the Court determined that the Lakahs knowingly exploited "the Eurobond agreements to receive direct benefits from them" and were therefore

bound by the arbitration agreements under the doctrine of equitable estoppel.  (See FOF/COL at 264-65.)  To make that determination, the Court had to review the factual record to conclude, inter alia, "that the Lakahs commingled funds with the Guarantor companies and used Guarantor company assets for their personal benefit."  (Id. at 233.)

The Court made these determinations only because they were necessary to answer the threshold question of arbitrability and to determine "whether a valid agreement or obligation to arbitrate exist[ed]."  Shaw Grp., Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003).  That the Court's findings on veil-piercing and equitable estoppel were held to be binding on the later arbitration proceedings does not change that fact.  Consequently, the Court addressed the motion before it while staying within the boundaries of the FAA.[6]  See 9 U.S.C. § 4 ("[U]pon being satisfied that [an arbitration agreement exists] . . . the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").  It did not, contrary to Petitioner's assertion, issue a judgment on the merits of the parties' dispute.

---

[6] The Court notes that Petitioner takes the opposite position from his argument before the Court in 2009, when he sought to have the Court—rather than an arbitrator—decide matters of arbitrability, including relevant facts and their legal implications.  See In re Lakah, 602 F. Supp. 2d 497, 498-499 (S.D.N.Y. 2009).

17

　　　　b. <u>The Panel's Decision on the Binding Nature of the</u>
　　　　　 <u>FOF/COL</u>

Regarding Petitioner's second argument that the Panel improperly found the Court's FOF/COL binding, the Court easily finds that the Panel provided at least a "barely colorable justification" for its holding that the Court's FOF/COL was binding on and necessary in the arbitration. <u>T.Co Metals, LLC</u>, 592 F.3d at 339 (emphasis omitted) (citation omitted). Accordingly, there exists no reason to vacate the Award on this basis.

To begin its analysis, the Panel discussed Petitioner's arguments, Respondents' arguments, and the applicable law in sections of twelve, nine, and nine pages, respectively. (<u>See</u> Award at 63-93.) Then, over the course of seven pages, the Panel laid out its careful consideration of the collateral estoppel and res judicata effects of this Court's FOF/COL. (<u>See</u> Award at 93-100.) While greater page length does not necessarily equate to a valid or error-free decision, it does provide much more than a "barely colorable" justification for the Panel's award. <u>See Olin Holdings</u> <u>Ltd. v. Libya</u>, 2022 WL 864507, at *6 (S.D.N.Y. Mar. 23, 2022), <u>aff'd</u>, <u>Olin Holdings Ltd. v. State of Libya</u>, 73 F.4th 92, 108-09 (2d Cir. 2023) (finding justification where an arbitral tribunal provided pages of reasoned analysis interpreting the language and legal implications of an arbitration agreement); <u>Willemijn</u> <u>Houdstermaatschappij, BV</u>, 103 F.3d at 12-13 (finding justification

where a single plausible argument existed for the arbitration tribunal's award even when they provided no explanation); <u>CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC</u>, 852 F. App'x 572, 574 (2d Cir. 2021) (finding justification where the arbitration tribunal directly engaged with and made determinations about the parties' legal arguments). Specifically, the Panel followed Court of Appeals precedent, analyzed each necessary element for collateral estoppel, and relied on a detailed chart listing out identical claims between the District Court proceedings and Phase 3 Part 1 of the arbitration. (<u>See</u> Award at 94-100.) Consequently, the Panel's thorough discussion of the parties' arguments and relevant legal standards for collateral estoppel and <u>res judicata</u> provided a justification sufficient to survive vacatur under § 10(a)(3).

          c. <u>Manifest Disregard of the Law</u>

Petitioner's argument for vacatur under the manifest disregard doctrine fails because the Panel addressed the relevant law and applied it accordingly. Specifically, Petitioner argues that the Panel's decision that this Court's FOF/COL was "necessary" in determining arbitrability "clearly appreciated the existence of the . . . 'necessarily decided' element of collateral estoppel" but was "devoid of any meaningful analysis," thereby manifestly disregarding the applicable law. (Pet. 1st. Br. at 25.) To demonstrate manifest disregard, a party must show "that the arbitrators knew of the relevant legal principle, appreciated that

this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it."  See Seneca Nation of Indians, 988 F.3d at 626 (quoting Schwartz, 665 F.3d at 452).  Petitioner does not demonstrate any of these factors in his briefing, leaving the Court without a legal basis to vacate the Award on these grounds.

To support his contention that the Panel manifestly disregarded a necessary element of collateral estoppel, Petitioner myopically focuses on the Panel's conclusion paragraph, ignores the preceding ten paragraphs of explanation, and declares that the Panel's findings were "a conclusory statement . . . devoid of any meaningful analysis." (See Pet. 1st Br. at 25.)  To the contrary, the Panel relied on federal District, Circuit, and Supreme Court precedent and engaged specifically with each element of collateral estoppel, revealing the opposite of a manifest disregard of the law.[7]  (See Award at 94-95); see also Jock, 646 F.3d at 121-122 (holding that vacatur under either § 10(a)(4) or manifest disregard is not permitted where the arbitrators incorrectly decided the issue or even committed legal error).  Indeed, the Panel recited both the relevant law on collateral estoppel and the issues of substantive

---

[7] In its "Applicable Law" section, the Panel cites fifty-nine different precedents over the course of nine pages, and then, in its analysis, repeatedly refers back to those precedents, explaining how its decision follows the relevant cases.  (See Award at 84-114.)

law that collateral estoppel would preclude the Panel from determining again.  (See Award at 84-93).  It then applied these principles to conclude that this Court's decision on veil-piercing—which required the parties to arbitrate—was binding on the Panel.  (See id. at 96.)  In particular, the Panel noted that the Court's FOF/COL was binding because the factual and legal findings therein were necessary to support the Court's ultimate determination on arbitrability.  (See id. at 96.)  The Panel's analysis evinces both an understanding and appreciation of collateral estoppel and a proper application of the legal principle.  Consequently, vacatur is not warranted under the manifest disregard doctrine.  See Seneca Nation of Indians, 988 F.3d at 626.

### d. Section 10(a)(4) – Exceeding Authority

Additionally, the Panel's award survives vacatur under § 10(a)(4) because its legal determinations were well within its authority under the arbitration agreement.  Under § 10(a)(4), a court's inquiry into whether an arbitration panel exceeded its authority "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 220 (2d Cir. 2002) (quoting DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997).  Moreover, the Court of Appeals has "consistently accorded the narrowest of readings to Section

21

10(a)(4)." Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade
Co., 57 F.4th 372, 382 (2d Cir. 2023) (quoting ReliaStar Life Ins.
Co. of N.Y. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009)).
Under this narrow reading, courts have found vacatur under §
10(a)(4) necessary in cases in which rights were determined for a
corporation not party to the arbitration agreement, see Orion
Shipping & Trading Co., 312 F.2d at 300-01, or where awards were
given for events outside the scope of the arbitration agreement,
see In re Arb. Between Melun Indus., Inc. & Strange, 898 F. Supp.
990, 994-95 (S.D.N.Y. 1990).

Here, the Panel acted within its authority because it decided
its Award, a necessary outcome of the arbitration, based on its
determination that this Court's FOF/COL was binding on the
arbitration proceedings. (See Award at 93-95). While it is a rare
circumstance, precedent supports the binding nature of a court's
FOF/COL on an Arbitration Panel. See Pitta v. Hotel Assoc. of New
York City, 643 F. Supp. 247, 252 (S.D.N.Y. 1986), vacated and
remanded on other grounds, 806 F.2d 419, 424 n.4 (2d Cir. 1986)
(finding that a district court's findings of fact were binding on
the subsequent arbitration); Lummus Co. v. Commonwealth Oil Refinery
Co., 297 F.2d 80, 89-90 (2d Cir. 1961) ("[T]he general policy of
preventing relitigation applies with peculiar force to issues
preliminary to arbitration."); see also Hunter Douglas, Inc. v.
Sheet Metal Workers Int'l Ass'n., Local 159, 714 F.2d 342, 346 (4th

Cir. 1983) ("Findings made in a preliminary hearing are given preclusive effect only if the parties were fully heard on the issue in question."); Constellium Rolled Prods. Ravenswood, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, ALF-CIO/CLC, 18 F.4th 736, 740 (4th Cir. 2021) ("Absent an agreement to the contrary, the preclusive effect of a prior court judgment is for the arbitrator to decide.") Accordingly, the Panel's sound application of this rule of law did not exceed its authority.

Regardless, Petitioner's argument merely takes issue with the merits of the Panel's decision, rather than the scope of their authority.  Consequently, vacatur under § 10(a)(4) is not warranted.

2. Section 10(a)(3) - Fundamentally Fair Hearing

Petitioner also argues that he was denied a fundamentally fair hearing for three reasons.  First, Petitioner argues that it was fundamentally unfair for the Panel to find it was collaterally estopped by the Court's FOF/COL because preclusion cannot apply without the ability to obtain appellate review, and this Court denied him that ability when it refused to certify for appeal the denial of his recusal motion.  (See Pet. 1st Br. at 20-23.)  Second, Petitioner argues that it was fundamentally unfair for the Panel to find it was collaterally estopped by the Court's FOF/COL because issues on default cannot have preclusive effect and he "effectively defaulted" when he failed to participate at trial.  (See id. at 26-

29.)    Third, Petitioner argues that his consent to arbitrate rendered the Court's FOF/COL unnecessary, making the Panel's finding of its preclusive effect fundamentally unfair.    (See id. 23-26.) The Court rejects each argument and will analyze each in turn below.

Regarding his first argument, the underlying principle Petitioner appears to assert is that "issue preclusion cannot apply, 'if there is an inability to obtain [appellate] review or there has been no review, even though an appeal was taken.'"    (See Pet. 1st Br. at 22 (quoting Availl, Inc. v. Ryder System, Inc., 110 F.3d 892, 897 (2d Cir. 1997) (alteration in original)).)    However, Petitioner never attempted to appeal the Court's denial of his recusal motion through the two other remedies available to him: the collateral order exception to the final judgment rule and a petition for a writ of mandamus.    See United States v. Prevezon Holdings Ltd., 839 F.3d 227, 235 (2d Cir. 2016) ("Where, as here, certification is sought and denied, there are two remaining safety valves . . .the collateral order exception . . . or a writ of mandamus."); see also Williams v. City Univ. of N.Y., 2014 WL 4384677, at *2 (E.D.N.Y. Sept. 3, 2014) ("An order denying a motion to recuse is ordinarily not appealable as a final judgment."), aff'd, 633 F. App'x 541 (2d Cir. 2015).    Failing to pursue available "safety valves" is a self-imposed inability to obtain appellate review, and does not prevent issue preclusion concerning this Court's FOF/COL.    See Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986) ("[F]ailure to appeal

24

does not prevent preclusion . . . ."). Consequently, the Panel's decision to apply collateral estoppel effect to this Court's FOF/COL does not warrant vacatur of the Award.

Second, Petitioner argues that he was denied a fundamentally fair hearing because he "effectively defaulted" when he chose not to participate at trial, and issues on default are not given preclusive effect. (See Pet. 1st Br. at 26.) More specifically, Petitioner argues that by "fail[ing] to defend against counterclaims" he "defaulted pursuant to Rule 55." (See id. at 27); see also Fed. R. Civ. P. 55(a) ("When a party . . . has failed to plead or otherwise defend . . . the clerk must enter that party's default.") (emphasis added). After nine years of active participation in the litigation, Petitioner knowingly chose not to participate at trial or present any contrary evidence. (See July 5, 2016 Trial Transcript at 14:4-20, 18:19-22, 38:4-21, and 40:17-21; Award at 94-95.) This "unusual circumstance" was properly addressed by this Court as "analogous to . . . an unopposed motion for summary judgment" to which "[this] Court [would] not apply a simple default principle." (See FOF/COL at 29, 31.)

According to Petitioner, his failure to participate at trial prevented the Panel from giving the Court's FOF/COL preclusive effect because he "effectively defaulted . . . and, under federal law, issues on default are not given preclusive effect." (Pet. 1st Br. at 26.) The precedent Petitioner cites in support of this

proposition is inapposite because in each case the defaulting party did not initiate litigation and did not meaningfully respond, unlike Mr. Lakah.  See, e.g., Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) ("[entering a default judgment for] failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial"); Manufacturers Life Ins. Co. v. Cont'l Software, Inc., 1988 WL 43924, at *1 (W.D.N.Y. May 2, 1988) (entering a default judgment after defendant gave notice of his intention to default days before trial and the Clerk of Court entered default).  Here, Petitioner "initiated and actively pursued extensive litigation about this arbitration in the District Court" for over nine years up and until the first day of trial, at which point he chose not to participate. (See Order at 20.)  Furthermore, Petitioner admits that "default judgment was never entered[,]" a necessary element to avoid preclusive effect of a judgment.  (See Pet. 1st Br. at 27); CKR Law LLP v. Anderson Invs. Int'l, LLC, 544 F. Supp. 3d 474, 481 (S.D.N.Y. 2021) ("Federal Rule of Civil Procedure 55 sets out a two-step procedure for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment.")

Moreover, the issue before this Court in 2016 was a petition to compel arbitration, which requires determining "whether a valid agreement or obligation to arbitrate exists[.]"  Shaw Grp., Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003).  Indeed,

"a court may not compel arbitration until it has resolved the question of the very existence of the contract embodying the arbitration clause, nor may it require parties to arbitrate issues that they have not specifically agreed to submit to arbitration." <u>Arrigo v. Blue Fish Commodities</u>, 408 F. App'x 480, 481 (2d Cir. 2011) (internal quotations and citations omitted).  This Court's task of examining the record and determining whether or not Petitioner had an obligation to arbitrate is similar to the Rule 56(c) requirement of a showing that a party moving for summary judgment is "entitled to a judgment as a matter of law." <u>Porcelli v. JetSmarter, Inc.</u>, 2019 WL 2371896, at *3 (S.D.N.Y. June 5, 2019) ("On a motion to compel arbitration under the FAA, 'the court applies a standard similar to that applicable for a motion for summary judgment'") (quoting <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003)).  Both scenarios require a court to conclude that the undisputed facts entitle the moving party to the relief requested.  <u>See</u> <u>Id.</u> (quoting <u>Wachovia Bank, Nat'l Ass'n</u>, 661 F.3d at 172); <u>Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004).  This standard is dissimilar from the determination for a default under Rule 55, which does not require a court to ascertain "whether a valid agreement . . . exists." <u>See</u> <u>Shaw Grp., Inc.</u>, 322 F.3d at 120; Fed. R. Civ. P. 56(c); <u>Vt. Teddy Bear Co</u>, 373 F.3d at 246.

Treatment similar to a summary judgment motion is even more

appropriate where the parties have actively engaged in litigation and developed a record.  In <u>D.H. Blair & Co., Inc. v. Gottdiener</u>, the Court of Appeals determined that, in proceedings to confirm or vacate an arbitration award where there is a record before the court, rather than only the allegations of one party, "the petition and accompanying record should [be] treated as akin to a motion for summary judgment."  462 F.3d 95, 110-111 (2d Cir. 2006). Furthermore, in the context of a motion to compel arbitration, "[a] party's failure to respond . . . does not warrant default judgment because, even where a non-moving party fails to respond to a motion for summary judgment, a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." <u>CKR Law</u>, 544 F. Supp. 3d at 482 (S.D.N.Y. 2021) (quoting <u>Gottdiener</u>, 462 F.3d at 110) (internal quotations omitted); <u>see also</u> <u>Vt. Teddy Bear Co.</u>, 373 F.3d at 244 ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.")

The difference between default and summary judgment treatment lies in the level of a party's participation or non-participation on the record.  <u>See</u> <u>CKR Law LLP</u>, 544 F. Supp. 3d at 482 (finding default available only because the petition was filed before the underlying dispute was the subject of pending litigation and

respondent failed to respond in any way); see also Gottdiener, 462
F.3d at 108 ("[Respondents] . . . should have responded in some
fashion, e.g., by seeking an extension, arguing the merits, raising
jurisdictional or venue objections, etc. [to avoid default.]")  This
distinction comes from the fact that a decision on a motion to
compel arbitration, as does a decision on a motion for summary
judgment, requires the court to review the record, something the
"detailed and voluminous evidence" enabled the Court to do.  (See
Award at 94.)    Consequently, given Petitioner's high level of
involvement in the case prior to trial and this Court's examination
of the voluminous evidence he submitted before compelling the
parties to arbitrate, he did not "effectively default," and it was
not fundamentally unfair for the Panel to conclude that the Court's
FOF/COL had preclusive effect.

Finally, Petitioner contends that his last-minute consent to
arbitrate rendered this Court's FOF/COL unnecessary, making the
Panel's reliance on the FOF/COL a violation of fundamental fairness.
(See Pet. 1st Br. at 9, 12, 23-25; Pet. 1st Reply at 4, 9, 15.)  The
Court addressed similar arguments about Petitioner's consent to
arbitrate when it denied his motion to dismiss.  (See generally dkt.
no. 479, ["Memorandum & Order"].)  In its Memorandum & Order, the
Court found that there "remained a live dispute between the parties
for which the Court could grant effectual relief" because "the
question of whether Petitioner should be treated as a party to the

Arbitration Agreements . . . continued to be disputed." (Id. at 7, 12-13 (cleaned up).)    Moreover, the threshold issues of arbitrability could only have been decided by this Court, not the arbitrators.    (See id. at 10-13); see also Alemayehu, 934 F.3d at 251.    Petitioner's consent did nothing to bypass this requirement to render arbitration legally permissible.    (See id. at 13.) Therefore, this Court's FOF/COL was necessary to determine the threshold question of arbitrability, even without Petitioner's participation at trial, and the Panel's more than "barely colorable" justification for relying on it was not a violation of fundamental fairness.    See T.Co Metals, LLC, 592 F.3d at 339; see also supra Section III.A.1.

Thus, for each of the reasons set forth above, the Court finds that the Panel did not violate principles of fundamental fairness, and vacatur of the Award is not warranted on such basis.

### 3. Declination to Hold Additional Evidentiary Hearings

By declining to hold evidentiary hearings, Petitioner argues that the Panel "sidestepped their duty to hear the parties' evidence and in the process denied Petitioner a fair hearing."    (See Pet. 1st Br. at 19.)    Petitioner is mistaken and interprets an unfavorable outcome as an unfair process.

Petitioner chose not to participate in his "full and fair opportunity to litigate [his claims] to a final ruling[]" in this Court because he "knowingly waived [his] opportunity to present

additional evidence in the District Court Proceedings." (See Award at 49; July 5, 2016 Trial Transcript at 40:17-21.) The Court then issued its FOF/COL based on the record, which included, by Petitioner's choice, only trial evidence adduced by Respondents. (See Award at 49, FOF/COL at 17 n.8) Petitioner had numerous opportunities to present evidence because, by July 2016, he had been submitting evidence for years. (See Award at 94.) Then at trial, he chose not to participate and submit anything further. (See Award at 49; 7/5 Trial Transcript 40:17-21.)

Where a party "decline[s] to adduce evidence about a particular issue at [a] hearing[,] . . . [it] cannot now claim [it was] blocked from doing so[.]" Mosco Holding, LLC v. Danco Holding, LLC, 2024 WL 1407297, at *7 (S.D.N.Y. Apr. 2, 2024). And when litigants are "given a full and fair opportunity to present [evidence]," as Petitioner was here, a district court's findings of fact are "binding on the arbitration." Pitta, 643 F. Supp. at 252. It was upon the preclusive effect of the FOF/COL that the Panel declined to hold additional evidentiary hearings and issued its Award for Respondents. (See Award at 93 ("there are no remaining relevant and material disputed facts to be resolved by the Panel in this Part 1 of Phase 3 requiring an evidentiary hearing[]"); Order at 16 ("Mr. Lakah had no right to a repetitive evidentiary hearing in arbitration after having given up his full opportunity to present the case in the District Court.")

Thus, when Petitioner voluntarily and knowingly chose to forgo his full and fair opportunity to litigate at trial, he took the risk that the Court's findings and conclusions would have a preclusive effect on arbitration proceedings before the Panel. (See July 6, 2016 Trial Transcript at 18:9-10, 17:8-18 (Petitioner's nonresponse to Respondent's assertion that the unopposed evidence at trial might have collateral estoppel effect).)

In addition, arbitration determinations may "not be opened up to evidentiary review" "except where fundamental fairness is violated[.]" Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co., 2023 WL 8253681, at *6 (2d Cir. Nov. 29, 2023) (quoting Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997)) (finding no violation of fundamental fairness where an arbitration panel refused to compel production of evidence that a party declined to bring forth earlier in a hearing); see also Oldcastle Precast, Inc. v. Liberty Mut. Ins. Co., 838 F. App'x 649, 651 (2d Cir. 2021) (summary order) ("The arbitrator was entitled to weigh the evidence in making his factual findings, and it is well-settled that a federal court may not conduct a reassessment of the evidentiary record.") Because, as discussed supra, the Panel's application of collateral estoppel was not fundamentally unfair, the Court has no basis to find the lack of additional evidentiary hearings was fundamentally unfair either. The prejudice that Petitioner experienced, if any, was by his own hand. The Panel was

bound by the Court's prior ruling, and its "failure" to conduct additional evidentiary hearings did not violate fundamental fairness or prejudice Petitioner. Consequently, there is no reason to vacate the Award on these grounds.

Petitioner has also argued that the Panel's decision not to accept further "essential" evidence concerning the Egyptian proceeding warrants vacatur. (See Pet. 1st Br. at 6-9, 16.) Petitioner asserts that the Egyptian Prosecutor's Office conducted a proceeding that ultimately exonerated him from the claims at issue in the arbitration proceeding to which the Respondents were a party. (See id. at 9.) Because no additional evidence was heard concerning the Egyptian proceeding, he claims the Panel's decision was "prejudicial" and "materially flawed." (See id. at 7.) At the heart of that prejudice, Petitioner asserts, was the Panel's failure to determine whether collateral estoppel applied as to the findings of the Egyptian Prosecutor's Office, i.e., Petitioner's exoneration. (Id.)

However, here too Petitioner has already been fully and fairly heard. In paragraph 6(b) of its Phase 3 Order No. 2, the Panel ordered Petitioner to submit a detailed memorandum discussing any relevant evidence or rulings from, inter alia, the Egyptian proceeding. (See Award at 100.) However, "Michel Lakah [] failed in all materials [sic] respects to comply with any part of this portion of the Panel's Order." (Id.) Moreover, prior to trial

Petitioner submitted evidence and arguments concerning the Egyptian proceeding to this Court, some of which were admitted into the record that the Panel ultimately relied upon in issuing its Award. (See Award at 43.)  Petitioner had the opportunity to present additional evidence to the Panel and failed to do so.  (See id. at 100.)  Such behavior does not warrant vacatur of the Award.  See Mosco, 2024 WL 1407297, at *7; Evan K. Halperin, 2023 WL 8253681, at *6.  The Panel, in providing Petitioner an opportunity to submit his evidence for their consideration, did nothing fundamentally unfair and did not impair his opportunity to fully and fairly litigate his claims.  If anything, Petitioner's refusal to submit evidence acts as an implicit acceptance of the preclusive effect of the Court's FOF/COL, which contained the only evidence regarding the Egyptian proceeding for the Panel to consider in issuing its Award.  Here, Petitioner fails to show any prejudicial or fundamentally unfair actions taken by the Panel.

Moreover, even if Petitioner had never been able to present evidence of the Egyptian proceeding to the Panel, "manifest disregard of the evidence is not a proper ground for vacating an arbitrator's award." Rai v. Barclays Capital Inc., 739 F. Supp. 2d 364, 372 (S.D.N.Y. 2010), aff'd, 456 F. App'x. 8 (2d Cir. 2011) (quoting Wallace, 378 F.3d at 193).  Therefore, the Panel's treatment of the available evidence concerning the Egyptian proceeding does not warrant vacatur.

4. <u>Petitioner was a Party to the Phase 1 Proceedings</u>

Petitioner asserts that the Panel's reliance on Phase 1 findings denied him a full and fair hearing because "[he] was not a party to the Phase 1 award and could not, and did not, adduce any evidence in his own defense." (<u>See</u> Pet. 1st Br. at 4, 8-9, 16-17.) However, this assertion is contradicted by Petitioner's involvement on the record in the Phase 1 proceedings, which the Panel considered before issuing its Award. (<u>See</u> <u>generally</u> Award at 107-112; Resp. 1st Opp. at 23-27.) For example, Petitioner's counsel made multiple appearances before the Panel on behalf of Petitioner in the Phase 1 proceedings, despite the fact that he refused to participate generally. (<u>See Award</u> at 111-112.) Moreover, the Panel explained that "[r]efusal by a named party to participate in an arbitration does not operate by itself to prevent rulings of the arbitral tribunal from binding the non-participating named party, [a principle Petitioner accepted on multiple occasions.]" (<u>Id.</u>) In so reasoning, the Panel addressed Petitioner's assertions that he was not a party and thus provided a more than "colorable justification" for its award. <u>See</u> <u>CesFin Ventures</u>, 852 F. App'x at 574 (finding justification where the arbitration tribunal directly engaged with and made determinations about the parties' legal arguments). Consequently, here too vacatur of the Award is not warranted.

35

**B. The 2019 Order**

Petitioner also moves to vacate the Panel's January 22, 2019, Order terminating the arbitration under AAA 2003 Commercial Arbitration Rule 54 and dismissing Petitioner's counterclaims against Respondents. (See 2nd Paige Decl. Exhibit 1 at 22.)  The motion is premised on two grounds.  First, Petitioner reiterates the claims made in his First Petition to vacate the 2018 Award, namely, that he was denied a full and fair hearing because of the Panel's refusal to hear additional evidence. (See Pet. 2nd Br. at 2-3, 11-12.)  Second, Petitioner argues the "Panel's dismissal of Petitioner's counterclaims for non-payment denied Petitioner a full and fair hearing of his claims" because, essentially, (i) the Panel was improperly biased by its "direct monetary interest in being paid [its] fees"; and (ii) the Panel "improperly refused to conduct evidentiary hearings on the basis of non-payment of advances." (See Id. at 4-5, 12-18.)

Because Petitioner makes only a single, passing reference to § 10(a)(4) of the FAA, and all arguments appear to be specifically directed to the § 10(a)(3) requirement of a "fair hearing," the Court construes Petitioner's arguments as seeking vacatur under § 10(a)(3) only.  (See Pet. 2nd Br. at 10-18); see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (finding § 10(a)(3) is violated only by a denial of fundamental fairness); Nykcool A.B. v. Pac. Fruit, Inc.,

507 F. App'x 83, 85-88 (2d Cir. 2013) (applying the fundamental fairness standard only to § 10(a)(3) claims and not to § 10(a)(4) claims).

As a threshold matter, the Court must determine whether the Order was an "award" for purposes of vacatur. Under the FAA, courts may only vacate an award, <u>i.e.</u>, a final adjudication on the merits. <u>See</u> 9 U.S.C. § 9 ("the court must [confirm an award] unless the award is vacated, modified, or corrected"). <u>See</u>, <u>e.g.</u>, <u>Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech.</u>, 742 F.3d 42, 51 (2d Cir. 2014) (finding an arbitration award to be final because it was a "final decision," labeled "Final Award," and was unaltered by subsequent Interim Orders or Supplemental Awards). Here, Petitioner argues that the Order was "intended to be a complete determination of all claims submitted to the tribunal and, as such, constituted a final award[]" because "the Panel considered the merits of the counterclaims[.]" (<u>See</u> Pet. 2nd Br. at 1.) Respondents take the opposite position, contending that the Panel intentionally issued an order, as opposed to an award, because they dismissed the counterclaims "without prejudice" to avoid touching the merits. (<u>See</u> Resp. 2nd Opp. at 6-8.)

The Court finds that the Panel did not issue an "award" when it terminated the arbitration for nonpayment because it did not make final determinations about Petitioner's counterclaims. (<u>See</u> Order at 22.) Courts in this Circuit have construed the term "award" to

include any arbitral ruling that "finally and conclusively dispose[s] of a separate and independent claim" and "requires specific action and do[es] not serve as a preparation or a basis for further decisions by the arbitrators." Major League Baseball Players Ass'n v. Arroyo, 2024 WL 3539575, at *4 (S.D.N.Y. July 24, 2024) (quoting Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007)) (internal quotations omitted). To be reviewable, "the award must be intended by the arbitrators to be their complete determination of all claims submitted to them." Id. (quoting Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 413 (2d Cir. 1980)) (internal quotations omitted).

Here, the Panel's treatment of Petitioner's counterclaims did not indicate that it intended to determine them completely. The Panel's closest pass at the merits was a rejection of Petitioner's argument that the substance of the counterclaims warranted abstention from exercising the Panel's Rule R-54 authority to terminate the arbitration. (See Order at 8-11, Resp. 2nd Reply at 10.) There, the Panel cited Petitioner's admission that the counterclaims were the "flip side" of his failed defenses raised in Phase 3 Part 1, i.e., that they "overlap[ped] considerably." (Id.) This was merely a reference to Petitioner's own comparison. Nowhere in its Order did the Panel make determinations about the substance of the counterclaims themselves. Without any such engagement, the Order cannot be construed as the Panel's "complete determination of

all claims submitted to them." <u>Arroyo</u>, 2024 WL 3539575, at *4.

The Panel based its dismissal and termination solely on Petitioner's nonpayment of fees, something he had been warned about multiple times and had ample opportunity to rectify. (<u>See</u> Order at 13, 22.) Here, as in the earlier motion, Petitioner will not now be saved from abdicating his rights and responsibilities when they were still available to him.

Consequently, the Court has no power to vacate the Panel's January 22, 2019 Order because it did not constitute an "award."[8]

### IV.  <u>Conclusion</u>

For the foregoing reasons and under the strong presumption in favor of enforcing an arbitration award, Petitioner's First Petition (dkt. no. 505) is DENIED, Respondent's Cross-Motion confirming the November 2018 award (dkt. no. 519) is GRANTED, and Petitioner's Second Petition (dkt. no. 525) is DENIED.

**SO ORDERED.**

Dated:      October 22, 2024
            New York, New York

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge

---

[8] Because the Court has no power to vacate the Order, it refrains from further analysis of Petitioner's other arguments for vacatur laid out in its Memorandum of Law in Support of the Motion to Vacate the 2019 Order.